John C. Sims
SIMS, HUBBERT & WILSON
Attorneys at Law
P.O. Box 10236
Lubbock, Texas 79408
(806) 763-9555
(806) 763-5804 Fax

*Attorneys for Attebury Family Partnership, LP*

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| AMERICAN HOUSING FOUNDATION § | Case No. 09-20232-11 |
| § | |
| Debtor. § | |

### OBJECTION TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' AMENDED PLAN OF REORGANIZATION AND ACCOMPANYING DISCLOSURE STATEMENT FILED MARCH 28, 2010

TO THE HONORABLE ROBERT L. JONES, U.S. BANKRUPTCY JUDGE:

COMES NOW, Attebury Family Partnership, LP ("AFP"), and objects to the Official Committee of Unsecured Creditors' Amended Plan of Reorganization and Accompanying Disclosure Statement filed by the Official Committee of Unsecured Creditors (the "Committee"), as follows:

### HISTORY

1.  Attebury Family Partnership, LP ("AFP") is an unsecured creditor of the estate filing claim number 38-1, a member of the UCC, and cast the only dissenting vote to the original and amended Plan of Reorganization and Accompanying Disclosure Statement ("Plan")

2.  No later than April 10, 2009, Mullin Hoard and Brown ("MHB") became aware of the substantial financial problems of AHF through its existing clients. Understandably and not improperly, MHB embarked upon a strategy to acquire and represent as large a dollar volume of creditors as possible in the upcoming bankruptcy in order to gain position and standing for their entire "Amarillo" group of clients. By far the largest client was a group which has come to be

1

known in this bankruptcy as the Templeton Group ("Templeton et al"), that although already represented by the Lovell Firm, MHB was able to acquire by contract. No later than May 18, 2009, having had its clients about thirty days, MHB, aware of potential conflicts between their clients as creditors versus equity security holders of AHF affiliates, makes a written declaration to AFP there is no conflict between the Templeton group and AFP. On April 21, 2009 certain members of the Templeton et al forced the non-profit AHF into voluntary bankruptcy. Until that time, due to its 501(c)3 status, AHF and its affiliates had structured much of their business and financing upon the assumption AHF was a bankruptcy remote entity. On or about June 11, 2009, AHF filed voluntary Chapter 11 and the cases were consolidated. Before June 23, 2009 a plan of action was formulated by Templeton et al that included the major steps of capturing the Board of AHF capturing and controlling the UCC as well as replacing any non-compliant employees of AHF. On June 23rd a meeting was held to review this strategy and it was adopted. This plan, which is in progress, forms the core of the UCC Plan. All the above is mentioned because it forms part of the basis for AFP's objections to the Plan and Disclosure Statement.

3. AFP joins in the objections filed by SCK parties and Sprouse, Shrader & Smith, P.C., as well as others filing objections and, in particular, the noncompliance with §1125(a).

4. AFP objects to the treatment of AHF Development, Inc., prior to the hearings on May 25, 2010 of the Trustee's motion to dismiss or convert to Chapter 7. Creditors of AHF Development could be negatively affected by approval of AHF Development's treatment in the Plan. The following is a history of AHF Development:

On July 7, 2009 AHF on its Schedule F, "Creditors Holding Unsecured Non Priority Claims" scheduled AHF Development Ltd.'s $16,080,449.00 claim as not contingent, undisputed and as not unliquidated.

On July 23, 2009 the UCC, now chaired by Mr. Templeton files a motion to employ MHB as counsel to the UCC. The motion is met with objection and MHB is allowed to be UCC counsel under certain conditions, one of which is they can no longer represent Templeton et al individually.

On October 14, 2009 AHF filed a Motion to Delegate Authority to Pursue Certain Actions on Behalf of the Bankruptcy Estate. Objections to the motion were filed by creditors Attebury Family Partnership, LP and Texas Capital Bank, but, after negotiation, an agreed order was entered by the bankruptcy court on January 26, 2010 delegating certain matters to the UCC. We shall subsequently refer to this as the Court's Order.

