U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed June 09, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| | § | |
| IN RE: | § | |
| | § | |
| AMERICAN HOUSING FOUNDATION, | § | CASE NO. 09-20232-RLJ-11 |
| | § | |
| DEBTOR | § | |

**MEMORANDUM OPINION AND ORDER**

Jack Traeger seeks approval of an administrative claim in the amount of $7,539.38, which amount consists of unpaid expenses of $1,898.35 and accrued vacation benefits of $5,641.03. The debtor, American Housing Foundation ("AHF"), objects to allowance of the accrued vacation pay but admits that Traeger was not paid his expense reimbursement. The Official Unsecured Creditors Committee (the "Creditors Committee") objects to the entire amount. The Creditors Committee contends Traeger was not an employee of AHF but, rather, of a separate entity, "Administaff"; they also contend that Traeger is not entitled, upon separation, to payment for accrued vacation pay and, as to the expenses, that he had not provided proof of the expenses. Certain creditors – Robert L. Templeton, Don Storseth, individually and as trustee of the Storseth

Family Trust, Dennis Dougherty, Paul King, the Frances Maddox Estate, Heron Land Company, David Miller, Susan Solomon Miller, Clay Storseth, William F. Scott, and Herring Bank – assert the same objections as does the Creditors Committee.

**Background**

This bankruptcy case started with an involuntary petition filed against AHF on April 21, 2009, by Robert L. Templeton, Don Storseth, as trustee of the Storseth Family Trust, Dennis Dougherty, Paul King, the Frances Maddox Estate, Heron Land Company, David N. Miller, Susan S. Miller, and Clay Storseth. AHF filed a voluntary petition under chapter 11 on June 11, 2009, which was subsequently consolidated into the involuntary case on July 17, 2009 (under case no. 09-20232, the filing number for the involuntary petition).

Traeger served as the "Portfolio Manager" for AHF's operations for approximately four years prior to the filing of the bankruptcy case. He testified that he was handling all financial matters for AHF at the time the involuntary bankruptcy petition was filed. As of that time, Traeger was paid $160,000.00 per year; he testified that he accrued three weeks of vacation pay per year. Traeger continued in his position after both the involuntary filing and the consolidation of the voluntary petition with the involuntary petition, but was terminated by AHF on December 11, 2009.

As a chapter 11 debtor, AHF is somewhat unusual. It purports to be a nonprofit corporation that was created for the purpose of providing affordable housing for moderate income families. The housing units, over 13,000, are generally owned by limited liability companies and limited partnerships; AHF is affiliated with these entities as a member, with respect to the limited liability companies, or general partner, with respect to the limited partnerships. In some instances, affiliation as a member or general partner may be indirect with an intermediate entity between

AHF and the entity that owns the housing facility. Traeger, as with all AHF "employees", was actually an employee of Administaff, from whom AHF leases all its employees. Traeger was paid by Administaff but he contends that Administaff merely serves an "HR" function. Administaff has a stated vacation policy. *See* Exhibit 4. It states that employees are entitled to vacation benefits and sets forth how vacation time accrues. The policy does not state that employees are paid accrued vacation pay in the event of termination, however. *See id*. Traeger testified that certain other employees received payment for accrued vacation time when they voluntarily left AHF (or Administaff). There is no real dispute among the parties concerning the manner in which vacation pay accrues or the way in which the claimed amount is calculated by Traeger.

**Discussion**

To qualify as an administrative expense priority claim under section 507(a)(2), a claim must represent the "actual, necessary costs and expenses of preserving the estate" under section 503(b). *See* 11 U.S.C.A. §§ 503(b), 507(a) (Supp. 2009). Section 503(b)(1) specifically includes "wages, salaries, and commissions for services rendered after the commencement of the case," but does not specifically identify vacation, severance, or sick pay as an administrative expense claim. 11 U.S.C.A. § 503(b)(1). Section 507(a)(4), in contrast, specifically includes "vacation, severance, and sick pay" as an administrative priority if earned within 180 days before the filing of the petition. 11 U.S.C.A. § 507(a)(4). Despite the specific inclusion of vacation and sick pay in section 507 and the omission of such benefits in section 503, courts have generally held that payments for unused benefits such as vacation or sick leave are considered a part of an employee's wages, and thus may qualify as an administrative priority claim under section 503 for the amount accrued for post-petition services. *See In re Roth Am., Inc.*, 975 F.2d 949, 957 (3rd Cir. 1992); *Phillips v. Rapides Primary Health Care Ctr.*, No. 05-1551-A, 2006 WL 2264983,

