LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.
Joe L. Lovell, SBT #12609100
John H. Lovell, SBT #12609300
Deborah D. Reeves, SBT #24006668
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **AMERICAN HOUSING FOUNDATION, INC.,** | § | **CASE NO. 09-20232-11** |
| | § | **CHAPTER 11** |
| **Debtor.** | § | |

### CREDITORS' JOINDER TO RESPONSE OF OFFICIAL UNSECURED CREDITORS COMMITTEE TO TRUSTEE'S MOTION FOR CLARIFICATION AND DIRECTION REGARDING STERQUELL SETTLEMENT

To the Honorable Robert L. Jones, U. S. Bankruptcy Judge:

NOW COME, ROBERT L. TEMPLETON, DON STORSETH, INDIVIDUALLY AND AS TRUSTEE OF THE STORSETH FAMILY TRUST, DENNIS DOUGHERTY, PAUL KING, THE FRANCES MADDOX ESTATE, HERON LAND COMPANY, DAVID MILLER, SUSAN SOLOMON MILLER, CLAY STORSETH, WILLIAM E. SCOTT, TERRILL J. HORTON, HERRING BANK, C. C. BURGESS, CAMPBELL BURGESS, CARSON HERRING BURGESS, CARSON BURGESS, INC., BURGESS TRUST #4, CHAIN-C, INC., KEEVIN CLARK, CHARLOTTE BURGESS GRIFFITHS, HERRING FINANCIAL SERVICES, JESSIE HERRING JOHNSON ESTATE TRUST #1, JESSIE HERRING JOHNSON ESTATE TRUST #2, CORNELIA J. SLEMP TRUST, LOUISE JOHNSON

THOMAS TRUST, and VAUDREY CAPITAL, L.P. (a/k/a/ VAUDREY CAPITAL, LP) (collectively "the Petitioning Creditors") in the above-referenced bankruptcy case, and file their Joinder to Response of Official Unsecured Creditors Committee to Trustee's Motion for Clarification and Direction Regarding Sterquell Settlement, and show the following:

## I.

## BACKGROUND

1. An involuntary petition against the Debtor, American Housing Foundation ("AHF"), was filed on April 21, 2009 under Case No. 09-20232 in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division.

2. On May 18, 2009, various creditors filed adversary proceeding No. 09-02005 in the involuntary matter, asserting that $24 million in life insurance policies that insured the life of Steve W. Sterquell was the property of AHF.

3. On June 11, 2009, AHF filed a voluntary bankruptcy petition in the Northern District of Texas, Amarillo Division, under Case No. 09-20373.

4. An Agreed Order to consolidate the two proceedings (Case No. 09-20232 and Case No. 09-20373) into a single proceeding under Case No. 09-20232 was entered by the Court on July 17, 2009.

5. During the pendency of these bankruptcy proceedings, numerous lawsuits were filed in state court and federal court by creditors of Steve W. Sterquell against members of the Sterquell family, various Sterquell-related entities, and the Estate of Steve W. Sterquell. *See* Docket 813-1, Exh. J.

6. Due to the uncertainty and expense involved with the litigation, AHF, the Sterquell family, the Official Unsecured Creditors Committee, and other individual creditors entered into a settlement agreement that resolved the litigation against the Sterquell family and various Sterquell-related entities, including the litigation relating to ownership of the life insurance policies. *See* Docket 813-1.

7. AHF, the Sterquell family, the Official Unsecured Creditors Committee, and other individual creditors moved the Court to approve the Settlement and Release Agreement. *See* Docket 813.

8. *No objections were lodged to the Settlement and Release Agreement, and the Court approved the agreement* on April 9, 2010. *See* Docket 977.

9. On April 28, 2010, Walter O'Cheskey was appointed as the Chapter 11 Trustee for this matter.

10. On July 20, 2010, the Trustee filed his Motion for Clarification and Direction for Chapter 11 Trustee Regarding Sterquell Settlement relating to Exhibit D assets. *See* Docket 1435.

11. On August 10, 2010, the Official Unsecured Creditors Committee filed a Response to the Trustee's Motion for Clarification and Direction Regarding Sterquell Settlement. *See* Docket 1494.

## II.

## JOINDER IN THE RESPONSE

12. The Creditors join in the response filed by the Official Unsecured Creditors

Committee. *See* Docket 1494. The Creditors also stress the following points.

A. **In this contentious bankruptcy proceeding, no objections were lodged to the Sterquell Settlement and Release Agreement.**

13. Because of the number of objection filings in this bankruptcy proceeding, there is no question that the creditors of the bankruptcy estate have been active in policing each other's activities and particularly, ascertaining whether any creditor(s) is receiving a perceived inappropriate advantage or benefit to the detriment of other creditors.

14. It is indeed remarkable when the parties in this bankruptcy case can agree on any issue, much less a 96-page document that comprises the Sterquell Settlement and Release Agreement.

15. As noted by the Unsecured Creditors Committee, the Sterquell Settlement and Release Agreement was the result of months of difficult, tedious negotiations between the parties.

16. Based on the history of this case, if any party had a concern whatsoever regarding lack of disclosure of the Exhibit D assets, the Sterquell Settlement would not have been reached.

17. Likewise, if any creditor that was not a party to the Sterquell Settlement had a concern about Exhibit D assets not being adequately disclosed or certain creditors receiving the Exhibit D assets as part of the settlement, an objection would certainly have been lodged. To the contrary, *no one* objected to the Sterquell Settlement and Release Agreement.

