U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed August 10, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERICAN HOUSING FOUNDATION, | § | CASE NO. 09-20232-RLJ-11 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION

The Court considers the final fee application of John Thomas Boyd, Jr. ("Boyd") for services provided as counsel for the debtor-in-possession, American Housing Foundation ("AHF"). Boyd seeks payment of $94,275.00 in fees; he does not seek payment of any expenses. Texas Capital Bank, a secured creditor in this bankruptcy case, and Attebury Family Partnership, L.P, an unsecured creditor, object to allowance and payment of the fees. The fee amount is based on 437.10 hours worked by Boyd at the rate of $250.00 an hour ($109,275.00) and less a prior interim payment approved by the Court of $15,000.00.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**Background**

On April 21, 2009, certain creditors of AHF filed an involuntary chapter 11 bankruptcy petition against AHF under case number 09-20232.  AHF, an asserted non-profit entity, answered the involuntary petition, contending, under 11 U.S.C. § 303(a), that the involuntary petition against it was improper as it is not a "moneyed, business, or commercial corporation."  Despite this, on June 11, 2009, AHF filed its voluntary chapter 11 case under case number 09-20373.  The voluntary case was consolidated with the involuntary action under case number 09-20232.

On September 21, 2009, the Court entered its order approving the application of Boyd to be employed as an attorney for AHF in this case.  On December 23, 2009, Boyd filed his first interim motion for compensation requesting the Court to approve payment of attorneys' fees in the amount of $50,525.00.  A hearing was held on the motion on January 15, 2010, after which the Court approved an interim payment to Boyd of his attorney's fees in the amount of $15,000.00.  On January 25, 2010, the Court signed its order approving the payment of the $15,000.00 without prejudice to Boyd filing another motion seeking approval and payment of the remaining fees set forth in the first interim motion.

On April 28, 2010, the Court entered its order appointing a chapter 11 trustee after hearing held on the motion seeking such appointment by Texas Capital Bank.  On the same date, the Court entered its order approving the appointment of Walter O'Cheskey as chapter 11 trustee. On June 15, 2010, the Court signed its order approving Boyd's motion seeking to withdraw as counsel for AHF.

Prior to being retained as counsel for AHF, Boyd was elected to AHF's board of directors on June 3, 2009.  As set forth above, AHF filed its voluntary chapter 11 case on June 11, 2009.

At that time, counsel for AHF was Robert Yaquinto, Jr. Mr. Yaquinto was approved as counsel for AHF by the Court's order of August 14, 2009. AHF filed its motion to employ Boyd on August 11, 2009. The Court's September 18 order approving Boyd's employment provides that, given Boyd's role as a board member, the Court would review his "disinterestedness" at the time compensation was sought.

In addition to Boyd and Yaquinto, AHF has had other counsel employed to represent its interests in this case: R. Byrn Bass, Jr., which was approved by the Court's order of August 11, 2009, and Charles W. White, which was approved by the Court's order of August 14, 2009. At the time the Court considered the appointment of a chapter 11 trustee, AHF had filed a motion requesting authority to employ yet other counsel, Cavazos, Hendricks, Poirot & Smitham, P.C..

The Court, taking judicial notice of the proceedings before it in this case, notes that Yaquinto was initially employed as general counsel for AHF to defend the involuntary petition against AHF and then as counsel for AHF upon filing its voluntary case. White was employed to represent AHF in connection with certain litigation matters. At the time of Bass's employment, it was represented to the Court that he would serve as general counsel for AHF in the bankruptcy with Boyd filling specific and discreet needs. This plan broke down as Boyd, apparently by default, ended up serving as general counsel for AHF and taking the lead on matters before the Court in connection with the bankruptcy proceedings of AHF, including AHF's defense of Texas Capital Bank's motion seeking the appointment of a chapter 11 trustee.

## Discussion

Section 330 of the Bankruptcy Code provides that the bankruptcy court may award reasonable compensation to counsel for a debtor-in-possession for "actual, necessary services" provided by counsel, and may reimburse counsel for "actual, necessary expenses." *See* 11 U.S.C.

§ 330(a)(1)(A) and (B). The Code sets forth the following factors to consider in determining the *amount* of the reasonable compensation to be awarded: the time spent on such services; the rates charged for such services; whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, the case; whether the services were performed within a reasonable amount of time; whether counsel is board certified or otherwise has demonstrated skill and experience in the bankruptcy area; and whether the compensation is reasonable based on the customary compensation charged by other skilled practitioners. § 330(a)(3). The Court must not allow compensation for duplicative services or services that were not reasonably likely to benefit the estate or were not necessary to the administration of the case. § 330(a)(4)(A).

