Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
P.O. Box 2547
Lubbock, Texas 79401
Phone: 806.686.4448
Fax: 806.368.9785

Stephen A. McCartin (TX 13374700)
Marcus A. Helt (TX 24052187)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone: 214.999.3000
Facsimile: 214.999.4667

**COUNSEL FOR WALTER
O'CHESKEY, CHAPTER 11 TRUSTEE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| American Housing Foundation, Inc. | § § | Case No.: 09-20232-RLJ |
| **Debtor.** | § § | |

**CHAPTER 11 TRUSTEE'S OBJECTION TO
OFFICIAL COMMITTEE OF UNSECURED CREDITORS' DISCLOSURE
STATEMENT ACCOMPANYING FIRST AMENDED PLAN OF REORGANIZATION**
[Related to Docket Nos. 937 and 1236]

Walter O'Cheskey, the duly appointed and acting chapter 11 trustee (the "**Trustee**") for the bankruptcy estate of American Housing Foundation, Inc. ("**AHF**" or "**Debtor**"), hereby objects to the Official Committee of Unsecured Creditors' (the "**Committee**") Disclosure Statement to the First Amended Plan of Reorganization (the "**Disclosure Statement**") as follows:

## REQUEST TO DELAY SOLICITATION OF COMMITTEE'S PLAN

1. The Trustee's first choice was to file a co-sponsored chapter 11 plan and disclosure statement with the Committee. Toward that end, the Trustee worked extensively with the Committee and its professionals over the last few weeks to develop and file a chapter 11 plan and disclosure statement as soon as possible that satisfied the Committee and was in the best interests of the estate. While the Trustee thought parties were close to an agreement on a co-sponsored plan and disclosure statement, regretably, no such agreement exists. The Trustee hopes an agreement will be reached with the Committee before the hearing on his disclosure statement; however, he understands the Court's desire to move this 14-month case toward an imminent, thoughtful, and responsible bankruptcy exit. As a result, the Trustee filed his own plan and disclosure statement on August 10, 2010, and has scheduled a hearing on that disclosure statement for September 9, 2010. If the Committee's Disclsoure Statement is approved over the numerous objections, including the Trustee's objections described below, the Trustee requests that mailing of the Committee's plan be delayed until such time as the Trustee's own disclosure statement has been approved. That way the competing plans of the Trustee and Committee can be mailed to and voted on by creditors concurrently. Such concurrent mailing and voting on competing plans will minimize creditor confusion about the different plans and protect the integrity of the bankruptcy process by facilitating an independent, informed decision by the creditors as to which plan is preferable to them.

2. The Committee's Disclosure Statement has been on file in one shape or form since March 28, 2010; therefore, the Committee will suffer no prejudice by waiting a few more weeks before asking the creditors for votes on its proposed plan. Conversely, there will be substantial confusion if the creditors receive competing plans only 4 weeks apart. Placing

solicitation of the competing plans on dual tracks will ensure that the Trustee and Committee are on a level playing field and will uphold the democratic process intended by the Bankruptcy Code and this Court when it authorized the appointment of the Trustee as the only independent fiduciary to the bankruptcy estate. In addition, to further facilitate informed decisionmaking by the creditors, the Trustee requests that this Court order both the Committee and the Trustee to include one cover letter with their respective plans explaining their respective positions on the plans and outlining the significant differences between the plans.

## OBJECTION TO DISCLOSURE STATEMENT

3. The Trustee objects to the Committee's Disclosure Statement because it does not satisfy the requirements imposed by 11 U.S.C. § 1125 and the caselaw interpreting that section. Section 1125 sets forth the approval requirements for a disclosure statement. Under that section, a disclosure statement may only be approved by the court if it contains "adequate information." 11 U.S.C. § 1125(b). Adequate information is defined by 11 U.S.C. § 1125(a)(1) as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

4. The determination of what constitutes "adequate information" is made on a case-by-case basis. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). Courts routinely look to see if a disclosure statement contains the following non-exhaustive list of criteria to evaluate whether a disclosure statement contains "adequate information":

    a. The circumstances that gave rise to the filing of a bankruptcy petition;

    b. A description of the available assets and their value;

  c. The debtor's anticipated future income and source of that income;

  d. The source of information stated in the disclosure statement;

  e. The present condition of the debtor while in chapter 11;

  f. The scheduled claims;

  g. The estimated return to creditors under chapter 7 liquidation;

  h. The accounting method used to produce financial information, and the name of the accountants responsible for such information;

  i. The chapter 11 plan or summary thereof;

  j. The estimated administrative expenses, including professional fees;

  k. Financial information, data, valuation or projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

  l. Information relevant to the risks posed to creditors under the plan;

  m. The actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

  n. The existence, likelihood, and potential for recovery in nonbankruptcy litigation; and

  o. Tax consequences of the plan.

