Max R. Tarbox, SBN: 19639950
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
806/762-0214; 806/368-9785 (fax)
*Attorneys for Chapter 11 Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| In re:<br><br>AMERICAN HOUSING FOUNDATION, INC.,<br><br>Debtor. | Case No. 09-20232 (RLJ) |

**FIRST INTERIM MOTION FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF FOCUS MANAGEMENT GROUP USA, INC
FINANCIAL ADVISOR FOR THE TRUSTEE AND
REQUEST FOR PAYMENT OF SUCH FEES AND EXPENSES FROM
LIFE INSURANCE PROCEEDS HELD IN THE REGISTRY OF THE COURT**

TO THE HONORABLE ROBERT L. JONES, Bankruptcy Judge:

NOW COMES Focus Management Group USA, Inc., Tampa, Florida ("Movant"), and files this verified First Interim Motion for Allowance of Compensation and Reimbursement of Expenses of Financial Advisor for the Trustee and Request for Payment of Such Fees and Expenses from Life Insurance Proceeds Held in the Registry of the Court (the "Motion") in the above referenced bankruptcy proceedings, and in support of such Motion would respectfully show unto the Court as follows:

**INTRODUCTION**

In this Motion, the Movant is seeking interim approval of all fees earned and expenses incurred from May 19, 2010 through July 31, 2010 and payment of forty percent (40%) of fees and one hundred percent (100%) of expenses upon entry of an order approving this Motion. On July 12, 2010, this Court entered the Memorandum Opinion and Order (the "Memorandum Opinion") authorizing forty percent (40%) of fees and one hundred percent (100%) of the expenses to be paid to: (i) Mullin Hoard & Brown, L.L.P. based upon their third interim fee motion; (ii) Harry Potter based upon their first interim fee motion;

and (iii) Tarbox Law, P.C. based upon their first interim fee motion. The Memorandum Opinion also conditioned compensation upon the professional's ability to prove an "identifiable, tangible, and material benefit" to the estate. See Memorandum Opinion at p. 3 (quoting In re Pro-Snax Distribs., Inc., 157 F.3d 414 (5th Cir. 1998)). The Movant has provided an identifiable, tangible, and material benefit to the estate and is therefore entitled to immediate payment of forty percent (40%) of its fees and one hundred percent (100%) of its expenses.

On June 29, 2010, this Court entered the Order Pursuant to Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Focus Management Group USA, Inc. as Financial Advisor to Walter O'Chesky in his Capacity as Chapter 11 Trustee for the Bankruptcy Estate of the Debtor Nunc Pro Tunc to the Date of this Application. Since its retention, Movant has worked diligently to develop a liquidation plan based upon an assessment and valuation of the Debtor's sixty-five (65) properties that will maximize value to the estate while minimizing costs. On August 10, 2010, the Plan of Liquidation (the "Plan") was filed by the Trustee. The Movant's assessment of a multitude of issues was integral to the formulation of the Plan. In connection with the Movant's assessment, the Movant has advised the Trustee on numerous matters with a view to maximizing the recovery to the Debtor's estate as set forth in Section 11 below, including recommendations to divest the Debtor's interest in certain properties and the evaluation of claims against the estate. Moreover, on a daily basis, the Movant is providing hands-on financial and operational management services that are resulting directly in improved financial performance. These efforts by the Movant, and others described below, have provided an identifiable, material and tangible benefit to the estate.

## BACKGROUND

**A.    Retention of Focus Management Group USA, Inc. as Financial Advisor**

1.    This case commenced under Chapter 11 of the United States Bankruptcy Code by virtue of an involuntary petition on April 21, 2009.

2.   On April 28, 2010, Walter O'Cheskey (the "Trustee") was appointed Chapter 11 Trustee.

3.   On June 29, 2010, this Court approved the retention application of Movant as Financial Advisor to the Trustee nunc pro tunc to May 19, 2010.

**B.   The Life Insurance Proceeds**

4.   On February 11, 2010, the U.S. District Court entered an Order in Case No. 2:09-CV-231-C styled Robert L. Templeton, et al v. American Housing Foundation, et al., ordering that American Housing Foundation, Inc. (the "Debtor"), is the owner of $21 million worth of insurance policies, as well as the proceeds and interest accrued from those policies (the "Insurance Proceeds"). Additionally, in its Order, the District Court directed the Clerk of the Court to continue to hold the Insurance Proceeds in the registry of the U.S. Bankruptcy Court until further order of this Court. The Clerk of the Court was directed, however, to release such amounts sufficient to pay allowed professional fees and administrative expenses upon presentation of a final Order from this Court, issued after notice and a hearing, specifically approving the payment of such fees and expenses out of the Insurance Proceeds.

