MULLIN HOARD & BROWN, L.L.P.
David R. Langston, SBN: 11923800
P. O. Box 2585
Lubbock, Texas 79408
Telephone: 806/765-7491
Facsimile: 806/765-0553
*Attorneys for Official Committee of Unsecured Creditors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In Re: | § § § | |
| AMERICAN HOUSING FOUNDATION | § § § | Case No. 09-20232-RLJ-11 Hearing: September 14, 2010 @. 9:00 a.m. |
| Debtor. | § § | |

**AMENDMENTS AND SUPPLEMENTAL INFORMATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN RESPONSE TO OBJECTIONS TO ITS AMENDED DISCLOSURE STATEMENT**

TO THE HONORABLE ROBERT L. JONES, U.S. Bankruptcy Judge:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS ("Committee"), and files this its Amendments and Supplemental Information Proposed in Response to Objections to its Disclosure Statement Accompanying its Amended Plan of Reorganization, and would respectfully show the Court as follows:

**I.**
**Introduction and Procedural Status**

1.  On April 21, 2009, certain petitioning creditors filed an involuntary petition for relief under Chapter 11 of the Bankruptcy Code against the Debtor in this case, American Housing Foundation ("AHF").

2.  On June 11, 2009, AHF filed a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code, and on July 17, 2009, the involuntary proceeding and the voluntary proceeding were consolidated under Case No. 09-20232.

3. On July 10, 2009, an Official Committee of Unsecured Creditors was appointed by the United States Trustee (the "Committee").

4. This is a core proceeding and this Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections1334 and 157, and 11 U.S.C. Sections 1125 and 1129.

## II.
### Facts Pertaining to the Preparation and Filing of the Committee's First Amended Plan of Reorganization and Accompanying Disclosure Statement and Objections to the Disclosure Statement Filed by Certain Creditors

5. After successfully recovering $21 million in key-man life insurance proceeds for the benefit of the AHF bankruptcy estate, the Committee directed its counsel to develop a plan of reorganization with the dual goals of maintaining AHF as a viable, non-profit corporation and creating a liquidating trust that would enable the unsecured creditors of AHF to be paid dividends on their claims as soon as possible. The Committee's original plan of reorganization and accompanying disclosure statement was then filed with the Court on February 5, 2010, and a hearing on the disclosure statement was noticed to creditors and parties in interest for March 22, 2010.

6. In accordance with the agreement of counsel for the Committee and the Debtor as well as the order of the Bankruptcy Court, the hearing on the original disclosure statement was continued from March 22, 2010, until April 27, 2010. On March 28, 2010, the Committee filed its First Amended Creditors' Plan and Accompanying Disclosure Statement ("Creditors' Plan) and thereby attempted to resolve all pending objections to its disclosure statement.

7. On April 27, 2010, upon motion of the largest secured creditor in the AHF Bankruptcy, Texas Capital Bank, the Court announced its decision to order the appointment of a Chapter 11 Trustee, and on April 29, 2010, the Office of the United States Trustee appointed Walter O'Cheskey as the Chapter 11 Trustee ("Trustee"). The Committee opposed the appointment of a Chapter 11 Trustee for a variety of reasons including its belief that such an appointment would delay confirmation of a plan of reorganization, result in substantially higher administrative expenses, and thereby delay and diminish payments to unsecured creditors.

8. On June 3, 2010, the Committee filed Proposed Amendments and Supplemental Information in Response to Objections to the Disclosure Statement. In this pleading the Committee proposed amendments to the Creditors' Plan to name the Trustee as Plan Agent and Liquidating Trustee. The compensation proposed for the Liquidating Trustee in these amendments was at his normal hourly rates plus reimbursement of all reasonable and necessary expenses.

9. Although a hearing on the Creditors' Disclosure Statement was scheduled for June 14, a continuance until the Bankruptcy Court's August docket in Amarillo was announced by counsel for the Trustee and counsel for the Committee in order to allow the parties to work on a Joint Plan.

10. During the intervening sixty days, representatives of the Committee, counsel for the Committee, counsel for the Trustee and the Trustee met many hours in an effort to agree upon a Joint Plan. Negotiations broke down over the compensation to be paid the Liquidating Trustee, the role and authority of an Oversight Committee pertaining to the Liquidating Trustee, and who would serve on the Oversight Committee.

