U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed October 12, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| AMERICAN HOUSING FOUNDATION | § | CASE NO. 09-20232-RLJ-11 |
| | § | |
| DEBTOR | § | |

**TWELFTH INTERIM AGREED ORDER REGARDING
<u>LIMITED USE OF CASH COLLATERAL</u>**

***CAME ON FOR CONSIDERATION*** the *Motion for Interim and Final Order to Use Cash Collateral* (Docket No. 97, the "<u>Motion</u>") filed by American Housing Foundation (the "<u>Debtor</u>" or "<u>AHF</u>"), seeking, *inter alia*, an interim order authorizing AHF to use Cash Collateral (as defined below) of Texas Capital Bank, National Association ("<u>Texas Capital</u>"). The Court has reviewed and considered the Motion, the presentation of counsel, and the record at the eleventh interim hearing on the Motion. Based on such considerations, the Court approves and grants the Motion on an interim basis as provided herein.

# INTRODUCTION

1. The Trustee (as defined below) and Texas Capital have represented to the Court that they have negotiated in good faith and have agreed to the terms and conditions of this *Twelfth Interim Agreed Order Regarding Limited Use of Cash Collateral* (the "Order"). The Court finds that the parties hereto have stipulated and agreed as follows, and based upon the pleadings, proffers of evidence, and representations of counsel, the Court hereby approves and adopts said stipulations and agreements as findings of fact and conclusions of law, as appropriate, and grants the relief requested herein to prevent immediate and irreparable harm to the Debtor's estate and Orders:

# STATEMENT OF JURISDICTION

2. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and 157. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157.

# NOTICE

3. Sufficient and adequate notice of the Motion and the hearing with respect thereto has been provided pursuant to Bankruptcy Rules 2002, 4001(b), and 9006, and as required by Sections 102, 361, 362, and 363 of the Bankruptcy Code.

# FACTUAL BACKGROUND

4. On April 21, 2009 (The "Petition Date"), certain petitioning creditors filed an involuntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") against AHF in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division (Case No. 09-20232, the "Involuntary Proceeding"). On June 11, 2009, AHF filed a voluntary petition (the "Petition") for relief under Chapter 11 of the

Bankruptcy Code initiating Case No. 09-20373 (the "Voluntary Proceeding"). The Involuntary Proceeding and Voluntary Proceeding were consolidated by order of the Court on July 17, 2009, and the Debtor's bankruptcy case is now proceeding under Case No. 09-20232.

5. The Debtor managed its business and property as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code through April 29, 2010. An Official Committee of Unsecured Creditors (the "Committee") was appointed on July 10, 2009.

6. On April 27, 2010, the Court granted Texas Capital's *Motion for Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* [Docket # 653], and entered its *Order Granting Motion for Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* [Docket # 1096] on April 28, 2010. On April 29, 2010, the Court entered it *Order Approving Appointment of Chapter 11 Trustee* [Docket # 1104], which appointed Walter O'Cheskey (the "Trustee") as the Chapter 11 Trustee of AHF's bankruptcy estate.

7. The Court has previously approved the Debtor's limited use of cash collateral pursuant to: (i) the *Amended Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on July 24, 2009 [Docket # 121]; (ii) the *Second Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on August 14, 2009 [Docket # 166]; (iii) the *Third Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on September 21, 2009 [Docket # 301]; (iv) the *Fourth Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on October 16, 2009 [Docket # 363]; (v) the *Fifth Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on November 23, 2009 [Docket # 471] (the "Fifth Interim Order")[1]; (vi) the

---

[1] The Debtor has used funds from non-bankruptcy estate projects that are insured by HUD, subject to regulatory

*Sixth Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on January 11, 2010 [Docket # 585]; (vii) the *Seventh Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on January 19, 2010 [Docket # 596]; (viii) *Eighth Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on February 22, 2010 [Docket # 749]; (ix) *Ninth Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on June 22, 2010 [Docket # 1320]; (x) *Tenth Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on July 16, 2010 [Docket # 1431]; and (xi) *Eleventh Interim Agreed Order Regarding Limited Use of Cash Collateral* entered by the Court on August 31,2010 [Docket # 1543]

