**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | |
| | § | Case No. 09-20232-RLJ |
| AMERICAN HOUSING FOUNDATION, | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

**SECOND AMENDED JOINT CHAPTER 11 PLAN FILED BY**
**THE CHAPTER 11 TRUSTEE AND THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**

**Dated:  December 6, 2010**

**PROPONENTS:**

**WALTER O'CHESKEY, CHAPTER 11 TRUSTEE**

TARBOX LAW, P.C.
Max R. Tarbox (TX 19639950)
2301 Broadway
Lubbock, Texas 79401

GARDERE WYNNE SEWELL LLP
Stephen A. McCartin (TX 13374700)
Marcus A. Helt (TX 24052187)
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761

COUNSEL FOR WALTER O'CHESKEY,
CHAPTER 11 TRUSTEE

**OFFICIAL UNSECURED CREDITORS COMMITTEE**

MULLIN, HOARD & BROWN, L.L.P.
David C. Mullin (TX 14651600)
David R. Langston (TX 11923800)
P.O. Box 2585
Lubbock, Texas  79408

COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS

## SUMMARY OF THE PLAN

1.    **Summary Only.**  The following is a brief summary of the Plan's general terms and does not form a part of the Plan.  This summary is qualified in its entirety by reference to the provisions of the Plan.  Capitalized terms used in this summary are defined in Article XIV of the Plan.

2.    **General Description of Assets.**  AHF directly owns the following assets:

   a.    Life Insurance Proceeds;

   b.    Lakewood Terrace Townhomes;

   c.    Intercompany Receivables;

   d.    Causes of Action (including claims against its directors and officers, preference and fraudulent-transfer claims, and other miscellaneous claims); and

   e.    Miscellaneous Assets.

In addition, AHF owns an ownership interest, directly or indirectly, in numerous Special Purpose Entities.  These Special Purpose Entities are not subject to this bankruptcy case.  These Special Purpose Entities currently own and operate approximately 65 affordable-housing apartment communities (containing approximately 13,000 units) located in nine (9) states.  These affordable-housing apartment communities were financed in three (3) general ways:

   35    **Tax-Exempt Bond Financing**
   -   11 in the "Walden I" portfolio
   -   17 in the "Walden II" portfolio
   -   4 in the "Simpson" portfolio
   -   3 Other

   17    **Tax-Credit Equity Financing from Investors**

   13    **Conventional Financing from JPMorgan Chase, N.A.**
   __    (a/k/a the "**AIMCO Portfolio**")

   65    Total Properties

3.    **Plan and Treatment of Claims.**  Pursuant to the terms of the Plan:

   a.    AHF shall retain its indirect or direct ownership interest in the Special Purpose Entities listed on <u>Exhibit A</u> attached hereto and as supplemented in the Plan Supplement, which own and operate 18 apartment communities, (hereinafter

i

referred to as the "**Retained Properties**");[1] and

b.    AHF shall terminate/divest/reject its indirect or direct ownership interest in the Special Purpose Entities listed on Exhibit B attached hereto or as supplemented in the Plan Supplement, which own and operate 47 apartment communities, as soon as practical after confirmation of the Plan (hereinafter referred to as the "**Rejected Properties**").[2]

c.    Reorganized AHF shall continue to own and/or operate the Retained Properties pursuant to the Operating Budget attached to the Disclosure Statement as Exhibit B. Reorganized AHF shall stabilize the operations of the Retained Properties and use its best efforts to sell its interest in the Retained Properties within twenty-four (24) months after the Effective Date of the Plan, unless the Reorganized AHF, the Liquidating Trustee, and the Trust Oversight Committee agree otherwise. All proceeds, net of operating costs and closing costs of Reorganized AHF, received from the sale or other disposition of the Retained Properties and the other remaining assets of Reorganized AHF shall be transferred by Reorganized AHF to the AHF Liquidating Trust for distribution to creditors pursuant to the Plan.

d.    AHF shall transfer all of its assets, other than the Rejected Properties, Retained Properties, and the Operating Fund Reserve, to the AHF Liquidating Trust. The AHF Liquidating Trust shall liquidate the Trust Assets and distribute the net proceeds to creditors holding Allowed Claims pursuant to the terms and provisions of the Plan and Liquidating Trust Agreement, substantially similar to the form attached hereto as Exhibit C.

---

[1] The Proponents or the Reorganized Debtor may elect, in their sole and absolute discretion, to add Special Purpose Entities to or remove Special Purpose Entities from Exhibit A at any time prior to the Effective Date. All Special Purpose Entities removed from Exhibit A will, if not otherwise added to Exhibit B, be deemed to be listed on Exhibit B. Nothing in this Plan restricts the Proponents' ability to add or remove a Special Purpose Entity to or from Exhibit A if he determines such an addition or removal is in the best interests of the Estate to maximize the recovery on all Allowed Claims.

[2] The Proponents or the Reorganized Debtor may elect, in their sole and absolute discretion, to add Special Purpose Entities to or remove Special Purpose Entities from Exhibit B at any time prior to the Effective Date. All Special Purpose Entities removed from Exhibit B will, if not otherwise added to Exhibit A, be deemed to be listed on Exhibit A. Nothing in this Plan restricts the Proponents' ability to add or remove a Special Purpose Entity to or from Exhibit B if he determines such an addition or removal is in the best interests of the Estate to maximize the recovery on all Allowed Claims.

e.  A detailed list of AHF Liquidating Trust assets, estimated values, projected allowed creditor claims and the projected dividend available to general unsecured creditors is attached to the Disclosure Statement as <u>Exhibit A</u> (the "**Liquidation Analysis**").  The Liquidation Analysis contains estimates only.  Actual recoveries on assets and actual allowed claims could vary materially from those shown in the analysis.

f.  Creditors holding Allowed Claims shall receive the following treatment under the Plan:

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
| 1. | **ALLOWED PRIORITY NON-TAX CLAIMS**<br><br>(Est. Amt. of Claims: $.100) | Shall receive Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim no later than the Distribution Date.<br><br>(Est. Recovery:  100%) |
| 2. | **ALLOWED SECURED TAX CLAIMS**<br><br>(Est. Amt. of Claims: $.100) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral to the Creditor in full and final satisfaction of the Allowed Class 2 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral, less any expenses incurred in the liquidation.  Any Deficiency Claim shall be treated as a Class 17 General Unsecured Claim or a Priority Tax, as determined by the Bankruptcy Court or agreed between the holder of such Claim, on the one hand, and the Liquidating Trustee, on the other hand.<br><br>(Est. Recovery:  100%) |
| 3. | **ALLOWED SECURED CLAIMS OF TEXAS CAPITAL BANK**<br><br>(Est. Amt. of Claim:  $4.0 million) | Pursuant to the TCB Settlement, Texas Capital Bank shall have an Allowed Class 3 Claim in the amount of $4,000,000.00.  On account of such Allowed Class 3 Claim, and in full satisfaction, release, and discharge of and exchange for such Claim, and the release of all Liens against Estate assets, as well as additional consideration identified in Article I, Texas Capital Bank shall receive $4,000,000.00 in Cash and the TCB Release on the earlier of (i) December 31, 2010, and (ii) the Effective Date.  Texas Capital Bank shall have no Deficiency Claim.<br><br>(Est. Recovery:  100%) |

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
| 4. | **ALLOWED SECURED CLAIMS OF BAC HOME LOANS SERVICING L.P.**<br><br>(Est. Amount of Claim: $3.7 million) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral in full and final satisfaction of the Allowed Class 4 Claim, or (ii) payment of the net proceeds from the liquidation of the Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof. BAC Home Loan Servicing L.P.'s Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery: 100%) |
| 5. | **ALLOWED SECURED CLAIMS OF GRAHAM MORTGAGE CORPORATION**<br><br>(Est. Amount of Claim: $.886) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral in full and final satisfaction of the Allowed Class 5 Claim, or (ii) payment of the net proceeds from the liquidation of the Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof. Graham Mortgage Corporation's Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery: 100%) |
| 6. | **ALLOWED SECURED CLAIMS OF GARY GRAHAM IRA**<br><br>(Est. Amount of Claim: $.635) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral in full and final satisfaction of the Allowed Class 6 Claim, or (ii) payment of the net proceeds from the liquidation of the Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof. Gary Graham IRA's Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery: 100%) |
| 7. | **ALLOWED SECURED CLAIMS OF CENLAR**<br><br>(Est. Amount of Claim: $.037) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral in full and final satisfaction of the Allowed Class 7 Claim, or (ii) payment of the net proceeds from the liquidation of the Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof. Cenlar's Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery: 100%) |

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
| 8. | **ALLOWED SECURED CLAIMS OF GRIFFITHS, SAMMARCO, PIERRE AND SULLIVAN**<br><br><br>(Est. Amount of Claim: $0.434) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral in full and final satisfaction of the Allowed Class 8 Claim, or (ii) payment of the net proceeds from the liquidation of the Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof.  Griffiths', Sammarco's, Pierre's, and Sullivan's Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery:  100%) |
| 9. | **ALLOWED SECURED M&M LIEN CLAIMS**<br><br><br><br>(Est. Amt. of Claims:  $0.00) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral to the Creditor in full and final satisfaction of the Allowed Class 9 Claim, or (ii) payment of the net proceeds from the liquidation of their Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof.  Any Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery:  100%) |
| 10. | **ALLOWED SECURED CLAIM OF HAPPY STATE BANK**<br><br><br><br>(Est. Amt. of Claims:    $1.786 million) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral to the Creditor in full and final satisfaction of the Allowed Class 10 Claim, or (ii) payment of the net proceeds from the liquidation of their Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof.  Any Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery:  100%) |
| 11. | **ALLOWED SECURED CLAIM OF WELLS FARGO BANK**<br><br><br><br>(Est. Amt. of Claims:  $.408) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral to the Creditor in full and final satisfaction of the Allowed Class 11 Claim, or (ii) payment of the net proceeds from the liquidation of their Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof.  Any Deficiency Claim shall be treated as a Class 17 General Unsecured Claim.<br><br>(Est. Recovery:  100%) |
| 12. | **ALLOWED SECURED CLAIM OF CAPITAL ONE BANK N.A.** | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral to the Creditor in full and final satisfaction of the Allowed Class 12 Claim, or (ii) payment of the net proceeds from the liquidation of their Collateral, after the payment of any senior liens and interests on the |

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
|  | (Est. Amt. of Claims: $0.00) | Collateral and any expenses incurred in the liquidation thereof.   Any Deficiency Claim shall be treated as a Class 17 General Unsecured Claim. <br><br> (Est. Recovery: 0%) |
| 13. | **OTHER SECURED CLAIMS** <br><br><br> (Est. Amt. of Claims: $0.00) | Shall be satisfied at the Reorganized Debtor's option by (i) return of the Collateral to the Creditor in full and final satisfaction of the Allowed Class 13 Claim, or (ii) payment of the net proceeds from the liquidation of their Collateral, after the payment of any senior liens and interests on the Collateral and any expenses incurred in the liquidation thereof.  Any Deficiency Claim shall be treated as a Class 17 General Unsecured Claim. <br><br> (Est. Recovery: 100%) |
| 14. | **ALLOWED   CONVENIENCE CLAIMS** <br><br> (Est. Amt. of Claims: $.221) | Shall be satisfied by receipt of twenty-five percent (25%) of Allowed General Unsecured Claim from the Trust Assets within thirty (30) days after the Effective Date in full and final satisfaction of such Allowed Class 14 Claim. <br><br> (Est. Recovery: 25%) |
| 15. | **INTENTIONALLY OMITTED** | **INTENTIONALLY OMITTED** |
| 16. | **ALLOWED   PROJECT PARTNERSHIP-RELATED GUARANTY CLAIMS** <br><br> (Est. Amt. of Claims: $6.3 to $16 million) | Allowed Claims in Classes 16 and 17 shall receive a Pro Rata share of Distributions from the Trust Assets after liquidation and payment in full of Claims in Classes 1 through 14. <br><br> (Est. Recovery: 20% to 40%) |
| 17. | **ALLOWED   GENERAL UNSECURED CLAIMS (Other than those contained in Classes 14 and 16)** <br><br> (Est. Amt. of Claims:   $70.6 to $87.2 million) | Allowed Claims in Classes 16 and 17 shall receive a Pro Rata share of Distributions from the Trust Assets after liquidation and payment in full of Claims in Classes 1 through 14. <br><br> (Est. Recovery: 20% to 40%) |

| CLASS | CLAIMANT | TREATMENT |
|---|---|---|
| 18. | **ALLOWED SUBORDINATED CLAIMS**<br><br>(Est. Amt. of Claims:   $0.00 to $8.138 million) | Shall receive a Pro Rata share of Distributions from the Trust Assets after liquidation and payment in full of Claims in Classes 1 through 17.<br><br>(Est. Recovery: 0%) |
| 19. | **ALLOWED INTERESTS IN THE DEBTOR**<br><br><br><br><br><br>(Est. Amount of Interests: N/A) | The Debtor is a tax-exempt entity under Internal Revenue Code section 501(c)(3). Therefore, there are no Allowed Interests in the Debtor.  However, if such Interests exist, holders of such Interests shall receive no Distributions or retain any property under this Plan on account of such Interests.   Upon confirmation, all Interests shall be cancelled, terminated, and extinguished.<br><br>(Est. Recovery:  N/A) |

4.  **Other Plan Highlights**.  The Plan also:

a.  Appoints the Chapter 11 Trustee to serve as the Liquidating Trustee, whose responsibility will be to (i) take possession and/or control of various assets, including Life Insurance Proceeds, Causes of Action, and Miscellaneous Assets, that fund the Liquidating Trust and (ii) establish the number and amount of claims and then calculate and pay dividends to Creditors.

b.  Reconstitutes the board of directors with members who are experienced in running and managing a business similar in size and complexity as the business of the Reorganized Debtor.

c.  Appoints Alan Weiner of Focus Management Group USA, Inc. to serve as the president and chief executive officer of the Reorganized AHF who along with the reconstituted board of directors will establish and follow a policy designed to maximize value to Creditors.

d.  Provides a flexible approach for the Debtor or the Reorganized Debtor to retain or reject properties currently owned or controlled by AHF.  This approach is designed to maximize value to the Creditors by (i) maximizing opportunities for the Reorganized Debtor to create revenue from the Retained Properties and (ii) focusing on claim avoidance related to tax-credit properties and potential tax-recapture exposure.

# TABLE OF CONTENTS

Article I.        Compromises and Settlements of Disputes.......................................................1
    1.01.    Settlement Authority....................................................................................1
    1.02.    TCB Settlement..............................................................................................1
    1.03.    UMB Settlement.............................................................................................4
    1.04.    National Public Finance Guarantee Corporation ...............................5
    1.05.    Banc One Settlement......................................................................................6

Article II.       Administrative Expenses, Professional Fee Claims, and Tax Priority
                  Claims ...............................................................................................................7
    2.01.    Administrative Claims ...................................................................................7
    2.02.    Professional Fee Claims................................................................................8
    2.03.    Priority Tax Claims.........................................................................................8
    2.04.    U.S. Trustee Fees ............................................................................................8

Article III.      Classification of Claims and Interests.................................................8

Article IV.       Classes of Claims and Interests Impaired and Unimpaired by the Plan ..........11
    4.01.    Unimpaired Classes of Claims...................................................................11
    4.02.    Impaired Classes of Claims and Interests .............................................11
    4.03.    Acceptance of Plan by Class of Claims ..................................................11
    4.04.    Controversy Concerning Impairment. .....................................................12
    4.05.    Nonconsensual Confirmation.....................................................................12

Article V.        Treatment of Claims ....................................................................................12
    5.01.    Allowed Priority Non-Tax Claims – Class 1. ........................................12
    5.02.    Allowed Secured Tax Claims – Class 2....................................................12
    5.03.    Allowed Secured Claims of Texas Capital Bank – Class 3. ...............13
    5.04.    Allowed Secured Claims of BAC Home Loans Servicing L.P. – Class 4.......13
    5.05.    Allowed Secured Claims of Graham Mortgage Corporation – Class 5...........14
    5.06.    Allowed Secured Claims of Gary Graham IRA – Class 6..............................14
    5.07.    Allowed Secured Claims of Cenlar – Class 7. .................................................14
    5.08.    Allowed Secured Claims of Griffiths, Sammarco, Pierre, and Sullivan –
             Class 8..............................................................................................................15
    5.09.    Allowed Secured M&M Lien Claims – Class 9. ...............................................15
    5.10.    Allowed Secured Claims of Happy State Bank – Class 10. ...........................16
    5.11.    Allowed Secured Claims of Wells Fargo Bank – Class 11. ...........................16
    5.12.    Allowed Secured Claims of Capital One Bank, N.A. – Class 12. ..................17
    5.13.    Allowed Other Secured Claims – Class 13..............................................17
    5.14.    Allowed Convenience Claims – Class 14......................................................17
    5.15.    INTENTIONALLY OMITTED – Class 15..................................................18
    5.16.    Project Partnership-Related Guaranty Claims – Class 16..............................18
    5.17.    Allowed General Unsecured Claims – Class 17...........................................18
    5.18.    Allowed Subordinated Claims – Class 18. ...................................................18
    5.19.    Allowed Interests – Class 19.........................................................................18

Article VI.          Means for Execution and Implementation of this Plan....................19
    6.01.         Reorganized Debtor.................................................................19
    6.02.         Purpose of the Reorganized Debtor ..........................................19
    6.03.         Plan Funding ........................................................................19
    6.04.         Corporate Governance of the Reorganized Debtor.......................19
    6.05.         Rules of the Reorganized AHF Board ........................................20
    6.06.         Management of the Reorganized Debtor .....................................21
    6.07.         President's Compensation, Reimbursement, and Indemnification.................22
    6.08.         Continued Operations ............................................................23
    6.09.         Post-Confirmation Records......................................................24
    6.10.         Costs of Continued Operations .................................................24
    6.11.         Limitations on Cash Accumulation and Investment Powers of the
                  Reorganized Debtor ...............................................................24
    6.12.         Reports to be Kept and Reports to be Filed by the Reorganized Debtor........24
    6.13.         Maintenance of Register .........................................................26
    6.14.         Effectuating Documents; Further Transactions ............................26
    6.15.         Release of Liens, and Cancellation of Lien Documents .................26
    6.16.         Settlement of Certain Claims, Including Project Partnership-Related
                  Guaranty Claims and General Unsecured Claims .........................26
    6.17.         Dissolution of the Reorganized Debtor.......................................26

Article VII.         Liquidating Trust ...................................................................27
    7.01.         Establishment of the Liquidating Trust......................................27
    7.02.         Purpose of the Liquidating Trust ..............................................27
    7.03.         Transfer of Assets to the Liquidating Trust .................................27
    7.04.         Satisfaction of Allowed Claims from Liquidating Trust .................27
    7.05.         Liquidating Trustee................................................................27
    7.06.         Appointment of the Liquidating Trustee.....................................28
    7.07.         Compensation of the Liquidating Trustee....................................28
    7.08.         Powers and Duties..................................................................28
    7.09.         Employees and Agents............................................................28
    7.10.         Records to be Kept and Reports to be Filed by the Liquidating Trustee.........29
    7.11.         Duration of Liquidating Trust...................................................29
    7.12.         Effectuating Documents; Further Transactions ............................29
    7.13.         Tax Treatment of the Liquidating Trust......................................29
    7.14.         Preservation of Causes of Actions ............................................29
    7.15.         Termination of Creditors Committee..........................................30
    7.16.         Trust Oversight Committee......................................................30
    7.17.         Agents of the Liquidating Trustee ............................................30
    7.18.         Compensation of Agents to the Liquidating Trustee .....................31

Article VIII.        Treatment of Executory Contracts .............................................31
    8.01.         General Treatment of Executory Contracts: Rejected ...................31
    8.02.         Bar to Rejection Claims ..........................................................32
    8.03.         Rejection Claims ...................................................................32
    8.04.         Compensation, Benefit, and Indemnification Programs .................32

