Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: 806.686.4448

Stephen A. McCartin (TX 13374700)
Barry Golden (TX 24002149)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone: 214.999.3000

**COUNSEL FOR WALTER O'CHESKEY,
LIQUIDATING TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| **In re:** § § **Chapter 11** § **American Housing Foundation,** § § § **Debtor.** § **Case No.: 09-20232-RLJ** § § **Walter O'Cheskey, Liquidating Trustee of** § **the AHF Liquidating Trust,** § § **Plaintiff,** § § **Adversary No. _____** **v.** § § **Randy Sharp, Deborah Lynn Bullard,** § **Stacy Lou Sharp, Karra Lee Hill and** § **Teresa G. Wallace, Co-Trustees of the W.** § **A. Mays and Agnes Mays Trusts #2-3, #2-** § **4, #2-5, #2-6, #2-7, #2-8 and #2-9,** § § **Defendants.** § | |

## LIQUIDATING TRUSTEE'S COMPLAINT AGAINST
## THE MAYS TRUSTS TO AVOID GUARANTEES AS FRAUDULENT
## OBLIGATIONS, TO SUBORDINATE ALLOWED CLAIMS,
## AND TO AVOID AND RECOVER FRAUDULENT AND PREFERENTIAL
## <u>TRANSFERS, TOGETHER WITH OBJECTIONS TO CLAIMS</u>

# TABLE OF CONTENTS

I. Parties ...................................................................................................................................1

II. Jurisdiction and Venue ..........................................................................................................2

III. Statement of Facts .................................................................................................................3

IV. Objection to Mays Trust Claims ...........................................................................................7

V. Causes of Action ....................................................................................................................8

      First Cause of Action – Avoidance of Fraudulent Obligations ................................8

      Second Cause of Action – Mandatory Subordination of the Mays Trust
      Claim .........................................................................................................................9

      Third Cause of Action – Equitable Subordination of the Mays Trust Claim ........10

      Fourth Cause of Action – Avoidance And Recovery Of Fraudulent
      Transfers .................................................................................................................10

      Fifth Cause of Action – Avoidance And Recovery Of Preferential
      Transfers .................................................................................................................12

      Sixth Cause of Action – Disallowance Of Claim Under 11 U.S.C. § 502(d) ........12

VI. Request for Relief ................................................................................................................13

Walter O'Cheskey, the Liquidating Trustee (the "**Trustee**" or "**Plaintiff**") for the AHF Liquidating Trust, hereby files this *Complaint* (the "**Complaint**") against Defendants Randy Sharp, Deborah Lynn Bullard, Stacy Lou Sharp, Karra Lee Hill and Teresa G. Wallace, Co-Trustees of the W. A. Mays and Agnes Mays Trusts #2-3, #2-4, #2-5, #2-6, #2-7, #2-8 and #2-9 (collectively, the "**Mays Trust**"). In support of this Complaint, the Trustee, after a review of the books and records of American Housing Foundation ("**AHF**") and upon information and belief, respectfully alleges as follows:

## I.
### PARTIES

1.  Plaintiff, Walter O'Cheskey, as Liquidating Trustee of the AHF Liquidating Trust, brings this action pursuant to the power and authority provided in the *Second Amended Joint Chapter 11 Plan* confirmed by this Court on December 7, 2010, and the Liquidating Trust Agreement dated January 1, 2011. The Trustee maintains his principal office at 6308 Iola Avenue, Suite 200, Lubbock, Texas 79464.

2.  Defendants W.A. Mays and Agnes Mays Trusts #2-3, #2-4, #2-5, #2-6, #2-7, #2-8 and #2-9 are trusts with their principal place of administration in Potter County, Texas and may be served by delivering a copy of the Summons and Complaint to their Trustees, Randy Sharp, Deborah Lynn Bullard, Stacy Lou Sharp, Kara Lee Hill, and Teresa G. Wallace, through their attorneys Dusty J. Stockard, Esq., Courtney, Countiss, Brian & Bailey, LLP, 600 S. Tyler Street, Suite 1700, Amarillo, TX 79101. The Mays Trust has filed a claim in this bankruptcy and thus has consented to the jurisdiction of this Court. Courtney, Countiss, Brian & Bailey, LLP has entered an appearance in this bankruptcy proceeding on behalf of Mays Trust.

