Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: 806.686.4448

Stephen A. McCartin (TX 13374700)
Barry Golden (TX 24002149)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone: 214.999.3000

**COUNSEL FOR WALTER O'CHESKEY,
LIQUIDATING TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **American Housing Foundation,** | § | |
| | § | |
| Debtor. | § | |
| | § | **Case No.: 09-20232-RLJ** |
| | § | |
| **Walter O'Cheskey, Liquidating Trustee of the AHF Liquidating Trust,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adversary No. _____** |
| v. | § | |
| | § | |
| **Housing for Texans Charitable Trust, d/b/a Housing for Texans Foundation, Scott D. Rice, individually, and Scott D. Rice and Connor Rice as Co-Trustees of the 2001 Scott D. Rice Trust,** | § | |
| | § | |
| Defendants. | § | |

## LIQUIDATING TRUSTEE'S COMPLAINT TO AVOID GUARANTY AS FRAUDULENT OBLIGATION, TO SUBORDINATE ALLOWED CLAIMS, AND TO AVOID AND RECOVER FRAUDULENT AND PREFERENTIAL TRANSFERS, TOGETHER WITH OBJECTIONS TO CLAIMS

# TABLE OF CONTENTS

I.      Executive Summary ...................................................................................................1

II.     Parties ......................................................................................................................3

III.    Jurisdiction and Venue ............................................................................................5

IV.     Statement of Facts ...................................................................................................6

V.      Objection to Rice Trust Claims .............................................................................12

VI.     Causes of Action ...................................................................................................13

        First Cause of Action – Avoidance of AHF Guaranty Fraudulent
        Obligation ..............................................................................................13

        Second Cause of Action – Avoidance of Fraudulent Transfers ...........................14

        of San Patricio Property and St. George's Partners Interest ................................14

        Third Cause of Action – Mandatory Subordination of the Rice Trust Claim ........15

        Fourth Cause of Action – Equitable Subordination of the Rice Trust Claim ........16

        Fifth Cause of Action – Avoidance And Recovery Of ........................................16

        Fraudulent Transfers to Rice and the Rice Trust ..................................................16

        Sixth Cause of Action – Avoidance And Recovery Of .......................................17

        Preferential Transfers to Rice and the Rice Trust ................................................17

        Seventh Cause of Action – Disallowance Of Claim Under 11 U.S.C. §
        502(d) ..............................................................................................18

VII.    Request for Relief .................................................................................................19

Walter O'Cheskey, the Liquidating Trustee (the "**Trustee**" or "**Plaintiff**") for the AHF

Liquidating Trust, hereby files this *Complaint* (the "**Complaint**") against Defendants Housing

for Texans Charitable Trust, d/b/a Housing for Texans Foundation, Scott D. Rice ("**Scott Rice**"

or "**Rice**"), individually, and Scott D. Rice and Connor Rice as Co-Trustees of the 2001 Scott D.

Rice Trust (the "**Rice Trust**").  In support of this Complaint, the Trustee, after a review of the

books and records of American Housing Foundation ("**AHF**") and upon information and belief,

respectfully alleges as follows:

## I.
### EXECUTIVE SUMMARY

1.      Steve Sterquell ("**Sterquell**"), the former president of AHF, and Scott Rice were

co-trustees of the Rice Trust.  The Rice Trust "invested" approximately $4,850,000 in AHF

and/or related entities.  The Rice Trust claims these advances were loans to AHF at 12% interest

per annum "tax free."  There were no promissory notes executed to evidence the alleged loans.

Distributions to the Rice Trust from AHF were not reported as interest income on the Rice Trust

federal income tax returns.  In fact, and contrary to the characterization of these advances as

"loans," the Rice Trust reported charitable contribution deductions of approximately $3,750,000

to an AHF affiliate and operating losses of $3,100,000 on its federal income tax returns.

