# EXHIBIT A

Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: 806.686.4448

Stephen A. McCartin (TX 13374700)
Barry Golden (TX 24002149)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
Telephone: 214.999.3000

**COUNSEL FOR WALTER O'CHESKEY,
TRUSTEE OF THE AHF LIQUIDATING
TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11** |
| **American Housing Foundation,** | § | |
| | § | |
| **Debtor.** | § | |
| | § | **Case No.:** |
| | § | |
| ———————————————— | § | ———————————————— |
| | § | |
| **Walter O'Cheskey, Trustee of the AHF** | § | |
| **Liquidating Trust** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Adversary No. _____** |
| **v.** | § | |
| | § | |
| **Don Storseth, Trustee of the Storseth** | § | |
| **Family Trust, Susan Solomon Miller, Paul** | § | |
| **King, Clay Storseth, Dennis Dougherty,** | | |
| **Baron & Fletcher, JV, James Fletcher,** | | |
| **Doug Baron, Heron Land Company,** | | |
| **Estate of Frances Maddox, Matt Malouf** | | |
| **and Mack Gordon** | | |
| | | |
| **Defendants.** | | |

**TRUSTEE'S COMPLAINT TO AVOID GUARANTEES AS FRAUDULENT
OBLIGATIONS, TO SUBORDINATE ALLOWED CLAIMS, AND TO AVOID AND
RECOVER FRAUDULENT AND PREFERENTIAL TRANSFERS, TOGETHER WITH
OBJECTIONS TO CLAIMS RELATED TO LIHTC WALDEN II DEVELOPMENT, LTD.**

## <u>TABLE OF CONTENTS</u>

I.      Executive Summary ................................................................................................1

II.     Soft-Money-Investor Claims Generally ................................................................3

III.    Objections to "Soft-Money-Investor" Claims Generally ......................................5

IV.     Jurisdiction and venue ...........................................................................................6

V.      Objection to Claims ...............................................................................................6

        A.      LIHTC WALDEN II DEVELOPMENT LTD. ..........................................6

VI.     Causes of Action ..................................................................................................10

                First Cause of Action – Avoidance of Fraudulent Obligations............................10

                Second Cause of Action – Mandatory Subordination of the Templeton
                Claim.....................................................................................................................11

                Third Cause of Action – Equitable Subordination................................................12

                Fourth Cause of Action – Avoidance And Recovery Of Fraudulent
                Transfers ...............................................................................................................12

                Fifth Cause of Action – Avoidance And Recovery Of Preferential
                Transfers ...............................................................................................................13

                Sixth Cause of Action – Disallowance Of Claim Under 11 U.S.C. § 502(d)........14

VII.    Request for Relief ................................................................................................14

Walter O'Cheskey, the trustee of the AHF Liquidating Trust (the "**Trustee**" or "**Plaintiff**") for American Housing Foundation ("**AHF**" or "**Debtor**"), hereby files this *Complaint* (the "**Complaint**") against Don Storseth, Trustee of the Storseth Family Trust ("**Storseth**" or "**Trust**") and the other defendants named in the caption hereof.  In support of this Complaint, and upon a review of the books and records of AHF, upon information and belief, the Trustee respectfully states as follows:

**I.**

**EXECUTIVE SUMMARY**

1.      Each of the below listed defendants (collectively, the "Defendants") in this Complaint filed proofs of claims in the AHF bankruptcy proceeding asserting a guaranty claim against AHF arising from their equity investments in LIHTC Walden II Development, LLC ("Walden II") (the "Defendants Claims"):

| Defendant[1] | Alleged Equity Amount Investment | Date of Investment |
|---|---|---|
| 1) Don Storseth, Trustee of the Storseth Family Trust (Storseth Trust) | $  500,000<br>500,000[2]<br>500,000<br>500,000<br>2,000,000 | 8/31/07<br>8/31/07<br>1/24/08<br>8/31/08 |
| 2) Susan Solomon Miller | $  600,000 | 6/10/08 |
| 3) Paul King | $   300,000 | 9/11/08 |
| 4) Clay Storseth ("Storseth") | 200,000 | 11/11/08 |
| 5) Dennis Dougherty ("Dougherty") | $  200,000 | 10/15/08 |

---

[1] The claims of Robert Templeton related to his investment in Walden II are objected to in the separate adversary proceeding pending against Robert Templeton.

