Reuben L. Hancock
Reuben L. Hancock P.C.
P.O. Box 2330
Amarillo, Texas 79105-2330
Phone: (806) 373-1713
Fax: (806) 373-8400
E-Mail: rlh@rlhancock.com

**COUNSEL FOR PAUL KING,
ROBERT L. TEMPLETON,
AND FRANCES E. MADDOX
ESTATE, PLAINTIFFS**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **In re:** § | § | **Chapter 11** |
| **American Housing Foundation,** § | § | |
| **Debtor.** § | § | **Case No.: 09-20232-RLJ** |
| _____ § | § | _____ |
| **Paul King, Robert L. Templeton, and Frances E. Maddox Estate,** § | § | |
| **Plaintiffs,** § | § | **Adversary No. _____** |
| v. § | § | |
| **Walter O'Cheskey, Trustee, and American Housing Foundation,** § | § | |
| **Defendants.** § | § | |

_____

## PLAINTIFFS' COMPLAINT TO REMOVE TRUSTEE AND TO REVOKE THE CONFIRMED PLAN

Paul King ("**King**"), Robert L. Templeton, ("**Templeton**") and Frances E. Maddox Estate by and through its Independent Executor, Robert L. Templeton ("**Maddox**"),

creditors of American Housing Foundation ("**AHF**") and parties in interest, as Plaintiffs hereby file this Complaint (the "Complaint") against Walter O'Cheskey ("**Trustee**"), Defendant, and AHF and in support thereof respectfully states as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are citizens of the State of Texas.

2. AHF is a Texas nonprofit corporation.

3. Trustee is an individual citizen of the State of Texas.

4. On April 21, 2009 (the "**Petition Date**"), an involuntary petition for relief under the Bankruptcy Code was filed against AHF in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division under Chapter 11 of the Bankruptcy Code, commencing Bankruptcy Cause No. 09-20232 (the "**Bankruptcy Case**") and creating the bankruptcy estate of AHF (the "**Estate**").

5. On or about June 11, 2009, AHF filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing Case No. 09-20373 (the "**Second Case**").

6. On July 17, 2009, the Court issued its *Agreed Order Granting Motion to Consolidate Bankruptcy Cases* consolidating the Second Case into the Bankruptcy Case (09-20232).

7. This Court has jurisdiction under Title 11 of the United States Code (the "**Bankruptcy Code**") and under 28 U.S.C. §§151,157,1334, and 2201. This is a core proceeding under 28 U.S.C. §157.

8. This adversary proceeding is commenced under 11 U.S.C. §§ 105 (a), 324, 1144 and Fed R. Banker. P. 7001 (2), (5) and (9).

9. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises in, or relates to, a case pending in this district under the Bankruptcy Code.

## II. FACTUAL ALLEGATIONS

10. An official unsecured creditors committee ("**UCC**") was created and Robert L. Templeton served as its chairman. UCC retained Mullin, Hoard & Brown ("**MH&B**") and the Court entered its Order Granting Application to Employ MH&B on October 15, 2009, [Docket No. 358].

11. On January 21, 2010, Texas Capital Bank ("**TCB**") filed a motion to appoint a chapter 11 trustee [Docket No. 653], arguing that the debtor's management was incompetent and was grossly mismanaging the debtor and its estate.

12. On April 28, 2010, the Bankruptcy Court granted TCB's motion [Docket No. 1096] and authorized the appointment of a chapter 11 trustee in the Bankruptcy Case. Shortly thereafter, the United States Trustee's Office appointed Walter O'Cheskey as the Chapter 11 trustee for the debtor's bankruptcy estate.

13. Trustee sought permission to employ Focus Management Group USA, Inc. ("**Focus**") as a management consultant, supporting its application with and affidavit of Focus' agent, Alan Weiner ("**Weiner**"). This Court granted the Trustee's request by its Order granting application to employ Focus Management Group as Financial Adviser to the Trustee entered on June 30, 2010 [Docket No. 1360].