On October 19, 2009, AHF Development, Ltd. filed for relief under Chapter 11 of the U.S. Bankruptcy Court under Case No. 09-20703-11 in the U.S. Bankruptcy Court for the Northern District of Texas, Amarillo Division. AHF, as general partner and 2 percent owner, declares under penalties of perjury it is a "no assets" bankruptcy.

On January 4, 2010, in the AHF Development, Ltd. chapter 11 bankruptcy, the U.S. Trustee filed her Motion to Dismiss or Convert Case to Chapter 7 per U.S.C. 1112. This Motion is currently pending before the Bankruptcy Court. On or about February 16, 2010, the UCC filed objection to the Trustee's motion and further demanded the Court to substantively consolidate the AHF Development, Ltd. case with the AHF bankruptcy, issues of standing and authority under the Court's Order momentarily aside.

On March 29, 2010, the UCC files an amended Plan of Disclosure and Reorganization of the Debtor objecting to and demanding the remedy of equitable subordination as defense against approximately $45 million in claims against the Debtor, including AHF Development's, on the sole basis they are insiders.

Clearly outside the Court's Order as to how any possible objections to third party claims were to be brought to the attention of the Court, the success of the Plan is heavily dependent upon the subordination of these claims. AFP objects and will show that Plan is violative of the Court's January 26th Order limiting AHF's delegation to the UCC of certain causes of action and proceedings against third parties as well as the prohibition of MHB to continue to individually represent former clients. Evidence of the spoilage, waste and harm this has done to the Debtor's estate and all creditors is provided.

4.  AFP objects to the use of Debtor's case in the registry of the Court to be used to cure defaults and improve certain properties for the benefit of certain tax advantaged equity holders and non-recourse debt holders, at the expense of legitimate creditors in violation of the absolute priority rule. Without release from the underlying guaranteed liabilities, Debtor will continue to have unexpected cash requirements to be funded by pre-petition creditors, post petition, and eventually require new creditors and investors to survive. To cure defaults under agreements where the creditor has previously agreed to self subordination of its claim or make no claim *ab initio* by making a non-recourse loan is not in accordance with bankruptcy law. Many liabilities of the Debtor arise from guarantees and the assumption of different types of very substantial financial, regulatory and governmental risks assumed by Debtor, in return for very small equity interests (and perhaps paltry deferred developer fees) in multi-family housing projects under the assumption, as a nonprofit, it was a bankruptcy remote entity. That card played, the Plan now seeks to return it to the deck by providing no discharge of the Debtor and a Liquidating Trust to confer benefits to itself directly and indirectly in perpetuity at creditor expense. The Plan is also designed so Templeton et al can perpetuate the Walden II and other similar portfolios for their benefit and the benefit of the other similarly situated equity holders, but at the creditors' expense, and finally, to prematurely and forever clothe Templeton et al and others as creditors in Class 5 as part of an approved Plan, avoiding ever having their claims scrutinized by picking, paying and controlling the conflicts counsel they choose.

AFP believes many disclosures made by the Plan are either inadequate, conclusionary based upon erroneous legal conclusions or false. Some are improperly proffered as part of the Plan. The Plan is recklessly formulated, thrown together in a hurry in an effort to frustrate a Motion to Appoint a Chapter 11 Trustee in the AHF Bankruptcy. The liquidation analysis is deficient, in that the projected 20% dividend, with so many claims in dispute and the $16,000,000 claim of AHF Development, Inc. in question, the liquidation analysis is premature or wrong.

5.  AFP objects to prominent 78-year old Robert L. Templeton as the proposed Liquidating Trustee on the basis of probity and poor business judgment. AFP does not share any

4

doubts expressed by the SCK parties as to the intentionality and scienter on the part of MHB, the UCC and Mr. Templeton to use the Plan, and the Liquidating Trust proposed in it, to hinder, frustrate and defraud other creditors for the benefit of Templeton et al and others, using the vehicle of the Plan as a device to violate the absolute priority rule. The disclosures made and not made, along with the substitution of Robert Templeton as the Liquidating Trustee of the "new AHF Development" to direct money from many sources including life insurance proceeds, the bankrupt estate and that belonging to creditors, as he directs, under the Trust, in perpetuity. The plan calls for Mr. Templeton to pay himself and his counsel.