*5 (W.D. La. Aug. 7, 2006); *In re Fleming Packaging Corp.*, No. 03-82408, 2004 WL 2106579, *2 (Bankr. C.D. Ill. Aug. 31, 2004); *In re AcoustiSeal, Inc.*, 290 B.R. 354, 363 (Bankr. W.D. Mo. 2003); *In re Pre-Press Graphics Co., Inc.*, 287 B.R. 726, 734 (Bankr. N.D. Ill. 2003); *In re Spectrum Info. Tech., Inc.*, 193 B.R. 400, 405 (Bankr. E.D. N.Y. 1996).

While vacation pay may constitute an administrative claim, the Court must determine whether Traeger is in fact entitled to payment for accrued vacation time. In this regard, Traeger relies upon the vacation policy of Administaff and his own testimony to support his contention that he is entitled to be paid. An employer is only obligated to pay for unused vacation time if the right to payment for such benefits is specifically expressed in an employment contract. *Brown v. Sabre*, 173 S.W.3d 581, 587-88 (Tex. App.—Fort Worth 2005, no pet.); *see also Niehous v. Arkansas Glass Container Corp.*, 154 F.Supp. 2d 1006, 1013 (S.D. Tex. 2001). Employee handbooks or policy manuals merely constitute guidelines for the employment relationship and do not create an employment contract unless language contained therein specifically expresses an intention to be bound by the terms of the policy. *Brown*, 173 S.W.3d at 585; *Werden v. Neuces County Hosp. Dist.*, 28 S.W.3d 649, 651 (Tex. App.—Corpus Christi 2000, no pet.).

Here, there is no employment contract between Traeger and Administaff; Administaff's policy does not constitute an employment contract. Even if the policy expressed an intent to contractually bind Administaff (or AHF), the policy itself fails to expressly state that, upon termination or separation, payment will be made for unused vacation time accrued by an employee. Thus, no right exists for Traeger to recover payments for unused vacation time.

In Traeger's brief, he contends that the Texas Payday Law contained in the Texas Labor Code provides that "all fringe benefits, including vacation pay, are included in wages and they are

enforceable pursuant to any existing policy or agreement." The provision cited by Traeger is from the definitions section of this particular chapter, specifically the definition of "wages" for that chapter in the Labor Code. Traeger contends that the definition entitles him to payment for unused vacation time. This argument fails to account for the fact that the definition itself states that such benefits are "enforceable pursuant to any existing written policy or agreement," and thus does not itself give Traeger the right to recover payments for unused vacation time. As stated, under Texas law, employment contracts must expressly provide for payment of such benefits in order to be enforceable, *Brown*, 173 S.W.3d at 587, *see also Niehous*, 154 F.Supp. 2d at 1013, and employee policies are only enforceable if the policy itself indicates an intention to be bound. *Werden*, 28 S.W.3d at 651.

**Conclusion**

While a claim of payment for unused vacation time may qualify as an administrative priority claim under section 503 of the Bankruptcy Code, Traeger failed to establish any right to such payment. No employment contract evidencing such a right exists, and the policy relied upon does not expressly include the right to payment for vacation pay. It is unclear, based upon the evidence presented, which party, AHF or Administaff, ultimately has the responsibility for payment of wages under the leasing arrangement between AHF and Administaff. Traeger did not provide evidence of any agreement by which AHF was obligated to pay Traeger (as opposed to Administaff). It appears that Traeger's claim, even if allowable under Texas state law, would lie against Administaff. Regardless, Traeger failed to establish a right to payment for accrued vacation time.

Traeger did establish that he is owed $1,898.35 for expenses incurred for travel and other matters. *See* Exhibit 6. AHF admitted that he had not been paid for such expenses. The expense report, Exhibit 6, is an AHF expense report. The Court will allow Traeger's reimbursement claim for such expenses as an administrative claim.

Upon the foregoing, it is hereby

ORDERED that Traeger is allowed an administrative claim of $1,898.35; Traeger's asserted claim of $5,641.03, as administrative or otherwise, is denied; it is further

ORDERED that AHF (through the chapter 11 trustee) is authorized and directed to pay Traeger the allowed administrative claim of $1,898.35.

### End of Memorandum Opinion and Order ###