B. **If the Trustee does not execute the Agreed Final Judgment relating to the Sterquell Settlement and Release Agreement, expensive litigation will be revived.**

18. While the Trustee is unnecessarily concerned about the Exhibit D assets, he fails

Creditors' Joinder to Response of Official Unsecured Creditors Committee to Trustee's Motion for Clarification and Direction Regarding Sterquell Settlement  Page 4
L:\TRACY\AMERICAN HOUSING FOUNDATION.5388\SETTLEMENT AGREEMENT - STERQUELLS\CREDITORS' RESPONSE TO TRUSTEE'S MOTION FOR CLARIFICATION AND.DOCX

to consider that AHF will be required to litigate matters concerning claims to the life insurance, and other fraudulent conveyance, tracing, and constructive trust claims. The numerous proceedings in which such claims had, at that time, been made are listed in Exhibit J to the Sterquell Settlement and Release Agreement. Some of the Petitioning Creditors had claims that had not yet been formally asserted. As part of the agreement, AHF and the other parties agreed to resolve all claims. *See* Docket 813-1.

19. Significantly, some of the creditors who were parties to the Sterquell Settlement and Release Agreement had valid tracing claims to certain assets in exchange for settlement and the right to the Exhibit D speculative assets. One very significant example of substantial claims released by some of the Petitioning Creditors are those in which defrauded funds can be traced into premiums that were paid for the life insurance policies, meaning those creditors had a claim to the proceeds of the life insurance.

20. Contrary to the Trustee's assertions, the Sterquell Settlement is not "two settlements." It is one settlement. Undoing any part of the settlement undoes the whole thing. The Exhibit J litigation will have to be revived and litigated. The unasserted claims will have to be filed and litigated. AHF will have to litigate its claims to the life insurance proceeds. Most notable are the claims of some of the Petitioning Creditors who could trace money they were defrauded of directly to premium payments on the $13 million life insurance policy. Those claims were all compromised in the Sterquell Settlement, and would have to be revived and pursued if the Sterquell Settlement is un-approved.

21. Settlement agreements have been negotiated in other proceedings in reliance upon

the court-approved Sterquell Settlement. Those agreements have now been thrown into question by the Trustee's refusal to sign the Sterquell Settlement and his "Motion for Clarification."

22. Even the Trustee's advisors recommend that the business of AHF needs to wind down. *See* Trustee's Situation Analysis and Recommended Plan of Action, Docket 1476. The litigation listed in Exhibit J would, at best, require several years to resolve and result in expensive, unnecessary delays for AHF, which is in no one's best interest and contrary to the advisors' recommendations. That litigation and the unasserted claims could also result in AHF losing at least some of the life insurance proceeds resulting from the settlement.

C. **The Exhibit D assets largely consist of raw, undeveloped land, which is speculative in nature and would cost AHF a significant amount just to retain.**

23. The Trustee appears to need clarification and direction from this Court concerning the Exhibit D assets because of the "difficulty in ascertaining the value of those assets." *See* Docket 1435, ¶ 21.

24. As disclosed in the Settlement Agreement and reflected in the Trustee's Exhibit D Assets Chart, these assets primarily consist of raw, undeveloped land. *See* Docket 813, 1435. Further, it was disclosed that the assets will likely require substantial capital contributions, and the assets cannot be converted to cash for two to five years. *See* Docket 813, ¶ 25.

25. Based on the Situation Analysis and Recommended Plan of Action prepared by the Trustee's advisors, the Exhibit D assets are not conducive to AHF's business, as AHF requires immediate cash, not speculative assets that cannot be readily converted to cash. *See* Docket 1476. Everyone involved in this bankruptcy would have to agree that the last thing AHF

needs is to have to spend substantial amounts of cash to make capital calls to retain assets whose values are unknown and speculative.

26. Just because the Trustee was appointed after the Court approved the Sterquell Settlement, and does not know what the Exhibit D assets are worth (just like everyone else), does not mean it is appropriate to question the very complex, hard fought, and long-negotiated settlement, or second-guess the Court and the many competitive creditors who agreed to compromise their claims and/or waive objections to the settlement.

**D. The Trustee's Motion for Clarification and Direction Regarding Sterquell Settlement is vague and should be denied.**

27. The Trustee fails to adequately explain what clarification or direction is needed from this Court in helping him resolve his uncertainty and execute the Sterquell Settlement and Release Agreement on behalf of AHF, along with the Agreed Final Judgment. Further, the Trustee fails to explain how the Sterquell Settlement and Release Agreement is not in the best interest of the estate, and his motion must be denied.

## III.

## CONCLUSION AND PRAYER

For these reasons, the Creditors request that the Trustee's Motion for Clarification and Direction Regarding Sterquell Settlement be denied, that the Trustee be ordered to execute the Sterquell Settlement and Release Agreement on behalf of AHF, along with the Agreed Final Judgment, and pray for such other relief at law or equity as the Court may determine as just and right under the circumstances.

DATED the 10th day of August, 2010.

Respectfully submitted,

LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.
Joe L. Lovell, SBT No. 12609100
John H. Lovell, SBT No. 12609300
Deborah D. Reeves, SBT No. 24006668
112 West 8th Avenue, Suite 1000
Eagle Centre Building
Amarillo, Texas 79101-2314
Telephone: (806) 373-1515
Facsimile: (806) 379-7176

By: *Deborah D. Reeves*
Deborah D. Reeves

*Attorneys for Petitioning Creditors*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was sent via ECF or U. S. Mail on this the 10th day of August, 2010, to the following listed parties in interest:

Max Ralph Tarbox
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401

All creditors and parties in interest registered with the U. S. Bankruptcy Court to receive electronic notices in this case.

*Deborah D. Reeves*

Deborah D. Reeves