To satisfy the actual and necessary requirement, counsel's services must have resulted in an identifiable, tangible, and material benefit to the bankruptcy estate. *See In re Pro-Snax Distribs., Inc.*, 157 F.3d 414, 425 (5th Cir. 1998). The court's analysis, therefore, is a two-step inquiry. *See Kaye v. Hughes & Luce*, No. 3:06-CV-01863-B, 2007 WL 2059724 (N.D. Tex. July 13, 2007). The bankruptcy court must first determine, under section 330(a)(1)(A), whether an attorney's services were "actual" and "necessary." *Id.* at *9. The services satisfy the actual and necessary requirement if, considered in hindsight, they resulted in an identifiable, tangible, and material benefit to the estate. *Id.* (citing *Pro-Snax*, and *In re Quisenberry*, 295 B.R. 855, 865 (Bankr. N.D. Tex. 2003)). Then, once the threshold of necessity is satisfied, the court proceeds to calculate the amount of fees to be awarded. *Id.* at *9. This is done by computing the "lodestar" amount, which is the product of the multiplication of the reasonable number of hours expended times the prevailing reasonable hourly rate in the community. *Id.* The lodestar is then

adjusted based on the factors outlined in § 330(a)(3) and the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id.*[1]

Finally, as part of the analysis, the Court recognizes that services may benefit the estate without providing a clear, quantifiable, or monetary benefit. *See In re JNS Aviation, LLC*, No. 04-21055-RLJ-7, 2009 WL 80202 at *8 (Bankr. N.D. Tex. Jan. 9, 2009). The benefits analysis does not necessarily require that each expenditure of time results in a quantifiable benefit to the estate. *Id.* at *8.

Against this backdrop, the Court reviews Boyd's request. Boyd's motion seeks approval of payment of total fees in the amount of $109,275.00. Boyd's services breakdown as follows:

- 46.2 hours for services in connection with Boyd's participation in bankruptcy-related litigation matters. According to Boyd's testimony, this includes approximately 19.6 hours in connection with the Bank of America lawsuit and 25 hours in connection with the Happy State Bank adversary proceeding.

- 290.3 hours in connection with Boyd's representation of AHF in bankruptcy proceedings, motions, and contested matters. This includes approximately 20 hours in connection with the Lakewood Terrace sale; 37 hours in connection with the so-called Brandywood matter; 19 hours in negotiating cash collateral orders; 72.6 hours in connection with the debtor's plan of reorganization; and 52.4 hours

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

for services performed in opposing the motion to appoint the trustee filed by Texas Capital Bank.

- 11.2 hours in representing AHF in existing tax exemption litigation.

- 29.4 hours in connection with representation of AHF in legal matters arising in the ordinary course of business.

At the hearing, Boyd conceded that his request for fees in connection with defending the motion to appoint trustee is questionable given that the Court granted the relief requested by Texas Capital Bank. This accounts for 52.4 hours of services, or $13,100.00.

The Court is satisfied that Boyd's request represents legal services provided as opposed to non-legal administrative work. In this regard, Boyd testified that all of his services were for legal work done for the benefit of the bankruptcy estate and do not include time spent on general administrative matters. The Court finds that the services do not overlap with his services as a member of the board. In addition, the Court finds no apparent conflict of interest from his services both as a board member and as an attorney for AHF. From Boyd's perspective, he acts as a board member on behalf of a non-profit entity and, as such, the Court fails to see how his services as a board member of a non-profit entity compromises his obligations as counsel for AHF as debtor-in-possession. There is no evidence of a manifested conflict arising from Boyd's dual roles.

The objecting parties do not question Boyd's time or rate. In comparison with other attorneys in this case, neither can be considered excessive.

The problem, however, goes to the standard the Court must impose in assessing attorneys' fees to be paid from the bankruptcy estate. The Court must be satisfied that Boyd meets the threshold standard – that the services have provided an identifiable, tangible, and material benefit

to the bankruptcy estate. Though Boyd's request is a final request, the Court cannot, at this stage of the proceedings, assess the benefit to the estate for much of his services. The litigation matters are still in the early stages, the plan has not been submitted to creditors for voting, and the Lakewood Terrace and Brandywood transactions have yet to close. It is premature to make a final determination on the requested fees.

Accordingly, the Court, consistent with prior orders entered in this case in connection with other requests for payment of administrative fees and expenses, will approve payment of 40% of the $94,275.00 that is presently outstanding, with the entirety of the fees, $109,275.00, subject to final review and approval. Boyd may request final review and approval by filing his application with the Court.

### End of Memorandum Opinion ###