*See In re Mextrocraft Publ'g Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *see also U.S. Brass*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996); *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990).

  5. "One of the fundamental policies underlying the Chapter 11 reorganization process is full disclosure. The disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders could rely in making an informed

**CHAPTER 11 TRUSTEE'S OBJECTION TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' DISCLOSURE STATEMENT ACCOMPANYING FIRST AMENDED PLAN OF REORGANIZATION - PAGE** 4

judgment about a plan of reorganization." *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988). "[A] disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981) (citing *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990)).

6. Creditors rely on a disclosure statement to evaluate, among other things, feasibility of a plan, proposed impairment of their claims, and whether the plan offers treatment that is at least equal to the treatment afforded creditors in a chapter 7 liquidation. *In re Microwave Products of America, Inc.*, 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D. N.Y. 1988). "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'" *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988).

7. On its face, the Disclosure Statement fails to provide "adequate information" as required by 11 U.S.C. § 1125 and the interpreting law. Specifically, the Disclosure Statement is deficient for, at least, the following reasons:

    a. There is no discussion of which 66 affordable-housing projects will be retained or rejected by the Debtors.

    b. There is no financial analysis at the project level to support which projects will be retained or rejected by the Debtors.

    c. There is no financial projection for the "reorganized debtor."

    d. There is no description on the value, if any, that will be

received from retained projects.

e. There is no description of claims that will be asserted against this bankruptcy estate because of the rejection of any project.

f. There is no discussion about the value of the bankruptcy estate's interests in the special-purpose entities that own the projects, and how that value was determined.

g. There is no estimated actual or projected realizable value from the recovery of preferential or other voidable transfers.

h. There is insufficient disclosure of financial information, data, valuation, or projections relevant to a creditor's decision to accept or reject the Plan.

i. There is no discussion of the risks to confirmation posed to creditors under the Plan.

j. There is no information about the tax consequences of the Plan on the Debtor.

8. The Trustee believes that the Committee's plan and Disclosure Statement are 25% complete. Without the information noted above, especially a clear, reasoned plan on how the bankruptcy estate's interests in the special-purpose entities will be administered, creditors cannot make an informed decision to accept or reject the Committee's proposed plan. If the Committee wants to confirm its plan, it must play by the rules imposed by the Bankruptcy Code and provide all creditors with information necessary for them to make an informed decision about the plan. As the only independent fiduciary of this bankruptcy estate, the Trustee believes that, until that information is provided to the creditors, ***and the creditors are given enough time to consider***

**CHAPTER 11 TRUSTEE'S OBJECTION TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
DISCLOSURE STATEMENT ACCOMPANYING FIRST AMENDED PLAN OF REORGANIZATION - PAGE** 6

*that information and determine if it is "adequate" under the standards established by the caselaw*, no disclosure statement proposed by the Committee can be approved.

### RESERVATION OF RIGHTS TO OBJECT TO PLAN

9. This objection should not be construed as a substitute for any objection made by the Trustee to the Committee's plan. The Trustee reserves his rights to object to confirmation of the Committee's plan.

WHEREFORE, the Trustee respectfully requests that the Court deny approval of the Disclosure Statement, or, in the alternative, delay solicitation of the Committee's plan until such time as the Trustee's own disclosure statement has been approved and the competing plans of the Trustee and Committee can be solicited concurrently. The Trustee further respectfully requests all such other and further relief that this Court deems just and proper.

Dated: August 11, 2010

    Respectfully submitted,

    Max R. Tarbox (TX 19639950)
    TARBOX LAW, P.C.
    P.O. Box 2547
    Lubbock, Texas 79401
    Phone: 806.686.4448
    Fax: 806.368.9785

    and

    /s/ Marcus A. Helt
    Stephen A. McCartin (TX 13374700)
    Marcus A. Helt (TX 24052187)
    GARDERE WYNNE SEWELL LLP
    1601 Elm Street, Suite 3000
    Dallas, Texas 75201-4761
    Telephone: 214.999.3000
    Facsimile: 214.999.4667

    **COUNSEL FOR WALTER O'CHESKEY,
    CHAPTER 11 TRUSTEE**

**CHAPTER 11 TRUSTEE'S OBJECTION TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
DISCLOSURE STATEMENT ACCOMPANYING FIRST AMENDED PLAN OF REORGANIZATION - PAGE** 7

DALLAS 2159544v.3