**C.   The Memorandum Opinion and Order Regarding Compensation of Professionals**

5.   On July 12, 2010, the Court entered the Memorandum Opinion and Order regarding compensation for professionals currently employed in this matter (the "Memorandum Opinion"). Pursuant to the Memorandum Opinion, the Court authorized: (i) payment of forty percent (40%) of the requested fees and one hundred (100%) of the requested expenses through the Mullin Hoard Motion (as defined in the Memorandum Opinion), the Harry Potter Motion (as defined in the Memorandum Opinion), and the Tarbox Motion (as defined in the Memorandum Opinion); and (ii) that professionals may seek interim approval of compensation no more than once every sixty (60) days. The Court also referenced its obligation to approve compensatory awards only to professionals that have provided an "identifiable, tangible, and material benefit" to the estate. See Memorandum Opinion at p. 3 (quoting In re Pro-Snax Distribs., Inc., 157 F.3d 414 (5th Cir. 1998)).

## RELIEF REQUESTED

6. The Movant files this Motion pursuant to Section 330 of the Bankruptcy Code seeking approval of professional fees and reimbursement of out-of-pocket expenses necessarily incurred by the Movant in providing financial advisory services to the Trustee. The Movant is also requesting that the Court include in its Order approving this Motion, authorization for the Clerk of the U.S. District Court to issue payment of the requested fees and expenses out of the Insurance Proceeds.

7. To date, Movant has not received compensation for its services. This Motion seeks interim approval all fees and of all expenses incurred since May 19, 2010 through July 31, 2010 (the "Application Period") and that forty percent (40%) of the fees earned and one hundred percent (100%) of the expenses incurred by the Movant during the Application Period be paid upon entry of an order approving this Motion. The Movant recognizes that all interim compensation awards shall be subject to final review and approval by the Court upon the Movant's final request.

8. A complete accounting of the time spent by professionals of the Movant and the specific description of the services rendered and time expended is attached hereto as Exhibit "A" and incorporated herein for all purposes. The hourly rates charged by the Movant in this case represent a discount to the customary hourly rates charged by the Movant in matters of similar size and degree of responsibility, difficulty and complexity. The Movant's discounted hourly rates in this case were, at the commencement of the representation of the Trustee, as follows:

        Managing Directors $350.00 per hour

        Senior Consultants  $300.00 per hour

9. During the Application Period, professionals of the Movant have expended a total of 1055.6 hours in advising the Trustee totaling fees of $300,824.50. The information on Exhibit "A" contains a synopsis of the particular services rendered, as well as the amount of time expended on each entry by each particular professional associated with the Movant who rendered the services described.

10. The Movant has incurred expenses totaling $43,553.89 during the Application Period. Attached hereto and incorporated herein as Exhibit "B" is a schedule of expenses for which the Movant seeks reimbursement at this time.

11. The Movant has provided financial advisory services to the Trustee during the Application Period in the following particulars:

   A. The Movant is assessing all of the Debtor's sixty-five (65) properties (the "Properties"), seventeen (17) of which qualify for Low Income Housing Tax Credits ("LIHTC"). In connection with that analysis, the Movant has assisted the Trustee in developing a liquidation plan, which will maximize returns to the estate, while avoiding the expenditure of funds for which there will be no ultimate beneficial return. Prior to Movant's involvement, the liquidation being discussed did not include the detailed property-level analysis or the detailed company-level cash analysis which was necessary to finalize the decisionmaking process with regard to the properties and the formulation of the Plan.

   B. The Movant is thoroughly evaluating claims (the "Claims") against the estate relating to the various partnership agreements (the "Partnership Agreements") and associated guaranty agreements (the "Guaranty Agreements," and together with the Partnership Agreements, collectively, the "Agreements"). Certain of these potential claims are governed by complex laws and rules relating to partnerships that own properties that qualify for LIHTC. Ultimately, based upon the analysis provided by the Movant, the Claims will be dramatically reduced, thereby maximizing the return to creditors. Prior the Movant's involvement, certain creditor constituencies had proposed to pay some of the Claims, while leaving certain of the obligations and guaranties outstanding. Due to the Movant's involvement, this drain on the bankruptcy estate's resources will not occur, thereby leaving more funds available for the estate and its general unsecured creditors.

   C. The Movant is also currently assessing the operating performance and financial status of certain estate assets. Based upon this ongoing assessment, information, Movant is advising the Trustee to divest the Debtor's interest in certain of the LIHTC properties that certain parties in interest had previously proposed to retain. Movant has also analyzed and advised the Trustee regarding the ultimate financial benefit to the estate based upon the contractual obligations under the Agreements and the Debtor's financial exposure associated with owning and managing LIHTC properties. The Movant has advised the Trustee to promptly divest the estate's interest in certain LIHTC properties, thereby maximizing liquidation proceeds, reducing ongoing expenses and ultimately leaving more funds available for the bankruptcy estate and its general unsecured creditors.