11. On August 10, 2010, the Trustee filed his Chapter 11 Plan of Reorganization along with his proposed Disclosure Statement ("Trustee's Plan").

12. On August 11, 2010, counsel for the Committee sent a letter to the Trustee proposing

a compensation package for his service as Liquidating Trustee under the proposed Joint Plan, and alternatively, inquiring if the Trustee was "willing to serve as the Liquidating Trustee or the Plan Agent under the terms of the Committee's proposed Plan so that we can propose qualified alternative people to serve in these positions if you will not." During a conference call with the Committee and its counsel later that day, the attorney for the Trustee informed the Committee that the Trustee would not accept the compensation proposed by the Committee and the Trustee was not willing to serve as either the Plan Agent or the Liquidating Trustee under the Creditors' Plan.

13. On August 17, 2010, the Court held a hearing on the proposed Disclosure Statement accompanying the Creditors' Plan, during which counsel for the Committee announced that the Creditors' Plan would be amended to remove the provisions naming the Trustee as Plan Agent and Liquidating Trustee and would instead name an individual, Thomas Gibson, who was experienced in the affordable housing industry as the Plan Agent, and would name a CPA from Lubbock, Greg Taylor of the accounting firm of D. Williams & Company, as the Liquidating Trustee. Both the Plan Agent and the Liquidating Trustee would be compensated at an hourly rate. The Court then gave counsel for the Committee until August 27, 2010, to file and circulate the amended Disclosure Statement accompanying the Creditors' Plan and set hearings on both the Trustee's Disclosure Statement and the Creditors' Plan Disclosure Statement on September 14, 2010.

14. On August 27, 2010, the counsel for the Committee timely filed and circulated to creditors and parties in interest the Creditors' Plan and Accompanying Disclosure Statement which included various amendments to the Creditors' Plan. The amendments primarily related to the Trustee's refusal to serve as either the Plan Agent or the Liquidating Trustee under the Creditors' Plan, but also included proposed settlement agreements with certain secured and unsecured creditors involved in the AHF Bankruptcy. It also provided supplemental disclosure information about the

Creditors' Plan for the benefit of creditors and parties in interest.

15. Several creditors and parties in interest, including UMB Bank, N.A. ("UMB"), Happy State Bank ("HSB"), Sprouse Shrader Smith, P.C. ("Sprouse"), the United States Department of Housing and Urban Development ("HUD"), Attebury Family Partnership ("AFP"), and the Trustee timely filed objections to the Creditors' Disclosure Statement.

16. Additionally, on September 9, 2010, the City of Pasadena, Texas ("Pasadena") filed an Objection to Confirmation of both the Trustee's Plan and the Creditors' Plan, and Graham Mortgage Corporation ("Graham") filed a comment on the Creditors' Plan and Disclosure Statement.

17. This pleading by the Committee responds to the objections filed by each of the objecting parties, and also provides technical amendments and additional supplementary information to be included in the Creditors' Disclosure Statement as well as additional information to be included to satisfy the objections.

### III.
### Committee's Response to Objections
### to the Creditors' Disclosure Statement Filed by UMB

18. UMB filed a Limited Objection to the Creditors' Plan and Accompanying Disclosure Statement. The crux of the objections filed by UMB can be summarized as follows:

> UMB requests that the Creditors' Disclosure Statement be amended to adequately disclose the potential tax effects of the Creditors' Plan and the possibility of an administrative claim; UMB is given adequate notice of any desired transfer of the Debtor's membership interests in the LLCs to allow UMB a reasonable opportunity to identify a substitute 501(c)(3) entity; and a procedure is put in place to ensure the interests of the bondholders in continuing the tax exempt status of the bonds is adequately protected as required by Section 363 of the Bankruptcy Code, including giving UMB the right to designate a substitute 501(c)(3) member, along with a requirement that the Debtor continue its sole membership status until such substitution can be accomplished (during which time UMB will reimburse the Debtor for any legitimate out-of-pocket expenses incurred as a result of its status as sole member.)