8. The Trustee and Texas Capital agree that this Order and any past and future interim and final cash collateral orders do not waive, restrict, or prohibit the U. S. Department of Housing and Urban Development ("HUD"), its insured or other HUD related projects, in any future assertion of rights in this or any other proceeding. The Trustee and Texas Capital further agree that this Order and any past and future interim and final cash collateral orders are not based on any property of Brandywood Housing, Ltd. (the "Brandywood Property"), which property is non-bankruptcy estate property located in Pasadena, Texas, and is subject to HUD's Special Warranty Deed filed and recorded in Harris County, Texas, in 1992. Texas Capital contends, and HUD disputes, that HUD's special warranty deed may have been subsequently amended, modified, released, or waived as it relates to Texas Capital's Deed of Trust.

## TEXAS CAPITAL'S CLAIMS

---

agreements, and from other projects that have some type of HUD involvement, which may include regulatory agreements or other use restrictions on the projects. The Debtor stopped using HUD insured funds beginning with the Fifth Interim Cash Collateral Order.

9.  Texas Capital asserts claims against Debtor and its assets, as defined in Section 101 of the Bankruptcy Code, as of the Petition Date, pursuant to the Pre-Petition Indebtedness Documents (as defined below) and applicable law in a total aggregate approximate amount of $9,635,115.13 in unpaid principal and accrued but unpaid interest, plus any and all fees, and any and all other obligations and liabilities of Debtor to Texas Capital under the Pre-Petition Indebtedness Documents (as defined herein) or otherwise including, interest, reasonable costs, attorneys' fees, and any and all other amounts to the extent permitted by the Bankruptcy Code and applicable law (the "Pre-Petition Indebtedness"). On October 6, 2009, Texas Capital filed its proof of claim (Claim No. 99 in the Claims Register) reflecting the amounts owed on the AHF Loan and Brandywood Loan as of the Petition Date. Texas Capital's Proof of Claim was subsequently amended on December 14, 2009, and reflects that AHF currently owes Texas Capital at least $9,635,115.13.

## THE PRE-PETITION INDEBTEDNESS DOCUMENTS

10.  The Pre-Petition Indebtedness is evidenced by certain documents executed and delivered by the Debtor to Texas Capital, including, without limitation, notes, pledge and security agreements, financing statements, deeds of trust, assignments of rents, and all amendments, extensions and modifications thereof (collectively, the "Pre-Petition Indebtedness Documents").

11.  The Pre-Petition Indebtedness evidenced by the Pre-Petition Indebtedness Documents is claimed by Texas Capital, and previously stipulated by the Debtor, to be secured by perfected first priority liens and security interests in a substantial portion of the Debtor's personal property, wherever located, including, without limitation, Accounts,[2] chattel paper, and

---

[2] Accounts in the Pre-Petition Indebtedness Documents, include, without limitation, each of the following, whether now owned

a deposit account at Texas Capital in which the Debtor now has or hereafter acquires any right or interest, the proceeds,³ insurance proceeds and products thereof, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto, (the "Property").  The Property, and any and all other property of the estate, in which Texas Capital has a first priority interest in as of the Petition Date, or subsequent to the Petition Date to adequately protect Texas Capital Interest (defined below) as provided in this Order, are collectively referred to as the "Collateral."  The Trustee is still in the process of investigating and evaluating Texas Capital's claims and reserves his right to challenge the liens asserted by Texas Capital.

12. Texas Capital asserts liens and security interests in the Collateral and Cash Collateral (as defined herein), plus any and all other property of this estate as provided under 11 U.S.C. § 552(b), this Order, the Pre-Petition Indebtedness Documents and applicable law in the amount of the Pre-Petition Indebtedness, without limitation ("Texas Capital's Interest").