Article IX.        Conditions to Confirmation Date and Effective Date; Effect of Plan
                  Confirmation ..................................................................................32
    9.01.         Conditions Precedent to Confirmation Date ...............................32
    9.02.         Conditions Precedent to the Effective Date. ..............................32
    9.03.         Waiver of Conditions to Occurrence of the Effective Date ..........33
    9.04.         Binding Effect .............................................................................33
    9.05.         Vesting of Assets ........................................................................33
    9.06.         Discharge of Debtor ....................................................................33
    9.07.         Injunction ....................................................................................34
    9.08.         Effectuating Documents; Further Transactions; Timing ...............35
    9.09.         Exculpation ..................................................................................35

Article X.        Claims Objections; Distributions Under the Plan ............................35
    10.01.        Objections to Claims ...................................................................35
    10.02.        Objection Deadline ......................................................................35
    10.03.        Settlement of Objections to Claims .............................................36
    10.04.        Post-Confirmation Amendments to Proofs of Claims ...................36
    10.05.        No Interest on Claims ..................................................................37
    10.06.        Notices of Claims Under 506(b) ..................................................37
    10.07.        Deadline for Governmental Units to Assert a Claim against the Debtor .........37
    10.08.        Setoffs and No Waiver .................................................................37
    10.09.        Duty to Disgorge Overpayments .................................................38
    10.10.        Procedures for Treating and Resolving Disputed and Contingent Claims. .....38
    10.11.        Distributions Under the Plan .......................................................39

Article XI.        Voting and Effect of Rejection by One or More Classes of Claims ................40
    11.01.        Impaired Classes to Vote ............................................................40
    11.02.        Acceptance by Classes ...............................................................41
    11.03.        Section 1129(b) Cramdown .........................................................41

Article XII.        Retention of Jurisdiction ................................................................41
    12.01.        Jurisdiction ..................................................................................41
    12.02.        Examination of Claims .................................................................41
    12.03.        Determination of Disputes ...........................................................41
    12.04.        Additional Purposes ....................................................................42
    12.05.        Failure of the Bankruptcy Court to Exercise Jurisdiction .............44

Article XIII.        Miscellaneous Provisions ...............................................................44
    13.01.        General Notices ...........................................................................44
    13.02.        Plan Supplement .........................................................................45
    13.03.        Exemption From Transfer Taxes ..................................................45
    13.04.        Asserting and Curing Default Under the Plan ..............................45
    13.05.        Compliance with Tax Requirements .............................................45
    13.06.        Revocation or Withdrawal of the Plan ..........................................45
    13.07.        Modification of the Plan ...............................................................46
    13.08.        Due Authorization ........................................................................46
    13.09.        Implementation ............................................................................46

13.10.    Execution of Documents ................................................................................46
13.11.    Bankruptcy Restrictions ................................................................................46
13.12.    Other Documents and Actions ......................................................................46
13.13.    Term of Injunctions or Stays ........................................................................47
13.14.    Integration Clause .........................................................................................47
13.15.    Interpretation .................................................................................................47
13.16.    Severability of Plan Provisions ....................................................................47
13.17.    Governing Law ..............................................................................................47
13.18.    No Admissions ..............................................................................................47
13.19.    Section 1125(e) Good-Faith Compliance .....................................................48
13.20.    Preservation of the Debtor's Tax-Exempt Status .........................................48
13.21.    No Stay of Confirmation Order ....................................................................48
13.22.    AIMCO Portfolio / JPMorgan Chase ...........................................................48
13.23.    Treatment of Non-Estate Property ................................................................48
13.24.    HUD Regulations ..........................................................................................48

Article XIV.       Defined Terms and Rules of Interpretation ...................................................49

**Exhibits**

Exhibit A – Retained Properties
Exhibit B – Rejected Properties
Exhibit C – Liquidating Trust Agreement

## INTRODUCTION

Walter O'Cheskey, the duly appointed and acting Chapter 11 Trustee for American Housing Foundation, and the Official Committee of Unsecured Creditors jointly propose this Joint Chapter 11 Plan for AHF in accordance with Chapter 11 of the United States Bankruptcy Code. Capitalized terms used herein shall have the meanings ascribed to such terms in Article XIV.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the holder of a Claim or Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to claim and interest holders. In this case, the Disclosure Statement was approved by the Bankruptcy Court on October 26, 2010, and has been distributed simultaneously with this Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtor's history, businesses, properties, operations, projections for operations, risk factors, a summary and analysis of the Plan, and certain related matters.

## ARTICLE I.
## COMPROMISES AND SETTLEMENTS OF DISPUTES

**1.01. Settlement Authority.** Pursuant to Bankruptcy Rule 9019(b), the Proponents may compromise and settle various Claims against the Debtor and Claims that the Debtor may have against any Entity. The Confirmation Order shall authorize, and constitute Bankruptcy Court approval of, the compromises and settlements set forth in this Plan pursuant to Bankruptcy Rule 9019(b) and section 1123(b)(3) of the Bankruptcy Code. The Proponents reserve the right to modify the Plan to the extent any compromise and settlement described in this Plan is not approved by the Bankruptcy Court, in whole or in part.

**1.02. TCB Settlement.** Texas Capital Bank asserts a claim against the Estate in an amount close to $10 million. To secure repayment of that claim, Texas Capital Bank asserts a security interest and lien in the Brandywood Property and certain Estate assets, including, without limitation, the Life Insurance Proceeds, and all accounts, cash, inventory, and general intangibles. A current estimate of value for assets claimed by Texas Capital Bank as collateral includes: (a) $25.8 million related to Life Insurance Proceeds, (b) $1.2 million to $3 million related to Brandywood, (c) $1.5 million related to all payment rights to AHF (exclusive of Life Insurance Proceeds), and (d) $2.3 million related to promissory-note receivables from the AIMCO Portfolio. The Proponents dispute the validity, priority, and extent of Texas Capital Bank's asserted lien and security interest in Estate assets. For some time, Texas Capital Bank and the Estate have been involved in various existing and potential litigation related to their respective positions on the validity, priority, and extent of Texas Capital Bank's asserted lien and security interests in Estate assets. The Proponents are confident in the Estate's position against Texas Capital Bank on the validity, priority, and extent of Texas Capital Bank's asserted lien. However, after good-faith, arms-length negotiations, to avoid the expense, inconvenience, delay, and uncertainty of further prosecuting, disputing, or pursuing the claims by and against Texas Capital Bank and the Estate, Texas Capital Bank and the Estate have agreed to fully and completely resolve their respective disputes and claims. A settlement agreement will be executed by the Estate, Texas Capital Bank, and certain other creditors to memorialize the TCB

1

Settlement described herein as announced on the record at the Confirmation Hearing. Significant terms of that compromise and settlement are as follows:

(a) On the Effective Date, Texas Capital Bank shall have an Allowed Class 3 Claim in the amount of $4,000,000.00.

(b) On account of such Allowed Class 3 Claim, and in full satisfaction, release, and discharge of and exchange for such Claim against the Debtor, and the release of all Liens affecting property of the Debtor, Texas Capital Bank shall receive $4,000,000.00 in Cash on the earlier of (i) December 31, 2010, and (ii) the Effective Date.

(c) Upon receipt of $4,000,000.00, Texas Capital Bank will (i) release all Liens against Estate assets, (ii) release all Claims against the Debtor, the Estate, the Chapter 11 Trustee, the Creditors Committee, Reorganized AHF, Liquidating Trust, Trust Assets, and the Liquidating Trustee, (iii) assign to the Liquidating Trust all of its rights to (a) all claims to the funds on deposit in bank account no. 1060316310 maintained with Wells Fargo Bank, N.A., (b) all claims and causes of action asserted against Wells Fargo in Cause No. 10-07447, styled *Texas Capital Bank, N.A. v. Wells Fargo Bank National Association*, currently proceeding in the District Court for the 66th Judicial District, Dallas County, Texas, and (iv) dismiss with prejudice the TCB Litigation.

(d) TCB reserves and retains all of its Liens, Claims, interests, rights, causes of action, claims, and security interests against Brandywood and the Brandywood Property, including, without limitation, any claims or causes of action held by TCB against or related to any mortgagee title-insurance policy, title-insurance company, law firm, etc. (collectively, the "**Brandywood Claims**") and the Brandywood Claims are not compromised or released in any way under this Plan.

(e) TCB shall pay 50% of all net proceeds of any recoveries it receives from the Brandywood Claims to the Liquidating Trust after the payment of (i) TCB's reasonable fees and expenses related to the Brandywood Claims; and (ii) TCB's previously incurred fees and expenses of $110,000.00 related to Brandywood.

(f) TCB shall have full settlement authority and discretion related to the Brandywood Claims and may resolve, compromise, or settle the Brandywood Claims in its sole and absolute discretion.  TCB's counsel shall keep the Liquidating Trustee

and Robert L. Templeton reasonably informed of the status of its pursuit of the Brandywood Claims.

(g) If TCB shall ever decide in its sole and absolute discretion to not pursue the Brandywood Claims, TCB shall offer to assign and convey the Brandywood Claims to the Liquidating Trust for $10.00.

(h) Upon the occurrence of the Effective Date, Adversary Proceeding Number 10-02021 filed by Robert L. Templeton, as Independent Executor of the Frances E. Maddox Estate shall be dismissed with prejudice.

(i) Reorganized AHF, the Liquidating Trustee, and Brandywood shall cooperate with TCB in the resolution of the Brandywood Claims and/or the sale of the Brandywood Property and shall execute any documents or agreements necessary to effectuate any settlement of the Brandywood Claims or sale of the Brandywood Property.

(j) The Debtor, the Estate, the Chapter 11 Trustee, the Creditors Committee, Reorganized AHF, the Liquidating Trust, the Liquidating Trustee, Brandywood, and the Brandywood Property, and each holder of a Claim that does not vote to reject the Plan shall forever release, acquit and discharge Texas Capital Bank and its affiliates, subsidiaries, parents, predecessors, successors, assigns, officers, directors, shareholders, employees, agents, and attorneys, (the "**TCB Release**") of and from any claims, actions, demands and/or causes of action, asserted or unasserted, specifically including, without limitation, any claims asserted or that could have been asserted in the TCB Litigation, the Bankruptcy Case, or arising out of or in any way related to the negotiation, formulation, or preparation of the Plan, the TCB Litigation, the Bankruptcy Case, the Brandywood Property, or Brandywood as well as claims arising under any circumstance known and existing as of the date and time of execution hereof, save and except for the obligations specifically outlined under the Plan, and any claims and/or causes of action, that are or may be related to any breach, enforcement, or interpretation of the Plan or the obligations of the Parties thereunder.

The Proponents believe that the terms of the TCB Settlement are fair and equitable and in the best interests of the Estate. As a result, the TCB Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

3

**1.03. UMB Settlement**.    UMB Bank, N.A. ("**UMB**"), is the indenture trustee for certain tax-exempt bonds.  These bonds are related to certain LLCs – THEOP, LLC, WHEOP, LLC; AHF Tulsa, LLC; DHEOP, LLC; AHF Arizona LLC; AHF Florida, LLC; or Amarillo Affordable Housing, L.L.C. - directly or indirectly, owned or controlled by AHF (collectively, the "**LLCs**").  UMB and the Proponents have finalized a strategy that will allow AHF to dispose of or terminate its interests in the LLCs in the most cost-efficient manner for the bankruptcy estate, while at the same time provide some benefit to UMB.  To memorialize that strategy, the following language will be inserted into the Confirmation Order:

> Notwithstanding any other provision of this Plan, if the Reorganized AHF determines to abandon, dispose of, or otherwise transfer all or any portion of its sole membership interest in the LLCs, (a) UMB shall have the right to designate a substitute member for the LLCs, and (b) the Reorganized AHF shall continue and maintain the existing sole membership interests until the earlier of (x) the date a substitute member for the LLCs is designated by UMB and (y) nine (9) months from the Confirmation Date.  From the Confirmation Date to the date a substitute member is designated or the date that is nine (9) months after the Confirmation Date, whichever occurs first, UMB shall reimburse Reorganized AHF in an amount that equals $5.83 per housing unit per month (the "**UMB Monthly Payment**"), which is the amount estimated to reimburse Reorganized AHF for all reasonable costs and expenses (including allocated and out-of-pocket) incurred as a result of its continuance as the extant sole member in the LLCs within ten (10) days after receipt of an invoice from the Reorganized Debtor.  The UMB Monthly Payment shall be paid one month in advance, starting in December 2010; provided, however, that the amount of the UMB Monthly Payment will be reduced by the number of housing units in any of the LLCs for which the sole member has been substituted in the preceding month.

> Notwithstanding the foregoing, (a) UMB is entitled to exercise any and all remedies available to it under the bond documents entered into in connection with the bonds at anytime regardless of any decision by the Reorganized Debtor with respect to its sole membership interest in the LLCs and (b) Reorganized Debtor may abandon, dispose of, or otherwise transfer all or a portion of the sole membership interest in LLCs if UMB does not reimburse the Reorganized Debtor by the deadline set forth above.

The Proponents believe that the terms of the UMB Settlement are fair and equitable and in the best interests of the Estate.  As a result, the UMB Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

**1.04. National Public Finance Guarantee Corporation**.  National Public Finance Guarantee Corporation ("**NPFGC**"), as successor in interest to MBIA Insurance Corporation, is the party in interest relating to and current holder of certain tax-exempt bonds relating to AHF Community Development LLC ("**Walden I LLC**"), whose sole member is AHF.  NPFGC and the Proponents have finalized a strategy that will allow AHF to dispose of or terminate its interests in the Walden I LLC in the most cost-efficient manner for the bankruptcy estate, while at the same time provide some benefit to NPFGC through an orderly and coordinated transfer of the Walden I LLC interest.  To memorialize that strategy, the following language will be inserted into the Confirmation Order:

> Notwithstanding any other provision of this Plan, if the Reorganized AHF determines to abandon, dispose of, or otherwise transfer all or any portion of the sole membership interest in the Walden I LLC, (a) NPFGC shall have the right to designate a substitute member for the Walden I LLC, and (b) the Reorganized AHF shall continue and maintain the existing sole membership interest until the earlier of (x) the date a substitute member for the Walden I LLC is designated by NPFGC and (y) nine (9) months from the Confirmation Date (the "**Holdover Date**").  From the Confirmation Date to the Holdover Date, the indenture trustee for the underlying tax-exempt bond transaction (the "**Bond Transaction**") shall pay Reorganized AHF in the amount of $5.83 per housing unit per month (or approximately $11,830.00 per month in the aggregate, based on the current number of housing units relating to the Walden I, LLC) (the "**Walden I Monthly Payment**"), which is the amount estimated to reimburse the Reorganized AHF for all reasonable costs and expenses (including allocated and out-of-pocket) incurred as a result of its continuance as the extant sole member in the Walden I LLC within ten (10) days after receipt of an invoice from the Reorganized Debtor.  The Walden I Monthly Payment shall be paid one month in advance, starting in December 2010.

> In connection with the foregoing, (a) NPFG agrees to instruct the indenture trustee for the Bond Transaction as necessary to ensure that the Monthly Payment is timely made to the Reorganized AHF and (b) NPFG hereby represents and warrants to the Proponents and the Reorganized AHF that NPFG has the authority to so instruct the indenture trustee and that the Monthly Payment will be made.

> Notwithstanding the foregoing, it is acknowledged and agreed that (a) NPFGC is entitled to exercise any and all remedies available to it under the related bond documents regardless of any decision by the Reorganized AHF with respect to the disposition of its sole membership interest in any Walden I LLC and (b) Reorganized Debtor may abandon, dispose of, or otherwise transfer all or a portion of the

sole membership interest in Walden I LLC if NPFGC does not
reimburse the Reorganized Debtor by the deadline set forth above.

In connection with any sale by NPFGC to a third party of the tax-exempt
bonds relating to Walden I LLC, the Reorganized AHF shall reasonably
cooperate to effect the transfer of the membership interest in Walden I
LLC to or at the direction of such third party transferee.   If the
Reorganized AHF is forced to incur costs for such cooperation, NPFGC
agrees to reimburse the Reorganized AHF for such reasonable costs

The Proponents believe that the terms of the National Public Finance Guarantee
Corporation Settlement are fair and equitable and in the best interests of the Estate.   As a result,
the National Public Finance Guarantee Corporation Settlement should be approved by the
Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

**1.05. Banc One Settlement**.   The Banc One Settling Parties are tax-credit limited
partners in partnerships in which AHF or an Affiliate of AHF is a general partner.   In addition,
AHF may have executed a guaranty agreement related to these partnerships.   The Banc One
Settling Parties assert claims against the Estate related to these partnerships, partnership
agreement, guaranties, and otherwise, collectively, in amount of approximately $5 million in
liquidated damages and an unknown amount in contingent, unliquidated damages related to,
among other things, guaranty and partnership agreements executed by AHF and/or AHF-
affiliated entities.

The Proponents dispute the validity and amount of the claims asserted by the Banc One
Settling Parties.   For some time, the Banc One Settling Parties and the Estate have been involved
in negotiations to settle their disputes related to, among other things, all claims, known or
unknown, liquidated or unliquidated, contingent or otherwise, asserted by the Banc One Settling
Parties and ongoing future relationship related to partnerships in which AHF or an affiliated
entity is a partner.   The Proponents are confident in the Estate's position against the Banc One
Settling Parties.   However, after good-faith, arms-length negotiations, to avoid the expense,
inconvenience, delay, and uncertainty of further prosecuting, disputing, or pursuing the claims by
and against the Banc One Settling Parties and the Estate, Banc One Settling Parties and the
Estate have agreed to fully and completely resolve their respective disputes and claims.
Significant terms of that compromise and settlement (the "**Banc One Settlement**") are as
follows:

a.   On or before 30 days after the Effective Date, in full and final
satisfaction of all Claims against the Debtor, the Estate, the
Chapter 11 Trustee, the Committee, the Reorganized Debtor,
and any Affiliate of the Debtor, the Estate will pay
$925,000.00 to the Banc One Settling Parties.

b.   Upon receipt of $925,000.00 and a settlement agreement
executed by the Estate and the Banc One, the Banc One
Settling Parties will withdraw all proofs of Claim filed against
the Debtor or the Estate and release all Claims of whatever
kind, existing now or in the future, known or unknown, fixed

or contingent, liquidated or unliquidated, common-law or statutory based, matured or unmatured, secured or unsecured, asserted or assertable, directly or indirectly or derivatively, in law, equity or otherwise, against the Debtor, the Estate, the Chapter 11 Trustee, the Committee, Reorganized AHF, any Affiliate of the Debtor, and the Liquidating Trust, and any of their officers, directors, employees, representatives, agents, assigns, attorneys, and affiliates, including specifically, without limitation, (i) any proof of Claim filed or that could have been filed by the Banc One Settling Parties, (ii) any Claim related to a guaranty executed by AHF or any Affiliate of AHF, and (iii) any Claim related to any partnership agreement executed by AHF or an affiliate of AHF.  To be clear, if Reorganized AHF or an Affiliate of Reorganized AHF continues in its capacity as a general partner for a partnership in which any of the Banc One Settling Parties is a partner, neither the Reorganized AHF nor an Affiliate of the Reorganized AHF shall have any liability, obligation, or exposure to anyone, including the Banc One Settling Parties, for such continuation or action as a general partner.  A copy of the proposed settlement agreement between the Estate and the Banc One Settling Parties will be included in the Plan Supplement.  Upon payment of the $925,000.00, notwithstanding anything herein to the contrary, neither the Estate nor the Reorganized Debtor will have liability to the Banc One Settling Parties for any reason.