## II.
## JURISDICTION AND VENUE

3.  On April 21, 2009 (the "**Petition Date**"), certain alleged creditors of AHF filed an involuntary petition against AHF pursuant to chapter 11 and section 303 of title 11 of the United States Code (the "**Bankruptcy Code**") thus initiating the involuntary case [Case No. 09-20232] (the "**Involuntary Case**").[1]  On June 11, 2009, AHF filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code, initiating the voluntary case [Case No. 09-20373] (the "**Voluntary Case**").  On July 17, 2009, the Court entered its *Agreed Order Granting Motion to Consolidate Bankruptcy Cases* [Docket No. 88], consolidating the Voluntary Case and the Involuntary Case into a single case pursuant to Bankruptcy Rule 1015(a).

4.  This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and (b) and 1334.  This is a core proceeding as defined in 28 U.S.C. § 157(b).  If any part of this adversary proceeding is found to be "non-core" under Bankruptcy Rule 7008, the Trustee consents to the entry of final orders and judgments by this Court.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

5.  This Complaint is brought in accordance with Federal Rules of Bankruptcy Procedure 7001, *et seq.*, and seeks relief under sections 105, 502(d), 510(b), 510(c), 544, 547(b), 548, and 550 of the Bankruptcy Code and section 24.005 of the Texas Business and Commerce Code.

---

[1] All references to the "Bankruptcy Code" are made to 11 U.S.C. §§ 101 *et seq*.  Unless otherwise indicated, all section references are references to the Bankruptcy Code.

# III.
## STATEMENT OF FACTS

**Randy Sharp/Mays Trust**

6. Steve Sterquell, Sr. ("**Sterquell**") was the founder and the individual in control of AHF at all times relevant to this Complaint.

7. Sterquell and Randy Sharp are related by marriage. Sterquell's wife is Randy Sharp's sister. Thus, Randy Sharp was Sterquell's brother-in-law.

8. Randy Sharp was a director of AHF at all times relevant to this Complaint.

9. Randy Sharp was and is a trustee of the Mays Trust. Randy Sharp's wife, Stacy Mays Sharp, was a Mays Trust trustee and is a beneficiary of the Mays Trust.

**Sale of the Ranch**

10. The Mays Trust owned a 21,137 acre ranch in New Mexico (the "**Ranch**"), which had been in the family for a long time. On November 16, 2007, the Mays Trust entered into a contract to sell the Ranch for $6,446,785. Randy Sharp's wife, Stacy Sharp, executed the contract of sale as a co-trustee of the Mays Trust.

11. Since the Ranch was acquired a long time ago, upon information and belief, the "tax basis" of the Ranch was small and therefore the expected tax due upon sale would have exceeded $1 million.

12. In order to avoid paying the tax due upon the sale of the Ranch, and in order for Sterquell to obtain the use of the Ranch sale proceeds, Sterquell, Randy Sharp, his wife Stacy Sharp, and the Mays Trust entered into a series of complex transactions which were designed to provide AHF with a loan of the ranch sale proceeds in exchange for (i) interest on the loan, <u>plus</u> (ii) illegitimate tax deductions designed to allow the Mays Trust to avoid paying any tax on the sale of the Ranch.

**Falsely Documented Transactions**

13. The following series of transactions were utilized by the parties to falsely document what was clearly intended to be a loan in exchange for interest on the loan plus tax deductions to avoid paying tax on the sale of the Ranch. All of these transactions were documented and occurred at one "closing" held on December 28, 2007:

- The Mays Trust conveyed the Ranch and the contract of sale to an entity set up by Sterquell named LIHTC Community Development No. 4, LP ("**LIHTC No. 4**") in exchange for a 99.9% ownership interest in LIHTC No. 4[2];

- LIHTC No. 4 then closed the sale of the Ranch, with the net proceeds of $6,219,571 transferred to and deposited into an AHF account with the full knowledge of the Mays Trust (hence, the intended "loan" to AHF)[3];

- Sterquell arranged for LIHTC No. 4 to acquire a 27% interest in LIHTC Community Development No. 2, Ltd. ("**LIHTC No. 2**"); LIHTC No. 2 then provided LIHTC No. 4 with a 2007 K-1 reflecting an illegitimate tax loss of $6,421,379 (almost the exact amount of the sales price of the Ranch)[4]; and

- The Mays Trust then sold its 99.9% ownership interest in LIHTC No. 2 (which now owned <u>no assets of any value</u>)[5] to another Sterquell affiliate, Mid-Continent Community Development ("**Mid-Continent**") for a $6,319,571 Mid-Continent promissory note (the "**Mid-Continent Note**"), <u>which was guaranteed by AHF</u> (the "**Guaranty**," which is the basis of the Mays Trust claim filed herein).