2.      Rice was a director and insider of AHF.  As an insider, Rice and the Rice Trust

received the following transfers from AHF and AHF Development, Ltd. during the following

periods prior to the filing of the involuntary bankruptcy petition against AHF on April 21, 2009

(the "**Petition Date**"):

| Within: | Rice | Rice Trust | Total |
|---|---|---|---|
| 90 days: | $175,000 | 0 | |
| 90 days to 1 year: | $575,000 | 0 | |
| 1 to 2 years: | $600,000 | $30,000 | |
| 2 to 4 years: | $1,490,000 | $315,000 | |
| | $2,840,000 | $345,000 | $3,185,000 |

3.     These transfers could be either preferential transfers or fraudulent transfers depending on whether the advances are determined to be equity investments or loans by the Rice Trust to AHF.

4.     As stated previously, none of the Rice Trust advances were evidenced by promissory notes.  However, immediately prior to his death, Sterquell and Rice (i) created a promissory note allegedly evidencing a $4,500,000 loan from the Rice Trust to Housing for Texans, guaranteed by AHF, (ii)  fraudulently transferred assets (San Patricio Property and St. George's Partners interest) from AHF to Housing for Texans,  and (iii) then caused Housing for Texans to fraudulently pledge those assets to the Rice Trust to secure the newly created Housing for Texans $4.5 million note.

5.     Accordingly, the Trustee:

    a. objects to the Rice Trust claim asserted against AHF as arising from a sham and therefore void transaction;

    b. requests the Court to void the AHF Guaranty (defined below) under applicable state and federal fraudulent-conveyance statutes (fraudulent-transfer obligations);

    c. if a claim is allowed, the Trustee requests the Court to subordinate the Rice Trust claim:

(i)     pursuant to § 510(b) of the Bankruptcy Code as resulting from the sale or purchase of a security of an affiliate of AHF, and/or

(ii)    pursuant to § 510(c) of the Bankruptcy Code as arising from improper conduct as a director of AHF and for participating in a fraudulent and sham transaction;

d.    seeks the avoidance and recovery of the transfer of the St. George's Partners Interest to Housing for Texans as a fraudulent transfer under § 548 of the Bankruptcy Code and applicable state statutes,

e.    seeks the avoidance and recovery of the transfer of the San Patricio Property to Housing for Texans as a fraudulent transfer under § 548 of the Bankruptcy Code and applicable state statutes,

f.    seeks the avoidance of the liens and security interests granted on those assets to the Rice Trust by Housing for Texans as fraudulent transactions and fraudulent transfers under § 548 of the Bankruptcy Code and applicable state statutes,

g.    seeks the recovery of preferential and fraudulent transfer payments to Rice, individually, and to the Rice Trust, and

h.    allowing the Trustee to offset all amounts due from Rice to AHF for his liability as a director of AHF against any allowed claim of Rice and the Rice Trust.

## II.
## PARTIES

6.     Plaintiff, Walter O'Cheskey, as Liquidating Trustee of the AHF Liquidating Trust, brings this action pursuant to the power and authority provided in the Second Amended Joint Chapter 11 Plan confirmed by this Court on December 7, 2010, and the Liquidating Trust Agreement dated January 1, 2011. The Trustee maintains his principal office at 6308 Iola Avenue, Suite 200, Lubbock, Texas 79464.

7.      Defendant Housing for Texas Charitable Trust d/b/a Housing for Texans Foundation (**"Housing for Texans"**) is a trust organized under the laws of the State of Texas. There is no trustee of such trust currently serving.  Accordingly, pursuant to Section 115.11(b) of the Texas Trust Code, the proper parties to this action are the beneficiaries "designated by name in the instrument creating the trust. . . ." TEX. PROP. CODE § 115.11(b).  Article VIII of the Housing for Texans Trust Declaration states that "[t]he original and sole Beneficiary of this Trust shall be the local United Way organization of the county in which each individual property of the Trust is located."  The relevant local United Way organizations are those in Amarillo and Corpus Christi (which serve San Patricio County, where Housing for Texans owns real property). Accordingly, Housing for Texans may be served by delivering a copy of the Summons and Complaint to (i) Chairman of Board of Directors and Executive Director, United Way of Amarillo and Canyon, 2007 Line Avenue, Amarillo, Texas 79106, and/or (ii) Chairman of the Board of Directors and Executive Director, United Way of the Coastal Bend, 711 N. Carancahua Street, Suite 302, Corpus Christi, Texas 78475.