[2] This "contribution" was not of cash, but rather a "credit" on an uncollectible note receivable from AHF Development, Ltd. which had no value.

| | | | |
|---|---|---|---|
| 6) | Barron & Fletcher, JV: James Fletcher, Doug Baron (Baron & Fletcher) | 500,000 | 8/29/07 |
| 7) | Heron Land Company ("Heron) | 500,000 <u>200,000</u> 700,000 | 10/2/07 9/11/08 |
| 8) | Estate of Frances Maddox | 500,000 | 8/20/07 |
| 9) | Matt Malouf ("Malouf")[3] | 1,000,000 | 10/2/07 |
| 10) | Mack Gordon[4] ("Gordon") | <u>250,000</u> | 3/3/08 |
| | Total | $6,250,000 | |

2.      Steve Sterquell ("**Sterquell**") used a complicated tax structure to provide the Defendants with illegitimate tax deductions.  In essence, he convinced these "soft-money investors"[5] to loan him money and, in exchange, he promised to (a) pay them back within one year, (b) provide them 18% interest, and (c) provide them with illegitimate tax deductions equal to their investments.  The defendants knew or should have known this scheme and resulting tax deductions were illegitimate and improper.

3.      Accordingly, the Trustee:

      a.      Objects to the claims of the Defendants asserted against AHF on various grounds (*e.g.*, the documents do not contractually support the claims asserted, etc.);

---

[3] On July 17, 2007 Malouf allegedly loaned AHF $1,000,000 on an unsecured basis.  In the fall of 2007, Malouf contributed this uncollectible receivable from AHF to Walden II in exchange for a partnership interest.

[4] No AHF guaranty

[5]   A "soft-money" investment is commonly used to refer to an equity investment not for the purpose of acquiring real property but rather allegedly to provide temporary funds in support of pre-acquisition and pre-development expenses (i.e., "soft costs") associated with an expected acquisition, rehabilitation, or refinance of real property.

b. Requests the Court to void the AHF guarantees under applicable state and federal fraudulent-conveyance statutes (fraudulent-transfer obligations). AHF owned .005% of the Walden II partnership in which the alleged equity investment was made, and therefore did not receive fair equivalent value for its guaranty obligations provided while AHF was insolvent;

c. Requests the Court condition the award of any equitable relief upon a showing that the claimant has "clean hands" and has not been involved in any inequitable conduct;

d. Requests the Court, if a claim is allowed, to subordinate the claims:

(i) Pursuant to § 510(b) as resulting from the sale or purchase of a security of an affiliate of AHF, and/or
(ii) Pursuant to § 510(c) as arising from improper conduct in participating in the illegitimate tax scheme; and

e. Seeks the avoidance and recovery of fraudulent and preferential transfers pursuant to sections 547, 548 and 550 of the Bankruptcy Code and applicable state law, and disallowance of any claims under section 502 of the Bankruptcy Code until such transfers have been returned or repaid.

## II.
## SOFT-MONEY-INVESTOR CLAIMS GENERALLY

4.     There are substantial legitimate unsecured claims against AHF. AHF directly or indirectly owns interests in special purpose entities that own and operate approximately 66 apartment complexes located in nine states ("**SPEs**"). These SPEs were formed for a legitimate business purpose: to provide affordable housing while at the same time providing limited partner/tax-credit partners and AHF with legitimate real-estate-investment opportunities.

5.     While AHF and the tax-credit limited partners were engaged in the legitimate affordable-housing business through the SPEs, Sterquell and certain "soft-money" partners were involved in the illegitimate activity of manufacturing and taking illegitimate tax deductions in

return for what were in actuality loans.  The following is an example of how the typical "soft-money" investment worked:

> Sterquell would tell his "partners" that if they would "invest" funds in a non-Debtor entity, he would promise to repay the investment within one year, together with 18% per-annum interest, *plus* provide them with tax deductions.

6.    Sterquell attempted to structure this illegitimate tax scheme as follows:

a.  Sterquell would form a limited partnership (e.g. Walden II). AHF or an AHF wholly-owned shell entity would usually serve as the general partner.

b.  The investor would then advance funds in exchange for a number of things:

(i)   a limited partnership interest;

(ii)  in some, but not all instances, a partnership promise to return the "Initial Capital Contribution" within one year together with a "preferred return" of up to 18% per annum;

(iii) if the partnership had insufficient funds (it usually owned no assets) to return the capital and preferred return, the shell general partner promised to make a contribution to the partnership (which it could never make because it owned no assets and operated no business) so that the partnership could make the promised return; and

(iv)  in many instances, AHF guaranteed that the partnership would return the funds with interest as promised.