14. From his initial appointment, Trustee closed all communications with the UCC, refused to communicate with the chairman of the UCC, returned one of numerous telephone calls from the Committee Chairman and instructed his staff not to communicate with the creditors or the UCC.

15. Trustee has indicated that, on advice of Gardere Wynne Sewell, LLP, ("**Gardere**"), he regarded the UCC as a complete adversary. Consequently, there were only a few occasions when there was an ostensible effort on the part of the Trustee to work with the UCC and their counsel, MH&B, in an effort to develop a joint plan of reorganization.

16. Despite the fact that the efforts of MH&B on behalf of the UCC have secured substantial assets for the Estate, the Trustee objected to MH&B taking any actions of any kind in connection with the various claims of the estate against third parties, such as the claim against directors for gross negligence, recovery of various properties, etc. Trustee took this action to tie the hands of MH&B, when MH&B was in the later stages of effectuating a number of settlements and recoveries for the benefit of the estate, yet Trustee to this date has not even asserted many of the claims that MH&B was at that time actively securing commitments for payment to the Estate.

17. In this period of time, Trustee asserted that he would not ever work by the hour, but instead demanded that his compensation include a 3% commission, the maximum under the Bankruptcy Code. The 3% commission demanded by Trustee was to be paid not only from all sums of money recovered and paid by the Trustee, but also sums in the Estate, including the approximately $25,000,000.00 that had already been

recovered prior to his appointment and through no effort on his part.[1] That sum of money primarily consisted of the settlement of life insurance proceeds that had been brought about by the petitioning creditors. When the UCC realized not just the unreasonable demand of Trustee, but the unbridled and excessive costs being charged by Gardere and Focus, they lost trust in the integrity of the Trustee. It became clear to the UCC members that the statements about fiduciary obligations of Trustee were secondary to the greed and to the desire for the money in the registry of the Court.

18.    In early August 2010, there was an impasse in negotiations for a joint plan. The Trustee's lawyers and advisors told the Trustee that the Trustee's Plan would likely fail and the UCC's alternate Plan would probably be adopted. Trustee then set about to attack and discredit the UCC and its individual members so that the Court might be persuaded by the attacks. In that process, Trustee lobbied, talked to and e-mailed the US Trustee with malicious and unwarranted attacks. When that alone did not achieve Trustee's goals, his attorneys filed adversary claims against the Chairman of the UCC and against two other members directly and indirectly. Within approximately 21 minutes of the filing of the adversary complaint, the US Trustee removed the Chairman of the UCC from his office. All of this was underhanded, a secret and for the motive of somehow getting the trustee's proposed plan approved. It worked to a point. Following the filing of the adversary complaints against the UCC members, this Court announced on September 14, 2010, that he could not conceive of

---

[1] Trustee later agreed to limit his commission compensation to only 3% of sums recovered through efforts of Trustee, but this followed Trustee's action to prevent estate recovery from the efforts of the UCC and MH&B. Conveniently, on the E&O claim against the former directors of AHF alone, Trustee will receive additional compensation of $60,000, if, as and when he seeks to assert the claim.

any plan or reorganization that would not have Walter O'Cheskey as the liquidating trustee.

19. The subdued UCC and the MH&B firm then met, obtained a few concessions and agreed to a joint proposed plan, approved by both the Trustee and the UCC. With the passage of this proposed plan, there would then be the nearly unbridled control of Gardere of the bankruptcy. The proposed plan went forward and was voted on November 19, 2010 and was overwhelmingly voted down in all classes.

20. At that point, the Lovell Firm, representing the Templeton group initiated a conference in Dallas with Gardere and Trustee to attempt to agree to a proposed plan, with the hope that the bankruptcy could go forward without disputes and to insure some recovery for the unsecured creditors. The negotiations were agreed to in part, but broke down over a few issues, including the role of the Oversight Committee. That meeting took place on November 23, 2010 in Dallas, Texas.