6. Scienter is not used to invoke any other law or standard than bankruptcy law and because 11 U.S.C. 1125(a)(1) incorporates the reasonableness standard to "enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan...". Evidence of scienter is provided to support the assertion protections offered under 11 U.S.C. 1125(e) should not be available to certain proponents of the Plan and MHB.

### THE UCC USES THE PLAN TO ATTEMPT TO PREVENT AHF DEVELOPMENT'S CLAIM

7. Section 5.8 of the Plan is taken from the Court's Order, but is presented as the authority to now be given to the Liquidation Trust under the Plan. The original Court's Order required the possible use of the Court, something AFP does not believe the Court has agreed to provide in perpetuity, to the trustee of the Liquidating Trust, but none the less, 5.8 of the Plan recites the Court's order in part:

> "To investigate any and all *financial transactions,* and, if appropriate, to pursue causes of action or claims *owned by AHF* where the facts and law support intentional tort and negligence-based, or any other claims against AHF *prior to AHF's bankruptcy;*..."

Had the Court intended the UCC's authority to be the investigation and pursuit of pre-petition insiders as a *classification* the Court could have said so, but did not. Had the Court wished the UCC, upon discovery of prepetition insider status, to make an objection to the claim based upon the *relationship* of the creditor to debtor, it could have said so, but instead directed

5

the UCC to investigate the *financial transactions* that would provide a basis for an objection to claim.

As to AHF Development's receivable and Class 7, AHF never owned a defense to AHF Development's claim in the AHF bankruptcy, according to its own bankruptcy schedules. The UCC was only empowered to pursue claims owned by AHF, certain of those delegated to the UCC.

Observing this, Mr. Boyd, one of Templeton et al's appointees to AHF's Board, places AHF Development into bankruptcy. Mr. Boyd then, supported by testimony from MHB, petitions the Court to be paid for a bad faith filing in derogation of AHF's duty to AHF Development, and admitted conflict of interest. Alvin Johnson, as Vice-President of AHF as general partner to AHF Development, commits perjury by swearing AHF Development has no assets in bankruptcy, but listing the debt owed to AHF Development as proper in AHF's bankruptcy, both of which cannot be true. AFP asserts this is evidence MHB has not stopped working directly for Templeton et al and further, Robert L. Templeton is still able to exert control on post petition AHF as an insider.

The authority granted the UCC involved two mandates. The second was as to *third parties who have received transfer of assets of AHF, fraudulent conveyances or preference defenses, as shown below, but before the UCC could actually file a complaint, it had to give notice, description and possibly have a hearing in front of the Court on a case by case basis to be undertaken prior to the delegation to the UCC of powers of prosecution.* The language, again found in 5.8 of the Plan says in part:

> "…and to also investigate and pursue other potential causes of action against third parties who may have received transfers of assets of AHF that constitute preferences or fraudulent conveyances. However, prior to the Committee actually filing complaints against third parties who are not former officers, directors or employees of AHF, counsel for the Committee shall provide notice to the Debtor, all parties who have filed notices of appearance in the AHF bankruptcy case, and the twenty largest unsecured creditors in the AHF bankruptcy case, of their intent to file such complaints providing a description in such notice of the nature of the causes of action to be asserted, the particular defendants which are contemplated to be named in the lawsuits, and any other pertinent information that will enable the creditors and parties in interest to analyze the validity and value of the litigation. The notice shall provide negative notice language that specifies that unless a

6

creditor or party in interest files an objection with the Bankruptcy Court within fifteen days of receipt of the notice that counsel for the committee will proceed to file the complaints initiating the lawsuits. In the event, a creditor or party in interest files an objection, the Court shall then set a hearing to consider the objection with notice of the setting being given to all creditors and parties in interest who received the initial notice from counsel for the Committee. At the hearing on any such objection the Court will entertain evidence and argument relating to the merits of the Committee filing the complaints and pursuing the causes of action..."

AHF Development, Ltd. is an affiliate of AHF, and per 101 (25) an insider as the General Partner of AHF Development in the Debtor corporation, but it is a third party, a separate legal entity and must be respected. AHF Development is not a former officer, director, attorney or accountant of prepetition AHF.