   D. On a daily basis, the Movant is providing hands-on financial and operational management services to the Debtor, which is serving to maximize revenue while avoiding the additional cost of personnel and capital expenditures for items for which there would be no commensurate return.

More specifically, the Movant has performed the following tasks:

    E.    Met with Trustee and other parties to obtain knowledge of case.

    F.    Built an extensive database (the "Database") regarding each of the Properties, which details operating results and key financial metrics. The Movant has utilized the Database to identify properties with operating and financial deficiencies.

    G.    Prepared operating budgets for each of the Properties.

    H.    Utilized the Database to determine in which of the Properties the Debtor should sell its interest.

    I.    Negotiated an extension and forbearance of a termed-out financing facility that encumbers thirteen (13) critical properties. Absent such an extension and forbearance, the Debtor would have had to sell the thirteen (13) properties on an expedited basis, likely resulting in a deficiency claim against the estate. Instead, the Trustee expects to sell the thirteen (13) properties and generate additional proceeds distributable to several unsecured creditors.

    J.    Developed action plans for problem properties to increase cash flow and improve ultimate value.

    K.    Prepared an extensive analysis of the Guaranty Agreements relating to the LIHTC properties to determine the Debtor's exposure to claims and future obligations. This undertaking involved a detailed review of partnership agreements, the associated guaranty agreements, and related claims from investors in each of the LIHTC properties.

    L.    Prepared a tax credit recapture analysis for each of the seventeen (17) LIHTC properties.

    M.    Developed detailed operating budgets, including a 13-week pre-confirmation budget and a 19-month post-confirmation budget.

    N.    Advised and worked with the Trustee and counsel on technical matters relating to: (i) LIHTC; (ii) LIHTC properties; (iii) tax-exempt bond financed properties; and (iv) properties owned by tax-exempt entities.

    O.    Worked with the Trustee and management on cash management strategies to maximize the cash position of the bankruptcy estate.

    P.    Worked with the Trustee and counsel to develop a plan of reorganization, which includes identification of the Properties that the Trustee should retain, Properties in which the Debtor's interest should be divested, and a disposition strategy for the Properties to be divested that minimizes claims while maximizing returns to the estate.

**BASIS FOR RELIEF REQUESTED**

12. Pursuant to the provisions of 11 U.S.C. Section 330, various factors are considered in Professional compensatory awards. Further, as announced by the Fifth Circuit in <u>In re Pro-Snax Distribs.</u>, professionals must provide an "identifiable, tangible and material benefit" to the estate. Consequently, the Movant has detailed its efforts to maximize the value of the Debtor's estate and provide an identifiable, tangible, and material benefit. Movant submits this information to the Court for consideration:

A. <u>Time and Labor Required:</u> The Movant, as set forth above, has expended a significant amount of time advising the Trustee in this bankruptcy proceeding. Its professionals have expended a total of 1055.6 hours in connection with this case. The specific information contained on the attached Exhibit "A" is a synopsis of the particular services rendered, as well as the amount of time expended on such entries by each particular professional of the Movant. Each entry of the time records attached represents actual time expended in the performance of financial review and advising that was required in order to properly inform the Trustee. The Movant asserts that the amount of time expended by each professional on each entry is reasonable and necessary, in light of the facts and financial complexities of this case.

B. <u>Novelty and Difficulty of the Questions:</u> This case has presented novel and difficult questions that have challenged the Movant. The Movant has had to address issues on behalf to the Trustee in response to a very complicated case involving numerous entities, professionals and parties. For these reasons, the novelty and difficulty of the questions encountered by the Movant in this proceeding have been substantial.

C. <u>Skill Requisite to Perform the Services Properly:</u> A high degree of skill and experience has been necessary to properly advise the Trustee in this bankruptcy proceeding. Movant provides a high degree of experience and skill in all Chapter 11 bankruptcy estates for which Movant is employed, and this case is no exception. Movant believes that as a result of its experienced financial professionals, Movant was able to render the services and advice necessary to the Trustee to maximize the value of the Debtor's estate.

D. <u>Preclusion of Other Employment:</u> The volume of work associated with this case has not put a strain on the resources of the Movant, as it has attempted to competently advise the Trustee. Additionally, this case has not precluded Movant from taking other cases in the bankruptcy area of practice.