Counsel for the Committee has discussed the UMB objections with its counsel and together they have agreed upon the following amendments and supplementary information to cure the asserted defects or omission:

Proposed Amendments and/or Supplemental Information:

On page 10 of the Creditors' Disclosure Statement, after the final existing paragraph under the section entitled "**AHF Bond Financed Properties,**" add the following language:

UMB Bank, N.A. ("UMB") is the indenture trustee for certain, but not all, of the tax exempt bonds. These bonds are connected with certain LLCs which are directly or indirectly owned or controlled by AHF (collectively the "LLCs"). UMB and the Plan Agent will work together on a strategy that will allow AHF to dispose of or terminate its interests in the LLCs in the most cost-efficient manner for the Estate, while at the same time provide some benefit to UMB. The Committee is currently considering a proposal from UMB regarding the manner to deal with the various LLCs. UMB has objected to confirmation of the Plan unless the following language is inserted into the confirmation order:

Notwithstanding any other provision of the Plan, if the Reorganized Debtor determines to abandon, dispose of, or otherwise transfer all or any portion of the sole membership interest in the LLCs, (a) UMB shall have the right to designate a substitute member for the LLCs, and (b) the Reorganized Debtor shall continue and maintain the existing sole membership interests until the earlier of (x) the date a substitute member for the LLCs is designated by UMB and (y) nine months from the Confirmation Date. From the Confirmation Date until (i) the date that a substitute member is designated or (ii) nine months from the Confirmation Date, whichever occurs first. UMB shall reimburse the Reorganized Debtor for all reasonable costs and expenses (including, allocated and out-of-pocket) incurred as a result of its continuance as the extant sole member of the LLCs. Notwithstanding the foregoing, it is acknowledged and agreed that UMB is entitled to exercise any and all remedies available to it under the bond documents entered into in connection with the bonds at anytime regardless of any decision by the Reorganized Debtor with respect to its sole membership interest in the LLCs.

## IV.
## Committee's Response to Objections
## to the Creditors' Disclosure Statement Filed by HSB

19. HSB filed a Limited Objection to the Creditors' Plan and Accompanying Disclosure Statement. The crux of the objections filed by HSB can be summarized as follows:

HSB objects to the description and treatment of HSB's secured claim and collateral in Subclass 3.4(a) as found on pages 14, 30 and 31 of the Plan as it inaccurately states that certain property is cross-collateralized which is not cross-collateralized, misstates the ownership of the

collateral, provides for loans to be extinguished rather than reduced by the amount of net proceeds, and misstates the status of the consolidated adversary proceeding. HSB also objects to Exhibit K on the basis that its timely claim in the amount of $3,272,000 on AHF's guaranty of the Amagard loan is not included in Exhibit K as a Class 5 Allowed General Unsecured Claim.

Proposed Amendments and/or Supplemental Information:

In order to properly disclose the status of HSB's asserted liens against certain property of the estate, the Committee amends the Disclosure Statement as follows:

Under **Article III, CLASSIFICATION OF CLAIMS AND INTERESTS UNDER THE PLAN OF REORGANIZATION,** in the description of **Subclass 3.4 – Secured Claims of HSB**, strike all previous language and replace such language as follows:

>**Subclass 3.4 - Claims of the Happy State Bank.** Subclass 3.4 includes the claims of the Happy State Bank ("HSB") in the approximate sum of $2,032,083.34 is partially secured by a pledge of real estate as well as the assignment and pledge by the Debtor of certificates of deposit in the total approximate sum of $1,782,169 which are held in the names of the Debtor and several Special Purpose Entities owned or controlled by the Debtor. Validity of the collateral assignment of the certificates of deposit is the subject of a consolidated adversary proceeding currently pending before the bankruptcy court. The Plan provides for HSB to be able to realize upon its collateral, depending upon the ultimate determination of the bankruptcy court concerning the validity of its lien claims, and then any unsecured deficiency claim to be treated in Class Five along with the claims of all Unsecured Creditors. The claim of $2,032,083.34 is divided into classes as follows:
>
>>**Subclass 3.4(A) – Claims of HSB Secured by a Disputed Assignment of Certificates of Deposit Held in the Names of Various Related Entities:** This Subclass consists of the claim of HSB in the total approximate amount of $2,032,083.34, which HSB asserts is partially secured by a pledge of real estate as well as the assignment and pledge by the Debtor of certificates of deposit in the total approximate sum of $1,782,169 held in the name of the Debtor and several of the Debtor's related entities.
>
>>**Subclass 3.4(B) – Unsecured Deficiency Claims of HSB Which Exceeds Value of Collateral:** This Subclass consists of the unsecured deficiency claims of HSB which exceeds the value of its collateral and are therefore unsecured