13. The Brandywood Property is not Property or Collateral as such terms are defined herein and Texas Capital's lien on the Brandywood Property is not part of the Pre-Petition Indebtedness Documents or Texas Capital's Interest for purposes of adequate protection granted to Texas Capital.  All parties reserve their rights, interests, and claims with respect to the Brandywood Property.

---

or hereafter acquired by AHF:  (a) all rights to payment, (b) all accounts receivable (including Health Care Insurance Receivables), (c) all rights to receive any payment of money or other form of consideration, (d) all security pledged, assigned, or granted to or held to secure any of the foregoing, (e) all guaranties of, or indemnifications with respect to, any of the foregoing, (f) all Chattel Paper, and (g) all rights as unpaid sellers of goods or services, including, but not limited to, all rights of stoppage in transit, replevin, reclamation, and resale.

³ Proceeds in the Pre-Petition Indebtedness Documents, include, without limitation, each of the following, whether now owned or hereafter acquired by AHF:  any and all proceeds of any insurance, indemnity, warranty, or guaranty payable to the Borrower from time to time with respect to any of the Collateral.

## BINDING AGREEMENT

14. The agreements and arrangements authorized in this Order have been negotiated at arms-length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. Texas Capital and the Trustee have acted in good faith in the negotiation and preparation of this Order, have been represented by counsel, and intend to be and are bound by its terms.

## SEGREGATION AND ACCOUNTING OF CASH COLLATERAL

15. To the extent of Texas Capital's Interest as permitted by this Order, the Bankruptcy Code, and Texas Capital's loan documents, all cash equivalents, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which represent income, proceeds, products, rents or profits of the Collateral that are now in the Trustee's and/or Debtor's (or entities or persons in privity with the Trustee or the Debtor) possession, custody or control, or in which the Debtor will obtain an interest during the pendency of this bankruptcy Case (collectively, the "Cash Collateral"), are the Cash Collateral of Texas Capital. Texas Capital claims, and the Debtor has previously stipulated, that it holds first priority perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Pre-Petition Indebtedness Documents, Sections 363(a) and 552(b) of the Bankruptcy Code and this Order.

16. The Debtor has opened and the Trustee is maintaining a debtor-in-possession account at Amarillo Area Community Federal Credit Union (the "DIP Account"). All proceeds and collections from the Collateral and all Cash Collateral shall be deposited into the DIP Account on a daily basis.

## REPORTING REQUIREMENTS

17. The Trustee shall provide Texas Capital: (i) a copy of the monthly bank statements for the DIP Account for the previous month due on the third (3rd) business day of each month; (ii) a monthly reconciliation report showing actual receipts and disbursements compared with budgeted receipts and expenditures for the previous month due within three (3) business days of the end of each month; (iii) immediate written notice of any correspondence or notices the Trustee and/or the Debtor receives (or has received since the Petition Date) indicating that any creditor or secured party is seeking to foreclose on, take possession of, appoint a receiver for, or otherwise enforce remedies in, to, or against any properties the Debtor directly or indirectly owns, including all multi-family housing projects or properties in which the Debtor directly or indirectly holds an interest (collectively, the "Properties"); and (iv) a monthly report listing each of the Properties' monthly cash flow performance and listing whether any creditor enforcement actions are being pursued with respect to each of the Properties due on the fifth business day of each month.

## LIMITED USE OF CASH COLLATERAL

18. The Trustee is prohibited from using the Cash Collateral except as provided herein and consistent with the Monthly Cash Flow Pro Forma filed as Exhibit "B" to the *Disclosure Statement to Joint Chapter 11 Plan filed by Chapter 11 Trustee and Official Committee of Unsecured Creditors* [Docket #1661-2] (the "Budget")[4], and Texas Capital does not consent to the Trustee's use of Cash Collateral except in accordance with the terms and conditions contained in this Order and the Budget. The Trustee is prohibited from withdrawing