The Proponents believe that the terms of the Banc One Settlement are fair and equitable and in the best interests of the Estate.  As a result, the Banc One Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

## ARTICLE II.
## ADMINISTRATIVE EXPENSES, PROFESSIONAL FEE CLAIMS, AND TAX PRIORITY CLAIMS

**2.01. Administrative Claims.**  All requests for payment of Administrative Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtor, the Proponents, the Liquidating Trustee, and the U.S. Trustee no more than thirty (30) days after the Effective Date.  Any such Administrative Claim for which an application or request for payment is not filed by the Administrative Claim Bar Date shall be discharged and forever barred, and shall not be entitled to any Distributions under the Plan.  On or as soon as reasonably practicable thereafter, the later of (a) the Effective Date, (b) the date such Administrative Claim becomes an Allowed Administrative Claim, and (c) the date such Administrative Claim becomes payable pursuant to any agreement between the holder of such Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, the holder of each Allowed Administrative Claim shall receive in full satisfaction, release, settlement, and discharge of such Allowed Administrative Claim: (a) cash equal to the unpaid portion of such Allowed Administrative Claim; or (b) treatment in accordance with the terms of any written agreement between the Debtor or the

Reorganized Debtor, as applicable, regarding such Allowed Administrative Claim; *provided, however*, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during this Bankruptcy Case will be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

**2.02. Professional Fee Claims.**  All requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtor, the Liquidating Trustee, and the U.S. Trustee no more than sixty (60) days after the Effective Date.  Any such Professional Fee Claim for which an application or request for payment is not filed within that time period shall be discharged and forever barred, and shall not be entitled to any Distributions under the Plan.  A timely filed Professional Fee Claim may be objected to after the Effective Date.  A hearing on a timely filed Professional Fee Claim and an objection thereto may be held after the Effective Date.  Payments to Professionals for services rendered after the Effective Date may be paid by, as applicable, (a) the Reorganized Debtor in the ordinary course of business or (b) the Liquidating Trustee pursuant to the terms of the Liquidating Trust Agreement.  No Professional Fee Claim shall be Allowed on account of services rendered or expenses incurred by a Professional prior to the Effective Date unless the payment for such services and expenses has been approved by the Bankruptcy Court.

**2.03. Priority Tax Claims.**  On or as soon as reasonably practicable after, the later of (a) the Effective Date and (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Liquidating Trustee, (a) Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (b) treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code, or (c) such different treatment as to which such holder and the Debtor or the Reorganized Debtor, as applicable, will have agreed on in writing.  To the extent an election is made under section 1129(a)(9)(C) of the Bankruptcy Code for Priority Tax Claims to be paid by regular installment payments in Cash, the holder of an Allowed Priority Tax Claim will receive quarterly payments on the last day of each quarter, of principal and interest, at an interest rate of six and one-half percent (6 ½ %) per annum with the final payment due on or before April 21, 2014.  The first installment will be made at the end of the first full quarter after the Effective Date.

**2.04. U.S. Trustee Fees.**  The Reorganized Debtor shall be responsible for timely payment of U.S. Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) after the Confirmation Date.  Any fees due as of the most recent quarterly invoice prior to the Confirmation Date will be paid in full within thirty (30) days after the Effective Date. Thereafter, the Reorganized Debtor will pay all U.S. Trustee quarterly fees as they accrue until the Bankruptcy Case is closed.

### ARTICLE III.
### CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtor.  Except Administrative Claims, Professional Fee Claims, and Priority Tax Claims, all Claims and Interests are placed in the

Classes as set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II above.

A Claim or Interest is placed in a particular Class only to the extent the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class only for the purpose of voting on and receiving distributions pursuant to the Plan to the extent such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date. Notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim that is not an Allowed Claim.

The Plan resolves, settles, and compromises all Claims against the Debtor or property of the Debtor of whatever character, whether Disputed, contingent, or unliquidated, or whether Allowed by the Bankruptcy Court pursuant to section 502(a) of the Bankruptcy Code.

**Summary Chart of Classification of Claims Against and Interests in the Debtor**

| CLASS | CLAIMANT | IMPAIRED or NOT | VOTE |
|---|---|---|---|
| 1. | **ALLOWED PRIORITY NON-TAX CLAIMS** | Class 1 is Unimpaired under the Plan. | No. Holders are deemed to have accepted the Plan.<br><br>Est. Recovery: 100% |
| 2. | **ALLOWED SECURED TAX CLAIMS** | Class 2 is Unimpaired under the Plan. | No. Holders are deemed to have accepted the Plan.<br><br>Est. Recovery: 100% |
| 3. | **ALLOWED SECURED CLAIMS OF TEXAS CAPITAL BANK** | Class 3 is Impaired under the Plan. | Yes.<br><br>Est. Recovery: 100% |
| 4. | **ALLOWED SECURED CLAIMS OF BAC HOME LOANS SERVICING L.P.** | Class 4 is Impaired under the Plan | Yes.<br><br>Est. Recovery: 100% |
| 5. | **ALLOWED SECURED CLAIMS OF GRAHAM MORTGAGE CORPORATION** | Class 5 is Impaired under the Plan | Yes.<br><br>Est. Recovery: 100% |

9

| CLASS | CLAIMANT | IMPAIRED or NOT | VOTE |
|---|---|---|---|
| 6. | **ALLOWED SECURED CLAIMS OF GARY GRAHAM IRA** | Class 6 is Impaired under the Plan | Yes.<br><br>Est. Recovery:  100% |
| 7. | **ALLOWED SECURED CLAIMS OF CENLAR** | Class 7 is Impaired under the Plan | Yes.<br><br>Est. Recovery:  100% |
| 8. | **ALLOWED SECURED CLAIMS OF GRIFFITHS, SAMMARCO, PIERRE AND SULLIVAN** | Class 8 is Impaired under the Plan | Yes.<br><br>Est. Recovery:  100% |
| 9. | **ALLOWED SECURED M&M LIEN CLAIMS** | Class 9 is Impaired under the Plan. | Yes.<br><br>Est. Recovery:  100% |
| 10. | **ALLOWED SECURED CLAIM OF HAPPY STATE BANK** | Class 10 is Impaired under the Plan. | Yes.<br><br>Est. Recovery:  100% |
| 11. | **ALLOWED SECURED CLAIM OF WELLS FARGO BANK** | Class 11 is Impaired under the Plan. | Yes.<br><br>Est. Recovery:  100% |
| 12. | **ALLOWED SECURED CLAIM OF CAPITAL ONE BANK, N.A.** | Class 12 is Impaired under the Plan. | Yes.<br><br>Est. Recovery:  0% |
| 13. | **OTHER SECURED CLAIMS** | Class 13 is Impaired under the Plan. | Yes.<br><br>Est. Recovery:  100% |
| 14. | **ALLOWED CONVENIENCE CLAIMS** | Class 14 is Impaired under the Plan. | Yes.<br><br>Est. Recovery 25% |
| 15. | **INTENTIONALLY OMITTED** | **INTENTIONALLY OMITTED** | **INTENTIONALLY OMITTED** |

| CLASS | CLAIMANT | IMPAIRED or NOT | VOTE |
|---|---|---|---|
| 16. | **ALLOWED PROJECT PARTNERSHIP-RELATED GUARANTY CLAIMS** | Class 16 is Impaired under this Plan. | Yes.<br><br>Est. Recovery 20% to 40% |
| 17. | **ALLOWED GENERAL UNSECURED CLAIMS** | Class 17 is Impaired under the Plan. | Yes.<br><br>Est. Recovery 20% to 40% |
| 18. | **ALLOWED SUBORDINATED CLAIMS** | Class 18 is Impaired under the Plan. | Yes.<br><br>Est. Recovery 0% |
| 19. | **ALLOWED INTERESTS IN THE DEBTOR** | The Debtor is a tax-exempt entity under Internal Revenue Code section 501(c)(3). Therefore, there are no Allowed Interests in the Debtor. However, if such Interests exist, they are Impaired under the Plan, and holders of Interests are deemed to have rejected the Plan. | No.<br><br>Est. Recovery N/A |

**ARTICLE IV.**
**CLASSES OF CLAIMS AND INTERESTS IMPAIRED**
**AND UNIMPAIRED BY THE PLAN**

**4.01.  Unimpaired Classes of Claims.**  Claims against the Debtor in Classes 1 and 2 are Unimpaired under the Plan, and the holders of those Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

**4.02.  Impaired Classes of Claims and Interests.**  Claims against the Debtor in Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, and 18 are Impaired under the Plan.  Holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, and 18 are entitled to vote to accept or reject the Plan.  The Debtor is a tax-exempt entity under Internal Revenue Code section 501(c)(3). Therefore, there are no Interests in the Debtor.

**4.03.  Acceptance of Plan by Class of Claims.**  A Class of Claims shall have accepted the Plan if the Plan is accepted by Creditors holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims within such Class for which votes are cast by the Voting Deadline.

11

### 4.04.  Controversy Concerning Impairment.

If a controversy as to whether any Claim or any Class of Claims is Impaired under the Plan arises, the Bankruptcy Court will determine the controversy, after notice and a hearing.

### 4.05.  Nonconsensual Confirmation.

If any Class of Claims is determined to be Impaired by the Bankruptcy Court, and if such Impaired Class of Claims votes not to accept the Plan by the requisite statutory majority required by section 1126(c) of the Bankruptcy Code, the Proponents reserve the right to:

(a)    reclassify any Claim, including reclassifying any Impaired Claim as Unimpaired;

(b)    amend the Plan; or

(c)    ask the Bankruptcy Court to confirm the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE V.
## TREATMENT OF CLAIMS

### 5.01.  Allowed Priority Non-Tax Claims – Class 1.

(a)    **Impairment and Voting**.  Class 1 is Unimpaired under the Plan.  The holders of Allowed Priority Non-Tax Claims are presumed to have accepted the Plan.

(b)    **Treatment**.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim has been paid prior to the Effective Date, or agrees to different treatment, each holder of an Allowed Priority Non-Tax Claim against the Debtor shall receive, in full satisfaction, release, and discharge of and exchange for such Claim, Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim no later than the Distribution Date.

### 5.02.  Allowed Secured Tax Claims – Class 2.

(a)    **Impairment and Voting**.  Class 2 is Unimpaired under the Plan.  Class 2 shall include only Allowed Secured Tax Claims.  The holders of Class 2 Secured Tax Claims are presumed to have accepted the Plan.

(b)    **Claim and Lien Determination**.  Each Class 2 Claim shall retain its Lien and Security Interest in the Collateral that secured that Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of any Class 2 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of a Class 2 Claim.

(c)    **Treatment**.  Each Class 2 Claim that is an Allowed Claim shall be satisfied at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the Creditor in full and final satisfaction of the Creditor's Claim, or (ii) payment of the proceeds upon liquidation of the Collateral, less any expenses

12

incurred in the liquidation. Any Deficiency Claim of a Class 2 Creditor shall be included as a Class 17 General Unsecured Claim or a Priority Tax, as determined by the Bankruptcy Court or agreed between the holder of such Claim, on the one hand, and the Liquidating Trustee, on the other hand.

### 5.03. Allowed Secured Claims of Texas Capital Bank – Class 3.

(a)     **Impairment and Voting**. Class 3 is Impaired under the Plan. Class 3 shall include only Secured Claims of Texas Capital Bank. Each holder of a Class 3 Claim is entitled to vote to accept or reject the Plan.

(b)     **Treatment**. Pursuant to the TCB Settlement, Texas Capital Bank shall have an Allowed Class 3 Claim in the amount of $4,000,000.00. On account of such Allowed Class 3 Claim, and in full satisfaction, release, and discharge of and exchange for such Claim against the Debtor, and the release of all Liens affecting property of the Debtor, Texas Capital Bank shall receive $4,000,000.00 in Cash and the TCB Release on the earlier of (i) December 31, 2010, and (ii) the Effective Date. Texas Capital Bank shall have no Deficiency Claim.

In addition, upon receipt of $4,000,000.00, Texas Capital Bank will (i) release all Liens against Estate assets, (ii) release all Claims against the Debtor, the Estate, the Chapter 11 Trustee, the Creditors Committee, Reorganized AHF, Liquidating Trust, Trust Assets, and the Liquidating Trustee, (iii) assign to the Liquidating Trust all of its rights to (a) all claims to the funds on deposit in bank account no. 1060316310 maintained with Wells Fargo Bank, N.A., (b) all claims and causes of action asserted against Wells Fargo in Cause No. 10-07447, styled *Texas Capital Bank, N.A. v. Wells Fargo Bank National Association*, currently proceeding in the District Court for the 66th Judicial District, Dallas County, Texas, and (iv) dismiss with prejudice the TCB Litigation.

### 5.04. Allowed Secured Claims of BAC Home Loans Servicing L.P. – Class 4.

(a)     **Impairment and Voting**. Class 4 is Impaired under the Plan. Class 4 shall include only Secured Claims of BAC Home Loans Servicing L.P. Each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan.

(b)     **Claim and Lien Determination**. Each holder of a Class 4 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 4 Claim on the Effective Date in the same priority at that time. The amount, validity, extent, value, and priority of each Class 4 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 4 Claim.

(c)     **Treatment**. Each Class 4 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 4 Claim in full and final satisfaction of that holder's Class 4 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 4 Claim, less any expenses incurred in the liquidation. Any Deficiency Claim of the holder of a Class 4 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.05.  Allowed Secured Claims of Graham Mortgage Corporation – Class 5.

(a)    **Impairment and Voting**.  Class 5 is Impaired under the Plan.  Class 5 shall include only Secured Claims of Graham Mortgage Corporation.  Each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.

(b)    **Claim and Lien Determination**.  Each holder of a Class 5 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 5 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 5 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 5 Claim.

(c)    **Treatment**.  Each Class 5 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 5 Claim in full and final satisfaction of that holder's Class 5 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 5 Claim, less any expenses incurred in the liquidation.  Any Deficiency Claim of the holder of a Class 5 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.06.  Allowed Secured Claims of Gary Graham IRA – Class 6.

(a)    **Impairment and Voting**.  Class 6 is Impaired under the Plan.  Class 6 shall include only Secured Claims of Gary Graham IRA.  Each holder of a Class 6 Claim is entitled to vote to accept or reject the Plan.

(b)    **Claim and Lien Determination**.  Each holder of a Class 6 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 6 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 6 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 6 Claim.

(c)    **Treatment**.  Each Class 6 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 6 Claim in full and final satisfaction of that holder's Class 6 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 6 Claim, less any expenses incurred in the liquidation.  Any Deficiency Claim of the holder of a Class 6 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.07.  Allowed Secured Claims of Cenlar – Class 7.

(a)    **Impairment and Voting**.  Class 7 is Impaired under the Plan.  Class 7 shall include only Secured Claims of Cenlar.  Each holder of a Class 7 Claim is entitled to vote to accept or reject the Plan.

(b)    **Claim and Lien Determination**.  Each holder of a Class 7 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 7 Claim on the Effective Date

14

in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 7 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 7 Claim.

(c)      **Treatment**.  Each Class 7 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 7 Claim in full and final satisfaction of that holder's Class 7 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 7 Claim, less any expenses incurred in the liquidation.  Any Deficiency Claim of the holder of a Class 7 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.08.  Allowed Secured Claims of Griffiths, Sammarco, Pierre, and Sullivan – Class 8.

(a)      **Impairment and Voting**.  Class 8 is Impaired under the Plan.  Class 8 shall include only the Secured Claims of Griffiths, Sammarco, Pierre, and Sullivan.  Each holder of a Class 8 Claim is entitled to vote to accept or reject the Plan.

(b)      **Claim and Lien Determination**.  Each holder of a Class 8 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 8 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 8 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 8 Claim.

(c)      **Treatment**.  Each Class 8 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 8 Claim in full and final satisfaction of that holder's Class 8 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 8 Claim, less any expenses incurred in the liquidation.  Any Deficiency Claim of the holder of a Class 8 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.09.  Allowed Secured M&M Lien Claims – Class 9.

(a)      **Impairment and Voting**.  Class 9 is Impaired under the Plan.  Class 9 shall include only Secured M&M Lien Claims.  Each holder of a Class 9 Claim is entitled to vote to accept or reject the Plan.

(b)      **Claim and Lien Determination**.  Each holder of a Class 9 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 9 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 9 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 9 Claim.

(c)      **Treatment**.  Each Class 9 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 9 Claim in full and final

satisfaction of that holder's Class 9 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 9 Claim, less any expenses incurred in the liquidation. Any Deficiency Claim of the holder of a Class 9 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.10.   Allowed Secured Claims of Happy State Bank – Class 10.

(a)    **Impairment and Voting**.  Class 10 is Impaired under the Plan.  Class 10 shall include only Secured Claims of Happy State Bank.  Each holder of a Class 10 Claim is entitled to vote to accept or reject the Plan.

(b)    **Claim and Lien Determination**.  Each holder of a Class 10 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 10 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 10 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 10 Claim.

(c)    **Treatment**.  Each Class 10 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 10 Claim in full and final satisfaction of that holder's Class 10 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 10 Claim, less any expenses incurred in the liquidation. Any Deficiency Claim of the holder of a Class 10 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.11.   Allowed Secured Claims of Wells Fargo Bank – Class 11.

(a)    **Impairment and Voting**.  Class 11 is Impaired under the Plan.  Class 11 shall include only Secured Claims of Wells Fargo Bank.  Each holder of a Class 11 Claim is entitled to vote to accept or reject the Plan.

(b)    **Claim and Lien Determination**.  Each holder of a Class 11 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 11 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 11 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 11 Claim.

(c)    **Treatment**.  Each Class 11 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 11 Claim in full and final satisfaction of that holder's Class 11 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 11 Claim, less any expenses incurred in the liquidation. Any Deficiency Claim of the holder of a Class 11 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.12.  Allowed Secured Claims of Capital One Bank, N.A. – Class 12.

(a)    **Impairment and Voting**.  Class 12 is Impaired under the Plan.  Class 12 shall include only Secured Claims of Capital One Bank, N.A.  Each holder of a Class 12 Claim is entitled to vote to accept or reject the Plan.

(b)    **Claim and Lien Determination**.  Each holder of a Class 12 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 12 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 12 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 12 Claim.

(c)    **Treatment**.  Each Class 12 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 12 Claim in full and final satisfaction of that holder's Class 12 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 12 Claim, less any expenses incurred in the liquidation. Any Deficiency Claim of the holder of a Class 12 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.13.  Allowed Other Secured Claims – Class 13.

(a)    **Impairment and Voting**.  Class 13 is Impaired under the Plan.  Class 13 shall include only Other Secured Claims.  Each holder of a Class 13 Claim is entitled to vote to accept or reject the Plan.

(b)    **Claim and Lien Determination**.  Each holder of a Class 13 Claim shall retain its Lien and Security Interest in the Collateral that secured the Class 13 Claim on the Effective Date in the same priority at that time.  The amount, validity, extent, value, and priority of each Class 13 Claim will be subject to determination by the Bankruptcy Court or pursuant to an agreement between the Reorganized Debtor and the holder of each Class 13 Claim.

(c)    **Treatment**.  Each Class 13 Claim that is an Allowed Claim shall be satisfied, at the Liquidating Trustee's option, in full satisfaction, release, and discharge of and exchange for such Claim, by (i) return of the Collateral to the holder of each Class 13 Claim in full and final satisfaction of that holder's Class 13 Claim, or (ii) payment of the proceeds upon liquidation of the Collateral that secures that Class 13 Claim, less any expenses incurred in the liquidation. Any Deficiency Claim of the holder of a Class 13 Claim shall be included as a Class 17 General Unsecured Claim.

### 5.14.  Allowed Convenience Claims – Class 14.

(a)    **Impairment and Voting**.  Class 14 is Impaired under the Plan.  Each holder of a Class 14 Claim is entitled to vote to accept or reject the Plan.

(b)    **Treatment**.  Except to the extent that a holder of a Convenience Claim in Class 14 has been paid prior to the Effective Date, or agrees to a different treatment, after payment in full of Claims in Classes 1 through 13, in full satisfaction, release, and discharge of and

17

exchange for the Convenience Claim, each holder of a Convenience Claim shall receive 25% of their Allowed Convenience Claim from the net proceeds of the Trust Assets within thirty (30) days of the Effective Date.

### 5.15.  INTENTIONALLY OMITTED – Class 15

### 5.16.  Project Partnership-Related Guaranty Claims – Class 16.

(a)  **Impairment and Voting**.  Class 16 is Impaired under the Plan.  Each holder of a Class 16 Claim is entitled to vote to accept or reject the Plan.

(b)  **Treatment**.  Except to the extent that a holder of a Project Partnership-Related Guaranty Claim in Class 16 has been paid prior to the Effective Date, or agrees to a different treatment, after payment in full of or reservation for Claims in Classes 1 through 14, each holder of a Project Partnership-Related Guaranty Claim shall receive a Pro Rata share of Distributions from the net proceeds of the Trust Assets.  The Liquidating Trustee may make multiple Distributions to holders of Allowed Class 16 Claims.  The Liquidating Trustee shall determine the amount and timing of such Distributions.  For the avoidance of doubt, the treatment afforded Allowed Class 16 Claims shall be the same treatment afforded Allowed Class 17 Claims.