---

[2] The parties back-dated the Mays Trust acquisition of the LIHTC No. 4 interest to 3/7/07.

[3] Sterquell apparently instructed his accounting firm, Brown, Graham & Company, PC, to book this transfer as a loan from AHF Development, Ltd. to AHF (this makes up $6,219,571 of the disputed inter-company claim of AHF Development, Ltd. against AHF for $16 million).

[4] The $6,421,379 tax loss provided by LIHTC No. 2 to LIHTC No. 4 was generated from either (i) an alleged gift of four apartment complexes by LIHTC No. 2 to Mid-Continent Community Development on December 31, 2007 (the problem is these complexes were not owned by LIHTC No. 2 and therefore the gift tax deduction was illegitimate), or (ii) LIHTC No. 4 (99.9% ownership owned by Mays Trust was allegedly sold to Mid-Continent on December 31, 2007) also donated its 27% ownership interest having no real value (LIHTC No. 2 allegedly donated its sole assets, 4 apt. complexes, to Mid-Continent on 12/31/07 also), to LIHTC No. 4 in exchange for a charitable gift tax deduction letter reflecting the 27% interest had a value of $6.4 million.

[5] LIHTC No. 4 originally owned (i) the Ranch, which was sold and the sale proceeds transferred to AHF, and (ii) a 27% interest in LIHTC No. 2, which allegedly owned four apartment complexes which were allegedly "gifted" to Mid-Continent—thus, LIHTC No. 4 owned no assets with any value when the Mays Trust "sold" its 99.9% interest in LIHTC No. 4 to Mid-Continent for a $6,319,571 note guaranteed by AHF (clearly this "sale" was a sham).

**TRUSTEE'S COMPLAINT AGAINST THE MAYS TRUST TO AVOID AND RECOVER FRAUDULENT AND PREFERENTIAL
TRANSFERS, TOGETHER WITH OBJECTIONS TO CLAIMS                                    PAGE 4**

14. The following chart reflects these transactions:



15. On November 26, 2008, the Mays Trust received $500,000 from AHF Development, Ltd which was applied to interest accrued on the Mid-Continent Note. AHF and AHF Development were insolvent on November 26, 2008.

16. Again, these sham transactions were falsely documented to:

   (i) Disguise what was clearly a loan of the Ranch sale proceeds by the Mays Trust to AHF, in return for which the Mays Trust would receive:

   - repayment of the net sale proceeds, plus default interest at the rate of 18% per annum, and

   - illegitimate tax deductions of $6,421,379, almost the exact amount needed for the Mays Trust to avoid paying over $1 million of tax due on the $6,446,785 sale of the Ranch.

17. The Mays Trust has now filed a claim in this proceeding (under penalty of perjury) asserting that:

   - Mid-Continent owes the Mays Trusts $7,283,404 (including default interest at 18%) under the promissory note delivered for the sham purchase of its 99.9% interest in LIHTC No. 4, and

   - alleging that AHF is liable for that debt pursuant to its guaranty of the Mid-Continent Note.

18. Accordingly, the Trustee:

   a. objects to the Mays Trust claim asserted against AHF as arising from a sham and therefore it is a void transaction;

   b. requests the Court to void the Guaranty under applicable state and federal fraudulent-conveyance statutes (fraudulent-transfer obligations). AHF owned no interest in Mid-Continent (the purported purchaser of the 99.9% interest in LIHTC No. 4) and therefore received no value, much less fair equivalent value, for its Guaranty obligation; AHF was insolvent when the Guaranty was executed;

    c. disallow the request for the allowance of a claim in equity…claimant must have "clean hands" in order to be allowed an equitable claim;

    d. if a claim is allowed, the Trustee requests the Court to subordinate the Mays Trust claim:

        (ii) pursuant to § 510(b) of the Bankruptcy Code as resulting from the sale or purchase of a security of an affiliate of AHF, and/or

        (iii) pursuant to § 510(c) as arising from improper conduct in participating in shame transaction and illegitimate tax scheme; and

    e. seeks the avoidance and recovery of $500,000 in fraudulent and/or preferential transfer payments to the Mays Trust made on November 26, 2008 pursuant to sections 547, 548 and 550 of the Bankruptcy Code and applicable state law, and disallowance of any claims under section 502 of the Bankruptcy Code until such transfer has been returned or repaid.