8.      Defendant Scott D. Rice is an individual residing in the State of New Mexico and may be served by delivering a copy of the Summons and Complaint to his attorneys, Barry D. Williams, Esq., Bannerman & Williams, PA, 2201 San Pedro NE, Building 2, Suite 207, Albuquerque, New Mexico 87110, and/or Mark Whitney McBrayer, Esq., Crenshaw, Dupree & Milam, LLP, 8th Floor, 1500 Broadway, Lubbock, Texas 79408-1499.

9.      Defendant Connor Rice is an individual residing in the State of New Mexico and may be served by delivering a copy of the Summons and Complaint to his attorneys, Barry D. Williams, Esq., Bannerman & Williams, PA, 2201 San Pedro NE, Building 2, Suite 207,

Albuquerque, New Mexico 87110, and/or Mark Whitney McBrayer, Esq., Crenshaw, Dupree &

Milam, LLP, 8th Floor, 1500 Broadway, Lubbock, Texas  79408-1499.

10.    Defendant the 2001 Scott D. Rice Trust is a trust organized under the laws of the

State of New Mexico and may be served by delivering a copy of the Summons and Complaint to

its Trustees, Connor Rice and Scott D. Rice, through their attorneys, Barry D. Williams, Esq.,

Bannerman & Williams, PA, 2201 San Pedro NE, Building 2, Suite 207, Albuquerque, New

Mexico 87110, and/or Mark Whitney McBrayer, Esq., Crenshaw, Dupree & Milam, LLP, 8th

Floor, 1500 Broadway, Lubbock, Texas 79408-1499.  The Rice Trust has filed a claim in this

bankruptcy proceeding (Claim No. 60) and thus has consented to the jurisdiction of this Court.

Crenshaw, Dupree & Milam, LLP has entered an appearance in this bankruptcy proceeding on

behalf of the Rice Trust.

### III.
### JURISDICTION AND VENUE

11.    On April 21, 2009, an involuntary petition was filed against AHF pursuant to

chapter 11 and section 303 of title 11 of the United States Code (the "**Bankruptcy Code**") thus

initiating the involuntary case [Case No. 09-20232] (the "**Involuntary Case**").[1]  On June 11,

2009, AHF filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code, initiating

the voluntary case [Case No. 09-20373] (the "**Voluntary Case**").  On July 17, 2009, the Court

entered its *Agreed Order Granting Motion to Consolidate Bankruptcy Cases* [Docket No. 88],

consolidating the Voluntary Case and the Involuntary Case into a single case pursuant to

Bankruptcy Rule 1015(a).

---

[1] All references to the "Bankruptcy Code" are made to 11 U.S.C. §§ 101 *et seq*.  Unless otherwise indicated, all
section references are references to the Bankruptcy Code.

12.    On December 7, 2010, this Court confirmed the Second Amended Joint Chapter 11 Plan (the "**Plan**").  The AHF Liquidating Trust was established pursuant to the terms and provisions of the confirmed Plan.

13.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and (b) and 1334.  This is a core proceeding as defined in 28 U.S.C. § 157(b).  If any part of this adversary proceeding is found to be "non-core" under Bankruptcy Rule 7008, the Trustee consents to the entry of final orders and judgments by this Court.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

14.    This Complaint is brought in accordance with Federal Rules of Bankruptcy Procedure 7001, *et seq.*, and seeks relief under sections 105, 502(d), 510(b), 510(c), 544, 547(b), 548, and 550 of the Bankruptcy Code and section 24.005 of the Texas Business and Commerce Code.

### IV.
### STATEMENT OF FACTS

**Scott Rice/Rice Trust**

15.    Based upon a review of the books and records of AHF and the claims filed against AHF by Scott Rice and the Rice Trust, and upon information and belief, the Trustee asserts the following facts.