7.    The soft-money structure was designed by Sterquell and participated in by the "soft-money" investors who knew or should have known that the investment was structured for illegitimate and improper tax purposes.  The real purpose was to disguise true loans as equity investments to take illegitimate tax deductions.

## III.
## OBJECTIONS TO "SOFT-MONEY-INVESTOR" CLAIMS GENERALLY

8.     The trustee objects to these "soft-money-investor" claims for one or more of the

following reasons:

a.    The Walden II partnership agreement only requires the
partnership to return the "Initial Capital Contribution" within
one year, and contributions after August 20, 2007 are <u>NOT</u>
"Initial Capital Contributions" and therefore not guaranteed by
AHF; alternatively,

b.    The AHF Guarantees constitute an avoidable fraudulent
obligation under the applicable state and federal fraudulent
transfer statutes because they were made with the intent to
hinder, delay or defraud creditors (inferred from fraudulent
abusive tax shelter scheme) and/or AHF did not receive fair
equivalent value in exchange for the guaranty obligation that it
incurred while insolvent;

c.    The AHF Guarantees were obtained in an illegitimate tax
scheme and for no valid business purpose and therefore are
unenforceable;

d.    The AHF Guaranty claims are claims arising from the sale or
exchange of a security of an affiliate of AHF and are
subordinated to other legitimate general unsecured claims
pursuant to section 510(b) of the Bankruptcy Code;

e.    The Defendant soft-money investors either knew or should
have known that they were participating in significant improper
conduct, including the improper tax scheme; accordingly, the
claims of the soft-money investors are subject to equitable
subordination pursuant to section 510(c) of the Bankruptcy
Code; and

f.    The alternative equitable claims are not allowable since the
claims do not meet the "clean hands" doctrine.

g.    The requested attorney fees are excessive and unreasonable.
The attorneys fees requested in the proofs of claims filed by the
Lovell firm aggregate $431,144 as reflected in the summary
attached hereto as Exhibit B.

## IV.
### JURISDICTION AND VENUE

9.      On April 21, 2009 (the "**Petition Date**"), certain alleged creditors of AHF filed an involuntary petition against AHF pursuant to chapter 11 and section 303 of title 11 of the United States Code (the "**Bankruptcy Code**") thus initiating the involuntary case [Case No. 09-20232] (the "**Involuntary Case**").[6]   On June 11, 2009, AHF filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code, initiating the voluntary case [Case No. 09-20373] (the "**Voluntary Case**").   On July 17, 2009, the Court entered its *Agreed Order Granting Motion to Consolidate Bankruptcy Cases* [Docket No. 88], consolidating the Voluntary Case and the Involuntary Case into a single case pursuant to Bankruptcy Rule 1015(a).

10.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and (b) and 1334.  This is a core proceeding as defined in 28 U.S.C. § 157(b).  If any part of this adversary proceeding is found to be "non-core" under Bankruptcy Rule 7008, the Trustee consents to the entry of final orders and judgments by this Court.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

11.     This Complaint is brought in accordance with Federal Rules of Bankruptcy Procedure 7001, *et seq.*, and seeks relief under sections 105, 502(d), 510(b), 510(c), 544, 547(b), 548, and 550 of the Bankruptcy Code and section 24.005 of the Texas Business and Commerce Code.

## V.
### OBJECTION TO CLAIMS

**A.      LIHTC WALDEN II DEVELOPMENT LTD.**

---

[6] All references to the "Bankruptcy Code" are made to 11 U.S.C. §§ 101 *et seq*.  Unless otherwise indicated, all section references are references to the Bankruptcy Code.

**Storseth Contributions**

12.    In the Storseth Trust, it asserts that Don Storseth ("Storseth") *invested* the following amounts on the following dates in LIHTC Walden II Development, Ltd. ("**Walden II**"):

|  |  |
|---|---|
| $1,000,000 | August 31, 2007 |
| $500,000 | January 31, 2008 |

13.    The Storseth Trust claim describes the August 31, 2007, investment of $1,000,000 as follows:

- $500,000 check delivered by Don Storseth to AHF, and;

- "crediting $500,000 to Don Storseth that was due to him on a promissory note by *AHF Development, Ltd.*" (the "AHF-D Note").