21. On November 30 and December 1, 2010, at the hearing that had been set for confirmation of the proposed plan, further negotiations took place and based on a number of representations and agreements by the Trustee discussed herein, the dissenting creditors changed their votes so that the majority of the creditors approved the proposed plan and the proposed plan was confirmed.

22. On December 8, 2010, this Court entered its Findings of Fact, conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan Filed by the Chapter 11 Trustee and the Official committee of Unsecured Creditors [Docket No. 1918] (the "**Confirmation Order**"), confirming the Second Amended Joint Chapter 11

Plan Filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors [Docket No. 1909] (the "**Plan**").

23. Under the terms of the Plan and Confirmation Order, Walter O'Cheskey, was appointed trustee of the AHF Liquidating Trust.

24. Following approval of the Plan, Walter O'Cheskey initially sought to be relieved of his duties as Chapter 11 trustee but subsequently elected not to pursue this request. Therefore, Walter O'Cheskey presently continues to act as both the trustee under the Liquidating Trust and as the Chapter 11 trustee.

25. The Plan, along with the provisions of the incorporated Liquidating Trust Agreement ("**Liquidating Trust**"), set forth the provisions for the establishment of a Trust Oversight Committee (the "**Committee**").

26. Based on pleadings filed by the Committee, Trustee has failed to discharge his duties under the Plan and the Liquidating Trust. Plaintiffs adopt by reference the allegations of the Committee as set forth in [Docket No. 2596] the *Oversight Committee's Response to Motion for Authority to File Objection to Claims per Confirmed Plan (Docket #2327 and Docket #2328) as Well as Similar Motions Filed on Behalf of the Trustee (#2569, #2591, #2590, #2592 and #2594)*.

27. When Trustee's initial plan of reorganization was rejected by a vote of the creditors of the estate, in order to secure votes necessary to approve the Plan, Trustee made certain representations to the creditors. Some of these representations related to the use of a court ordered litigation procedure. After securing the approvals needed to confirm the Plan, Trustee has, based on the allegations contained in pleadings filed by Rainier American Investors I, LLC, Rainier American Investors II, LLC and Rainier

American Investors III, LLC, (jointly "**Rainier**"), failed to follow the court ordered litigation procedure. Plaintiffs adopt by reference the allegations of Rainier set forth in its [Docket No. 2619] *Objection to Motion for Authority to File Objection to Claims per Confirmed Plan and First Amended Motion (Rainier and Koehler Related Claimants)*. It therefore appears that Trustee had no intent to follow through with the representations made by Trustee at the time they were made, but that such representations were made simply to induce the necessary creditor approval of the Plan and the Liquidating Trust.

28. Trustee further represented to the creditors of the estate, including Plaintiffs, each of the following in order to induce the creditors to support the proposal that was eventually confirmed as the Plan, which representations were in fact relied upon by creditors in their decision to support the Plan (fraud in soliciting votes for the Plan):

    a.    Representing that the revisions to the proposed plan granted the Reorganized AHF Board authority to review and approve contracts with management personnel, including Focus and Weiner, only to subsequently assert that the Reorganized AHF Board should be prohibited from exercising such rights, even going to the point of using the Liquidating Trust funds to pay for seeking injunction to prevent the Reorganized AHF Board taking such action.

    b.    Representing that the Committee would have to review and approve a cost benefit analysis and legal assessment from Trustee before the Trustee would institute any claims objections or adversary actions and that only if the Committee did not approve the Trustee's proposed action,

      then matter could be taken to Court for approval, only to later assert that the Committee had no right to review adversary avoidance proceedings and that Committee approval was not required by the Plan.[2]

  c.    Representing and agreeing that the new President of AHF would be Weiner, whose loyalties, obligation and fiduciary duty would be exercised solely to benefit AHF. In truth and in fact, Trustee employed Weiner as an agent of Focus[3], with conflicting duties and Trustee has further taken the position that Weiner must remain as President of AHF for 2 years, not withstanding contrary language in the Plan and Liquidating Trust.[4]

  d.    Representing that Trustee would seek an early distribution, likely within 90 days of Plan confirmation, to Unsecured Creditors.

  e.    Representing that the primary reason for Trustee's insistence to pay TCB was because Trustee was bound to pay the approximate $4,500,000.00 to TCB, when in fact, Trustee was not bound to do so. Trustee was represented by Gardere in the TCB matter and there was a relationship between TCB and Gardere that has never been fully disclosed.