Debtor's defenses to claims based upon equitable grounds presented to the Court through the Plan of Disclosure and Reorganization are as effective under Rule 2007 as an objection filed as an adversary. An adversary is not necessary under Rule 2007 to assert equitable defenses to a claim. The equitable subordination of AHF Development's claim under the Plan, are objections to claims by the UCC in violation of the Court's Orders as to what kind of claims and how they were to be brought to the attention of the Court.

8.   The plan is also premature because AHF placed AHF Development into bankruptcy. In a majority opinion dated December 15, 2009, the Ninth Circuit Bankruptcy Appellate Panel held that a chapter 11 debtor may not equitably subordinate a creditor's claim and transfer the lien securing that claim, when such creditor is, itself, in bankruptcy, before first obtaining relief from the automatic stay under Section 362 of the U.S. Bankruptcy Code in such creditor's bankruptcy case. *Lehman Commercial Paper vs. Palmdale Hills Prop. (In re: Palmdale Hills Prop., LLC)* 2009 Bankr. LEXIS 4294 (B.A.P. 9th Cir. Dec. 15, 2009).

A properly filed claim is a "prima facie evidence of the validity and amount of the claim" and a claim is the right to the payment of money. Chapter 11 Debtor, AHF, placed a creditor, AHF Development, into bankruptcy. Now, through the Plan, the UCC seeks to equitably subordinate (and substantially consolidate elsewhere) AHF Development without obtaining the relief from the automatic stay in AHF Development's bankruptcy.

The court in *Missionary Baptist Foundation of America, Inc. Wilson vs. G. Huffman* 712 F.2d 206 71 A.L.R. Fed. 186, 9 Collier Bankr.Cas.2d 160, 11 Bankr.Ct.Dec. 144, Bankr. L. Rep. P 69, 394, said "According to the legislative history, **an insider under 11 U.S.C. §101(25) is an entity or person with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.**" S.Rep. No. 95-989, 95th Sess. Reprinted in [1978] U.S. Code Cong. & Admin. News, pp. 5787, 5810. See Phillips, Insider Provisions of the New Bankruptcy Code, 55 Am. Bank L.J. 363 (1981). If the debtor is a corporation, its insiders may include any officer, director, controlling person, partnership in which the debtor is a general partner, general partner of the debtor, or relative of a general partner, director, officer, or controlling person. §101(25)(B). The same Court continued: **Use of the word "includes" in §101(25) evidences Congress' expansive view of the scope of the insider class, suggesting that the statutory definition is not limiting and must be flexibly applied on a case-by-case basis.** S.Rep. No. 95-989, 95th Cong. 2d Sess., reprinted in [1978] U.S. Code Cong. & Admin. News, p. 5812; Note, The Term "Insider" Within §547(b)(4)(B) of the Bankruptcy Code, 57 Notre Dame Law. 730 (1982). See 2 L. King, Collier on Bankruptcy p. 101.25 (15th ed. 1983). See also Matter of Montanino, 15 B.R. 307 (D.H.J. Bkrtcy. 1981).

9. The Plan currently calls for (the first of many) emergency redirection of One Million Dollars of expected "Exxon deal" money for deferred maintenance without disclosing many AHF properties are older, were revamped to sell or refinance and having failed that, are going to require extensive maintenance on a continuing basis. Unfunded mandates from regulators are part of the LIHTC business.

The term "equity security holder" is used in the Plan, but never defined. The failure to define the term and provide for a class for holders of equity securities is revealing. In sworn testimony, AFP stated MHB is not trustworthy due to their allegiance to Mr. Templeton and Mr. Templeton et al are investors rather than creditors. There should be a class to deal with equity security holders even if not presently populated. MHB and the Plan completely and intentionally

8

neglect to disclose to creditors 510(b); 11 U.S.C. 510(b)[1] which requires the subordination, not on equitable grounds, but as the financial consequences to owners of a company or its affiliates [2] when the company fails[3].