E. <u>Customary Fees:</u> The Movant seeks approval of $350.00 per hour for work by managing directors and $300.00 per hour for work by senior consultants. The rates charged by the Movant represent a discount from the normal rates charged for work performed by Movant for clients in the bankruptcy area for a case of this magnitude. In surveying fees that are charged by professionals in this area, the Movant submits that these hourly rates are not excessive. Such fees have been approved by this Court in these proceeding, and the Movant believes that they are reasonable and necessary in light of the specific nature of the issues involved in this proceeding, and the specific degree of skill and knowledge necessary to

        competently advise the Trustee in this proceeding.

- F. <u>Whether Fee is Fixed or Contingent:</u> As in all bankruptcy proceedings, fees of the Movant are subject to the discretion of this Court in determining the value of services to the estate, as well as the availability of funds of the estate, and are, accordingly, in that sense contingent.

- G. <u>Time and Limitations:</u> This Motion covers the period from the Movant's retention on May 19, 2010, through July 31, 2010. Therefore, Movant has expended voluminous hours studying documents and meeting with various parties to become familiar with the Debtor's business operations in order to competently advise the Trustee in this Chapter 11 bankruptcy proceeding. Movant continues to dedicate much of its time to further assist the Trustee in determining the highest potential outcome of this estate. However, Movant does not assert that this case has been burdensome.

- H. <u>Amount Involved and End Results Obtained:</u> This bankruptcy case has involved claims just over $125 million. Movant asserts that the amount involved in this case is quite substantial and the issues connected with it difficult. Movant anticipates confirmation of the Trustee's Plan of Reorganization by the end of the year.

- I. <u>Experience, Reputation and Ability of Professional:</u> The Movant is a well known and respected financial turnaround firm with national exposure. It regularly provides financial turnaround services to large corporate interests as well as individuals, and represents debtors, creditors and bankruptcy trustees in bankruptcy proceedings. Consequently, it believes that its experience, reputation and ability in the area of bankruptcy is high. Thus, the Movant believes that firms of lesser experience in the area of Chapter 11 bankruptcy proceedings would have expended additional hours of research in order to enable it to render the services and advice that have been available to the Trustee as a result of the experience of the Movant.

- J. <u>The Undesirability of the Case:</u> The Movant does not assert that this case has been undesirable.

- K. <u>Awards in Similar Cases:</u> The Movant asserts that the compensation sought herein is not inconsistent with that awarded in other cases of similar nature throughout the State of Texas.

13. The Movant respectfully represents that it has not entered into any agreement, express or implied, with any other party in interest, including the Trustee, the Debtor, or any representative of a creditor, for the purpose of fixing the fee or other compensation to be paid for services rendered or expenses incurred in connection with the advisement of the Trustee in this case. Further, no agreement or understanding exists between the Movant, Trustee, or any other person for the sharing of compensation to be received for services rendered in or in connection with this case. All services for which compensation is

requested were performed for and on behalf of the Trustee, and not on behalf of any committee, creditor, or any other person.

WHEREFORE, PREMISES CONSIDERED, Movant respectfully prays that the Court: (i) approve the fees totaling $300,824.50 and the expenses totaling $43,553.89, incurred by the Movant during the Application Period as financial advisor for the Trustee; and (ii) enter its order authorizing the Clerk to pay Focus Management Group USA, Inc. the total of $163,883.69, representing forty percent (40%) of the fees ($120,329.80) and one hundred percent (100%) of the expenses ($43,553.89) requested in this Motion, out of the Insurance Proceeds; and (iii) prays for such other and further relief, at law or in equity, as the Court may deem necessary and proper.

Date: August 13, 2010                               Respectfully submitted,

                                                    TARBOX LAW, P.C.
                                                    2301 Broadway
                                                    Lubbock, Texas 79401
                                                    806/686-4448; 806/368-9785 (FAX)


                                                     /s/ Max R. Tarbox            .
                                                    Mx R. Tarbox
                                                    SBN: 19639950
                                                    *Attorneys for Chapter 11 Trustee*

**CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing **FIRST INTERIM MOTION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF FOCUS MANAGEMENT GROUP USA, INC., FINANCIAL ADVISOR FOR THE TRUSTEE AND REQUEST FOR PAYMENT OF SUCH FEES AND EXPENSES FROM LIFE INSURANCE PROCEEDS HELD IN THE REGISTRY OF THE COURT** was served by either court enabled electronic service or regular first class U.S. Mail upon the following listed parties on this 13th day of August, 2010:

1. U.S. Trustee's Office
   Room 976, 1100 Commerce Street
   Dallas, Texas 75242

2. All parties in interest registered with the U. S. Bankruptcy Court to receive electronic notices in this case.

                                                                /s/ Max R. Tarbox            .
                                                                Max R. Tarbox