Under **Article IV, <u>SATISFACTION AND TREATMENT OF CLAIMS AND INTERESTS,</u>** in the description of **Subclass 3.4(A) -- Secured Claims of HSB**, and **Treatment of Claims in Subclass 3.4(A),** as well as **Subclass 3.4(B)** and the **Treatment of Claims in Subclass 3.4(B),** strike all previous language and replace such language as follows:

>**3.3.4 Subclass 3.4 - Claims of the Happy State Bank.** Subclass 3.4 includes the claims of the Happy State Bank ("HSB") in the approximate sum of $2,032,083.34 is partially secured by a pledge of real estate as well as the assignment and pledge by the Debtor of certificates of deposit in the total approximate sum of $1,782,169 which are held in the names of the Debtor and several Special Purpose Entities owned or controlled by the Debtor. Validity of the collateral assignment of the certificates of deposit is the subject of a consolidated adversary proceeding currently pending before the bankruptcy court. The Plan

provides for HSB to be able to realize upon its collateral, depending upon the ultimate determination of the bankruptcy court concerning the validity of its lien claims, and then any unsecured deficiency claim to be treated in Class Five along with the claims of all Unsecured Creditors. The claim of $2,032,083.34 is divided into classes as follows:

> **Subclass 3.4(A) – Claims of HSB Secured by a Disputed Assignment of Certificates of Deposit Held in the Names of Various Related Entities:** This Subclass consists of the claim of HSB in the total approximate amount of $2,032,083.34, which HSB asserts is partially secured by a pledge of real estate as well as the assignment and pledge by the Debtor of certificates of deposit in the total approximate sum of $1,782,169 held in the name of the Debtor and several of the Debtor's related entities.
>
> **Treatment of Claims in Subclass 3.4(A):** Certain of AHF's limited partners (MMA Partners and THOF), together with HUD, and creditors Robert Templeton and Don Storseth, have filed three adversary proceedings now consolidated into one proceeding in the Bankruptcy Case asserting that part or all of the funds used to purchase the certificates of deposit pledged to HSB are not owned by AHF and either are subject to restrictions on their ownership and use imposed by applicable statutes, regulations, and the limited partnership agreements, or were fraudulently obtained from investors are subject to a constructive trust for the benefit of those investors. As a result, MMA Partners, THOF, HUD, Templeton and Storseth all contend that AHF did not own or have the authority to pledge the certificates of deposit that were used to secure HSB's claim. The determination by the Bankruptcy Court of the issues raised in these adversary proceedings will determine the extent of HSB's Secured Claim. HSB is attempting to sell real property collateral that it foreclosed upon that secured its claim. The net proceeds of that sale, to the extent those net proceeds exceed the amount bid by HSB at the foreclosure sale, will be credited to HSB's claim. To the extent HSB's claims, after deduction of the net proceeds from the sale of the collateral upon which it foreclosed in excess of the bid amount, still exceeds the remaining value of the certificates of deposit collateral (assuming the Court determines HSB has a valid first lien on the certificates of deposit) HSB will have an Unsecured Deficiency Claim.
>
> **Subclass 3.4(B) – Unsecured Deficiency Claims of HSB Which Exceeds Value of Collateral:** This Subclass consists of the unsecured deficiency claims of HSB which exceeds the value of its collateral and are therefore unsecured.
>
> **Treatment of Claims in Subclass 3.4(B):** In the event the Bankruptcy Court determines after final hearings involving the adversary proceedings related to the certificates of deposit referenced in Subclass 3.4(A) that HSB is entitled to apply any of the certificates of deposit to its notes, and after a determination by the Bankruptcy Court of the value of other collateral which secures its Secured Claims, the Plan provides that any remaining Unsecured Deficiency Claims will be treated equally with the holders of all Unsecured Claims in Class 5.