---

[4] The Budget only goes through November 2010 and the Term of this Order expires in January 2011. The Pro Forma for November shall be used as a guide for the use of cash collateral for December 2010 and January 2011 pursuant to this Order.

funds from the DIP Account except as provided for in the Budget and this Order. The Trustee agrees to exclude the use of funds from HUD-insured projects and subject to HUD regulatory agreements in the Budget. The Debtor previously agreed to identify and account to HUD all past and future funds from HUD restricted projects that the Debtor used as cash collateral to pay its expenses in this bankruptcy proceeding and the Trustee agrees to surrender all such funds to the respective projects to the extent the Debtor was not entitled to retain such funds pursuant to HUD regulations and restrictions.

19. Without the use of Cash Collateral, the Trustee will not have the funds necessary to pay post-petition payroll, payroll taxes, overhead, and other post-petition expenses necessary for the operation of the Debtor's business. Thus, the Debtor's operations require the use of Cash Collateral as provided herein.

## ADEQUATE PROTECTION

20. To the extent Cash Collateral is used, as partial adequate protection of Texas Capital's Interest in the Collateral and Cash Collateral, taking into account all factors in this Case Texas Capital is hereby granted, effective *nunc pro tunc* as of the Petition Date to the extent of any diminution or usage of Texas Capital's Collateral on a dollar for dollar basis, valid, binding, enforceable and automatically perfected first priority liens and security interests in and upon all of AHF's assets co-extensive with the assets described in the Pre-Petition Indebtedness Documents whether acquired or generated before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of the Debtor against third parties for loss or damage to such property), and all accessions thereto, substitutions and replacements therefore (collectively, the "Adequate Protection Liens"); *provided however*, that unless otherwise ordered by the Court,

the Adequate Protection Liens shall not attach to life insurance benefits, life insurance proceeds, or any funds on deposit in account no. ending XXXXXX6310 maintained by the Debtor at Wells Fargo Bank, National Association, and all parties reserve their rights with respect to all claims and interests in such assets.

21. As additional adequate protection: (i) the Trustee is authorized and directed to use Cash Collateral to pay property insurance premium financing obligations pursuant to the Budget; (ii) the Trustee is authorized and directed to pay Texas Capital three (3) adequate protection payments in the amount $7,000, and (iii) such adequate protection payments shall be delivered to Texas Capital no later than November 1, 2010, and December 1, 2010, and January 3, 2011. Texas Capital is authorized to immediately apply such payments to Texas Capital's claim against the Debtor.

22. To the extent such adequate protection is insufficient to adequately protect Texas Capital's Interest in the Collateral and Cash Collateral, Texas Capital is hereby granted all of the other benefits and protections allowable under Section 507(b) of the Bankruptcy Code. To the extent that 11 U.S.C. § 362, or any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized or created by this paragraph, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, otherwise applicable federal law, and the judicial power of the United States Bankruptcy Court.

23. Notwithstanding anything herein: (i) the rights and interests of non-debtor entities with respect to any property or assets not owned by the Debtor or its bankruptcy estate, including real estate project assets; (ii) the rights and interests of non-debtor entities to assert

offset; and (iii) the rights and interests of non-debtor insurance policy beneficiaries and parties identified as holding an additional insured or loss payee interest with respect to any liability, casualty or damage insurance policies or proceeds related to real estate project assets, are not impaired, primed or subordinated by this Order (or any other prior order regarding use of cash collateral) or by any lien, claim or interest granted in this Order (or any other prior order regarding use of cash collateral), and all parties reserve their rights with respect to all such matters and any alleged right of recoupment.

## EVENTS OF DEFAULT/REMEDIES

24. The occurrence of any of the following shall constitute an event of default under this Order, and Texas Capital shall have no obligation to provide any notice of any such occurrence: (a) any default, violation, material non-compliance, or breach of any of the terms of this Order by the Trustee, (b) the maturity, termination, expiration, or non-renewal of this Order, (c) conversion of the Case to a case under Chapter 7 of the Bankruptcy Code, (d) the dismissal of the Case, (e) the entry of any order reversing, revoking, rescinding or vacating this Order without the express prior written consent of Texas Capital, (f) the failure by the Trustee to meet the terms of compliance with the Budget (any of the foregoing events of default being referred to in this Order, individually, as an "Event of Default" and, collectively, as "Events of Defaults").