### 5.17.  Allowed General Unsecured Claims – Class 17.

(a)  **Impairment and Voting**.  Class 17 is Impaired under the Plan.  Each holder of a Class 17 Claim is entitled to vote to accept or reject the Plan.

(b)  **Treatment**.  Except to the extent that a holder of an Allowed General Unsecured Claim in Class 17 has been paid prior to the Effective Date, or agrees to a different treatment, after payment in full of or reservation for Claims in Classes 1 through 14, each holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of Distributions from the net proceeds of the Trust Assets.  The Liquidating Trustee may make multiple Distributions to holders of Allowed Class 17 Claims.  The Liquidating Trustee shall determine the amount and timing of such Distributions.  For the avoidance of doubt, the treatment afforded Allowed Class 17 Claims shall be the same treatment afforded Allowed Class 16 Claims.

### 5.18.  Allowed Subordinated Claims – Class 18.

(a)  **Impairment and Voting**.  Class 18 is Impaired under the Plan.  Each holder of a Class 18 Claim is entitled to vote to accept or reject the Plan.

(b)  **Treatment**.  After payment in full of or reservation for Claims in Classes 1 through 17, holders of Allowed Class 18 Claims shall receive a Pro Rata share of Distributions from the net proceeds of the Trust Assets.  It is anticipated that there will be no Distributions to any holders of a Class 18 Claim.

### 5.19.  Allowed Interests – Class 19.

(a)  **Impairment and Voting**.  The Debtor is a tax-exempt entity under Internal Revenue Code section 501(c)(3). Therefore, there are no Allowed Interests in the Debtor.

However, if such Interests exist, they are Impaired under the Plan. Holders of Class 19 Interests will receive nothing under this Plan; as result, they are deemed to have rejected the Plan.

(b)    **Treatment**.  Holders of Interests in Class 19 are not entitled to receive any Distributions or retain any property under this Plan on account of such Interests.  Upon confirmation, all Interests shall be cancelled, terminated, and extinguished.  Notwithstanding the foregoing, the Reorganized Debtor will use its best efforts to continue to operate as a Texas non-profit corporation exempt from federal income taxation as a result of being listed in Internal Revenue Code section 501(c)(3) to the extent necessary to implement the terms of this Plan, including any settlement approved or incorporated herein.

## ARTICLE VI.
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

**6.01.  Reorganized Debtor.**  From and after the Effective Date, the Reorganized Debtor will exist as a separate corporate entity or other business entity form, with all of the powers of a corporation qualified as a tax-exempt entity under Internal Revenue Code section 501(c)(3), pursuant to the Debtor's certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to this Plan.  Notwithstanding anything to the contrary herein, the Reorganized Debtor may change its status of incorporation or alter its corporate structure or business form on or after the Effective Date as determined by the Reorganized AHF Board.  The Reorganized Debtor will not amend its bylaws to disqualify itself under various governmental programs and entitlements unless it determines that such disqualification is in its best interests.

**6.02.  Purpose of the Reorganized Debtor.**  On the Effective Date, as more fully discussed below, all Assets other than Retained Properties, Rejected Properties, and the Operating Fund Reserve will be transferred to the Liquidating Trust.  The Liquidating Trust will liquidate all Trust Assets and distribute the proceeds of the Trust Assets to Creditors on account of their Allowed Claims.  From and after the Effective Date, the Reorganized Debtor will continue to exist and will terminate/divest its ownership interests in the Rejected Properties, in its sole and absolute discretion, in an organized manner designed to reduce the amount and number of Claims against the Estate.  The Reorganized Debtor will continue to stabilize and operate the Retained Properties pursuant to the Budget and use its best efforts to sell the Retained Properties as either a "going-concern" or in various groups within twenty-four (24) months after the Effective Date, unless the Reorganized AHF, the Liquidating Trustee, and the Trust Oversight Committee agree otherwise.

**6.03.  Plan Funding.**  The Cash necessary for general working-capital requirements of the Reorganized Debtor after the Effective Date and until the Retained Properties and the Rejected Properties are liquidated or otherwise administered will equal the Operating Fund Reserve and all proceeds of that liquidation or administration.

**6.04.  Corporate Governance of the Reorganized Debtor.**  On the Effective Date, any remaining officer and director of the Debtor shall be deemed removed from that office.  The Reorganized AHF Board is proposed to consist of Jerry Hodge, Dennis Dougherty, Tim Nichols, Carroll Forrester, and two tenants from affordable-housing communities owned by

Special Purpose Entities listed as Retained Properties selected pursuant to applicable law and regulations for tax-exempt entities under Internal Revenue Code § 501(c)(3), including regulations imposed by the Department of Housing and Urban Development.  If the proposed members of the Reorganized AHF Board refuse to serve on or resign from the Reorganized AHF Board, then the Proponents or the President of the Reorganized Debtor, as applicable, will select alternative members for the Reorganized AHF Board other than Robert Templeton and submit such names to the Bankruptcy Court for approval.  The Reorganized AHF Board will be the sole board responsible for supervising the operation of the Reorganized Debtor and the liquidation of the Retained Properties.  Copies of resumes reflecting the experience and background of the proposed members of the Reorganized AHF Board are included in Exhibit G attached to the Disclosure Statement.

**6.05.  Rules of the Reorganized AHF Board**.  The Reorganized AHF Board shall function under the following rules:

1. Any member of the Reorganized AHF Board may act by proxy.  In the event of death, resignation, or inability to act of any member of the Reorganized AHF Board, his or her successor shall be named by the remaining members.  In the event the remaining members cannot agree on the selection of the successor member, the successor member shall be appointed by the Bankruptcy Court.

2. The Reorganized AHF Board shall prescribe its own rules of procedure subject to, however, the following requirements:

    i. One designee of the Reorganized AHF Board shall be Secretary;

    ii. The Secretary shall keep the minutes of all meetings of the Reorganized AHF Board; and

    iii. Any notice required to be given by the Reorganized AHF Board shall be by written notice at the address any present or future member of the Reorganized AHF Board may designate in writing to the Secretary of the Reorganized AHF Board.

3. All actions taken by the Reorganized AHF Board shall be only after affirmative vote by a majority of the members.

4. Approval of any action may always be evidenced by written consent of the Reorganized AHF Board members.

5. Any member of the Reorganized AHF Board will recuse itself from participating in any decision-making by the Reorganized AHF Board on matters in which there is a conflict of interest.

(b)  **Compensation of Reorganized AHF Board Members**.  Reorganized AHF Board members shall not be compensated for performing the duties and obligations of the Reorganized AHF Board.  But Reorganized AHF Board members will be reimbursed for expenses incurred by them on behalf of the Reorganized AHF Board after submitting written evidence thereof to the full Reorganized AHF Board for its approval.  If it is necessary for the Reorganized AHF Board to employ an attorney or other Professional, such fees and expenses are to be paid by the Reorganized Debtor pursuant to terms and conditions agreed by the Reorganized Debtor and the Professional.

(c)  **Liability of Reorganized AHF Board Members**.  Each member of the Reorganized AHF Board shall use his or her judgment and discretion in all things connected therewith and shall not be personally liable for any loss or damage arising in connection with the business of the Reorganized AHF Board, either for his or her acts or for his or her failure to act unless he or she personally shall have been guilty of willful fraud, willful misconduct, or gross negligence.  In no case shall a member of the Reorganized AHF Board be held liable or responsible for the willful fraud, willful misconduct, or gross negligence of any other member of the Reorganized AHF Board or any employee or agent of the Reorganized AHF Board.

**6.06. Management of the Reorganized Debtor.**  Alan Weiner will manage the Reorganized Debtor as its President and Chief Executive Officer.  The President shall be responsible and report to the Reorganized AHF Board and see that the orders and resolutions of the Reorganized AHF Board are carried into effect.  Subject to direction from the Reorganized AHF, the President will be responsible for administering the Plan on behalf of Reorganized AHF, including, without limitation, taking all appropriate actions to transfer the Trust Assets to the Liquidating Trust, and managing the future operations of Reorganized AHF.  The President shall also have general supervision and control of the Reorganized Debtor's affairs and all of its business.  Among other things, the President shall have general authority to (a) administer the Plan on behalf of the Reorganized Debtor according to the Plan, including taking actions in the name of the Reorganized Debtor, (b) effectuate the terms of the Plan, (c) execute bonds, deeds, and contracts in the name of the Reorganized Debtor, (d) cause the employment or appointment of employees and agents of the Reorganized Debtor and to fix their compensation in his discretion, and (e) cause the suspension or termination of such employees and agents of the Reorganized Debtor in his discretion.  However, the President may not, without obtaining prior approval from the Reorganized AHF Board, cause the Reorganized Debtor to be a party to (a) a single transaction with a purchase or sale price in excess of $100,000.00 or (b) any series of related transactions with an aggregate purchase or sale price in excess of $500,000.00.  The President shall remain in place and continue his management until the earlier of (a) his death or resignation and (b) two years after the Effective Date, unless the President and the Reorganized AHF agree that the President shall continue after that 2-year period to fulfill the goals of this Plan.  In the event of the President's death or resignation, the Reorganized AHF Board shall propose a successor President to the Bankruptcy Court for approval.  After notice and hearing to all Creditors, the Bankruptcy Court shall have sole authority to approve the Reorganized AHF Board's selection of a successor President.  Notwithstanding any language in this section to the contrary, the President may be terminated by the Bankruptcy Court after notice and hearing and only on a showing by clear and convincing evidence that the President is guilty of gross negligence or willful misconduct.

**6.07. President's Compensation, Reimbursement, and Indemnification**.    The President shall be compensated at a rate of $1,250.00 per week plus his standard hourly rate for time expended.  The President shall be reimbursed for all out-of-pocket expenses reasonably incurred by the President in the performance of the President's duties.  In addition, the President shall be indemnified by and receive reimbursement against and from any and all loss, liability, expense, or damage that the President may incur or sustain, in good faith and without fraud, willful misconduct, or gross negligence, in the exercise and performance of any of the President's powers and duties under the Plan.    The amounts necessary for all such compensation, indemnification, and reimbursement and for all expenses of administration, including, without limitation, legal fees, shall be withdrawn by the President from the Assets.

(a)      **Employees and Agents**.  The President may hire employees and Professionals, including, without limitation, brokers, banks, custodians, investment advisors, attorneys, accountants, auditors, tax advisors, and other agents, in the President's discretion, and officers of the Reorganized Debtor with prior approval from the Reorganized AHF Board.  The President shall not be liable for any loss to the Reorganized Debtor or any person interested therein by reason of any mistake or default of such agent, consultant, or officer as shall be selected and retained in good faith and without gross negligence.  All employees and Professionals shall be compensated at an amount that is acceptable to the President in his discretion, and such compensation shall be paid by the President in the ordinary course of the Reorganized Debtor's business without the necessity for prior Bankruptcy Court approval.

1.  **Employment of Focus Management Group USA, Inc.**  The Reorganized Debtor will employ Focus Management Group USA, Inc. as its financial advisors after the Effective Date. Focus Management Group USA, Inc. served as financial advisors to the Chapter 11 Trustee during the Bankruptcy Case. Notwithstanding anything herein to the contrary, the terms of the Reorganized Debtor's engagement with Focus Management Group USA, Inc. will be subject to approval by the Reorganized AHF Board or, if Focus and the Reorganized AHF Board cannot agree on the terms of Focus' proposed engagement with the Reorganized Debtor, the Bankruptcy Court will decide such terms after recommendations from the President and the Reorganized AHF Board.

2.  **Employment of Tarbox Law PC**.  The Reorganized Debtor will employ Tarbox Law PC as its co-legal counsel after the Effective Date.  Tarbox Law PC served as legal counsel to the Chapter 11 Trustee during the Bankruptcy Case. Notwithstanding anything herein to the contrary, the terms of the Reorganized Debtor's engagement with Tarbox Law PC will be subject to approval by the Reorganized AHF Board or, if Tarbox Law PC and the Reorganized AHF Board cannot agree on the terms of Tarbox Law PC's proposed engagement with the Reorganized Debtor, the Bankruptcy Court will decide

such terms after recommendations from the President and the Reorganized AHF Board.

3. **Employment of Gardere Wynne Sewell LLP**. The Reorganized Debtor will employ Gardere Wynne Sewell LLP as its co-legal counsel after the Effective Date. Gardere Wynne Sewell LLP served as legal counsel to the Chapter 11 Trustee during the Bankruptcy Case. Notwithstanding anything herein to the contrary, the terms of the Reorganized Debtor's engagement with Gardere Wynne Sewell LLP will be subject to approval by the Reorganized AHF Board or, if Gardere Wynne Sewell LLP and the Reorganized AHF Board cannot agree on the terms of Gardere Wynne Sewell LLP's proposed engagement with the Reorganized Debtor, the Bankruptcy Court will decide such terms after recommendations from the President and the Reorganized AHF Board.

(b) **Removal of President; Successor President**.

1. **Power to Remove President**. The President may be removed by the Reorganized AHF Board for any reason and at any time in its discretion pursuant to the procedures provided in this Article.

2. **Successor President**. If the President is removed, resigns, or otherwise ceases to serve as President, a successor President may be named by the Reorganized AHF Board pursuant to the procedures provided in this Article. The President may resign upon written notice to the Reorganized AHF Board. Such resignation shall become effective upon the selection of a successor President, and the acceptance by the successor President of his/her appointment as President. Any successor President shall be subject to the same qualifications and shall have the same rights, powers, duties, and discretion, and otherwise be in the same position as the originally named President. Wherever reference is made in the Plan to the President, the same shall be deemed to refer to the President acting hereunder from time to time. No successor President shall be in any way responsible for the acts or omissions of any President in office prior to the date on which he/she becomes a President, unless a successor President explicitly assumes such responsibility.

**6.08. Continued Operations.** After the Effective Date, the Reorganized Debtor will continue its operations to stabilize and operate the Retained Properties pursuant to the Operating Budget and use its best efforts to sell the Retained Properties as either a "going-concern" or in

various groups within twenty-four (24) months after the Effective Date, unless the Reorganized AHF, the Liquidating Trustee, and the Trust Oversight Committee agree otherwise. In performing these duties, the Reorganized Debtor will take any action necessary to achieve maximum value for the liquidation of the Retained Properties and to dissolve upon such liquidation and distribution of the liquidation proceeds to the Liquidating Trust.

**6.09. Post-Confirmation Records.** The Reorganized Debtor shall keep or cause to be kept books and records detailing all receipts, disbursements, and reserves necessary to administer this Plan, and make such records available to Creditors and the Trust Oversight Committee during normal business hours upon reasonable request. The Reorganized Debtor shall be entitled to dispose of such records with the consent of the Reorganized AHF Board.

**6.10. Costs of Continued Operations.** The costs of the Reorganized Debtor's continued operations, including, without limitation, (a) fees and expenses of the President and other officers approved by the Reorganized AHF Board; (b) fees and expenses of the Reorganized Debtor's professionals; (c) salaries and expenses of other employees and agents hired by the President pursuant to this Plan; and (d) expenses of Reorganized AHF Board members, including fees and expenses of any attorney or Professional hired by the Reorganized AHF Board, shall be paid by the Reorganized Debtor in the ordinary course of business and without Bankruptcy Court approval. The Reorganized Debtor will pay for such costs from (a) the Operating Fund Reserve and (b) net operating cash flow from the Retained Properties and (c) net sales proceeds from the assets of the Reorganized Debtor.

**6.11. Limitations on Cash Accumulation and Investment Powers of the Reorganized Debtor.** The investment powers of the Reorganized Debtor are limited to those powers established for bankruptcy trustees by the U.S. Trustee's Office for the Northern District of Texas in any bankruptcy case filed pursuant to chapter 11 of the Bankruptcy Code.

**6.12. Reports to be Kept and Reports to be Filed by the Reorganized Debtor.** As soon as practicable after, and in no event later than thirty (30) days after, the end of each quarter, and prior to dissolution of the Reorganized Debtor, the Reorganized Debtor shall file with the Bankruptcy Court and serve on the Reorganized AHF Board and the U.S. Trustee's Office for the Northern District of Texas an unaudited written report and account showing (a) the assets and liabilities of the Reorganized Debtor at the end of such calendar year or upon termination; (b) any changes in the Reorganized Debtor's assets that have not previously been reported; and (c) any material actions taken by the Reorganized Debtor that have not been previously reported. The Reorganized Debtor shall furnish to Creditors who receive Distribution(s) information as is reasonably requested by such Creditors to determine their federal or state tax liability, if any, attributable to such Distributions. In addition, no later than fifteen (15) days before a proposed sale or other disposition of a Retained or Rejected Property, the Reorganized Debtor shall file Notice of Proposed Sale or Other Disposition of Retained/Rejected Properties with the Bankruptcy Court, and serve such notice on the twenty (20) largest unsecured creditors as of the Petition Date and the U.S. Trustee.

In addition, the Reorganized Debtor shall provide the following reports:

(a)    Except for calendar year 2010, within sixty (60) days after the end of each calendar year, the Reorganized Debtor shall account for and pay over to the Liquidating Trust all Excess Revenues received by the Reorganized Debtor during the preceding calendar year. The Trust Oversight Committee shall have fourteen (14) days to review the Reorganized Debtor's accounting.   If the Trust Oversight Committee disagrees with the Reorganized Debtor's accounting of Excess Revenues, and the parties are unable to resolve that dispute, the Trust Oversight Committee may file an objection to the Reorganized Debtor's Excess-Revenues calculation with the Bankruptcy Court, and ask the Bankruptcy Court to finally decide any dispute between the Reorganized Debtor and the Trust Oversight Committee on the Excess-Revenues calculation.

(b)    Within thirty (30) days after the end of each calendar year, the Reorganized Debtor shall send a copy of a proposed budget detailing expected revenues, expenditures, and investments for the next calendar year.   The Trust Oversight Committee shall have fourteen (14) days to review the Reorganized Debtor's proposed budget.   If the Trust Oversight Committee disagrees with the Reorganized Debtor's proposed budget, and the parties are unable to resolve that dispute, the Trust Oversight Committee may file an objection to the proposed budget with the Bankruptcy Court, and ask the Bankruptcy Court to finally decide any dispute between the Reorganized Debtor and the Trust Oversight Committee on the proposed budget.

(c)    Within forty-five (45) days after the end of each calendar year, the Reorganized Debtor shall send to the Trust Oversight Committee a report comparing the proposed budget for the previous calendar year to the actual results for that same budgeted year.  The Trust Oversight Committee shall have fourteen (14) days to review the Reorganized Debtor's budget-to-actual report.   If the Trust Oversight Committee disagrees with the Reorganized Debtor's budget-to-actual report, and the parties are unable to resolve that dispute, the Trust Oversight Committee may file an objection to the budget-to-actual report with the Bankruptcy Court, and ask the Bankruptcy Court to finally decide any dispute between the Reorganized Debtor and the Trust Oversight Committee on the budget-to-actual report.

(d)    The proposed budget for calendar year 2011 is attached to the Disclosure Statement as part of Exhibit B, and the actual financial results for calendar year 2010 have been addressed as part of and in this Bankruptcy Case.  So, for the avoidance of doubt, notwithstanding anything in this section to the contrary, no

provision in this section applies to calendar year 2010. Specifically, without limitation, and for example, no Excess Revenues for calendar year 2010 will be surrendered to the Liquidating Trust.

**6.13.   Maintenance of Register.**  The Reorganized Debtor shall at all times maintain a register of the names, addresses, and amount of Claims of the Creditors filed with the Bankruptcy Court.

**6.14.   Effectuating Documents; Further Transactions.**  On the Effective Date, the Reorganized Debtor, the President of the Reorganized Debtor, and the employees, agents, attorneys and professionals of the Reorganized Debtor shall be authorized and directed, without further Order of the Bankruptcy Court, to execute, deliver, file, and record all agreements, instruments and contracts, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions, and consummate, the Plan or to otherwise comply with applicable law.