## IV.
### OBJECTION TO MAYS TRUST CLAIMS

19. The Mays Trust alleges in its proof of claim #90-1 filed in the AHF bankruptcy proceeding (the "**Mays Trust Claim**") that:

- Mid-Continent executed a promissory note in the original amount of $6,319,571.66 dated December 31, 2007, made payable to the Mays Trust (the "**Mid-Continent Note**");

- Default interest has accrued under the Mid-Continent Note at the rate of 18% per annum;

- A partial payment of $500,00 was made on November 26, 2008;

- The balance due under the Mid-Continent Note is $7,283,404.48 as of June 11, 2009, (the AHF voluntary petition filing date); and

- On December 31, 2007, AHF executed an unconditional guarantee of the payment obligation contained in the Mid-Continent Note (the "**Guaranty**").

20. The Trustee objects to the Mays Trust Claim. The Mid-Continent Note and Guaranty were created as part of a series of sham transactions and an abusive tax shelter transaction and are therefore void and of no legal force and effect. The Trustee also objects to the allowance of an equitable claim, as the claimant has "unclean hands" and is therefore not entitled to the allowance of an equitable claim.

## V.
### CAUSES OF ACTION

#### FIRST CAUSE OF ACTION – AVOIDANCE OF FRAUDULENT OBLIGATIONS

21. The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

22. In the unlikely event that the Mid-Continent Note and Guaranty are determined to be valid contractual obligations, the Guaranty should be avoided as fraudulent (the "**Fraudulent Obligation**") under section 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

23. Pursuant to section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor of AHF. Section 544(b) of the Bankruptcy Code permits the Trustee to assert claims and causes of action that such creditor could assert under applicable state law.

24. At all times relevant herein the Trustee in his capacity as such was and is a creditor of AHF.

25. AHF incurred the Fraudulent Obligation, in furtherance of the scheme to falsely document a loan and to manufacture illegitimate tax losses and deductions within two (2) years of the Petition Date.

26. The Fraudulent Obligation was incurred with the actual intent to hinder, delay, or defraud then and future creditors of AHF.

27. AHF received less than reasonably equivalent value in exchange for the Fraudulent Obligation.

28. AHF was insolvent at the time it incurred the Fraudulent Obligation.

29. At the time the Fraudulent Obligation was incurred, AHF was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

30. At the time the Fraudulent Obligation was incurred, AHF intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

31. The Fraudulent Obligation is, therefore, avoidable as such under sections 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy Code and TEX. BUS. & COMM. CODE § 24.005.

**SECOND CAUSE OF ACTION – MANDATORY SUBORDINATION OF THE MAYS TRUST CLAIM**

32. The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

33. Pursuant to the provisions of section 510(b) of the Bankruptcy Code, the Mays Trust Claim should be subordinated to the allowed claims of legitimate general unsecured creditors for purposes of distribution as the Mays Trust Claim arises from the purchase or sale of a security of LIHTC No. 4, an affiliate of AHF.

**THIRD CAUSE OF ACTION – EQUITABLE SUBORDINATION OF THE MAYS TRUST CLAIM**

34. The Mays Trust engaged in inequitable conduct, including conduct described in this Complaint, that has resulted in injury to creditors or the conferring of an unfair advantage on or to them. This inequitable conduct has resulted in harm to the AHF bankruptcy estate and its entire creditor body. Allowing a claim based on these improper transactions would improperly dilute the distributions to legitimate unsecured creditors and therefore harm creditors of this estate. Accordingly, pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code, all claims asserted by, on behalf of, or for the benefit of Mays Trust or its affiliates or related entities against AHF should be equitably subordinated to the allowed claims of legitimate general unsecured creditors for distribution purposes because the claim arises from improper conduct in the form of illegitimate and improper tax activities.

35. The Trustee cannot at this time identify every claim that has been filed that may, indirectly, be for the benefit of or on behalf of Mays Trust or its affiliates or related entities because information necessary to make this determination is exclusively in the possession of others. The Court should exercise the full extent of its equitable powers to ensure that claims, payments, or benefits, of whatever kind or nature, that are asserted or sought by Mays Trust or its affiliated or related entities, directly or indirectly, are subordinated pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code. No funds that would otherwise be paid to general unsecured creditors should be paid to Mays Trust, its affiliates, or related entities.