16.    Sterquell was the founder and the individual in control of AHF at all times relevant to this Complaint.

17.    Rice was a director of AHF at all times relevant to this Complaint.  Accordingly, Rice was an insider of AHF.

18.     Rice and Sterquell were co-trustees of the Rice Trust at all times relevant to this Complaint.  Rice is the sole beneficiary of the Rice Trust.  Accordingly, the Rice Trust was an insider of AHF.

**Rice Trust**

19.     In 1990, Rice's parents established a trust for the benefit of Rice and his sister, Catherine (the **"Parents Trust"**).  Rice's parents transferred certain assets into the Parents Trust.  Currently, the Parents Trust is divided into two sub-trusts, the 2001 Scott Rice Trust and the 2001 Cathy Rice Trust.  Sterquell and Rice were co-trustees of the Rice Trust at all times relevant to this Complaint.

**Rice Trust "Investments" in AHF**

20.     The Rice Trust liquidated substantially all of its assets between 2005 and 2007 for approximately $6,540,081.  Rice authorized Sterquell, as co-trustee, to "invest" (not defined by Scott Rice) all of the proceeds in AHF at his discretion in exchange for Sterquell's agreement to have AHF distribute $50,000 per month to the Rice Trust.  Rice alleges the $50,000 per month was designed to provide the Rice Trust with a 12% "tax free" return on its "investment."

21.     The Rice Trust "invested" the following amounts in the following entities between 2005 and November 30, 2007:

|   |   |   |
|---|---|---|
| - | AHF | $1,157,000 |
| - | AHF Development | 3,692,536 |
| - | Matt Malouf | 1,600,000[2] |
|   |   | $6,449,536 |

---

[2] The Rice Trust proof of claim in this bankruptcy proceeding does <u>not</u> include the funds transferred to Matt Malouf. The Rice Trust has state court litigation currently pending against Mr. Malouf in an attempt to recover the $1.6 million.

22.      It is unclear what these advances were intended to be.  Were they:

- gifts to AHF as a charitable donation,

- an equity investments in AHF-related entities; or

- loans to AHF?

23.      The Rice Trust now claims all advances to AHF and AHF Development, Ltd. were actually loans to AHF.  The advances were <u>not</u>, however, evidenced by promissory notes. The Rice Trust <u>never</u> reported any funds received from AHF as interest income on its federal income tax returns.  In fact, the Rice Trusts tax returns, signed by Rice as co-trustee, indicate the Rice Trust took:

- a charitable contribution deduction of $3,516,801 on its 2005 tax return[3];

- a charitable deduction of $227,699 on its 2006 tax return; and

- a loss deduction of $3,159,396 on its 2007 tax return.

24.      Rice has testified that he never asked Sterquell what the 2005 charitable deduction involved, and he does not know how his trust lost $3,159,396 in 2007 (and he never asked Sterquell about that loss).

**<u>Fraudulent and Preferential Payments to Scott Rice & the Rice Trust</u>**

25.      AHF and AHF Development, Ltd. made the following payments to or for the benefit of <u>Rice individually</u> within the following periods prior to the Petition Date.

|  | Within | Approximate Amounts |
| --- | --- | --- |
|  | 1 year: | $750,000 |

---

[3] The supporting statement to Form 1041, Schedule A reflects a gift of $3,100,000 to Amarillo PC2, Ltd, an AHF affiliated entity.

| 1 to 2 years: | 600,000 |
| 2 to 4 years: | <u>1,490,000</u> |
| **Total** | 2,840,000 |

26.     AHF and AHF Development, Ltd. made the following payments to or for the benefit of <u>the Rice Trust</u> within the following periods prior to the AHF Petition Date:

| <u>Within</u> | <u>Approximate Amounts</u> |
|---|---|
| 1 year: | - 0 - |
| 1 to 2 years: | - 0 - |
| 2 to 3 years: | $30,000 |
| 3 to 4 years: | <u>$315,000</u> |
| **Total** | $345,000 |