14.    The $500,000 AHF-D Note matured on November 7, 2004, almost three years before the contribution to Walden II for full value.  The AHF-D Note was uncollectable and of no value on August 31, 2007.

15.    The January 31, 2008 contribution was made by a Don Storseth check dated January 31, 2008.

16.    Don Storseth assigned his interest in Walden II to the Storseth Trust on May 23, 2008.

**AHF Alleged Guaranty Liability**

17.    Article VI of the Walden II Partnership Agreement provides:

- The Limited Partners shall be entitled to a return of their "Initial Capital Contribution" within twelve (12) months, plus

- Eighteen percent (18%) per annum preferential return on the "Initial Capital Contribution."

18.      "Initial Capital Contribution" is defined in section 1.6(e) of the Walden II Partnership Agreement as "the amount of cash, and the fair market value of property or services, contributed to the Partnership by a Partner, ***prior to the Effective Date***."  Walden II Partnership Agreement, § 1.6(e) (emphasis added).

19.      The "Effective Date " is defined in section 1.6(d) of the Partnership Agreement as "the date the Certificate of Limited Partnership . . . is filed with the Secretary of State of Texas." Walden II Partnership Agreement, § 1.6(d).

20.      The Certificate of Limited Partnership was filed with the Secretary of State of Texas on ***August 20, 2007***.  Accordingly, to be an "Initial Capital Contribution" and entitled to return within 12 months plus an 18% preferred return, the contribution must have been contributed ***prior to*** August 20, 2007.

21.      Each and every one of the Defendants' proof of claims admit that ***they made no contributions to Walden II prior to August 20, 2007***.

22.      The Defendants assert that AHF "executed unconditional guarantees ***of the payment obligation contained in the Partnership Agreement***"  See for example, the Storseth Claim, ¶ 5 (emphasis added).  In fact, the Guaranty Agreements (all in the same form as attached as Exhibits C and D to the Storseth Claim) (collectively, the "**AHF Guarantees**") each provide that "Guarantor guarantees the performance of [Walden II] ***obligations under Article VI of the Agreement***."  *See* AHF Guarantees, ¶ 1 (emphasis added).  Since there were no "Initial Capital Contributions" made prior to August 20, 2007, there are no Walden II obligations to the Defendants under Article VI of the Walden II Partnership Agreement; therefore, the Defendants have no valid claims against AHF under the AHF Guarantees.

23.     The additional Defendants also failed to make contributions to Walden II prior to August 20, 2007.  [See Section I for dates of investments].   Accordingly, the contracts upon which the Defendants rely for their Claims (the limited partnership agreement and the AHF Guarantees) do <u>not</u> provide the Defendants with a valid contract claim against AHF under the express provisions of the contracts.

**<u>Tax Treatment</u>**

24.     Walden II filed a 2007 federal income tax return reporting an ordinary loss of $5,750,000 from "other partnerships", and then lists that other partnership as AHF Development, Ltd. ("AHF Development").  The AHF Development  2007 tax return shows no such loss and does not list Walden II as a partner.  Walden II provided Storseth with a 2007 K-1 allocating $1,000,000 of that loss to Storseth (same amount as his alleged 8/31/07 contribution, including the $500,000 worthless AHF-Development Note).  Walden II also provided the other Defendants with 2007 K-1s allocating each of them with illegitimate tax losses equal to the amounts of their equity investments (including worthless property contributed like Malouf's uncollectible unsecured receivable from AHF).

25.     Walden II filed a 2008 federal income tax return reporting an ordinary loss of $3,950,000 from "other partnerships", and then lists that other partnership as AHF Development.  The AHF Development 2008 tax return shows no such loss and does not list Walden II as a partner).  Walden II provided Storseth with a 2008 K-1 allocating $500,000 of that loss to Storseth (same amount as his alleged 1/31/08 contribution of $500,000).  Walden II also provided the other Defendants with 2008 K-1s allocating each of them with illegitimate tax losses equal to the amounts of their equity investments (including worthless property contributed like Malouf's uncollectible receivable from AHF).

26.     The Trustee has not seen the Defendants' tax returns, but questions:

-    Did Storseth write off the AHF-Development Note between maturity in 2004 and the contribution to Walden II in 2007?  Did Malouf write off the uncollectible AHF $1,000,000 receivable before or after claiming it as a contribution to Walden II?