---

[2] Trustee's counsel has even testified that he "never thought the [review and approval] process would work" while it was being proposed to the creditors in order to secure their votes for the plan despite express representations in e-mail correspondence from Trustee's counsel to counsel for unsecured creditors saying the review and approval provisions applied to all litigation.

[3] Weiner is apparently subject to and "...employment agreement with Focus Management Group, which in general terms bars [Weiner] from outside employment...." See *Letter from The Reorganized AHF Board to Alan Weiner of Focus Management Group USA, Inc.* [Docket No. 2299].

[4] Even the Reorganized AHF Board has opposed the proposition that the Plan and/or Liquidating Trust required the retention of Weiner as AHF President. See *Brief in Opposition to the Emergency Motion for Interim and Final Order Interpreting/enforcing the Confirmation Order and Plan* [Docket No. 2522]

  f. Representing that apartment properties would be promptly listed for sale and liquidated without undue delay, when the Trustee's true intention is to string out the bankruptcy until the maximum is eaten up in excessive fees to Gardere, Focus and others receiving administrative distributions.

  g. Representing that Trustee would exercise the management and control to be vested in him by the Plan and Liquidating Trust for the benefit of the estate, and therefore, the creditors, when in fact Trustee intended to abandon all management, control and direction to Gardere and Focus.

  29. As a result of these many representations, the dissenting creditors, who had consisted of approximately $65,000,000.00 of creditors out of approximately $80,000,000.00, changed their votes from having voted against the proposed plan to vote for the Plan and allow the Plan to be confirmed.

  30. Trustee's intention from the beginning has apparently been to delay the plan process to the detriment of creditors causing, or at least permitting, the administrative costs of the case to rise, primarily in the form of compensation to Trustee, Focus and Trustee's counsel. Clearly, there will only be a limited amount of money to pay creditors and these funds are, through the actions and inaction of the Trustee, being dissipated before a distribution can be made. AHF, as a nonprofit entity, has no equity holders and therefore the Trustee's only constituency is the creditors. Plaintiffs do not want the assets of the estate, a substantial portion of which are from life insurance funds recovered by actions of the creditors, not the Trustee or his counsel, used primarily to operating expenses rather than creditors. Based on the actions of the Trustee, it appears clear that his primary goal is expenditure of the liquid

assets of the estate on administrative costs rather than any dividend to the unsecured creditors.

31.	In later part of December, 2010, Gardere and Focus came forward with bills, which for the Trustee and his agents and employees amounted to over $3,500,000.00.

32.	Trustee and his counsel spent the major part of their time to insure their control of this bankruptcy to obtain the excessive fees they have submitted to attack unsecured creditors. The best example of such conduct lies in the over one hundred adversaries filed on or around April 21, 2011, most, if not all, without any substantial investigation into the merit of the claims asserted.

33.	Following his appointment under the Plan as Trustee of the Liquidating Trust, Trustee has failed to obtain beneficial results or to accomplish anything positive in this bankruptcy in the following areas:

    a.	Trustee has yet to seek to pay anything to unsecured creditors.

    b.	Trustee has yet to collect on obligations owing to AHF.

    c.	Trustee has failed to timely take any action necessary to sell the real properties of the Estate.

    d.	Trustee, when serving as Chapter 11 Trustee and later as Liquidating Trustee, has yet to file suit against former AHF Directors, despite the fact that approximately $2,000,000.00 is available from the Directors E&O insurance carrier which, through prior efforts of MH&B, is ready, willing and able to pay.

e. Trustee has failed to pursue the cause of action against Bank of America ("**BOA**"), allowing the case to languish after its remand to State District Court in Dallas, Texas. In that connection, the Trustee has never, either through Gardere, or other counsel, taken any action to seek a resolution of the BOA case.