Templeton et al are persons whose claims (if their complaints rise to the level of a claim) arise from the purchase and sale of equity securities in affiliates of the Debtor. They hoped to avoid the close examination of their claims by capturing and controlling AHF and the UCC, and conflict counsel by presenting this Plan and getting it quickly adopted, securing their Class 5 status. Within 45-days of Sterquell's death, MHB represented to all their clients at the time, all claims made against AHF were on the basis of guaranties of performance by AHF of the obligations contained in each of their respective instruments and were ultimately the same. If Templeton et al guarantees are found to be different and Templeton et al claims are subordinated or never claims at all, MHB is responsible for a huge waste of time and resources of the estate, their former clients, all other creditors, and the Court, so without doubt, scrutiny of Templeton et al exposes MHB to possible unpleasant outcomes.

An examination of the 510(b) issue might prove beneficial to all other creditors but detrimental to Templeton et al and other UCC members which may have a Voting Rights

---

[1] 510 Subordination
(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under §502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common sock, such claim has the same priority as common stock.
Section 101(16) provides that "equity security" means:
(B) interest of a limited partner in a limited partnership.

[2] (See 712 F2d 206 *Missionary Baptist Foundation of America, Inc. Wilson vs. G. Huffman* 71 A.L.R.Fed. 186, 9 Collier Bankr.Cas.2d 160, 11 Bankr.Ct.Dec. 144, Bankr.L.Rep. P 69, 394 Fed. R. Evid. Serv. 1146 for an examination of terms "insider" and "affiliate")

[3] From the 5th Circuit *Carrier vs. JOBS.COM* "One of the main purposes of Chapter 11 of the Code is demonstrated by the "absolute priority rule" under §1129(b)(2)(B)(ii) that creditors' rights and claims take priority over equity interests. See 11 U.S.C. §§1129(a)(7) & 1129(b)(2)(B)(ii) (1994) (stating that claims are entitled to priority over equity security interests). Although the "absolute priority rule" is generally only used by the bankruptcy court when determining whether to confirm a Chapter 11 plan, the overarching theory behind it supports affirming the decisions to sustain the objections to the Carrier Claims. The "absolute priority rule" provides that a "dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization plan]" and there is "little doubt that a reorganization plan in which [a junior class] retain[s] an equity interest" is contrary" to this rule. *Norwest Bank Worthington vs. Ahlers* 485 U.S. 197, 202-03 (1988); Georgetown Bldg.

Agreement as indicia of an equity position in its LLC borrower, as a way to force LLC distributions, to service its notes.

The LIHTC Section 42 tax credits (named for the section of the IRS code from which they spring) may be securities and subject to subordination under 510(b), or the Chapter 11 provisions that deal with the application of the absolute priority rule to securities in which after markets are made. The problem is, since MHB has never quit representing Mr. Templeton, the UCC will never disclose or investigate these possibilities because under the same or similar legal theories, their clients may be harmed.

Instead, the UCC solicits votes for its plan under a $118 Million Dollar cloud of potential red herring LIHTC liability should AHF be liquidated, taking no account of any burn off that has occurred of this potential liability, if it exists.

10. The plan, in an attempt to continue Templeton Group's total control and protect their interest over all approved creditors, attempts to name special counsel of their choice. Because this attorney would review the Templeton's claims, as well as insider questions, the Court should appoint special counsel.

Overall, AFP contends the plan is beyond remediation and repairs and must be rejected on its face and in its entirety. No member of the UCC was able to fulfill their fiduciary obligation due to the failure of the UCC to function as a deliberative body for the benefit of all creditors because MHB, not disinterested, continued to represent Templeton et al in their quest to control the UCC for their own purposes.

Respectfully submitted;
John C. Sims
SIMS, HUBBERT & WILSON
Attorneys at Law
P.O. Box 10236
Lubbock, Texas 79408
(806) 763-9555
(806) 763-5804 Fax

John C. Sims, SBN 18426000
Attorney for Attebury Family
Partnership, LP

10

## CERTIFICATE OF SERVICE

I certify that on this the ___15___ day of April, 2010, I served true and correct copies of the foregoing on all creditors and parties in interest who have filed appearances or who are registered with the U.S. Bankruptcy Court for the Northern District of Texas to receive electronic notices in this case.

_____
John C. Sims