Exhibit "K" to the Plan will also be modified to reflect the Unsecured Deficiency Claim of HSB, if any, as well as its remaining Unsecured Claim filed in the amount of $3,272,000.

# V.
## Committee's Response to Objections
## To the Creditors' Disclosure Statement Filed by Sprouse

20. Sprouse filed an Objection to the Creditors' Plan and Accompanying Disclosure Statement. The crux of the objections filed by Sprouse can be summarized as follows:

Sprouse objects to the Creditors' Disclosure Statement because its claim appears to be improperly deemed as "being disallowed" without any explanation or justification.

Proposed Amendments and/or Supplemental Information:

In order to resolve the objections of Sprouse and properly disclose the status of Sprouse's asserted claim against AHF, the Committee will modify Exhibit "K" to reflect that the Unsecured Claim of Sprouse in the amount of $1,302,337.80 is classified in Class 5 – Claims of Unsecured Creditors, but that it is subject to being contested by counsel for the Liquidating Trustee for any offsets, counterclaims, or otherwise. The Sprouse claim will continue to be listed on Exhibit "T" as a claim that will be reviewed, and, if necessary and appropriate, objected to by counsel for the Liquidating Trustee.

# VI.
## Committee's Additional Disclosures with Respect
## to Treatment to be Afforded to Texas Capital Bank

21. The Creditors Plan and Accompanying Disclosure Statement describes a settlement agreement with Texas Capital Bank ("TCB") which provides for the conclusion of litigation involving TCB's asserted liens against $24 million worth of life insurance proceeds. TCB has requested additional language concerning the settlement agreement. The Committee desires to include additional information regarding its settlement with TCB.

Proposed Amendments and/or Supplemental Information:

In order to provide additional information regarding the approximate values of the secured claims of TCB against property of the Estate which secures the repayment of its indebtedness in the approximate sum of $9.6 million the Committee amends the Disclosure Statement as follows:

Under **Article IV, SATISFACTION AND TREATMENT OF CLAIMS AND INTERESTS,** in the description of **Subclass 3.1(A) -- Secured Claims of TCB**, and **Treatment of Claims in Subclass 3.1(A),** add two new paragraphs at the end of such section as follows:

In exchange for the settlement and compromise of TCB's claims against AHF and TCB's dismissal of its claims in the Pending Litigation, and assignment of claims and causes of action to the Liquidating Trust, the AHF Estate, Reorganized AHF, the Plan Agent, the Liquidating Trust, the Liquidating Trustee, the Committee, Brandywood, the Trustee, each holder of a Claim that does not vote to reject the Plan, and Brandywood's estate forever release, acquit and discharge TCB and its affiliates, subsidiaries, parents, predecessors, successors, assigns, officers, directors, shareholders, employees, agents, and attorneys, of and from any claims, actions, demands and/or causes of action, asserted or unasserted, specifically including, but not limited to, any claims asserted or that could have been asserted in the Pending Litigation, the American Housing Foundation Case, or arising out of or in any way related to the negotiation, formulation, or preparation of the Plan, the Pending Litigation, the American Housing Foundation Case, or Brandywood as well as claims arising under any circumstance known and existing as of the date and time of execution hereof, save and except for the obligations specifically outlined under the Plan, and any claims and/or causes of action, that are or may be related to any breach, enforcement, or interpretation of the Plan or the obligations of the Parties there under.

Additionally, the above described treatment provided to TCB under the Plan shall constitute a compromise and settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and the confirmation of the Plan shall constitute an order of the Court approving this compromise and settlement pursuant to the requirements of Rule 9019 of the Federal Rules of Bankruptcy Procedure, and applicable governing case law.