25. Upon the occurrence of any Event of Default, the Trustee's authority to use Cash Collateral and any and all obligations of Texas Capital under this Order shall terminate after Texas Capital provides the Trustee five (5) business days written notice of such Event of Default.

26. Texas Capital shall not be obligated to, but may, in its sole and absolute discretion, and only upon Texas Capital's written consent, advance (or consent to the use of) Cash Collateral to the Trustee after an Event of Default, and all such advances of Cash Collateral

(a) shall not constitute a waiver, limitation, or modification of any of Texas Capital's rights and remedies pursuant to the Pre-Petition Indebtedness Documents, this Order, and applicable law, and (b) shall be and hereby are granted all of the protections granted to Texas Capital under this Order. Texas Capital reserves all of its rights and does not waive any rights or claims related to any Event of Default under this Order or any prior orders authorizing the use of Cash Collateral, and the failure of Texas Capital to provide any written notice of an Event of Default shall not constitute any waiver, limitation, or modification of any of Texas Capital's rights and remedies pursuant to the Pre-Petition Indebtedness Documents, this Order, and applicable law.

27. Absent an order of this Court modifying the automatic stay or as permitted by the Bankruptcy Code or applicable law, no other entity shall foreclose or otherwise seek to enforce any lien or other right such other party may have in and to any property of the Debtor's estate upon which Texas Capital holds or asserts a senior lien or security interest, and the Trustee shall not, without prior approval from the Bankruptcy Court, engage in any transaction that is not in the ordinary course of the Debtor's business. Notwithstanding any provisions in this Order or prior orders authorizing the use of cash collateral, the rights of non-debtors concerning the governance, supervision, control and management of non-debtor entities are not impaired, affected or restrained by this Order or such other orders.

## **PROPERTY TAX LIENS**

28. Valid, properly-perfected, unavoidable, first-priority property tax liens shall continue against all property owned or claimed by the Debtor, whether currently in existence or hereinafter acquired, pursuant to applicable provisions of the Texas Property Code. Such tax liens shall maintain the same level of priority as existed immediately prior to the Petition Date as more fully described in the Texas Property Code.

29. The Trustee, Committee, creditors, and interested parties reserve all their rights to challenge the priority, extent, nature, scope, amount, validity, perfection, or avoidability of any asserted tax liens and property tax claims, notwithstanding the provision above.

## OTHER TERMS

30. No act committed or action taken by Texas Capital under this Cash Collateral Order shall be used, construed, or deemed to hold Texas Capital to be in control of the Debtor's estates, or the governance, management or operations of the Debtor's estates or businesses for any purpose, without limitation, or to be acting as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Debtor's estate or its businesses (as such terms, or any similar terms, are used in the Bankruptcy Code, or the Internal Revenue Code, Comprehensive Environmental Response, Compensation and Liability Act, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Texas Capital under this Order including, without limitation, such rights and remedies as may be exercisable by Texas Capital in connection with this Order.

31. Neither Texas Capital's entry into this Order, nor the receipt and acceptance of any transfers or payments under this Order shall be deemed a waiver or limitation in any way of Texas Capital 's right, if any, to demand immediate payment of the entire balance due under its Pre-Petition Indebtedness Documents and this Order as to any non-debtor entity. Nothing contained in this Order shall constitute a waiver or abridgement of Texas Capital's right to seek a deficiency judgment or seek a deficiency claim in this bankruptcy case or against any non-Debtor entity in accordance with applicable law. The receipt and application of the payment due Texas Capital under this Order shall not diminish or prejudice Texas Capital's right to obtain a

deficiency judgment or to assert a deficiency claim to the extent permitted by § 1111(b) of the Bankruptcy Code. All of Texas Capital's rights and remedies to pursue a deficiency claim in this bankruptcy case or otherwise are preserved and protected for all purposes, without limitation.