**6.15.   Release of Liens, and Cancellation of Lien Documents.**  On the Effective Date, all notes, instruments, certificates and other documents evidencing Claims against the Debtor or Estate shall be cancelled and deemed terminated, and all Liens in or against the Assets shall be automatically, and without any further action required by any party or the Bankruptcy Court, deemed released or terminated, and all Collateral subject to such Liens shall be automatically released, and all guarantees of any of the Debtor or the Reorganized Debtor shall be automatically discharged and released; *provided, however*, that such Liens shall attach to any proceeds of the Collateral if and as provided in this Plan or Confirmation Order.  In addition, all Lien Documents, if any, shall be deemed cancelled, discharged, released, terminated, and of no further force or effect, and this Plan shall operate to cancel all obligations of the Debtor and the Reorganized Debtor under such documents.  Notwithstanding the foregoing, such cancellation of Lien Documents shall not impair the rights of holders of any Allowed Claims arising under or relating to such Lien Documents to receive Distributions on account of such Allowed Claims from the Liquidating Trust or as otherwise provided in this Plan.

**6.16.   Settlement of Certain Claims, Including Project Partnership-Related Guaranty Claims and General Unsecured Claims.**  Pursuant to Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan, including classification, distribution, releases, upon the Effective Date, this Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved, settled, and compromised pursuant to the Plan.  All Distributions made to holders of Allowed Claims shall be final, and no Distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to holders of any Claim in another Class by virtue of any prepetition agreement, shared collateral agreement, subordination agreement or other similar intercreditor arrangement.

**6.17.   Dissolution of the Reorganized Debtor.**  The Confirmation Order shall provide for the Reorganized Debtor's dissolution for all purposes without the necessity for any other or further action to be taken by or on behalf of the Reorganized Debtor pursuant to Article 4.14 of the Texas Business Corporation Act immediately when the Reorganized Debtor has performed all of its obligations under this Plan.  The question of when and whether the Reorganized

Debtor will be dissolved shall be decided by the President and the Reorganized AHF Board. If no agreement can be reached on that decision, the parties will ask the Bankruptcy Court to decide.

## ARTICLE VII.
## LIQUIDATING TRUST

**7.01.  Establishment of the Liquidating Trust.**  On the Effective Date, the Chapter 11 Trustee, the Liquidating Trustee, and the members of the Reorganized AHF Board shall execute the Liquidating Trust Agreement, thereby establishing the Liquidating Trust. The Debtor, the Proponents, and all Creditors shall be deemed to have adopted and approved the Liquidating Trust Agreement, substantially similar to the form attached hereto as <u>Exhibit C</u>, as of the Effective Date.

**7.02.  Purpose of the Liquidating Trust.**  The Liquidating Trust shall be established for the purpose of liquidating the Trust Assets and distributing the proceeds of such liquidation to holders of Allowed Claims not otherwise paid by the Chapter 11 Trustee prior to or on the Effective Date, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income-tax purposes and, to the extent permitted by applicable law, state and local income-tax purposes, with the beneficiaries treated as grantors and owners of the trust.

**7.03.   Transfer of Assets to the Liquidating Trust.**  On the Effective Date, all Trust Assets shall be transferred to and vest in the Liquidating Trust, free and clear of all Claims, Liens, interests and encumbrances, except as otherwise provided in the Plan.

**7.04.  Satisfaction of Allowed Claims from Liquidating Trust.**  On the Effective Date, all Claims against the Debtor and its Estate, and all Distribution rights conferred by the Plan on account thereof, shall be transferred to the Liquidating Trust. On the Effective Date, all objections, counterclaims, rights of setoff, rights of recoupment, and other defenses held by the Debtor, the Estate, and the Proponents in relation to such Claims, in relation to such distribution rights, and in relation to the holders of such Claims and distribution rights, shall be preserved and transferred to the Liquidating Trust, and from and after the Effective Date, the Liquidating Trustee shall have authority and standing to assert, prosecute, and settle any and all of such objections, counterclaims, rights of setoff rights or recoupment, and other defenses. Following the Effective Date, Claims that are or become Allowed Claims shall be satisfied from the Liquidating Trust in accordance with the provisions of the Plan, and the Debtor or Reorganized Debtor shall have no continuing liability on any Claims.

**7.05.  Liquidating Trustee.**  The Liquidating Trust shall be administered by the Liquidating Trustee, who shall administer the Liquidating Trust consistent with terms of the Plan, the Confirmation Order, and Liquidating Trust Agreement, and shall have all of the rights, obligations, powers and duties as set forth in the Plan and Liquidating Trust Agreement. The Liquidating Trustee shall be approved by the Bankruptcy Court in the Confirmation Order. The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Any

27

successor Liquidating Trustee shall be appointed by the Bankruptcy Court after notice and hearing and consistent with the terms of the Liquidating Trust Agreement. Upon Walter O'Cheskey's resignation as Liquidating Trustee, Walter O'Cheskey and the Trust Oversight Committee shall each nominate a potential successor Liquidating Trustee to the Bankruptcy Court. Upon Walter O'Cheskey's death or inability to serve as Liquidating Trustee as determined by a court of competent jurisdiction, the Trust Oversight Committee and the U.S. Trustee shall each nominate a potential successor Liquidating Trustee to the Bankruptcy Court.

**7.06. Appointment of the Liquidating Trustee**. On the Effective Date, and pursuant to the Confirmation Order, Walter O'Cheskey shall be appointed the initial Liquidating Trustee.

**7.07. Compensation of the Liquidating Trustee**. To maximize the dollar amount of Trust Assets available for Distributions on account of Allowed Claims, the Liquidating Trustee shall be compensated as follows:

> (a)     A flat rate of $10,000.00 per month; and

> (b)     A commission equal to 3% of all disbursements paid pursuant to the terms and conditions of this Plan, less the balance of the funds in the registry of the Court on the Effective Date. To be perfectly clear, for example, if $26,000,000 is distributed pursuant to the terms and conditions of this Plan, but there was $21,000,000 in the registry of the Court on the Effective Date, the Liquidating Trustee will get a 3% commission on $5,000,000.

In addition, the Liquidating Trustee shall be reimbursed 100% of all expenses incurred in the fulfillment of his duties pursuant to this Plan and the Liquidating Trust Agreement. The Liquidating Trustee may receive compensation and expense reimbursements on a monthly basis at any time before the Liquidating Trust is terminated.

**7.08. Powers and Duties**. The Liquidating Trustee shall have the powers and duties set forth in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee will be a representative of the Debtor and the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code and, as such, will have the power to prosecute all Causes of Actions in the name of the Liquidating Trust or, as necessary, in the name of the Debtor. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trustee shall administer the Liquidating Trust and the Trust Assets and make Distributions in accordance with the Plan and the Liquidating Trust Agreement. The Bankruptcy Court shall retain jurisdiction to supervise the Liquidating Trustee in the fulfillment of his duties pursuant to the Liquidating Trust Agreement.

**7.09. Employees and Agents**. The Liquidating Trustee may hire employees and Professionals, including, without limitation, brokers, banks, custodians, investment advisors, attorneys, accountants, auditors, tax advisors, and other agents, in the Liquidating Trustee's sole discretion without approval from the Bankruptcy Court. The Liquidating Trustee shall not be liable for any loss to the Liquidating Trust or any person interested therein by reason of any

mistake or default of such agent or consultant as shall be selected and retained in good faith and without gross negligence.

**7.10.   Records to be Kept and Reports to be Filed by the Liquidating Trustee**.  The Liquidating Trustee shall maintain good and sufficient records of receipts, disbursements, and reserves of the Trust.  Such books and records shall be open to inspection at reasonable times upon reasonable request by any holder of an Allowed Claim.  Not later than thirty (30) days after the end of each quarter, and as soon as practicable after termination of the Liquidating Trust, the Liquidating Trust shall file with the Bankruptcy Court an unaudited written report and account showing labeled a Quarterly Report, substantially similar to the form included in or attached to the Plan Supplement.

**7.11.   Duration of Liquidating Trust.**  The Liquidating Trust shall continue to exist until the Liquidating Trustee has (a) administered all Trust Assets and made a final Distribution to holders of Allowed Claims not paid by the Chapter 11 Trustee prior to or on the Effective Date, and (b) performed all other duties required by the Plan and the Liquidating Trust Agreement.

**7.12.   Effectuating Documents; Further Transactions.**  On the Effective Date, the Liquidating Trust, the Liquidating Trustee, and the employees, agents, attorneys and Professionals of the Liquidating Trust shall be authorized and directed, without further Order of the Bankruptcy Court, to execute, deliver, file, and record all agreements, instruments, and contracts, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions, and consummate, the Plan or to otherwise comply with applicable law to cause title to the Trust Assets to be transferred to the Liquidating Trust; however, notwithstanding the non-execution of such documents, title to the Trust Assets will automatically vest in the Liquidating Trust on the Effective Date.

**7.13.   Tax Treatment of the Liquidating Trust**.  The Liquidating Trust to be established for the benefit of holders of Allowed Claims is intended to qualify as a grantor trust for federal income-tax purposes.  All items of income, deduction, credit, or loss of the Liquidating Trust shall be allocated for federal, state and local income-tax purposes to holders of Allowed Project Partnership-Related Guaranty Claims and the Allowed General Unsecured Claims.

**7.14.   Preservation of Causes of Actions.**  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trust shall retain all of the Causes of Actions, including Avoidance Actions, and other similar claims, counterclaims, rights, defenses, setoffs, recoupments, and actions in law or equity arising under the Bankruptcy Code or applicable non-bankruptcy law.  This preservation includes all current and pending litigation in which AHF is a party in the Bankruptcy Court or otherwise.  The Liquidating Trustee and the Liquidating Trust shall have authority and standing to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any of the Causes of Actions and other similar claims, counterclaims, rights, defenses, setoffs, recoupments, and actions, and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be asserted by the Debtor against or with respect to all Claims asserted against such Debtor or property of the Estate.  A non-exclusive list of such Causes of Actions and other similar claims, counterclaims, rights,

defenses, setoffs, recoupments, and actions in law or equity was attached as <u>Exhibit E</u> to the Disclosure Statement, and is hereby incorporated by reference herein as if fully set forth in this Plan.

**7.15.  Termination of Creditors Committee.**  The Creditors Committee will exist until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code, and will perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date.  On the Effective Date, the Creditors Committee will be dissolved and its members will be deemed released by the Debtor and its Estate (a) of all their duties, responsibilities, and obligations in connection with the Bankruptcy Case, and (b) from all claims and causes of action relating to or arising directly or indirectly from services performed; *provided, however*, that this provision does not release members of the Creditors Committee from any Avoidance Action that may be asserted against them.  On the Effective Date, the retention or employment of the Creditors Committee's Professionals and other agents will terminate, except as is necessary to address fee applications filed by the Creditors Committee or its Professionals.  Upon dissolution of the Creditors Committee, no notice to the Creditors Committee that might otherwise be required pursuant to an order of the Bankruptcy Court shall be required.

**7.16.  Trust Oversight Committee.**   On the Effective Date, a Trust Oversight Committee shall be established and continue for the purpose of monitoring and not directing (a) the implementation of the Plan; (b) the Claims objection-and-resolution process; (c) the Distribution process, and (d) the pursuit and settlement of Causes of Action.  The Liquidating Trustee shall consult with the Trust Oversight Committee on a quarterly basis or as otherwise agreed by the Liquidating Trustee and the Trust Oversight Committee.  The Liquidating Trustee shall prepare and present to the Trust Oversight Committee a quarterly report containing a status summary of all pending claims objections and adversary proceedings.  The Trust Oversight Committee shall continue to exist until such time as either the Trust Oversight Committee deems it appropriate by a majority vote to dissolve itself or all members of the Trust Oversight Committee resign; *provided, however*, that the Trust Oversight Committee shall be dissolved no later than the date on which the Final Decree is entered.  The Trust Oversight Committee is authorized to hire Mullin, Hoard & Brown, L.L.P. or any other law firm as its counsel.  Mullin, Hoard & Brown L.L.P.'s prior representation of the Creditors Committee in this Bankruptcy Case may provide a benefit to the Liquidating Trustee in his efforts to maximize the value of the Trust Assets and, therefore, does not disqualify it from representing the Trust Oversight Committee.  Attorney's fees and expenses incurred by the Trust Oversight Committee shall be paid from Trust Asset up to a maximum of $50,000.00 per year.  .

**7.17.  Agents of the Liquidating Trustee**.  As more fully described in the Liquidating Trust Agreement attached hereto as <u>Exhibit C</u>, the Liquidating Trustee may hire Professionals, including, without limitation, brokers, banks, custodians, investment advisors, attorneys, accountants, auditors, tax advisors, and other agents, in the Liquidating Trustee's sole and absolute discretion.  Initially, the Liquidating Trustee will hire as co-counsel the law firms of Tarbox Law, PC and Gardere Wynne Sewell LLP to handle any litigation against or involving officers and directors, the Rice Trust, and the Mays Trust.  The Liquidating Trust shall retain his authority to make professional-retention decisions from time to time in all matters affecting the Liquidating Trust.  The Liquidating Trustee shall not be liable for any loss to the Liquidating

Trust or any person interested therein by reason of any mistake or default of such agent, consultant, or officer as shall be selected and retained in good faith and without gross negligence.

**7.18. Compensation of Agents to the Liquidating Trustee**. The Liquidating Trustee may compensate Professionals on terms acceptable to him in his discretion. Unless otherwise agreed by the Professional and the Liquidating Trustee, all Professionals may be paid without Bankruptcy Court approval for services rendered and expenses incurred on a monthly basis. Before payment to the Professionals, the Liquidating Trustee shall serve a detailed statement of services rendered and expenses incurred by the Professional during the period requested (the "**Fee Statement**") via electronic mail, facsimile, or overnight mail to the members of the Trust Oversight Committee and any creditor who notifies the Liquidating Trustee in writing of its desire to receive service of the Fee Statement. Each member of the Trust Oversight Committee shall have fourteen (14) days after service of the Fee Statement to notify the Liquidating Trustee in writing of an objection to payment of the fees and expenses identified in the Fee Statement. If no such objection is received by the Liquidating Trustee, the Liquidating Trustee shall promptly pay the Fee Statement. If an objection to the Fee Statement is received by the Liquidating Trustee, the Liquidating Trustee may pay any unobjected-to amount on the Fee Statement without Bankruptcy Court approval. For any objected-to amount on the Fee Statement, the Liquidating Trustee shall file an application with the Bankruptcy Court to approve payment of such objected-to amounts and schedule a hearing on that application at least fourteen (14) days after the filing of such application. All Fee Statements will only be sent to the Trust Oversight Committee and any creditor who notifies the Liquidating Trustee in writing of its desire to receive service of the Fee Statement.

## ARTICLE VIII.
## TREATMENT OF EXECUTORY CONTRACTS

**8.01. General Treatment of Executory Contracts: Rejected.** The Plan constitutes and incorporates a motion by the Proponents to reject, as of the Effective Date, all Executory Contracts to which the Debtor is a party, except for Executory Contracts that (a) have been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (b) are the subject of a separate motion pursuant to section 365 of the Bankruptcy Code to be filed and served by the Proponents on or before the Confirmation Date, or (c) included in the Plan Supplement. The Plan also constitutes and incorporates a motion by the Proponents to assume, as of the Effective Date, all executory contracts or unexpired leases included in the Plan Supplement. Such executory contracts and unexpired leases will be assumed pursuant to the terms noted in the Plan Supplement and the Plan-Supplement documents. The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the rejection or assumption, as applicable, of such Executory Contracts as of the Effective Date. For the avoidance of doubt, the Debtor will not assume or reaffirm any guaranty or partnership agreement related to or executed by a Special Purpose Entity listed as a Rejected Property, except as otherwise provided in the Plan Supplement or a Plan-Supplement Document.

31

**8.02.  Bar to Rejection Claims.**  If the rejection of an Executory Contract results in a Rejection Claim, such Rejection Claim shall be forever barred and unenforceable against the Debtor, the Estate, or the properties or agents, successors, or assigns of the same, including the Liquidating Trust, unless a proof of Claim is filed with the Bankruptcy Court and served on the Liquidating Trustee by the earlier of (a) thirty (30) days after the Effective Date and (b) such other deadline as the Bankruptcy Court may set for asserting a Claim for such damages.

**8.03.  Rejection Claims.**  Except as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and mitigation requirements under applicable law, any Rejection Claim shall be treated as a Class 17 General Unsecured Claim pursuant to the Plan. Nothing contained herein shall be deemed an admission by the Debtor, the Proponents, the Liquidating Trustee, or any other party in interest that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtor, the Proponents, the Liquidating Trust, or the Liquidating Trustee, or any other party in interest of any objection to such Rejection Claim, if asserted.

**8.04.  Compensation, Benefit, and Indemnification Programs.**  All employee-compensation, employee-benefit, and employee-indemnification program or obligations of the Debtor, if any, that the Debtor entered into before the Petition Date and not previously terminated, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected and terminated under the Plan as of the Effective Date.

## ARTICLE IX.
## CONDITIONS TO CONFIRMATION DATE AND EFFECTIVE DATE; EFFECT OF PLAN CONFIRMATION

**9.01.  Conditions Precedent to Confirmation Date.**  The occurrence of the Confirmation Date of the Plan is subject to satisfaction or waiver of each of the following conditions:

(a)  The Bankruptcy Court shall have approved the Disclosure Statement by a Final Order in form and substance acceptable to the Proponents in their sole and absolute discretion.

(b)  The Confirmation Order shall be in form and substance acceptable to the Proponents in their sole and absolute discretion.

**9.02.  Conditions Precedent to the Effective Date.**

The occurrence of the Effective Date of the Plan is subject to the occurrence or waiver of the following conditions precedent:

(a)  Either (i) the Confirmation Order has become a Final Order, or (ii) no stay of the Confirmation Order or motion for a stay, or other motion described in Bankruptcy Rule 8002(b), of the Confirmation Order, shall be in effect or pending and no other relief shall have been entered nor any facts exist that would render the doctrine of "mootness" inapplicable as a matter of law.

(b)      There shall be no injunction or court order restraining consummation of the transactions provided for in the Plan.

(c)      All Plan Documents, including exhibits and the Plan Supplement, shall be in form and substance reasonably acceptable to the Proponents and shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein.

(d)      All actions necessary to implement the Plan have been effected.

**9.03.   Waiver of Conditions to Occurrence of the Effective Date.**   The foregoing conditions to the Effective Date of the Plan may be waived in whole or in part by the Proponents without notice to any other parties-in-interest or the Bankruptcy Court, and without any hearing or order of the Bankruptcy Court.   Without limiting the foregoing, the Effective Date may occur notwithstanding the pendency of an appeal of the Confirmation Order, so long as there is no stay in effect, if the Proponents so elect in writing.   The Effective Date may occur before the expiration of time to take an appeal or to seek reconsideration of the Confirmation Order without the giving of any notice to any objecting party, if the Proponents so elect in writing.   In the event of any such appeal, the Proponents or the Reorganized Debtor may seek the dismissal of such appeal as moot following the Effective Date of the Plan.   The failure of the Proponents to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time. The Proponents will file with the Bankruptcy Court, and serve a copy on all parties-in-interest, a notice of the Effective Date within three (3) Business Days after its occurrence.

**9.04.   Binding Effect.**   From and after the Effective Date, the Plan shall be binding on and inure to the benefit of the Proponents, the Estate, the Reorganized Debtor, the Liquidating Trustee, all present and future holders of Claims, and their respective successors and assigns, and all other parties-in-interest in the Bankruptcy Case.   Confirmation of the Plan binds each holder of a Claim to the terms and conditions of the Plan, whether or not such Creditor has accepted the Plan.

**9.05.   Vesting of Assets**.   Except as otherwise provided in the Plan, on the Effective Date, all assets and property transferred to the Liquidating Trust under the Plan shall be free and clear of all Claims, Liens, interests, and encumbrances of any nature whatsoever, and all assets not transferred to the Liquidating Trust under the Plan shall revest in the Reorganized Debtor free and clear of all Claims, Liens, interests, and encumbrances of any nature whatsoever.