**FOURTH CAUSE OF ACTION – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**

36. The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

37. AHF and/or AHF Development, Ltd. ("**AHF Development**") paid or caused to be paid, and the Mays Trust received, the sum of approximately $500,000 on November 26, 2008, (the "**Transfer**").

38. At all times relevant herein, the Trustee in his capacity as such was and is a creditor of AHF and/or AHF Development.

39. The Transfer was made within four (4) years of the Petition Date.

40. The Transfer was made with the actual intent to hinder, delay, or defraud then and future creditors of AHF and/or AHF Development.

41. In exchange for the Transfer, AHF and/or AHF Development did not receive reasonably equivalent value.

42. When the Transfer was made, AHF and/or AHF Development were engaged or about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

43. AHF and/or AHF Development were insolvent when the Transfer was made.

44. The Transfer was received with knowledge that AHF and/or AHF Development intended to hinder, delay, or defraud their then and future creditors.

45. The Transfer is, therefore, avoidable under section 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy Code and TEX. BUS. & COMM. CODE § 24.005

46. To the extent the Transfer is avoided under sections 544 or 548 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfer from the transferees of the Transfer for the benefit of AHF's and/or AHF Development's bankruptcy estate(s).

**FIFTH CAUSE OF ACTION – AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS**

47. The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

48. The Transfer was made to or for the benefit of a creditor of AHF and/or AHF Development.

49. The Transfer was made for or on account of an antecedent debt owed by AHF before each such Transfer was made.

50. The Transfer was made while AHF and/or AHF Development were insolvent.

51. The Transfer was made on or within one (1) year of the Petition Date.[6]

52. As a result of the Transfer, Defendants received more than they would receive (a) under AHF's and/or AHF Development's chapter 7 bankruptcy proceeding(s), (b) if the Transfer had not been made, and (c) under the provisions of the Bankruptcy Code.

53. To the extent the Transfer is avoided under section 547 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfer from the transferees of the Transfer for the benefit of AHF's and/or AHF Development bankruptcy estate(s).

**SIXTH CAUSE OF ACTION – DISALLOWANCE OF CLAIM UNDER 11 U.S.C. § 502(D)**

54. The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

---

[6] The Mays Trust is an "insider" of AHF and/or AHF Development; therefore, the Trustee is allowed to recover preferential transfers dating back to one year prior to the Petition Date. *See* 11 U.S.C. § 547(b)(4)(B).

55. By reason of the facts alleged in this Complaint, pursuant to section 502(d) of the Bankruptcy Code, all claims asserted by Mays Trust, their affiliates, or his related entities must be disallowed unless he has turned over to the Trustee the property transferred, or paid to the Trustee the value of such property for which he is liable to the Trustee, under section 550 of the Bankruptcy Code.

56. To the extent the Transfer is avoided under sections 544, 547, or 548 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfer from the transferees of the Transfer for the benefit of AHF's bankruptcy estate.

## VI.
### REQUEST FOR RELIEF

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in his favor and against the Mays Trust as follows:

(i) ordering that the Mays Trust Claim is disallowed in its entirety for all purposes;

(ii) in the alternative, ordering that the Guaranty/Fraudulent Obligation is avoided and set aside;

(iii) disallowing any equitable claim by the Mays Trust due to the inequitable conduct and "unclean hands" of the Mays Trust;

(iv) further in the alternative, ordering that any allowed portion of the Mays Trust Claim is subordinated to the allowed claims of general unsecured creditors for distribution purposes;

(v) avoiding and setting aside the Transfer as a preferential transfer;

(vi) ordering that Mays Trust must return the Transfer to the Debtor's estate or pay the Debtor's estate the value thereof;

(vii) ordering that the Mays Trust Claim is disallowed until the Transfer or the value thereof, for which Mays Trust is liable under section 550 of the Bankruptcy Code, has been returned to the Debtor's estate;

(viii) awarding the Trustee his attorneys' fees and costs of suit; and

    (ix)    awarding the Trustee all such other and further relief, at law or in equity, to which he may be justly entitled.

Dated: February 28, 2011

Respectfully submitted,

*/s/ Max Tarbox*
Max R. Tarbox (TX 19639950)
Tarbox Law, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: (806) 686-4448
Fax:    (806) 368-9785

And

*/s/ Marcus A. Helt*
Stephen A. McCartin (TX 13374700)
Barry Golden (TX 24002149)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  214.999.3000
Facsimile:  214.999.4667

**COUNSEL FOR WALTER O'CHESKEY, CHAPTER 11 TRUSTEE**