**Housing for Texans/St Georges/St. Patricio Fraudulent Transaction**

**(a) Housing for Texans Fraudulent Note**

27.     AHF could no longer afford its $50,000 per month distributions to the Rice Trust in late 2008 and early 2009.  Sterquell therefore proposed to Rice that:

- he provide the Rice Trust with a $4.5 million promissory note from Housing for Texans (which never received any Rice Trust funds), (the "**Housing for Texans Note**") guaranteed by AHF (the "**AHF Guaranty**"),

- AHF would cause two of its assets, a 99% partnership interest in St. George's Partners, Ltd (the "**St. George's Partners Interest**") and land located in San Patricio County, Texas (the "**San Patricio Land**"), to be transferred to Housing for Texans for no consideration and then pledged to the Rice Trust to secure the Housing for Texans Note,

- in exchange for this new documentation and collateral, the monthly distributions to the Rice Trust would be reduced from $50,000 per month to $30,000 per month.

**(b)** <u>**St. George's Partnership**</u>

28.     In December 1999, a donor (allegedly Matt Malouf) donated to AHF a 99% partnership interest in St. George's Partners, Ltd. ("**St. George's Partners**").  St. George's Partners owns four rural health clinics in New Mexico and Texas.  In March 2009, Sterquell requested Malouf to execute a *Correction to Assignment of Partnership Interest* changing the donee from AHF to Housing for Texans.  Sterquell and Malouf backdated this Correction Assignment to December 2008 to obscure the financial nature of the transaction.

29.     The Correction Assignment for the partnership interest in St. George's Partners was signed by Sterquell's son as a trustee of Housing for Texans at a time when his son was also president of AHF.

30.     After the St. George's Partners Interest was transferred to Housing for Texans, Housing for Texans granted the Rice Trust a security interest in the partnership interest to serve as security for the $4.5 million note payable to the Rice Trust.

31.     In reality, there was no loan from the Rice Trust to Housing for Texans, and thus the execution and delivery of the $4.5 million note from Housing for Texans to the Rice Trust was fraudulent. Moreover, the security interest in St. George's Partners Interest granted by Housing for Texans to the Rice Trust was likewise fraudulent

32.     Sterquell and Rice, co-trustees of the Rice Trust, knew the Housing for Texans Note and the transfers of assets from AHF to Housing for Texans were fraudulent transfers (remember, Rice was a director of AHF and knew or should have known AHF owned the San Patricio Land and St. George's Partners Interest, not Housing for Texans).

33.     AHF's transfer of the St. George's Partners Interest to Housing for Texans was made with the intent to hinder, delay or defraud AHF's creditors for no consideration while

insolvent and, accordingly, was a fraudulent conveyance under § 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

34.     Since the transfer of the St. George's Partners partnership interest and the granting of the security interest therein were not transferred to a bona fide purchaser for value, were without consideration and were fraudulent conveyances, AHF is entitled to the return of the property free and clear of all liens.  AHF seeks to have the security interest granted by Housing for Texans to the Rice Trust set aside[4] because there was no debt to which such security interest could lawfully attach, there was no consideration given by the Rice Trust therefore, and the granting of the security interest constituted part of a fraudulent transaction.

### (c)  <u>The San Patricio Property</u>

35.     In November 2008, a donor (allegedly Matt Malouf) donated to AHF a tract of land in San Patricio County, Texas (the "**San Patricio Property**").  On March 26, 2009, five days before his suicide, Sterquell requested Malouf execute a "correction deed" changing the donee from AHF to Housing for Texans.

36.     Housing for Texans paid no consideration to AHF for the "correction deed." Sterquell and Rice were directors of AHF and knew or should have known the San Patricio Land and St. George's Partners Interest were assets of AHF and being transferred to Housing for Texans for no value.  Sterquell and Rice were co-trustees of the Rice Trust, the ultimate beneficiary of the liens on these assets.