-    Where did the Walden II 2007 and 2008 ordinary losses come from?  AHF Development had no such losses reported on its tax returns and does not list Walden II as a partner in AHF Development—indicating these alleged ordinary tax loss deductions were illegitimate; and

-    These ordinary loss deductions of Walden II were illegitimate, and therefore the loss deductions of the Defendants in 2007 and 2008 were also illegitimate ordinary loss deductions.

## VI.
### CAUSES OF ACTION

**FIRST CAUSE OF ACTION – AVOIDANCE OF FRAUDULENT OBLIGATIONS**

27.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

28.     In the unlikely event that the, Walden II Guarantees, are determined to be valid contractual obligations owed by AHF, such obligations should be avoided as fraudulent (collectively, the "**Fraudulent Obligations**") under section 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act.

29.     Pursuant to section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor of AHF.  Section 544(b) of the Bankruptcy Code permits the Trustee to assert claims and causes of action that such creditor could assert under applicable state law.

30.     At all times relevant herein the Trustee in his capacity as Chapter 11 Trustee of AHF was and is a creditor of AHF.

31.     In furtherance of the scheme to manufacture illegitimate tax losses and deductions, on or within two (2) years of the Petition Date, AHF incurred each Fraudulent Obligation.

32.     The Fraudulent Obligations were incurred with the actual intent to hinder, delay, or defraud then and future creditors of AHF.

33.     AHF received less than reasonably equivalent value in exchange for each of the Fraudulent Obligations.

34.     AHF was insolvent at the time it incurred each of the Fraudulent Obligations.

35.     At the time each Fraudulent Obligation was incurred, AHF was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

36.     At the time each of the Fraudulent Obligations was incurred, AHF intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

37.     The Fraudulent Obligations are, therefore, avoidable as such under sections 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy Code and TEX. BUS. & COMM. CODE § 24.005.

### SECOND CAUSE OF ACTION – MANDATORY SUBORDINATION OF THE TEMPLETON CLAIM

38.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

39.     Pursuant to the provisions of section 510(b) of the Bankruptcy Code, the Defendants Claims should be subordinated to the allowed claims of legitimate general unsecured creditors for purposes of distribution as the Defendants Claims arise from the purchase or sale of a security of an affiliate of AHF.

### THIRD CAUSE OF ACTION – EQUITABLE SUBORDINATION

40.    The Defendants engaged in inequitable conduct, including conduct described in this Complaint, that has resulted in injury to creditors or the conferring of an unfair advantage on or to him.  This inequitable conduct has resulted in harm to the AHF bankruptcy estate and its entire creditor body.  Accordingly, pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code, all claims asserted by, on behalf of, or for the benefit of  the Defendants against AHF should be equitably subordinated to the allowed claims of legitimate general unsecured creditors for distribution purposes because the Defendants claims arise from improper conduct in the form of illegitimate and improper tax activities.

### FOURTH CAUSE OF ACTION – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

41.    The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

42.    AHF and/or AHF Development, Ltd. ("**AHF Development**") paid or caused to be paid each of the Defendants listed on the attached Exhibit A (collectively, the "**Transfers**").

43.    At all times relevant herein, the Trustee in his capacity as such was and is a creditor of AHF and/or AHF Development.

44.    Each Transfer was made at various times within four years of the Petition Date.

45.    Each Transfer was made with the actual intent to hinder, delay, or defraud then and future creditors of AHF and/or AHF Development.

46.    In exchange for each Transfer, AHF and/or AHF Development did not receive reasonably equivalent value.

47.    When each Transfer was made, AHF and/or AHF Development were engaged or about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

48.    AHF and/or AHF Development were insolvent when each Transfer was made.

49.    Each Transfer was received by the Defendants with knowledge that AHF and/or AHF Development intended to hinder, delay, or defraud their then and future creditors.

50.    The Transfers are, therefore, avoidable under section 548(a)(1)(A) and (a)(1)(B) of the Bankruptcy Code and TEX. BUS. & COMM. CODE § 24.005

51.    To the extent the Transfers are avoided under sections 544 or 548 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfers from the transferees of the Transfers for the benefit of AHF's and/or AHF Development's bankruptcy estate(s).