f. Trustee has failed, to Plaintiffs' knowledge, to take action necessary for the San Patricio properties (properties that duly belong in the Estate) to be transferred back to AHF.

g. Trustee mishandled the TCB Brandywood matter. First, Trustee insisted on payment of $4,500,000.00 to TCB "because he gave his word." Then after last-minute negotiations reduced the TCB payout at the insistence of the unsecured creditors to $4,000,000.00, the Trustee and his counsel have continued to accrue substantial time and expenses associated with the transaction, when all of the power to sell or take charge of Brandywood is in the hands of TCB at its complete discretion.

h. Trustee, while expending Estate resources on defending fee applications and the pursuit of fruitless adversary proceedings, substantially ignored his fiduciary obligation to examine the claims of the various claimants and possible fraudulent transfer claims against third parties. Trustee conducted little if any detailed analysis of the facts, engaged in no cost-benefit analysis, and disregarded Trustee's duties under the Plan and Liquidating Trust with relation to determining whether preference and/or fraudulent transfer claims should have been brought, against whom they

should be brought and in what amount they should be brought. The result is that Trustee has filed more than one hundred adversary claims, many of which are likely unnecessary and without merit, when if the Trustee had allocated his resources properly, the Estate would be receiving a benefit rather than extensive litigation costs on claims of unknown merit at best.

    i. Trustee, as a part of his strategy has filed claim objections, actions, adversarial and preference wise as a means to accomplish economic coercion and litigation blackmail.[5] By permitting time to pass without action, Trustee has sought to justify suing everyone at the last minute and then asking for a procedure that effectively transfers the burden to the defendants to prove that any sums received were not a preference or fraudulent transfer. To the extent Trustee has succeeded or will succeed in causing claimants to abandon or to settle claims or settle for less than the amount of their claim, many will be without any justification in law or equity. That strategy may well work on a number of claimants, but is that what a fiduciary is obligated to do? Is not the fiduciary obligated to protect the innocent and lawful claimants? Or is it simply to run up fees and

---

[5] Judge Stacey Jernigan, in *Brooks Mays Music Company*, in her "Order Accepting Trustee's Preliminary Report Regarding Potential Preference Actions and Setting Specific Parameters on the Pursuit of Preference Actions" noted the trend in large bankruptcy cases for preference litigation to "run amok (i.e., trustees and plan agents suing with reckless abandon, every recipient of a transfer of property of the debtor that occurred within 90 days of the bankruptcy filing, with no consideration of obvious defenses, what makes economic sense, or the underlying policies of the preference laws which, since Elizabethan times, have always been about promoting equality of distribution among similarly situated creditors and deterring overreaching)." It appears clear that Trustee and his counsel have too run amok, in violation of Trustee's ethical and fiduciary duties regarding preference litigation.

   expenses while pommeling the weak only to claim this is a benefit to the estate?

j.  As stated several times by Trustee's counsel, Steve McCartin, the dominant force in this entire strategy is that "we get to fight claimants with their money," and as to the filing of countless objections and adversary proceedings, "we are obligated to file these, whether we think they are justified or not, we just leave it up to the court." McCartin is obviously the agent of the Trustee. The Trustee is responsible for his agents. Is it the purpose of the bankruptcy to burden the Court with merit-less claims or adversary proceedings?

k.  Trustee has a duty to control his agents, to hold them accountable, to know why lawsuits are filed, to know why lawsuits have not been settled and to know what the costs are going to be. Moreover, this duty extends to providing this information to the Oversight Committee and/or the Court before any action is taken. Section 10.02 of the Plan provides that Trustee will not file an objection to Claims or adversary complaint without prior permission from the Trust Oversight Committee or from the Bankruptcy Court after notice and hearing and upon a showing (i) reasonable grounds to file such an objection and (ii) a cost-benefit analysis of any proposed claim objection or adversary proceeding. Based on pleadings of the Oversight Committee, Trustee has been uniformly ignoring the procedure. Therefore, Trustee's actions are not only a

violation of his legal duty, but as asserted by the Oversight Committee, "a blatant disregard of the Plan provision."