The Committee believes that the asserted liens by TCB have estimated values as follows: (i) in excess of $24 million against the Life Insurance Proceeds; (ii) $1.2 - $3 million as a value for its associated interests and asserted deed of trust against the Brandywood Property; (iii) an estimated $1.5 million in payment rights belonging to AHF (exclusive of Life Insurance Proceeds); (iv) an estimated $2.3 million in value related to promissory note receivables AIMCO Portfolio; and (v) approximately $5 million in equity value associated with the AIMCO properties payable to AHF on account of second lien notes. Thus the total secured claim of TCB would be approximately $35.8 million. While this valuation is extremely speculative, and the majority of it is associated with the value in TCB's claim against the life insurance proceeds, the Committee believes that it is in the interest of the Estate to avoid additional expense and delay associated with litigating the claims of TCB. As a result, has agreed to the terms of this proposed settlement with TCB. The Committee asserts that the terms of the proposed settlement with TCB are fair and equitable and in the best interest of the Estate and thus its terms should be approved as part of the confirmation of the Plan.

## VII.
## Committee's Clarifying and Technical Amendments in
## Response to Objections to the Creditors' Disclosure Statement
## Filed by HUD, Graham and Pasadena

22. HUD filed an Objection to the Creditors' Plan and Accompanying Disclosure Statement. The primary objections of HUD relate to assertions that the Creditors' Disclosure Statement contains inaccurate and conflicting information about the Brandywood/FEMA transaction. HUD also complains that the Committee's Disclosure Statement makes an incorrect assertion that the

original deed relating to the Brandywood property placed title in the Debtor.

Proposed Amendments and/or Supplemental Information:

In order to resolve the objections of HUD, the Committee amends the Disclosure Statement as follows: on page 12 of the Disclosure Statement, under the section entitled "**Treatment of Brandywood Property**" delete the last sentence of the second full paragraph of the section, and replace it with the following:

> The U. S. Department of Housing and Urban Development ("HUD") disputes the validity of the TCB lien against the Property because of a covenant in the original deed which conveyed title to the Property, Brandywood Housing Cooperative, and later transferred to Brandywood Housing, Ltd., which required the affirmative consent of HUD prior to any liens being placed against the Property.

Additionally, on page 13 of the Disclosure Statement, still under the section entitled "**Treatment of Brandywood Property**" delete the penultimate paragraph and replace it with the following:

> A portion of the Property, 19 buildings representing in excess of 258 units, was approved by FEMA as eligible for its Severe Repetitive Loss Program (the "SRLP). The SRLP endeavors to mitigate the effects of repeated losses to residents and property owners in flood prone areas. This designation allows the State of Texas, through the Texas Water Development Board ("TWDB), to provide a grant to acquire the portion of the Property which has become subject to increasingly repetitive flood loss claims. A governmental unit, either the City of Pasadena or Harris County Flood Control District, will acquire 19 apartment buildings, representing in excess of 258 units of the Property's 698 units, with the remaining buildings remaining as part of the Property. The Grant provides for demolition, asbestos abatement, relocation expenses for current residents, and the creation of a city park/open green space area (the "Open Space") to help mitigate the cost of future flood damages.

23. Graham filed a Comment to the Creditors' Plan and Accompanying Disclosure Statement. The Comment of Graham simply states that the treatment afforded its claim in the Creditors' Plan and Disclosure Statement must include provisions for all reasonable and necessary attorneys' fees and costs in accordance with the original tenor of the financial documents which secure the repayment of its indebtedness.

Proposed Amendments and/or Supplemental Information:

In order to clarify and address the Comment of Graham, the Committee proposes the following amendments to the Plan:

> Under section I, INTRODUCTION TO THE AMENDED PLAN, and the descriptions under F, Summary of the Plan, add to the sentence included under Subclass 3.2 – **Secured Claims**

**of Creditors Against Real Property Located in Lakewood Terrace, Baytown, Harris County, Texas**, add the following language to the end of the sentence: "in accordance with the original tenor of the written financial agreements between the parties."

Additionally, everywhere reference to "Graham Financial" is made, change the term to "Graham Mortgage Corporation".

Finally, under the Section found on page 38, "**Treatment of Claims in Subclass 3.2(b)**", at the end of the sentence, prior to the period, add the following language: "in accordance with the original tenor of the written financial agreements between the parties."