32. Nothing in this Order, or otherwise, shall be construed as consent by Texas Capital for any surcharge against or related to Texas Capital's collateral under Section 506(c) of the Bankruptcy Code. No costs or expenses of administration or other costs or expenses of the Debtor that have been incurred or may be incurred in this Case, or in any subsequent Chapter 7 Case of the Debtor or other proceedings or matters related thereto, shall be charged either against the Pre-Petition Collateral or Cash Collateral of Texas Capital pursuant to Section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of Texas Capital.

33. Notwithstadning anything to the contrary herein, the Trustee, Committee, creditors and interested parties reserve all their rights to challenge the priority, extent, nature, scope, amount, validity, perfection or avoidability of any asserted liens of Texas Capital against the life insurance proceeds now held in the registry of the Court in Civil Action No. 2:09-CV-231-C, currently styled *Robert L. Templeton, et al. versus American Housing Foundation, et al.*, in the U.S. District Court for the Northern District of Texas, Amarillo Division. Furthermore, the granting of the continuing replacement liens in all property of the estate of the kind presently securing the indebtedness owing to the Texas Capital Bank and the continuing replacement liens in all property of the estate of the kind presently securing the indebtedness owing to that Texas Capital Bank under this Order shall have no effect on any challenge or objection by the Committee or other creditors to the priority, nature, extent, validity, and/or enforceability as to any of the underlying pre-petition liens held by the Texas Capital Bank which it is asserting and which may be raised under applicable state or federal law.

34. The Trustee, Committee and Texas Capital shall use their best efforts to confer, communicate, and negotiate in good faith prior to the expiration of the Term (as defined below) of this Order in an effort to: (i) pursue an agreement on the terms of a final cash collateral order; (ii) determine the source, nature, amount, and extent of the Debtor's cash and revenue, including, but not limited to, the source of all cash and revenue generated by the Debtor during this case; and (ii) determine the source, nature, amount, and extent of the Debtor's receivables and rights to payment from all sources.

35. The Trustee's counsel shall serve the Motion and a copy of this Order on the following parties: (i) the Office of the United States Trustee, (ii) the Committee and its counsel, (iii) counsel for Texas Capital, (iv) all creditors known to Debtor who have or may assert liens against the Debtor's assets, (v) the 20 largest unsecured creditors of the Debtor, and (v) all parties in interest who have filed a notice of appearance.

36. Texas Capital's consent and the Trustee's and estate's authority to use Cash Collateral pursuant to this Order shall be effective as of October 7, 2010, through January 13, 2011 (the "Term").

37. Unless otherwise ordered by the Court, further hearing on the Motion shall be held via video on January 13, 2011 at 1:30 p.m. before The Honorable Robert L. Jones, United States Bankruptcy Judge, Rm. 100, 624 S. Polk St., Amarillo, TX.

### # # # END OF ORDER # # #

*Agreed and Accepted By:*

*/s/ Max R. Tarbox*
Max R. Tarbox
**TARBOX LAW, P.C.**
2301 Broadway
Lubbock, TX 79401
(806) 686-4448 office
(806) 368-9785 fax

max@tarboxlaw.com

**ATTORNEYS FOR TRUSTEE**

**AND**

*/s/ Eli O. Columbus*
Eli O. Columbus
Lloyd A. Lim
**WINSTEAD PC**
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Telephone)
(214) 745-5390 (Facsimile)

**ATTORNEYS FOR TEXAS CAPITAL BANK, NATIONAL ASSOCIATION**

**AND**

*/s/ David R. Langston*
David R. Langston
**MULLIN HOARD & BROWN, LLP**
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553

**ATTORNEYS FOR UNSECURED CREDITORS COMMITTEE**