**9.06.   Discharge of Debtor.**   Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor, the Estate, and the Reorganized Debtor of any nature whatsoever, whether known or unknown, or against the Assets or properties of the Debtor, the Estate, or the Reorganized Debtor that arose before the Effective Date.   Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, upon the Effective Date, entry of the Confirmation Order acts as a discharge and release under section 1141(d)(1)(A) of the Bankruptcy Code of all Claims against the Debtor and the Assets and properties, arising at any time before the Effective Date,

33

regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the holder of the Claim votes to accept the Plan or is entitled to receive a Distribution under the Plan.  Except as provided in the Plan or the Confirmation Order, upon the Effective Date, any holder of the discharged Claim will be precluded from asserting such Claim against the Debtor, the Estate, the Reorganized Debtor, or any of their assets or properties any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date.  Except as provided in the Plan and the Confirmation Order, and subject to the occurrence of the Effective Date, the Confirmation Order will be a judicial determination of discharge of all the Debtor's liabilities to the extent allowed under section 1141, and the Debtor will not be liable for any Claim and will only have the obligations as specifically provided in the Plan.   Notwithstanding the foregoing, the discharge granted under this section shall not impair the rights of holders of any Allowed Claims to receive Distributions on account of such Allowed Claims from the Liquidating Trust or as otherwise provided in this Plan.

    **9.07.   Injunction.**  Except as otherwise provided in the Plan or the Confirmation Order, and only to the extent permitted under and subject to section 1141 of the Bankruptcy Code, from and after the Confirmation Date, all holders of Claims against the Debtor that are discharged pursuant to the Plan or the Bankruptcy Code are permanently restrained and enjoined from taking any of the following actions against the Debtor, the Proponents, the Estate, the Reorganized Debtor, the Liquidating Trustee, or any of their property on account of any such discharged Claims, debts, liabilities or rights: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt, liability, or Interest against the Debtor, the Reorganized Debtor, the Liquidating Trustee or their property on account of such Claims, debts, or liabilities, other than to enforce any right to a Distribution pursuant to the Plan or a prior order of the Bankruptcy Court approving a sale or transfer of Estate Property; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Proponents, the Estate, the Reorganized Debtor, the Liquidating Trustee, or their property; (c) creating, perfecting, or enforcing any encumbrance, Security Interest, or Lien of any kind against the Debtor, the Proponents, the Estate, the Reorganized Debtor, the Liquidating Trustee, or their property; (d) except to the extent permitted under the Bankruptcy Code or this Plan, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due the Debtor, the Proponents, the Estate, the Reorganized Debtor, or the Liquidating Trustee or against their property; and (e) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; *provided, however,* that each holder of a Disputed Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan, and any agreements executed or delivered pursuant to or in connection with the Plan.  The foregoing injunction shall extend to the Debtor, the Proponents, the Estate, the Reorganized Debtor, the Liquidating Trustee, and their respective property and interests in property.  If allowed by the Bankruptcy Court, any entity injured by any willful violation of such injunction shall recover actual damages, including, without limitation, costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays imposed by the Bankruptcy Code under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force

and effect until the Effective Date and with respect to all Assets, including Retained Properties, Operating Fund Reserve, and Trust Assets.

**9.08.  Effectuating Documents; Further Transactions; Timing.**  The Proponents and the Reorganized Debtor are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously, unless otherwise provided in the Plan.

**9.09.  Exculpation.**  Neither the Chapter 11 Trustee, his Professionals, the Creditors Committee, its Professionals, nor the Creditors Committee's members (solely in their capacity as members of the Creditors Committee) will have or incur any liability to any holder of a Claim or any other entity for any act or omission in connection with, or arising out of, the formulation, preparation, dissemination, approval, confirmation, administration, or consummation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan or consummation or administration of the Plan or Distributions under the Plan, except for willful misconduct or gross negligence.  The foregoing parties will be entitled to rely on the advice of counsel in all respects regarding their duties and responsibilities under the Plan.

## ARTICLE X.
## CLAIMS OBJECTIONS; DISTRIBUTIONS UNDER THE PLAN

**10.01. Objections to Claims.**  Any party in interest, including, without limitation, the Proponents, the Reorganized Debtor, and the Liquidating Trustee may make and file objections to Claims.  Neither the Proponents nor the Reorganized Debtor are obligated to administer, dispute, reserve for, object to, compromise, resolve or make Distributions with respect to any and all Allowed Claims.  Neither the Proponents nor the Reorganized Debtor (or their designees, successors, and assigns) are obligated to object to any Claim but will nevertheless have standing to object to any such Claim from and after the Effective Date, if they so elect in their absolute discretion.  Nothing in this section is intended to limit the right of any party in interest to object to Claims.

**10.02. Objection Deadline.**  Except as otherwise set forth in the Plan or as otherwise extended or ordered by the Bankruptcy Court, all objections to Claims must be filed no later than ninety (90) days after the Effective Date (unless such day is not a Business Day; in which case, such deadline will be the next Business Day thereafter unless extended by an order of the Bankruptcy Court).  An objection to a Claim will be deemed properly served on the holder thereof if service is effected by any of the following methods: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Claimant is unknown, by first-class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the behalf of the Claimant in the Bankruptcy Case.  Notwithstanding anything herein to the contrary, the Liquidating Trust will not file an objection to Claims or adversary complaint without prior permission from the Trust Oversight Committee or from the

Bankruptcy Court after notice and hearing and upon a showing of (i) reasonable grounds to file such an objection and (ii) a cost-benefit analysis of any proposed claim objection or adversary proceeding.  If the Liquidating Trust asks the Bankruptcy Court for permission to file an Claim objection or adversary complaint before expiration of the ninety-day deadline noted above, then that 90-day deadline is automatically extended for sixty (60) days (for a total of 150 days from the Effective Date) or some other time established by the Bankruptcy Court, whichever is longer.

   10.03. **Settlement of Objections to Claims.**  From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code, the Liquidating Trustee shall be entitled to compromise and settle his objections to Disputed Claims subject to the limitations set forth in the Plan, in accordance with the following procedures, which will constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements of claims:

   (a)    If the Face Amount of the Disputed Claim is less than $250,000.00, the Liquidating Trustee will be authorized and empowered to settle its objection to such Disputed Claim and execute the necessary documents, including a stipulation of settlement or release, upon five (5) Business Days' notice filed with the Bankruptcy Court.

   (b)    If the Face Amount of the Disputed Claim is greater than $250,000.00, the Liquidating Trustee will be authorized and empowered to settle its objection to such Disputed Claim, and execute the necessary documents, including a stipulation of settlement or release, upon fifteen (15) Business Days' notice filed with the Bankruptcy Court.

   (c)    If there are no objections or if a party objects to the proposed settlement of the Disputed Claim within the 5-day or 15-day time parameters established by subsections (a) and (b) above and that party withdraws its objection to such settlement for any reason, the Liquidating Trustee may (i) enter into the proposed settlement without further notice, and without the necessity of a motion, hearing or order of the Bankruptcy Court, or (ii) if all objecting parties do not withdraw their objections:

     1.  Forego entry into the settlement agreement that is the subject of an objection,

     2.  Modify the terms of the settlement agreement in a way that results in the withdrawal of all objections, or

     3.  Set the objection for hearing in the Bankruptcy Court and request permission to enter into the settlement agreement over any pending objection.

   10.04. **Post-Confirmation Amendments to Proofs of Claims.**  Except as otherwise provided in the Plan, following the Confirmation Date, a Claim may not be amended unless such amendment results in a decrease of the amount of the Claim, change in priority of the Claim to a lower priority under the Bankruptcy Code, or withdrawal of Claim.  Any such unauthorized amendment shall be deemed null, void, and of no force or effect.

**10.05. No Interest on Claims.** Unless otherwise specifically provided for in the Plan, the Confirmation Order, or the Bankruptcy Code (including section 506(b) of the Bankruptcy Code), postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim or Allowed Interest. However, if sufficient proceeds are available to pay Allowed Class 16 Project Partnership-Related Guaranty Claims and Allowed Class 17 General Unsecured Claims in full, such Claims shall also be entitled to receive simple interest on such Claims at the applicable rate authorized under state law in effect on the Petition Date, prior to any Distribution to Class 18 Claims. If sufficient proceeds exist to pay Allowed Class 18 Subordinated Claims in full, such Claims shall also be entitled to receive simple interest on such claims, at the applicable rate authorized under state law in effect on the Petition Date.

**10.06. Notices of Claims Under 506(b).** If the holder of a Secured Claim believes it is entitled to interest, reasonable fees, costs, or charges in accordance with section 506(b) of the Code, such Claimant must file with the Court a Notice of Claim Under 506(b) and serve such Notice on the Reorganized Debtor and the Liquidating Trustee no later than forty-five (45) days after the Effective Date. The Notice of Claim Under 506(b) must include (a) copies of the agreement(s) under which the claim for interest, reasonable fees, costs, or charges arose; (b) a complete calculation of the amount of interest, reasonable fees and costs due, including the applicable interest rate, and (c) any other supporting documentation including, without limitation, invoices evidencing attorney's fees. Any holder of a Secured Claim that does not file a Notice of Claim Under 506(b) (or does not amend its original proof of Claim by the foregoing deadline to include Claims under 506(b)) and attach documents of the type described in the preceding sentence shall be forever barred from asserting such Claims against the Debtor, the Estate, the Liquidating Trustee, or the Liquidating Trust, any successors or assignees, or any of their respective properties; and such Claims will be deemed discharged as of the Effective Date. A proof of Claim asserting damages arising from the rejection of an executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code is not a valid basis for Claim to be asserted under a Notice of Claim Under 506(b). Any party may file an objection to any Notice of Claim Under 506(b). Any such objection must be filed within one hundred and twenty (120) days from the Effective Date and must be served on the party that filed the subject Notice of Claim Under 506(b).

**10.07. Deadline for Governmental Units to Assert a Claim against the Debtor.** Unless an earlier date was established by the Bankruptcy Court, no Governmental Units shall have a Claim against the Debtor or the Estate unless a proof of Claim is filed with the Bankruptcy Court and served on the Liquidating Trust on or before thirty (30) days after the Effective Date. Proofs of Claim not filed by Governmental Units by the deadline established in this section shall be forever barred and unenforceable against the Debtor, the Estate, or the properties or agents, successors, or assigns of the same, including the Liquidating Trust.

**10.08. Setoffs and No Waiver.** The Reorganized Debtor and the Liquidating Trustee, as applicable, may setoff against any Claim and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any claim, right, or Cause of Action of any nature whatsoever that the Debtor, the Estate, the Reorganized Debtor, or the Liquidating Trustee may

have against the holder of such Claim; *provided, however*, that neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Liquidating Trustee of any such claim, right, or Cause of Action that the Debtor or the Estate may have against such holder.  Such setoffs shall not be subject to the requirements or restrictions of Bankruptcy Code section 553 concerning mutuality or when the respective items subject to setoff under this section of the Plan arose but shall be subject to the defenses and rights of the non-Debtor party.  The holder of a Disputed Claim that asserts a right of setoff will retain that right, subject to any defenses of the Debtor, the Estate, the Reorganized Debtor, or the Liquidating Trustee until the earlier of the time when (a) the Disputed Claim becomes Allowed, in whole or in part, and (b) the Claim is Disallowed by a Final Order of the Bankruptcy Court.  Nothing contained in the Plan will constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtor, the Estate, the Reorganized Debtor, or the Liquidating Trustee may have against any Person in connection with or arising out of any Claim.

**10.09.  Duty to Disgorge Overpayments.**  To the extent a holder of any Allowed Claim receives more than what such holder is permitted to receive under the Plan, such holder shall immediately return such excess payment(s) to the Liquidating Trustee, failing which, the Liquidating Trustee may sue such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

**10.10.  Procedures for Treating and Resolving Disputed and Contingent Claims.**

(a)     **No Distributions on Disputed Claims Pending Allowance**.  No Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  The Liquidating Trustee may, in his sole discretion, withhold Distributions otherwise due hereunder to the holder of a Claim until the Objection Deadline to enable the Liquidating Trustee to file a timely objection thereto.  When a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall make Distributions with respect to such Allowed Claim, without interest (except as otherwise provided in this Plan), net of any setoff and/or any required withholding of applicable taxes.

(b)     **Distribution Reserve Account**.  On or after the Effective Date, the Liquidating Trustee will establish a Distribution Reserve Account as is appropriate, in his sole and absolute discretion, from the Trust Assets for the benefit of holders of Disputed Claims pending the allowance thereof, the amount of which will be adjusted from time to time as appropriate.  A Claimant will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve Account specifically reserved to pay such Claim unless permitted by Order of the Bankruptcy Court.  As stated above, nothing in the Plan will be deemed to entitle the holder of a Disputed Claim to postpetition interest on such Claim, if Allowed, unless otherwise required under the Bankruptcy Code or the Plan.

(c)     **Claim Estimation**.  The Reorganized Debtor or the Liquidating Trustee may request estimation or limitation of any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the

Bankruptcy Court will determine (i) whether such Disputed Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

(d)    **Distributions After Allowance**.  Payments and Distributions from the Distribution Reserve Account to each respective holder of a Disputed Claim, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such holders of Claims in the Class in which such Claimant is classified.  Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim becomes undisputed, non-contingent, liquidated and Allowed, and in no event later than thirty (30) days after the Disputed Claim becomes an Allowed Claim, the Liquidating Trustee will distribute to the Claimant the property from the Distribution Reserve Account that would have been distributed to such Claimant had its Claim been an Allowed Claim on the date that Distributions were previously made to holders of Allowed Claims in the Class in which such Claimant is classified under the Plan.  After all Disputed Claims have been resolved and all such Claims that become Allowed Claims have been paid in full, any remaining property in the Distribution Reserve Account will be distributed Pro Rata to holders of Allowed Project Partnership-Related Guaranty Claims or Allowed General Unsecured Claims in accordance with the other provisions of the Plan.

(e)    **Allowance of Claims Subject to Bankruptcy Code Section 502(d)**.  Allowance of Claims will, in all respects, be subject to the provisions of section 502(d) of the Bankruptcy Code, except as provided by a Final Order of the Bankruptcy Court or a settlement among the relevant parties.

### 10.11. Distributions Under the Plan.

(a)    **Distributions to be Pro Rata Within a Class**.  Except as otherwise provided in the Plan, all Distributions constituting a partial payment to holders of Allowed Claims within a specific Class shall be made on a Pro Rata basis to holders of Allowed Claims in such Class.

(b)    **Means of Cash Payment**.  Payments made pursuant to the Plan will be in Cash, by the means agreed by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, by a commercially reasonable manner as the payor will determine in its sole discretion.

(c)    **Delivery of Distributions**.    Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders (or at the last known address of such a holder, per the Schedules or records, if no proof of Claim is filed or if the Reorganized Debtor has been notified in writing of a change of address).    If any Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidating Trustee, or its designee, is notified in writing of such holder's then-current address; at which time, all missed Distributions shall be made to such holder without interest.    Amounts in respect of undeliverable Distributions made through the Liquidating Trustee shall be returned to the Liquidating Trustee until such Distributions are claimed.    All claims for undeliverable Distributions shall be made in writing to the Liquidating Trustee on or before the first anniversary of the returned Distribution. After such date, all unclaimed property shall revert to the Liquidating Trustee or any successor thereto, and the Claim of any holder with respect to such property shall be discharged and forever barred.    The Liquidating Trustee may employ or contract with other entities to assist in or make the Distributions required under the Plan.    The Liquidating Trustee and his agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

(d)    **Fractional Dollars; De Minimis Distributions.**    Notwithstanding any other provision of the Plan, payments of fractions of dollars will not be made.    Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Liquidating Trustee will not make any payment of less than one hundred dollars ($100.00) on account of any Allowed Claim, and the Liquidating Trustee shall retain any such payment.

(e)    **Interim Distributions.**    The Liquidating Trustee shall not make interim Distributions without Bankruptcy Court approval.

(f)    **Unclaimed Property.**    Any Distributions that become Unclaimed Property shall be retained by the Liquidating Trustee free and clear of any claims, interests, encumbrances, or restrictions thereon, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.    Unclaimed Property shall be deposited into a pool for redistribution to other holders of Allowed Claims in the same Class as the intended recipient of the Unclaimed Property.

## ARTICLE XI.
## VOTING AND EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

11.01. **Impaired Classes to Vote.**    Classes 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, and 18 are Impaired and will be entitled to vote separately to accept or reject the Plan.    A holder of an Allowed Claim in Class 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, and 18 may vote to accept or reject the Plan.    A holder of a Claim to which an objection has been filed and that has not been temporarily allowed for purposes of voting on the Plan may not vote.    A holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated, and undisputed in the Schedules, or equal to $1.00 if not so shown.

**11.02. Acceptance by Classes.**  A Class of Claims that is entitled to vote to accept or reject the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that has voted on the Plan.  Any Ballot that is not properly completed and timely received by the Ballot Deadline will not be counted.

**11.03. Section 1129(b) Cramdown.**  If any Impaired class of Claims fails to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Proponents reserve the right to request the Bankruptcy Court to confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.  The Proponents assert that the Plan provides for fair and equitable treatment of all Classes of Claims.  The Proponents reserve the right to amend the Plan as may be necessary to obtain confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE XII.
## RETENTION OF JURISDICTION

**12.01. Jurisdiction.**  The Bankruptcy Court will retain the fullest and most extensive jurisdiction as is legally permissible under applicable law, including, without limitation, under sections 105(a) and 1142 of the Bankruptcy Code, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against the Debtor or the Estate and to enforce all Causes of Action that may exist on behalf of the Debtor, the Estate, the Reorganized Debtor, or the Liquidating Trustee, and any related counterclaims, cross-claims, or third-party claims over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor, the Reorganized Debtor, or the Liquidating Trustee from taking any action as may be necessary in the enforcement of any cause of action that may exist on behalf of the Debtor, the Estate, the Reorganized Debtor, or the Liquidating Trustee and that may not have been enforced or prosecuted by the Debtor, which Cause of Action, or other causes of action shall survive confirmation of the Plan and shall not be affected thereby except as specifically provided in the Plan.

**12.02. Examination of Claims.**  Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the reexamination of Claims that have been allowed for the purposes of voting, and the determination of any objections as may be filed to Claims.  The failure by the Debtor, the Reorganized Debtor, or the Liquidating Trustee to object to or to examine any Claim for the purposes of voting will not be deemed a waiver of their rights to object to or to reexamine the Claim in whole or in part.

**12.03. Determination of Disputes.**  The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine (a) all questions and disputes regarding title to the assets of the Estate, the Reorganized Debtor, or the Liquidating Trustee, (b) disputes concerning the allowance of Claims, and (c) all Causes of Action, controversies, disputes, or conflicts, whether or not subject to any pending action, as of the Confirmation Date, for the Debtor, the Reorganized Debtor, or the Liquidating Trustee to recover assets pursuant to the provisions of the Bankruptcy Code.

**12.04. Additional Purposes.** The Bankruptcy Court will retain jurisdiction to the extent permitted by applicable law for the following additional purposes after the Effective Date:

(a)    to hear and determine any modification of the Plan or the Plan Supplement pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission or reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)    to issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the Plan Supplement and the transactions contemplated thereunder, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

(c)    to hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or relating to any of the foregoing;

(d)    to construe and apply any findings of fact and/or conclusions of law made in or in connection with the Confirmation Order;

(e)    to adjudicate matters arising in this case, including matters relating to the formulation and consummation of the Plan;

(f)    to enter any orders, including injunctions, as are necessary to enforce title, rights, and powers of the Debtor, the Reorganized Debtor, or the Liquidating Trustee, and orders authorizing or directing amendments, extensions or waivers of the terms of the Plan Supplement and to impose any limitations, restrictions, terms and conditions on the title, rights, and powers as the Bankruptcy Court may deem necessary;

(g)    to determine all questions and disputes regarding title to the assets of the Debtor, the Estate, the Reorganized Debtor, or the Liquidating Trustee;

(h)    to hear and determine any dispute involving or affecting the existence, nature, scope, validity, or enforceability of the Debtor's discharge referred to in this Plan and the Bankruptcy Code;

(i)    to enter a Final Decree closing this Bankruptcy Case;

(j)    to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Supplement, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, the Plan

Supplement, and the Confirmation Order including the adjustment of the date(s) of performance under the Plan, the Plan Supplement, and any other documents related thereto if the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Supplement, and such other documents may be substantially realized thereby;

(k)     to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(l)     to hear and allow applications for fees and expenses pursuant to sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(m)     to decide issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of the Plan;

(n)     to decide issues concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date and in any way related to the Plan or the transactions contemplated hereby and against the Debtor, the Estate, the Chapter 11 Trustee, and the Creditors Committee, and their respective officers, directors, shareholders, members, partners, attorneys, financial advisors, representatives, and agents;

(p)     to adjudicate any issues concerning assumption or rejection of Executory Contracts, including any disputes concerning Claims arising from the rejection of an Executory Contract;

(q)     to hear and determine any and all objections to any Claims (including Administrative Claims) or Interests, including the allowance, classification, priority, secured status, compromise, estimation, or payment thereof;

(r)     to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim of any Creditor or holder and to reexamine Claims that have been allowed for purposes of voting, and to determine objections that may be filed to Claims, including the resolution of any request for any Administrative Claim, and the determination of any M&M Lien Claim;

(s)     to hear and determine any litigation, including, without limitation, Causes of Action commenced by or against the Debtor, the Estate, the Proponents, the Reorganized Debtor, the Liquidating Trustee, or their property, and any collection matters related thereto, and settlements thereof;

(t)     to hear and determine any disputes or litigation regarding the validity, priority, or extent of any Lien or Security Interest and any Claim associated therewith;

(u)     to hear and determine any disputes or litigation regarding the Liquidating Trust Agreement; and

(v)     to hear and to determine any other matter related hereto and not inconsistent with the Plan, the Confirmation Order, the Bankruptcy Code, or Title 28 of the United States Code.