37.     Sterquell's intended purpose for this transfer was to denude AHF of assets available for paying AHF's creditors to transfer this asset to Housing for Texans where they could be controlled by his children, and then to prefer the Rice Trust over other non-insider

---

[4] The Rice Trust has agreed to release its liens and security interests on these assets.

creditors.  The "correction deed" was recorded by Steve Sterquell Jr. and/or his sister after Sterquell committed suicide and while both were executive officers of AHF.

38.     The transfer of the San Patricio Property was also made with the intent to hinder, delay or defraud AHF's creditors, and was made for no consideration while AHF was insolvent and thus was a fraudulent conveyance under the Texas Uniform Fraudulent Transfer Act and under section 548 of the Bankruptcy Code.

39.     Since the transfer of the San Patricio Property constituted a fraudulent conveyance, AHF is entitled to the return of the property and/or any proceeds therefrom.

40.     The "correction deed" was recorded by or with knowledge of Steve Sterquell Jr. purporting to be acting as a trustee of Housing for Texans at a time when Steve Sterquell Jr. was also president of AHF.

**V.**

**OBJECTION TO RICE TRUST CLAIMS**

41.     The Rice Trust alleges in its proofs of claim numbers 60-1 and 60-2 filed in the AHF bankruptcy proceeding, and Number 28-1 filed in the AHF Development, Ltd. bankruptcy proceeding (collectively, the "**Rice Trust Claim**") that it has an unsecured claim of $3,677,718 against AHF for "constructive trust and fraud claims."  The Proof of Claim fails to disclose the Housing for Texans Note, fraudulent transfers of the San Patricio Property and St. George's Partners Interest to Housing for Texans, and the pledge of these assets to the Rice Trust.

42.     The Trustee objects to the Rice Trust Claim.  The Housing for Texans Note and AHF Guaranty were created as part of fraudulent transfers and a sham transaction and are therefore void and of no legal force and effect.  The tax returns of the Rice Trust contradict the allegation that the funds were advanced as loans, and it appears Rice consented to and expressly

authorized Sterquell to make investments in AHF-related entities, contradicting the claim of fraud. If Sterquell breached his duty as co-trustee, the claim for such breach is a claim against the Sterquell estate, not against AHF.

43.     The Trustee objects to the allowance of an equitable claim as the claimant has "unclean hands" and is therefore not entitled to equitable relief.

# VI.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – AVOIDANCE OF AHF GUARANTY FRAUDULENT OBLIGATION

44.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

45.     The AHF Guaranty of the Housing for Texans Note payable to the Rice Trust was executed within four (4) years of the Petition Date.

46.     At all times relevant herein, the Trustee in his capacity as such was and is a creditor of AHF and/or AHF Development, Ltd.

47.     The AHF Guaranty was made within four years of the Petition Date.

48.     The AHF Guaranty was made with the actual intent to hinder, delay, or defraud then and future creditors of AHF and/or AHF Development, Ltd.

49.     AHF did not receive reasonably equivalent value In exchange for the AHF Guaranty.

50.     When the AHF Guaranty was made, AHF was engaged or about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

51.     AHF was insolvent when the AHF Guaranty was made.

52.     The AHF Guaranty was received with knowledge that AHF intended to hinder, delay, or defraud their then and future creditors.

53.     The AHF Guaranty is, therefore, avoidable under section 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy Code and TEX. BUS. & COMM. CODE § 24.005.

## SECOND CAUSE OF ACTION – AVOIDANCE OF FRAUDULENT TRANSFERS OF SAN PATRICIO PROPERTY AND ST. GEORGE'S PARTNERS INTEREST

54.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

55.     The amended partnership assignment of the 99% partnership interest in St. George's Partners and the amended deed of San Patricio Partners were transfers of those assets from AHF to Housing for Texans and should be avoided as fraudulent transfers (the "**Fraudulent Asset Transfers**") under section 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

56.     Pursuant to section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor of AHF.  Section 544(b) of the Bankruptcy Code permits the Trustee to assert claims and causes of action that such creditor could assert under applicable state law.