**FIFTH CAUSE OF ACTION – AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS**

52.    The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

53.    Each Transfer was made to or for the benefit of a creditor of AHF and/or AHF Development.

54.    Each Transfer was made for or on account of an antecedent debt owed by AHF and/or AHF Development before each such Transfer was made.

55.    Each Transfer was made while AHF and/or AHF Development were insolvent.

56.    Each Transfer was made on or within one year of the Petition Date.[7]

---

[7] Each of the Defendants were "insiders" of AHF and/or AHF Development as each was admittedly an equity business partner with AHF; therefore, the Trustee is allowed to recover preferential transfers dating back to one year prior to the Petition Date.  *See* 11 U.S.C. § 547(b)(4)(B).

57.     As a result of the Transfers, the Defendants received more than they would receive (a) under AHF's and/or AHF Development's chapter 7 bankruptcy proceeding(s), (b) if the Transfers had not been made, and (c) under the provisions of the Bankruptcy Code.

58.     To the extent the Transfers are avoided under section 547 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfers from the transferees of the Transfers for the benefit of AHF's and/or AHF Development bankruptcy estate(s).

### Sixth Cause of Action – Disallowance Of Claim Under 11 U.S.C. § 502(d)

59.     The Trustee realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

60.     By reason of the facts alleged in this Complaint, pursuant to section 502(d) of the Bankruptcy Code, all claims asserted by the Defendants, their affiliates, or related entities must be disallowed unless he has turned over to the Trustee the property transferred, or paid to the Trustee the value of such property for which he is liable to the Trustee, under section 550 of the Bankruptcy Code.

61.     To the extent the Transfers are avoided under sections 544, 547, or 548 of the Bankruptcy Code, under section 550 of the Bankruptcy Code, the Trustee may recover the value of the Transfers from the transferees of the Transfers for the benefit of AHF's bankruptcy estate.

## VII.
### Request for Relief

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in his favor and against the Storseth Trust as follows:

(i)     ordering that the Storseth Trust Claim is disallowed in its entirety for all purposes;

(ii)    in the alternative, ordering that the Fraudulent Obligations are avoided and set aside;

(iii)    further in the alternative, ordering that any allowed portion of the Storseth Trust Claim is subordinated to the allowed claims of general unsecured creditors for distribution purposes;

(iii)    avoiding and setting aside the Transfers;

(iv)    ordering that the Storseth Trust must return the Transfers to the Debtor's estate or pay the Debtor's estate the value thereof;

(v)    ordering that the Storseth Trust Claim is disallowed until the Transfers or the value thereof, for which the Storseth Trust is liable under section 550 of the Bankruptcy Code, have been returned to the Debtor's estate;

(vi)    conditioning the award of any equitable relief upon a showing that claimant has "clean hands" and has not been involved in any inequitable conduct;

(vii)    awarding the Trustee his attorneys' fees and costs of suit; and

(viii)    awarding the Trustee all such other and further relief, at law or in equity, to which he may be justly entitled.

Dated: April 15, 2011

Respectfully submitted,

*/s/ Max Tarbox*
Max R. Tarbox (TX 19639950)
Tarbox Law, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: (806) 686-4448
Fax:    (806) 368-9785

And

*/s/ Marcus A. Helt*
Stephen A. McCartin (TX 13374700)
Marcus A. Helt (TX 24052187)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Telephone:  214.999.3000
Facsimile:  214.999.4667

**COUNSEL FOR WALTER
O'CHESKEY, TRUSTEE OF THE
AHF LIQUIDATING TRUST**

# Exhibit A

[Intentionally Omitted]

# Exhibit B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No.   09-20232-RLJ-11 |
| | § | |
| AMERICAN HOUSING | § | Chapter 11 |
| FOUNDATION, | § | |
| | § | |
| Debtor. | § | |