l.     Trustee may lack the knowledge and experience necessary to properly perform his duties. With due respect to the Trustee and the experience and procedures he engages in for Chapter 12 and 13 matters, this case is not of the nature that he normally oversees. Although Trustee may collect over $2,500,000.00 per month, that is primarily in chapter 12 and 13 cases on which he has approximately 20 supervised, knowledgeable and experienced employees working on those cases full time. But this is not a chapter 12 or 13 case.

m.     When Trustee was appointed, approximately $25,000,000.00 was on deposit with the Court together with substantial other claims. Following Trustee's appointment, with dissipation of the limited assets, the probable dividend to the unsecured creditors will likely be less than $10,000,000.00. The Trustee's projected recovery to unsecured creditors of 25-35% is, and at all times has been, unrealistic especially following a depletion of more than 1/3 of the Estate's cash. The primary drain on the Estate is the Trustee, Focus and Gardere which in 2011 alone is proceeding at the rate of approximately $4-500k per month. At this rate or consumption, no one knows what will be left.

34.     The foregoing conduct by Trustee supports a conclusion that he is incompetent and is grossly mismanaging the debtor and its estate as both the trustee under the Liquidating Trust and as the Chapter 11 trustee.

## III. FIRST CLAIM FOR RELIEF
### (§1144 Revocation of Order of Confirmation)

35. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 35 above.

36. A party in interest may move to revoke the confirmation order at any time before 180 days after the date of the entry of the confirmation order on the grounds that the confirmation order was procured by fraud. 11 U.S.C. § 1144; *In re TermFla Partners*, 226 F.3d 746, 750 (6th Cir. 2000). Plaintiffs are parties in interest in that each is the holder of an unsecured claim.

37. The misrepresentations made to induce the unsecured creditors to vote in favor of the Plan described above resulted in a misrepresentation to the Court. This misrepresentation includes, without limitation, the false representation that the Plan was supported by a genuine vote of the unsecured creditors in favor of the Plan when in fact it was not.

38. Based upon the foregoing allegations of fraud upon the Court in procuring the order confirmation of the Plan of reorganization, the Court should exercise its powers under 11 U.S.C. §1144 and revoke its order confirming the Plan, while providing for such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation.

## IV. SECOND CLAIM FOR RELIEF
### (Removal of the Trustee for Cause)

39. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 39 above.

40. The Court has the power, in the interest of justice, to take action or exercise jurisdiction, including the power to remove Trustee under the Liquidating Trust pursuant to Texas Trust Code §113.082. The misrepresentations by Trustee combined with the failure of Trustee to perform his duties both at law and under the express terms and conditions of the Plan and the Liquidating Trust, constitute cause in the interest of justice for removal of Trustee.

41. Plaintiffs as parties in interest may move to remove the Trustee for cause. 11 U.S.C. 324 (a). The misrepresentations by Trustee, combined with the failure of Trustee to perform his duties both at law and under the express terms and conditions of the Plan and the Liquidating Trust, constitute cause pursuant to 11 U.S.C. § 324 for removal of Trustee.

WHEREFORE, Plaintiffs pray that the Court:

1. remove Walter O'Cheskey as trustee under the Plan and the Liquidating Trust;

2. revoke the Confirmed Plan pursuant to 11 U.S.C. § 1144;

3. grant Plaintiffs other relief as the court deems just and equitable.

Dated:    May 27, 2011

> Respectfully submitted,
>
> Reuben L. Hancock, P.C.
> P. O. Box 2330
> Amarillo, Texas 79105
> (806) 373-1713
> Telecopier (806) 373-8400
>
> By:_____
>         Reuben L. Hancock

                Bar Card No. 08888520

**COUNSEL FOR PAUL KING,**
**ROBERT L. TEMPLETON,**
**AND FRANCES E. MADDOX**
**ESTATE, PLAINTIFFS**