24. Pasadena filed an Objection to the Creditors' Plan and Accompanying Disclosure Statement. The crux of the objections filed by Pasadena can be summarized as follows:

Pasadena objects to the Creditors' Disclosure Statement on the basis that while the Creditors' Plan proposes to pay in full the taxes owed to Pasadena after either selling the properties or restructuring the debts against the properties such that the tax claims are paid in full, the Creditors' Plan does not provide for a fallback class if there is a deficiency balance owing.

Proposed Amendments and/or Supplemental Information:

In order to resolve the objections of Pasadena the Committee proposes the following amendment:

On page 43 of the Plan under Section 4.3.6 Subclass 3.6 **Secured Claims of Local Tax Authorities**, at the end of the paragraph contained under the "**Treatment of Claims in Subclass 3.6**, add the following sentence: "In the event that the properties securing the claims are either sold or refinanced and the taxes owing against such properties are not paid in full, any deficiency determined by the Bankruptcy Court to constitute an Allowed Priority Claim against the Estate under the provisions of 11 U. S. C. § 507 will be paid in full."

VIII.
**Committee's Response to Objections
Filed by Chapter 11 Trustee and AFP**

25. .Both the Trustee and AFP have filed objections to the Creditors' Plan and Accompanying Disclosure Statement. The objections contain a laundry list of reasons that the Trustee and AFP believe that the Disclosure Statement should not be approved. Most of the objections pertain to the ongoing dispute between the Committee and AFP with respect to the future

operations of the Reorganized AHF, the individuals to be named as the Plan Agent and the Liquidating Trustee, and, more particularly, the administrative expenses being incurred by the Trustee, his financial advisors and his counsel, and the compensation to be paid the Trustee if he were named to serve as either the Plan Agent or the Liquidating Trustee. Additional objections relate to recent actions which have been taken by the Trustee and his counsel by filing lawsuits against what they call "Soft-Money-Investor Claims." The Trustee argues in his objections that additional disclosures of the connections between "Soft-Money-Investor Claims", the Committee, and the former representation of holders of so-called "Soft-Money-Investor Claims" should be included in the Disclosure Statement. The Committee believes that the objections to the Creditor's Disclosure Statement are not well founded and are intended merely to complicate and encumber the Court's consideration of the Committee's Disclosure Statement. The Trustee argues on the one hand that the existing Disclosure Statement is too complicated and voluminous for creditors to understand and on the other hand argues for additional disclosures.

26. The Committee intends to address the individual objections of the Trustee and AFP in its oral presentations at the hearing on its Disclosure Statement. And, if necessary, and upon direction of the Court, will add any additional disclosures, correct any inconsistencies and supply additional information as directed by the Court.

WHEREFORE, PREMISES CONSIDERED, the Committee prays that the Court determine that the Amendments and Supplemental Information Proposed by the Official Committee of Unsecured Creditors in Response to Objections to its Amended Disclosure Statement which have been filed by various parties as outlined herein adequately addresses and resolves the legitimate objections to the Disclosure Statement raised by them, and that the Court determine that the Disclosure Statement as so amended and supplemented provides adequate information and issue its

order approving the Disclosure Statement, setting the hearing on confirmation of the Committee's Amended Plan of Reorganization and directing the Committee to send out copies of the Amended Plan of Reorganization and Disclosure Statement along with ballots allowing the creditors to vote either in favor of or against confirmation of the Plan, and also prays for such other and further relief whether at law or in equity as the Court may deem necessary and proper.

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
/s/ David R. Langston
David R. Langston, SBN: 11923800
***Attorneys for Official Committee of Unsecured Creditors***

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing AMENDMENTS AND SUPPLEMENTAL INFORMATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN RESPONSE TO OBJECTIONS TO ITS AMENDED DISCLOSURE STATEMENT served on the following parties in interest on this 14th day of September, 2010:

1. Ms. Mary Frances Durham
   U.S. Trustee's Office
   1100 Commerce Street
   Room 9C60
   Dallas, Texas 75242

2. Max Tarbox
   Tarbox Law, P.C.
   P.O. Box 2547
   Lubbock, Texas 79401

3. All parties receiving ECF notification in this case.

/s/ David R. Langston
David R. Langston