12.05.  **Failure of the Bankruptcy Court to Exercise Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Bankruptcy Case, including the matters set forth in this Article, the provisions of this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

13.01.  **General Notices.**  Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (a) in writing, (b) served on the parties at the addresses set forth below by certified mail, return-receipt requested, hand delivery, overnight delivery, first-class mail, or fax transmission, and (c) deemed to have been given or made when actually delivered or received:

to the Reorganized AHF:

Alan Weiner
Focus Management Group (USA) Inc.
5001 W. Lemon Street
Tampa, FL 33609

to the Liquidating Trustee:

Walter O'Cheskey
P.O. Box 64456
Lubbock, TX 79464

with a copy to counsel for the Reorganized AHF and Liquidating Trustee:

Max R. Tarbox                           Stephen A. McCartin
Tarbox Law, P.C.                        Gardere Wynne Sewell LLP
2301 Broadway                           1601 Elm Street, Suite 3000
Lubbock, TX 79401                       Dallas, Texas 75201-4761

**13.02. Plan Supplement.**  No later than ten (10) days prior to the Confirmation Hearing, the Proponents shall file with the Bankruptcy Court the Plan Supplement and such exhibits, schedules, agreements, and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Upon the filing of the Plan Supplement, (a) the Proponents will serve copies of the Plan Supplement on the Office of the United States Trustee, and (b) the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims may obtain a copy of the Plan Supplement upon written request to counsel for the Proponents. The Plan Supplement is incorporated in and is a part of the Plan as if set forth in full herein, and all references to the Plan shall refer to the Plan together with all documents contained in the Plan Supplement.

**13.03. Exemption From Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of securities or other property under the Plan; the creation, transfer, filing, or recording of any mortgage, deed of trust, financing statement, or other security interest; or the making, delivery, filing, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax, real estate tax, conveyance, filing, or transfer fees, mortgage, recording, or other similar tax or other government assessment.  All recording officers and other entities whose duties include recordation of documents lodged for recording shall record, file, and accept such documents delivered under the Plan without the imposition of any charge, fee, governmental assessment, or tax.

**13.04. Asserting and Curing Default Under the Plan.**  If there is a default under the provisions of the Plan (as opposed to default under the documentation executed in implementing the terms of the Plan, which documents may provide independent bases for relief concerning the assertion and cure of defaults), any Creditor or party in interest desiring to assert a default will provide the Reorganized Debtor, and the Liquidating Trustee with written notice of the alleged default.  The Reorganized Debtor and the Liquidating Trustee will have thirty (30) days from receipt of written notice to cure the alleged default.  If the default is not cured, any Creditor or party in interest may then file with the Bankruptcy Court, and serve on counsel for the Reorganized Debtor and the Liquidating Trustee, as applicable, a motion to compel compliance with the applicable provision of the Plan.  On finding a material default, the Bankruptcy Court will issue orders compelling compliance with the pertinent provisions of the Plan.

**13.05. Compliance with Tax Requirements.**  In connection with the Plan, the Reorganized Debtor and the Liquidating Trustee will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions will be subject to the withholding and reporting requirements.

**13.06. Revocation or Withdrawal of the Plan.**  The Proponents reserve the right to revoke or withdraw the Plan at any time before the Confirmation Date.  If the Proponents

revoke or withdraw this Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Proponents or any other Person or to prejudice in any manner the rights of the Proponents, the Debtor, the Reorganized Debtor, or any other Person in any further proceedings involving the Proponents, the Debtor, the Reorganized Debtor, or any other Person.

**13.07. Modification of the Plan.**  The Proponents reserve the right to modify the Plan in writing at any time before the Confirmation Date; *provided, however*, that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Proponents shall have complied with section 1125 of the Bankruptcy Code.  The Proponents further reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of the Plan; *provided, however*, that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Proponents shall have complied with section 1125 of the Bankruptcy Code, and (c) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, with permission from the Bankruptcy Court, such holder changes its previous acceptance or rejection.

**13.08. Due Authorization.**  Every holder of an Allowed Claim who elects to participate in the Distributions discussed in the Plan warrants that it is authorized to accept, in consideration of such Claim, the Distributions discussed in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under the Plan.

**13.09. Implementation.**  The Proponents, the Reorganized Debtor, and the Liquidating Trustee, as applicable, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

**13.10. Execution of Documents.**  Upon application by the Reorganized Debtor or the Liquidating Trustee, the Bankruptcy Court may issue an order directing any necessary party to execute, deliver, or to join in the execution or delivery of an instrument or document, and to perform any act necessary for the consummation of the Plan.

**13.11. Bankruptcy Restrictions.**  From and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code – e.g., sections 363 or 364 – except as the Bankruptcy Code may specifically provide otherwise following the Confirmation Date – e.g., 11 U.S.C. § 1127(b).  No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such financial reports as may be required by law.

**13.12. Other Documents and Actions.**  Except as expressly provided for herein or in the Confirmation Order, the Chapter 11 Trustee, the Creditors Committee, the Reorganized Debtor, or the Liquidating Trustee may execute such documents and take such other action as is

46

necessary to effectuate the transactions contemplated in the Plan without the need for further Bankruptcy Court approval.

**13.13. Term of Injunctions or Stays.**  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Bankruptcy Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays continued in the Plan or the Confirmation Order), will remain in full force and effect until the Effective Date.

**13.14. Integration Clause.**  This Plan is a complete, whole, and integrated statement of the binding agreement between the Estate, the Creditors, and other parties-in-interest on the matters herein.  Parol evidence shall not be admissible in an action regarding the Plan or any of its provisions.

**13.15. Interpretation.**  Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings of the articles, paragraphs and sections of the Plan and table of contents in the Plan are inserted for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan or its interpretation.  Nothing herein shall be deemed as a judicial admission by the Proponents. Likewise, any defined terms in the Plan not defined shall have the same meaning as that term has under the Bankruptcy Code.

**13.16. Severability of Plan Provisions.**  Unless otherwise ordered by the Bankruptcy Court, if any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable before the Confirmation Date, the Proponents will have the power to alter or interpret the Plan to make such term or provision valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provisions held to be invalid, void, or unenforceable, and the term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by the holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.17. Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed or amended in connection with the Plan (including, without limitation, the Plan Supplement) and (b) the state of incorporation of the Debtor (Texas) shall govern corporate governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereto.

**13.18. No Admissions.**  The Plan constitutes a settlement and compromise of all Claims against the Debtor or property of the Debtor of whatever character, whether Disputed, contingent, or unliquidated, or whether Allowed by the Bankruptcy Court pursuant to section

502(a) of the Bankruptcy Code. Accordingly, nothing herein shall be deemed or construed as an admission of liability or characterization, or the viability of any defense to liability on the part of the Chapter 11 Trustee, the Creditors Committee, the Debtor, the Reorganized Debtor, the Estate, or any other Person.

**13.19. Section 1125(e) Good-Faith Compliance.** The Proponents and each of their respective representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**13.20. Preservation of the Debtor's Tax-Exempt Status.** Nothing in this Plan is intended to jeopardize the Debtor's status as a tax-exempt entity under Internal Revenue Code section 501(c)(3). Quite the contrary, the Plan is intended to preserve and to protect the Debtor's tax-exempt status.

**13.21. No Stay of Confirmation Order.** The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including Bankruptcy Rules 3020(e) and 7062.

**13.22. AIMCO Portfolio / JPMorgan Chase.** JPMorgan Chase Bank, N.A. ("**JPMorgan Chase**") asserts a lien and security interest in the property owned by the AIMCO Portfolio. Nothing in the Plan is intended to affect the liens asserted by JPMorgan Chase on the AIMCO Portfolio. Instead, the intention is that JPMorgan retain its liens in the AIMCO Portfolio. The intention is that all terms and conditions contained in the respective loan documents applicable to the AIMCO Portfolio – including the promissory notes, deeds of trust, and AHF's guaranties of those loans – shall continue in full force and effect, following confirmation of the Plan. In the event of a default under any of the applicable loan documents following confirmation of the Plan (other than a default resulting solely from the filing of this Bankruptcy Case), JPMorgan Chase may, subject to any applicable notice provisions, undertake the contractual and/or statutory remedies provided for in those loan documents without having to obtain modification of the automatic stay and without regard to any other provisions of the Plan (including, without limitation, to the injunction provisions in the Plan). Upon a sale or refinancing of any of the AIMCO Portfolio, the amounts secured by the applicable liens in favor of JPMorgan Chase shall be considered part of the "closing costs" and shall paid in full, before any proceeds are distributed to Reorganized AHF or the Liquidating Trust.

**13.23. Treatment of Non-Estate Property.** Property owned by the Special Purpose Entities is not property of the Estate. As such, the Plan does not ask for permission to consummate a sale of the property owned by the Special Purpose Entities. With regard to the Special Purpose Entities, the Plan only asks for permission from the Bankruptcy Court to monetize or dispose of the Estate's ownership interests in such entities, whichever is in the best interests of the Estate and the Creditors thereof.

**13.24. HUD Regulations.** The Debtor owns indirect interests in non-debtor entities that, in turn, own real property that are subject to HUD regulations, handbooks, directives, and/or deed restrictions. This Plan shall not affect or modify any such HUD regulations, handbooks, directives, and deed restrictions that apply to non-debtor entities or property of such non-debtor entities that is not property of the estate. AHF, the Reorganized Debtor, the Trustee,

the Liquidating Trustee, or the Liquidating Trust will strictly abide by HUD regulations and restrictive covenants governing these projects.

The Plan does not affect, abrogate or void any HUD statutory or regulatory interest or right related to the ownership, management or control of any HUD insured, mortgaged, or owned multifamily housing project. The Plan does not affect, abrogate, or void any HUD deed interest or restrictive covenant on any HUD-related multi-family housing project, including Brandywood. The Plan does not invoke or extend the bankruptcy court's jurisdiction to any non-bankruptcy estate property, or HUD's statutory, regulatory, or restrictive covenant interest or rights related to the ownership, management or control of any HUD related multi-family housing project.

It is recognized that any multi-family housing project in which AHF, the Reorganized Debtor, the Trustee, the Liquidating Trustee, or the Liquidating Trust has a direct or indirect interest and in which HUD insures the mortgage or has any other interest under the National Housing Act, 12 U.S.C. § 1701, *et seq*., or under the United States Housing Act of 1937, 42 U.S.C. § 1473(f) note, Sec. 511, is subject to HUD regulations, handbooks, directives, and deed restrictions. The dispositions of such property taken by AHF, the Reorganized Debtor, the Trustee, the Liquidating Trustee, or the Liquidating Trust on behalf of the Special Purpose Entities where control is being transferred to another general partner or another person, or where the ownership of the property is being conveyed, must comply with the HUD Form 2530 process of approval, if required by such HUD regulations, handbooks, directives and deed restrictions. Therefore, in compliance with the HUD regulations, AHF, the Reorganized Debtor, the Trustee, the Liquidating Trustee, or the Liquidating Trust will if necessary obtain prior written approval of HUD before it affects any transfer or change in ownership of these properties.

## ARTICLE XIV.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.      Definitions.

For purposes of the Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below. Any capitalized term used in the Plan that is not defined in the Plan shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

*"Administrative Bar Date"* means the date by which all requests for payment of Administrative Claims shall be filed with the Bankruptcy Court and served on the Reorganized Debtor, the Liquidating Trustee, and the U.S. Trustee, which date shall be 30 days after the Effective Date unless extended by order of the Bankruptcy Court.

*"Administrative Claim"* means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code to the extent not already paid or satisfied under the terms of the Plan, including, without limitation, (i) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the businesses of the Debtor (including, without limitation, wages, salaries, and commissions for services), (ii)

Professional Fee Claims, and (iii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

*"Ad Valorem Tax-Exemption Guaranty Claim"* means a Claim against a Debtor pursuant to a guaranty issued by the Debtor to investors in Special Purpose Entities in which AHF guaranteed that the Special Purpose Entities' *ad-valorem* tax exemption would be maintained.

*"Affiliate"* means all persons or entities affiliated with the Debtor pursuant to section 101(2) of the Bankruptcy Code, specifically including the entities listed on Exhibit F attached to the Disclosure Statement.

*"AHF"* means American Housing Foundation.

*"Allowed"* means, with respect to any Claim, such Claim or any portion thereof:

i.      that has been allowed by Final Order;

ii.     that was listed in the Schedules or any amendment thereof as neither disputed, contingent, nor unliquidated and for which no timely proof of Claim was filed;

iii.    for which a proof of Claim in a liquidated amount has been timely filed pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any Final Order of the Bankruptcy Court and as to which either (a) no objection to its allowance has been filed on or before the Claims Objection Deadline or within any other period fixed by the Bankruptcy Code or the Bankruptcy Court or (b) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court; or

iv.     that is expressly allowed in a liquidated amount in the Plan; with respect to an Administrative Claim, means an Administrative Claim for which a timely request for payment has been made in accordance with the Plan that has been allowed by a Final Order of the Bankruptcy Court.

*"Assets"* means all assets of the Estate as of the Effective Date, including "property of the estate" as described in section 541 of the Bankruptcy Code.

*"Avoidance Actions"* means all Causes of Action arising under chapter 5 of the Bankruptcy Code, including, without limitation, Causes of Action arising under sections 502, 506, 510, 541, 542, 544, 545, 546, 547 through 551, and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

*"Ballot"* means the ballot for voting to accept or reject the Plan.

"***Ballot Deadline***" means November 19, 2010, which is the deadline set by the Bankruptcy Court for the receipt of Ballots accepting or rejecting the Plan as modified or amended.

"***Banc One Settling Parties***" means, collectively, (i) Banc One Community Development Corp., as limited partner in Astoria Park Apartments, Ltd., (ii) Banc One Community Development Corp., as limited partner in Amarillo Bel-Aire Apartments, Ltd., (iii) Texas Housing Tax Credit Fund, LLC and BOC VIII Asset Management, LLC, as limited partners in Amarillo Green Acres, Ltd., (iv) Provident Tax Credit Fund V, LLC and BOC V Asset Management, LLC, as limited partners in Amarillo Greentree Village, Ltd., (v) Banc One Community Development Corp. and City Church Outreach Ministries Foundation, as limited partners in NWTH Meridian, Ltd., (vi) Provident Tax Credit Fund III, L.P. and Banc One Community Development Corporation, as limited partners in Park Place Apartments, L.P., (vii) Texas Housing Finance Corp. and Banc One Community Development Corp. THOF IV, Ltd., as limited partners in Waco Parkside Village, Ltd., and (viii) Enterprise Housing Partners III, L.P. and Banc One Neighborhood Development Corp., Glenda Beeson, and D.W. Garrett Trust, as limited partners for Parkview Village, Ltd.

"***Bankruptcy Case***" means the case under Chapter 11 of the Bankruptcy Code commenced by American Housing Foundation.

"***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., including all amendments thereto, to the extent such amendments are applicable to the Bankruptcy Case.

"***Bankruptcy Court***" means the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division.

"***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Bankruptcy Case.

"***Bar Date***" means October 7, 2009, or such other date set by the Bankruptcy Court pursuant to Final Order as a deadline for Creditors to file proofs of claim (other than Administrative Claims and Professional Fee Claims).

"***Brandywood***" means Brandywood Housing, Ltd., which is a limited partnership for which Brandywood Apartments, Inc. is the general partner.  AHF is the 100% owner of Brandywood Apartments, Inc.

"***Brandywood Property***" means all personal and real property owned by and used in the operation of Brandywood.

"***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Dallas, Texas.

"*Cash*" means legal tender of the United States of America or equivalents thereof, including, without limitation, cash or cash equivalents such as bank deposits, checks, or other similar items.

"*Causes of Action*" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Actions and actions against directors and officers, lawyers, and accountants, unless otherwise waived by the Debtor or the Reorganized Debtor. This definition specifically includes the "Claims and Causes of Action" as listed and defined in <u>Exhibit E</u> to the Disclosure Statement.

"*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"*Claims Objection Deadline*" means as applicable (except for Administrative Claims) (i) the day that is the later of (a) the first Business Day that is ninety (90) days after the Effective Date, and (b) as to proofs of claim filed after the Bar Date, the first Business Day that is ninety (90) days after a Final Order is entered deeming the late filed claim to be treated as timely filed, and (ii) such later date as may be established by the Bankruptcy Court as may be requested by the Reorganized Debtor.

"*Class*" means a category of holders of Claims as described in Article III of this Plan.

"*Collateral*" means any property or interest in property of the Estates that is subject to a valid and enforceable Lien or Security Interest to secure the payment or performance of a Claim, which such Lien or Security Interest is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

"*Confirmation Date*" means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Case in the Bankruptcy Court.

"*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

"*Convenience Claim*" means a Claim against the Debtor that otherwise would be a General Unsecured Claim included in Class 17 that (i) equals $100,000.00 or less, or (ii) equals an amount that is greater than $100,000.00 but less than $200,000.00 and the holder of such Claim has made the Convenience Class Election on the Ballot within the time fixed by the Bankruptcy Court in the Solicitation Order.

"*Convenience Class Election*" means the election on the Ballot made by the holder of a Convenience Claim.

*"Creditor"* means any holder of a Claim on the Petition Date.

*"Creditors Committee"* means the Official Committee of Unsecured Creditors appointed in this Bankruptcy Case pursuant to section 1102(a) of the Bankruptcy Code in the Bankruptcy Case.

*"Debtor"* means AHF.

*"Deficiency Claim"* means any portion of a Claim (i) to the extent the value of the holder's interest in Estate Property securing such Claim is less than the amount of such Claim or (ii) to the extent the amount of a Claim is subject to setoff is less than the amount of the Claim, each as determined by section 506(a) of the Bankruptcy Code.

*"Disallowed Claim"* means a Claim, or any portion thereof, that (i) has been disallowed by a Final Order or pursuant to a settlement, or (ii)(a) is Scheduled at zero or as contingent, disputed, or unliquidated and (b) as to which a Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (iii) is not Scheduled and as to which no proof of claim or request for payment has been filed or deemed timely filed by the Bar Date.

*"Disclosure Statement"* means the written disclosure statement (including all schedules thereto or referenced therein) that relates to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified, or supplemented from time to time.

*"Disputed Claim"* means any Claim that is not an Allowed Claim.

*"Distribution"* means the payment of Cash or transfer of property to the holders of Allowed Claims pursuant to this Plan.

*"Distribution Date"* means, with respect to all Claims, the date that is within ninety (90) days after the date on which the Reorganized Debtor or Liquidating Trustee, as applicable, determines in its or his sole and absolute discretion, that sufficient funds exist to (i) pay Allowed Claim of the highest priority of previously unpaid Claims and (ii) deposit sufficient funds in the Distribution Reserve Account.