57.     At all times relevant herein the Trustee in his capacity as such was and is a creditor of AHF.

58.     AHF made the Fraudulent Asset Transfers in furtherance of the scheme to falsely document a loan and security interests within two (2) years of the Petition Date.

59.     The Fraudulent Asset Transfers were incurred with the actual intent to hinder, delay, or defraud then and future creditors of AHF.

60.     AHF received less than reasonably equivalent value in exchange for the Fraudulent Asset Transfers.

61.     AHF was insolvent at the time it made the Fraudulent Asset Transfers.

62.     At the time the Fraudulent Asset Transfers were made, AHF was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

63.     At the time the Fraudulent Asset Transfers were made, AHF intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

64.     The Fraudulent Asset Transfers are, therefore, avoidable as such under sections 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy Code and TEX. BUS. & COMM. CODE § 24.005.

**THIRD CAUSE OF ACTION – MANDATORY SUBORDINATION OF THE RICE TRUST CLAIM**

65.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

66.     Pursuant to the provisions of section 510(b) of the Bankruptcy Code, the Rice Trust Claim should be subordinated to the allowed claims of legitimate general unsecured creditors for purposes of distribution as the Rice Trust Claim arises from the purchase or sale of a security of AHF or an affiliate of AHF.

### FOURTH CAUSE OF ACTION – EQUITABLE SUBORDINATION OF THE RICE TRUST CLAIM

67.     The Rice Trust engaged in inequitable conduct, including conduct described in this Complaint, that has resulted in injury to creditors or the conferring of an unfair advantage on or to them.  This inequitable conduct has resulted in harm to the AHF bankruptcy estate and its entire creditor body.  Allowing a claim based on these improper transactions would improperly dilute the distributions to legitimate unsecured creditors and therefore harm creditors of this estate.  Accordingly, pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code, all claims asserted by, on behalf of, or for the benefit of Rice Trust or its affiliates or related entities against AHF should be equitably subordinated to the allowed claims of legitimate general unsecured creditors for distribution purposes because the claim arises from improper conduct in the form of illegitimate falsely documented transactions and an attempt to fraudulently transfer assets out of AHF in order to pledge those assets to and for the benefit of Rice as an insider and director of AHF.

### FIFTH CAUSE OF ACTION – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS TO RICE AND THE RICE TRUST

68.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

69.     AHF and AHF Development, Ltd. transferred cash to or for the benefit of Rice individually and, if the Rice Trust advances are not determined to have been loans, to the Rice Trust for less than reasonably equivalent value within four years of the Petition Date (the "**Rice and Rice Trust Fraudulent Transfers**").

70.    The Rice and Rice Trust Fraudulent Transfers were made to or for the benefit of a creditor of AHF and/or AHF Development, Ltd.

71.    The Rice and Rice Trust Fraudulent Transfers were <u>not</u> made for or on account of an antecedent debt owed by AHF before each such transfers were made.

72.    The Rice and Rice Trust Fraudulent Transfers were made while AHF and/or AHF Development, Ltd. were insolvent.

73.    The Rice and Rice Trust Fraudulent Transfers were made on or within four (4) years of the Petition Date.

74.    To the extent the Rice and Rice Trust Fraudulent Transfers are avoided under section 548 of the Bankruptcy Code or applicable state law, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the transfers from the transferees of the Transfer for the benefit of AHF's bankruptcy estate(s).

### SIXTH CAUSE OF ACTION – AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS TO RICE AND THE RICE TRUST

75.    The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

76.    In the event this Court determines the Rice Trust advances were loans to AHF or determines that AHF is indebted to the Rice Trust for any reason, the indebtedness was unsecured.

77.    AHF and AHF Development, Ltd. transferred $750,000 to Rice and the Rice Trust within one year of the Petition Date (the "**Rice and Rice Trust Preference Payments**").

78.    The Rice and Rice Trust Preference Payments were made to or for the benefit of a creditor of AHF and/or AHF Development, Ltd.