### LOVELL ATTORNEY FEES CLAIMED IN PROOFS OF CLAIMS
### CASE NO. 09-20232-RLJ-11

| CLAIM # | CREDITOR NAME | LOVELL ATTY FEES REQUESTED |
|---|---|---|
| 76-1 | Robert L. Templeton | $5,512.90 |
| 76-2 | Robert L. Templeton | |
| 76-3 | Robert L. Templeton | |
| 77-1 | Heron Land Company | $19,295.16 |
| 77-2 | Heron Land Company | |
| 77-3 | Heron Land Company | |
| 78-1 | Paul R. King | $8,269.35 |
| 78-2 | Paul R. King | |
| 78-3 | Paul R. King | |
| 79-1 | Dennis Dougherty | $5,259.21 |
| 79-2 | Dennis Dougherty | |
| 80-1 | Dennis Dougherty | $5,259.21 |
| 80-2 | Dennis Dougherty | |
| 81-1 | Dennis Dougherty | $5,259.21 |
| 81-2 | Dennis Dougherty | |

| CLAIM # | CREDITOR NAME | LOVELL ATTY FEES REQUESTED |
|---|---|---|
| 82-1 | Terrill J. Horton | $38,983.61 |
| 82-2 | Terrill J. Horton | |
| 84-1 | The Estate of Frances Maddox | $13,782.26 |
| 84-2 | The Estate of Frances Maddox | |
| 85-1 | David Miller | $5,504.19 |
| 85-2 | David Miller | |
| 86-1 | Susan Solomon Miller | $16,512.57 |
| 86-2 | Susan Solomon Miller | |
| 87-1 | Clay Storseth | $5,259.21 |
| 87-2 | Clay Storseth | |
| 88-1 | The Storseth Family Trust | $55,221.70 |
| 88-2 | The Storseth Family Trust | |
| 91-1 | Louise Johnson Thomas Trust | $5,546.75 |
| 91-2 | Louise Johnson Thomas Trust | |
| 92-1 | Cornelia J. Slemp Trust | $5,546.75 |
| 92-2 | Cornelia J. Slemp Trust | |
| 93-1 | Carson Burgess, Inc. | $624.01 |
| 93-2 | Carson Burgess, Inc. | |
| 94-1 | Carson Herring Burgess | $624.01 |
| 94-2 | Carson Herring Burgess | |
| 97-1 | Herring Bank | $39,259.26<br>$41,609.29<br>$55,294.73<br>TOTAL $136,163.28 |

| CLAIM # | CREDITOR NAME | LOVELL ATTY FEES REQUESTED |
|---|---|---|
| 97-2 | Herring Bank | |
| 100-1 | Matt Malouf | $27,564.52 |
| 100-2 | Matt Malouf | |
| 108-1 | William E. Scott | $1,988.25<br>$1,988.25<br>TOTAL $3,976.50 |
| 108-2 | William E. Scott | |
| 109-1 | William E. Scott, Individual Retirement Account | $4,970.62 |
| 109-2 | William E. Scott, Individual Retirement Account | |
| 110-1 | Frances E. Maddox Foundation | $7,082.26 |
| 110-2 | Frances E. Maddox Foundation | |
| 112-1 | Vaudrey Capital, LP (a/k/a Vaudry Capital, LP) | $13,866.88 |
| 112-2 | Vaudrey Capital, LP (a/k/a Vaudry Capital, LP) | |
| 114-1 | Campbell Burgess | $3,120.05 |
| 114-2 | Campbell Burgess | |
| 115-1 | Chain-C, Inc. | $3,120.05<br>$9,984.15<br>TOTAL $13,104.20 |
| 115-2 | Chain-C, Inc. | |
| 116-1 | Banjo, Inc. | $4,992.08 |
| 116-2 | Banjo, Inc. | |
| 117-1 | Herring Financial Services | $6,240.09<br>$6,864.10<br>TOTAL $13,104.19 |

| CLAIM # | CREDITOR NAME | LOVELL ATTY FEES REQUESTED |
|---|---|---|
| 117-2 | Herring Financial Services | |
| 118-1 | C. C. Burgess | $3,120.05 |
| 118-2 | C. C. Burgess | |
| 119-1 | Burgess Trust #4 | $624.01 |
| 119-2 | Burgess Trust #4 | |
| 120-1 | Keevin Clark | $499.20 |
| 120-2 | Keevin Clark | |
| 120-3 | Keevin Clark | |
| 121-1 | Charlotte Burgess Griffiths | $624.01 |
| 121-2 | Charlotte Burgess Griffiths | |
| 122-1 | Jessie Herring Johnson Estate Trust No. 1 | $624.01 |
| 122-2 | Jessie Herring Johnson Estate Trust No. 1 | |
| 123-1 | Jessie Herring Johnson Estate Trust No. 2 | $1,248.02 |
| 123-2 | Jessie Herring Johnson Estate Trust No. 2 | |
| | **GRAND TOTAL** | **$431,143.98** |