*"Distribution Reserve Account"* means an account established by the Liquidating Trustee to hold Cash reserved for the purpose of making Distributions to Disputed Claims if such Claims later become Allowed Claims. To the extent that the amount in the Distribution Reserve Account exceeds the amount necessary to pay the Allowed portion of originally Disputed Claims, that excess amount shall be redistributed pursuant to this Plan.

*"Effective Date"* means the first Business Day on which no stay or motion for a stay of the Confirmation Order is in effect and that is after fourteen (14) days (as calculated in accordance with Bankruptcy Rule 9006(a)) following the Confirmation Date and all conditions to the Effective Date have been satisfied or waived.  The Reorganized Debtor will file and serve notice of the Effective Date within three (3) Business Days after its occurrence.

*"Entity"* means any individual, corporation, partnership, joint venture, association, joint stock company, unincorporated organization, estate, trust, governmental unit, or other entity, including, without limitation, the Debtor and the United States Trustee, whether singular or plural.

*"Estate"* means the bankruptcy estate of the Debtor created by section 541 of the Bankruptcy Code.

*"Estate Property"* means all rights, title, and interest in and to any property of every kind or nature owned by a Debtor or its Estate as of the Effective Date, including generally all property covered and included by section 541 of the Bankruptcy Code and specifically Life Insurance Proceeds, Lakewood Terrace Townhomes, Intercompany Receivables, Causes of Action, and Miscellaneous Assets.

*"Excess Revenues"* means the Cash in the Reorganized Debtor's non-restricted operating bank account that exceeds $800,000.00 on December 31, of a calendar year measured on an annual basis.   To be perfectly clear, for example, if the Cash in Reorganized Debtor's non-restricted operating bank account is $900,000 on January 1, 2012, then the Excess Revenue paid to the Liquidating Trust for calendar year 2011 pursuant to section 7.12 of this Plan is $100,000.00.

*"Executory Contract"* means an "executory contract" or "unexpired lease" governed by section 365 of the Bankruptcy Code.

*"Exhibit"* means an exhibit annexed or attached to the Plan or the Disclosure Statement.

*"Face Amount"* means (i) as to a Disputed or Disallowed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, and (ii) as to an Allowed Claim, the full stated amount of such Claim claimed by the holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court or the amount reflected in a Final Order or in the Schedules, as amended, if such claimant was not required to file a proof of Claim by reason of the Bankruptcy Rules, or in an amount agreed to by the holder of such Claim and the Debtor or the Reorganized Debtor, as applicable.   The Face Amount shall include any amounts claimed in a timely filed Notice of Claim Under 506(b).

*"Final Decree"* means the Final Order entered by the Bankruptcy Court closing this Bankruptcy Case pursuant to Bankruptcy Rule 3022.

*"Final Order"* means (i) an order as to which the time to appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (ii) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any

further appeal, petition for certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired; *provided, however*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure (and Bankruptcy Rules 9023 and 9024, respectively) may be filed with respect to such order.

*"General-Partner Tort-Guaranty Claim"* means a Claim against a Debtor pursuant to a guaranty issued by the Debtor for the benefit of a partner of the Debtor in a Special Purpose Entity for fraud, fiduciary-duty breaches, and gross negligence of the general partner of a partnership.

*"General Unsecured Claim"* means a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Convenience Claim, a Project Partnership-Related Guaranty Claim, or a Subordinated Claim.

*"Governmental Unit"* shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

*"HUD"* means "United States Department of Housing and Urban Development."

*"Impaired"* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

*"Intercompany Receivables"* means money owed by related entities to AHF for any reason, including (a) loans made by or payable to AHF, by promissory note, note receivable, or otherwise, (b) developer fees due and owing to AHF, (c) amounts due for services provided by AHF, or (d) payments by AHF on behalf of related entities.

*"Interest"* means all rights (including unpaid dividends) arising from "equity security" as that term is defined in section 101(16) of the Bankruptcy Code issued prior to the Petition Date, including any preferred redemption rights.

*"Lakewood Terrace Townhomes"* means the real property consisting of approximately 166 townhomes located in a residential housing development known as Lakewood Terrace in the City of Baytown, Harris County, Texas.

*"Lien"* has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code and shall include a "statutory lien" as defined in section 101(53) of the Bankruptcy Code.

*"Lien Documents"* means any agreement, instrument, affidavit, filing, or recording evidencing, creating, or perfecting a Lien.

*"Life Insurance Proceeds"* means the proceeds from life insurance policies owned by AHF on the life of Steve W. Sterquell, more fully described in section 8.03 of the Disclosure Statement.

*"Liquidating Trust"* means that certain trust established pursuant to this Plan and the Liquidating Trust Agreement for the benefit of holders of Allowed Claims.

***"Liquidating Trust Agreement"*** means that certain trust agreement to be entered into pursuant to the Plan under which the Liquidating Trust will be established.  The Liquidating Trust Agreement will be substantially in the form attached hereto as <u>Exhibit C</u>.

***"Liquidating Trustee"*** means Walter O'Cheskey, who is the person charged with overseeing, among other things, (i) the Claims-resolution process, (ii) the distribution process for all Allowed Claims, (iii) the pursuit, prosecution and/or resolution and compromise and settlement of the Causes of Action, and (iv) the payment of all amounts under the Plan.

***"Liquidation Analysis"*** means the list of Trust Assets, projected Allowed Claims, and the projected Distribution to Allowed Project Partnership-Related Guaranty Claims and Allowed General Unsecured Claims, attached to the Disclosure Statement as <u>Exhibit A</u>.

***"Miscellaneous Assets"*** means Estate Property other than Life Insurance Proceeds, Lakewood Terrace Townhomes, Intercompany Receivables, Causes of Action, and Non-Debtor related entities and Affiliates.

***"Net Operating Proceeds"*** means the income net of operating costs, including quarterly fees paid to the United States pursuant to 28 U.S.C. § 1930(a)(6), and closing costs generated by the Retained Properties and Lakewood Terrace Townhomes from operations and sales.

***"Non-Debtor Affiliate"*** means the Estate's ownership interest in the Special-Purpose Entities owned by the Debtor, including those entities listed on <u>Exhibit F</u> to the Disclosure Statement.

***"Notice of Claim Under 506(b)"*** means a notice filed with the Bankruptcy Court and sent to the Reorganized Debtor by a secured creditor to assert a Claim for interest, reasonable attorney's fees, costs, and charges pursuant to section 506(b) of the Bankruptcy Code, detailing amounts claimed by such a secured creditor thereunder.

***"Notice of Proposed Sale or Other Disposition of Retained/Rejected Properties"*** means the unaudited written report mentioned in Article VI to be filed by the Reorganized Debtor with the Bankruptcy Court no later than fifteen (15) days before a proposed sale or other disposition of a Retained or Rejected Property by the Reorganized Debtor.  This unaudited written report shall contain (a) the Special Purpose Entity to be sold or otherwise disposed, (b) the method of such action – e.g., sale or other disposition, and (c) the method and amount, if quantification is reasonably ascertainable, to be received by the Reorganized Debtor from such action.

***"Objection Deadline"*** means the date by which objections to Claims shall be filed with the Bankruptcy Court and served on respective holder(s) thereof as provided in Article X of the Plan, which date shall be 90 days after the Effective Date unless extended by order of the Bankruptcy Court.

***"Operating Budget"*** means the budget that identifies estimated income and expenses to be incurred by the Reorganized Debtor in the 24-month period after the Confirmation Date and as attached to the Disclosure Statement as <u>Exhibit B</u>.

***"Operating Deficit Guaranty Claim"*** means a Claim against the Debtor pursuant to a guaranty issued by the Debtor for the benefit of certain related entities to pay operating deficits of a Special Purpose Entity.

***"Operating Fund Reserve"*** means the Cash to be retained by Reorganized AHF in an amount equal to the beginning cash reflected in the Operating Budget and the amount necessary to pay ordinary and necessary expenses and budgeted capital-expenditure loans to the Retained Properties in the 24-month period after the Confirmation Date to maximize the value of the Retained Properties. As shown in the Operating Budget, the amount of this Operating Fund Reserve is estimated to be approximately $1,300,000.00

***"Other Secured Claims"*** means a Secured Claim other than (i) a Secured Tax Claim, (ii) an M&M Lien Claim, and (iii) Secured Claim of:  (a) Texas Capital Bank, (b) BAC Home Loan Servicing L.P., (c) Graham Mortgage Corporation, (d) Gary Graham IRA, (e) Cenlar, (f) Griffiths, Sammarco, Pierre, and Sullivan, (g) Happy State Bank, (h) Wells Fargo Bank, and (i) Capital One Bank, N.A.

***"Person"*** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

***"Petition Date"*** means April 21, 2009.

***"Plan"*** means this *Second Amended Joint Chapter 11 Plan Filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors* pursuant to 11 U.S.C. § 1121(b), including all supplements, appendices and schedules thereto, either in its present form or as the same may be further altered, amended or modified from time to time in accordance with the Bankruptcy Code.

***"Plan Document"*** means any document referenced in or cited by the Plan.

***"Plan Supplement"*** means the supplement to the Plan as discussed in Article XIII of the Plan.

***"Priority Non-Tax Claim"*** means a Claim or a portion thereof against the Debtor other than an Administrative Claim or Priority Tax Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

***"Priority Tax Claim"*** means a Claim against the Debtor entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

***"Professional"*** means (i) any professional employed in the Bankruptcy Case pursuant to sections 327, 328, 330, or 1103 of the Bankruptcy Code or otherwise and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to section 503(b)(4) of the Bankruptcy Code and supported by the Debtor or the Reorganized Debtor.

***"Professional Fee Claim"*** means a Claim against the Debtor under sections 328, 330(a), 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Bankruptcy Case on or prior to the Effective Date

(including expenses of the members of the Creditors Committee incurred as members of the Creditors Committee in discharge of their duties as such).

*"Project Partnership-Related Guaranty Claim"* means a Claim against the Debtor pursuant to a guaranty issued by the Debtor for the benefit of certain related entities and shall include a Tax Recapture Guaranty Claim, an Operating Deficit Guaranty Claim, an Ad Valorem Tax-Exemption Guaranty Claim, and a General-Partner Tort Guaranty Claim.

*"Proponents"* means the Chapter 11 Trustee and the Creditors Committee.

*"Pro Rata"* means, as to a particular Claim or Interest, the proportion that the amount of an Allowed Claim in a Class bears to the aggregate amount of all Claims in that Class, including Disputed Claims but excluding Disallowed Claims. For purposes of this calculation, the amount of a Disputed Claim will equal the lesser of (i) its Face Amount, and (ii) the amount estimated as allowable by the Bankruptcy Court.

*"Quarterly Report"* means the unaudited written report and account mentioned in Article VII to be filed by the Liquidating Trustee with the Bankruptcy Court no later than thirty (30) days after the end of each quarter, and as soon as practicable after termination of the Liquidating Trust. This unaudited written report and account shall contain (a) the value of the Trust Assets and the amount of Liquidating Trust's liabilities at the beginning and end of each quarter or upon termination of the Liquidating Trust, as applicable; (b) all Distributions by Class made by the Liquidating Trust during that quarter; and (c) any action taken and deemed material by the Liquidating Trustee, in his sole and absolute discretion, in the performance of his duties under this Plan and the Liquidating Trust Agreement that has not previously been reported.

*"Rejected Properties"* means the Estate's ownership interest, direct or indirect, in the Special Purpose Entities listed on Exhibit B attached hereto or listed in the Plan Supplement that have been identified by the Debtor as having little to no value to the Estate. Nothing in this Plan restricts the Proponents' right to add or remove a Special Purpose Entity from Exhibit B if they determine such an addition or removal is in the best interests of the Estate to maximize the recovery on all Allowed Claims.

*"Rejection Claim"* means any Claim against the Debtor for damages arising from the rejection of an Executory Contract.

*"Reorganized AHF Board"* means the six-person committee proposed to consist of Jerry Hodges, Dennis Dougherty, Tim Nichols, Carroll Forrester, and two tenants from affordable-housing communities owned by Special Purpose Entities listed as Retained Properties selected pursuant to applicable law and regulations for tax-exempt entities under Internal Revenue Code § 501(c)(3), including regulations imposed by the Department of Housing and Urban Development. If the proposed members of the Reorganized AHF Board refuse to serve on or resign from the Reorganized AHF Board, then the Proponents or the President of the Reorganized Debtor, as applicable, will select alternative members for the Reorganized AHF Board and submit such names to the Bankruptcy Court for approval. The Reorganized AHF Board will be the sole board responsible for supervising the operation of the Reorganized Debtor and the liquidation of the Retained Properties.

***"Reorganized Debtor or Reorganized AHF"*** means AHF as reconstituted and described in Article VI to effectuate the stabilization and ultimate liquidation of the Retained Properties contemplated in this Plan

***"Restructuring Professionals"*** means, collectively, Tarbox Law, P.C., Gardere Wynne Sewell LLP, Focus Management Group USA, Inc., Mullin, Hoard & Brown, L.L.P., Harry J. Potter, and their respective affiliates, members, partners, shareholders, officers, directors, and employees.

***"Retained Properties"*** means the Estate's ownership interest, direct or indirect, in the Special Purpose Entities listed on <u>Exhibit A</u> attached hereto or listed in the Plan Supplement that have been identified by the Debtor as having current or future value to the Estate. Nothing in this Plan restricts the Proponents' ability to add or remove a Special Purpose Entity from <u>Exhibit A</u> if they determine such an addition or removal is in the best interests of the Estate to maximize the recovery on all Allowed Claims.

***"Scheduled"*** means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

***"Schedules"*** means the schedules of assets and liabilities and the statements of financial affairs filed in the Bankruptcy Case by the Debtor, as such schedules have been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or Orders of the Bankruptcy Court.

***"Secured Claim"*** means any Claim or portion thereof against the Debtor that is reflected in the Bankruptcy Schedules or a proof of Claim as secured by a perfected security interest in, or Lien on, any Collateral, or the net proceeds from the sale of such Collateral, in which a Debtor has an interest, to the extent of the value, as of the Petition Date (or such other date as is established by the Bankruptcy Court) of such security interest or Lien as determined by a non-appealable Final Order pursuant to section 506 of the Bankruptcy Code or as otherwise agreed in writing by the holder of such Claim and (i) the Debtor (if such agreement is effectuated prior to the Effective Date), (ii) the Reorganized Debtor or Liquidating Trustee (if such agreement is effectuated on or after the Effective Date); or (iii) a Setoff Claim.

***"Secured M&M Lien Claim"*** means any Liens or Claims of any Persons against the Debtor to the extent arising and properly perfected on account of labor performed, or services, materials, goods, or equipment furnished with respect to development, completion, maintenance, repair, operations, or related activity on or with respect to any lands, material, machinery, supplies, improvements owned, in whole or in part, by the Debtor, to the extent arising under these categories and under applicable law, including without limitation, the Texas Property Code Chapter 56, or similar laws of those or any other state.

***"Secured Non-Tax Claim"*** means a Secured Claim against the Debtor other than a Secured Tax Claim or a Secured M&M Lien Claim.

***"Secured Tax Claim"*** means a Secured Claim against the Debtor owing to a taxing authority.

**"Security Interest"** has the meaning ascribed to such term in section 101(51) of the Bankruptcy Code.

**"Setoff Claim"** means any Secured Claim against the Debtor that is secured by a right to offset a mutual debt owing by a Creditor to the Debtor that arose before the Petition Date against a Claim of such Creditor against the Debtor that arose before the Petition Date.

**"Solicitation Order"** means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**"Special Purpose Entities"** means the entities owned directly or indirectly by the Debtor on the Petition Date, including those entities that (i) own or operate sixty-five (65) "affordable-housing communities" with 13,000 units, collectively, located in nine (9) states, or (ii) serve as the General Partner of such entities.

**"Subordinated Claim"** means a Claim against the Debtor that is subordinated pursuant to section 510 of the Bankruptcy Code or any subordination agreement enforceable under applicable non-bankruptcy law.

**"Tax Credit Recapture Guaranty Claim"** means a Claim against the Debtor pursuant to a guaranty issued by the Debtor for the benefit of investors who incur adverse tax consequences as a result of a change in tax-exempt status of a Special Purpose Entity.

**"TCB or Texas Capital"** means Texas Capital Bank, National Association, as a creditor and party in interest in the Bankruptcy Case.

**"TCB Release"** means the release given to TCB as part of the TCB Settlement.

**"TCB Settlement"** means the proposed compromise and settlement between the Estate and Texas Capital Bank described in  Article I.

**"TCB Litigation"** means the pending litigation involving TCB's alleged security interest in the Life Insurance Proceeds.

**"Trust Assets"** means all Estate Property not sold or otherwise disposed of or abandoned as of the Effective Date, other than and excluding Retained Properties, Rejected Properties, Lakewood Terrace Townhomes, any proceeds of a Cause of Action related to recovery of "deferred developer notes" allegedly fraudulently transferred to Mid-Continent Community Development Corporation or any similarly named entity, the Operating Fund Reserve, together with all interest and earnings thereon on and after the Effective Date, which will all be assets of the Reorganized AHF; *provided, however*, if sale of the Lakewood Terrace Townhomes is not closed by the Confirmation Date, all Estate rights in and to the Lakewood-Terrace sale proceeds received by the Estate or the Reorganized AHF will be Trust Assets and transferred to the Liquidating Trust.

**"Trust Oversight Committee"** means the four-member committee proposed to consist of Tim Nichols, Campbell Burgess, Ed Attebury, and Terrill Horton to monitor the actions taken by the Liquidating Trustee.  If the proposed members of the Trust Oversight Committee refuse to

serve on or resign from the Trust Oversight Committee, then the remaining members of the Trust Oversight Committee will nominate alternative members other than Robert Templeton for the Trust Oversight Committee and submit such names to the Bankruptcy Court for approval. The Trust Oversight Committee shall be authorized to review, consult with on not less than a quarterly basis, and advise the Liquidating Trustee in connection with any matters relating to Liquidating Trustee, including litigation, compromises of litigation, and various causes of action and distributions.

*"Unclaimed Property"* means a Distribution pursuant to this Plan that is either (i) attributable to a holder of an Allowed Claim that has failed to prepare, execute and return to the Reorganized Debtor an Internal Revenue Service Form W-9 if so requested by the Reorganized Debtor, or (ii) returned to the Reorganized Debtor as undeliverable or otherwise unclaimed as of one hundred eighty (180) days after a Distribution. Unclaimed Property will include, without limitation, Cash and any other property that is to be distributed pursuant to this Plan that has been returned as undeliverable without a proper forwarding address, or that was not mailed or delivered because of the absence of a proper address to which to mail or deliver such property.

*"Unimpaired"* means that a Claim is not impaired within the meaning of section 1124 of the Bankruptcy Code.

*"U.S. Trustee"* means the Office of the United States Trustee, or a representative thereof.

*"Voting Deadline"* means November 19, 2010, as the last day and time for submitting a Ballot to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

*"Voting Record Date"* means the record date for voting on this Plan, which shall be October 26, 2010, the date of the Court's entry of the Disclosure Statement Order.

### B.    Rules of Interpretation.

For purposes of this Plan: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) unless otherwise specified, all references in this Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to this Plan; and (v) the rules of construction enumerated in section 102 of the Bankruptcy Code shall apply to this Plan as if fully set forth herein.

### C.    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

Dated: December 6, 2010

Respectfully Submitted,


*/s/ Max R. Tarbox*
Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: 806.686.4448
Fax: 806.368.9785


and

*/s/ Marcus A. Helt*
Stephen A. McCartin (TX 13374700)
Marcus A. Helt (TX 24052187)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  214.999.3000
Facsimile:  214.999.4667

**COUNSEL FOR WALTER
O'CHESKEY, CHAPTER 11 TRUSTEE**



*/s/ David R. Langston*
David C. Mullin (TX 14651600)
David R. Langston (TX 11923800)
MULLIN, HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas  79408
Telephone:  806.765.7491
Facsimile:  806.765.0553

**COUNSEL   FOR   THE   OFFICIAL
COMMITTEE   OF   UNSECURED
CREDITORS**

**CHAPTER 11 TRUSTEE:**


*/s/ Walter O'Cheskey*_____
Walter O'Cheskey, Chapter 11 Trustee for
American Housing Foundation