79.     The Rice and Rice Trust Preference Payments were made for or on account of an antecedent debt owed by AHF before each of such Payments were made.

80.     The Rice and Rice Trust Preference Payments were made while AHF and/or AHF Development. Ltd. were insolvent.

81.     The Rice and Rice Trust Preference Payments were made on or within one year of the Petition Date.[5]

82.     As a result of the Rice and Rice Trust Preference Payments, Defendants received more than they would receive (a) under AHF's and/or AHF Development, Ltd.'s chapter 7 bankruptcy proceeding(s), (b) if the Payments had not been made, and (c) under the provisions of the Bankruptcy Code.

83.     To the extent the Rice and Rice Trust Preference Payments are avoided under section 547 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Rice and Rice Trust Preference Payments from the transferees of the Payments for the benefit of AHF's and/or AHF Development, Ltd. bankruptcy estate(s).

### SEVENTH CAUSE OF ACTION – DISALLOWANCE OF CLAIM UNDER 11 U.S.C. § 502(D)

84.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

85.     By reason of the facts alleged in this Complaint, pursuant to section 502(d) of the Bankruptcy Code, all claims asserted by Rice Trust, it affiliates, or its related entities must be disallowed unless it has turned over to the Trustee the property transferred, or paid to the Trustee

---

[5] The Mays Trust is an "insider" of AHF and/or AHF Development; therefore, the Trustee is allowed to recover preferential transfers dating back to one year prior to the Petition Date.  *See* 11 U.S.C. § 547(b)(4)(B).

the value of such property for which it is liable to the Trustee, under section 550 of the Bankruptcy Code.

86.     To the extent the Transfer is avoided under sections 544, 547, or 548 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfer from the transferees of the Transfer for the benefit of AHF's bankruptcy estate.

## VII.
## REQUEST FOR RELIEF

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment as follows:

(i)      avoiding and setting aside the transfer of the St. George Partnership Interest Transfer and San Patricio's Property to Housing for Texans as a fraudulent transfer;

(ii)     ordering that the Rice Trust Proof of Claim is disallowed in its entirety for all purposes (including denial of equitable relief in the form of an equitable claim, since the claimant has "unclean hands" and is therefore not entitled to equitable relief);

(iii)    in the alternative, avoiding and setting aside the AHF Guaranty;

(iv)     further in the alternative, ordering that any allowed portion of the Rice Trust Claim is subordinated to the allowed claims of general unsecured creditors for distribution purposes;

(v)      further in the alternative, ordering that any allowed claim of the Rice Trust is offset by the AHF claim against Scott Rice for his liability for acts and omissions as a director of AHF;

(vi)     avoiding and setting aside the fraudulent and/or preferential transfers to Scott Rice individually and to the Rice Trust;

(vii)    ordering that the Rice Trust Claim is disallowed until the transfers or the value thereof, for which the Rice Trust is liable under section 550 of the Bankruptcy Code, have been returned to the Debtor's estate;

(viii)   awarding the Trustee his attorneys' fees and costs of suit; and

(ix)     awarding the Trustee all such other and further relief, at law or in equity, to which
he may be justly entitled.


Dated: February 28, 2011                    Respectfully submitted,


                                            */s/ Max Tarbox*
                                            Max R. Tarbox (TX 19639950)
                                            Tarbox Law, P.C.
                                            2301 Broadway
                                            Lubbock, Texas 79401
                                            Phone: (806) 686-4448
                                            Fax:    (806) 368-9785


                                            And

                                            */s/ Marcus A. Helt*
                                            Stephen A. McCartin (TX 13374700)
                                            Barry Golden (TX 24002149)
                                            GARDERE WYNNE SEWELL LLP
                                            1601 Elm Street, Suite 3000
                                            Dallas, Texas  75201-4761
                                            Telephone:  214.999.3000
                                            Facsimile:  214.999.4667

                                            **COUNSEL FOR WALTER
                                            O'CHESKEY, LIQUIDATING
                                            TRUSTEE**