Max R. Tarbox (TX 19639950)
TARBOX LAW, P.C.
2301 Broadway
Lubbock, Texas 79401
Phone: 806.686.4448
max@tarboxlaw.com

Stephen A. McCartin (TX 13374700)
Marcus Helt (TX 24052187)
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201-4761
Phone: 214.999.3000
smccartin@gardere.com
mhelt@gardere.com

**COUNSEL FOR WALTER O'CHESKEY,
TRUSTEE OF THE AHF LIQUIDATING
TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **In re:** § § | **Chapter 11** | |
| **American Housing Foundation,** § § § | | |
| Debtor. § § | **Case No.:  09-20232-RLJ** | |
| ──────────────────────── § § | ──────────────────────── | |
| **Walter O'Cheskey, Trustee,** § § | | |
| Plaintiff, § § | | |
| v. § § | **Adversary No. _____** | |
| **Houston Woodedge, Ltd, MC-CDC Woodedge, Inc., John Does 1-50, and ABC Entities 1-50,** § § § § | | |
| Defendants. | | |

**TRUSTEE'S COMPLAINT TO RECOVER
AVOIDABLE TRANSFERS AND OBTAIN OTHER RELIEF – Page 1**

DALLAS 2240527v.1

# TRUSTEE'S COMPLAINT TO RECOVER AVOIDABLE TRANSFERS AND OBTAIN OTHER RELIEF

Walter O'Cheskey, the trustee of the AHF Liquidating Trust (the "**Trustee**" or "**Plaintiff**") for American Housing Foundation ("**AHF**" or "**Debtor**"), hereby files this *Complaint* (the "**Complaint**") against the Defendants and in support thereof respectfully states as follows:

## I. NATURE OF THE ACTION

1. Among other things, in this adversary the Plaintiff seeks to:

   (a) avoid and recover transfers of the Debtor's interest in property from the Defendant, any person or entity for whose benefit such transfers were made, and any subsequent transferees all fraudulent transfers made by the Debtor, AHF Development, Ltd., or the Affiliates (as that term is defined in the Plan) (collectively, the "**Transferor**") during (i) the 2-year period prior to the bankruptcy filing under 11 U.S.C. § 548 and (ii) the 4-year period prior to the bankruptcy filing under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act; and

   (b) obtain other relief as the Court deems just and equitable.

## II. JURISDICTION AND VENUE

2. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 544, 548, 550, 551, Federal Rules of Bankruptcy Procedure 7001 and 7003, and applicable state law to avoid and recover transfers of certain property interests of the Debtor.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), (H), and (O).

5. This Complaint relates to the American Housing Foundation bankruptcy proceeding, case number 09-20232, filed under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division. Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1409(a).

### III.
### THE PARTIES

6. On April 21, 2009 (the "**Petition Date**"), an involuntary petition for relief under the Bankruptcy Code was filed against AHF in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division under Chapter 11 of the Bankruptcy Code, commencing Bankruptcy Case No. 09-20232 (the "**Bankruptcy Case**") and creating the bankruptcy estate of AHF (the "**Estate**").

7. On or about June 11, 2009, AHF filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing Case No. 09-20373 ("**Second Case**").

8. On July 17, 2009, the Court issued its *Agreed Order Granting Motion to Consolidate Bankruptcy Cases* consolidating the Second Case into the Bankruptcy Case (09-20232).

9. On January 21, 2010, Texas Capital Bank ("**TCB**") filed a motion to appoint a chapter 11 trustee [Docket No. 653], arguing that the Debtor's management was incompetent and was grossly mismanaging the Debtor and its estate.

10. On April 28, 2010, the Bankruptcy Court granted TCB's motion [Docket No. 1096] and authorized the appointment of a chapter 11 trustee in the Bankruptcy Case. Shortly

thereafter, the United States Trustee's Office appointed Walter O'Cheskey as the chapter 11 trustee for the Debtor's Estate.

11. On December 8, 2010, this Court entered its Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan Filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors [Docket No. 1918] (the "**Confirmation Order**"), confirming the Second Amended Joint Chapter 11 Plan Filed by the Chapter 11 Trustee and the Official Committee of Unsecured Creditors [Docket No. 1909] (the "**Plan**").

12. Under the terms of the Plan and Confirmation Order, Plaintiff, Walter O'Cheskey, was appointed trustee of the AHF Liquidating Trust.

13. As the trustee of the AHF Liquidating Trust, Plaintiff is vested with the authority and right to prosecute and settle all Estate causes of action, including the causes of action asserted in this Complaint.

14. AHF Development, Ltd. ("**AHFD**") is a limited partnership that filed for relief under Chapter 11 of the Bankruptcy Code in this District and in this Division, Case Number 09-20703, on October 19, 2009. The Debtor is the general partner of AHFD.

15. Upon information and belief, defendant Houston Woodedge, Ltd is a Texas limited partnership that may be served with process by serving its registered agent PLA Services, Inc., at 701 S. Taylor, Suite 300, Amarillo, Texas 79101.

16. Upon information and belief, defendant MC-CDC Woodedge, Inc. is a Texas corporation and is the general partner of Houston Woodedge, Ltd. Upon information and belief, MC-CDC Woodedge, Inc. may be served with process by serving Larry Bunn at 1800 S. Washington, Suite 309, Amarillo, Texas 79102.

17. Defendants Houston Woodedge, Ltd. and MC-CDC Woodedge, Inc. are referred to herein, individually as a "**Defendant**" and collectively as the "**Defendants**."

18. Upon information and belief, defendants John Does 1-50 and defendants ABC Entities 1-50 are (a) initial transferees of the avoidable transfers described herein, (b) entities for whose benefit such avoidable transfers were made, or (c) immediate or mediate transferees of such initial transferee, as described in section 550 of the Bankruptcy Code. Defendants John Does 1-50 and ABC Entities 1-50 are referred to herein, collectively, as the "**Doe/ABC Defendants**."

### IV.
### GENERAL ALLEGATIONS

**A.    Background**

19. Steve Sterquell ("**Sterquell**") founded AHF and was the president and chief executive officer of AHF until his death in April 2009. At that time, a substantial amount of unsecured claims were asserted against AHF. In addition, AHF directly or indirectly owned interests in special purpose entities that own and operate approximately 66 apartment complexes located in nine states ("**SPEs**"). These SPEs were formed for a legitimate business purpose, which was to provide affordable housing while at the same time providing limited partner/tax-credit partners and AHF with legitimate real-estate-investment opportunities. However, while AHF and the tax-credit limited partners were engaged in the legitimate affordable-housing business through the SPEs, Sterquell and certain soft-money partners were involved in the illegitimate activity of manufacturing illegitimate tax basis and for the purpose of taking tax deductions in return for what were in actuality loans.

20.     This soft-money structure was designed by Sterquell and participated in by the "soft-money" investors who knew, or should have known, that the investment was purely for illegitimate and improper tax purposes. Upon information and belief, this scheme also had characteristics of a Ponzi scheme under which guaranteed returns to old investors could only be satisfied by the flow of funds from new investors. To that end, corporate formalities were ignored and funds were transferred without adequate consideration. By generating a continuing influx of cash from new "investors," the Debtor was able to make payments to old investors, notwithstanding its insolvency, during the 4-year period prior to the Petition Date. During that same period, the Debtor and certain SPEs experienced cash shortages, and Sterquell was dependent on new investor money to continue this scheme and provide cash for the Debtor's operations and to fund payments to prior investors.

21.     Sterquell also made certain transfers of the Debtor's interest in property to various transferees on account of goods or services provided or rendered to the SPEs or other entities but not to the Debtor.

22.     Notwithstanding the fact that such goods or services provided no benefit to the Debtor, payments for such services were made using property of the Debtor, and the Debtor received no contribution or reimbursement for such payments from the SPEs.

**B.     Transfers to the Defendants**

23.     Prior to the Petition Date, the Transferor made one or more transfers of an interest in the Debtor's property, to or for the benefit of, the Defendant (the "**Transfers**"). A schedule identifying each Transfer, including the date of such Transfer, the identity of the Transferor and of a Defendant transferee, and the Transferor's bank account, is attached hereto as Exhibit A and is incorporated herein by reference. Transfers made during the two-year period prior to the

Petition Date are, collectively, the "**2-Yr Transfers**." Transfers made during the four-year period prior to the Petition Date are, collectively, the "**4-Yr Transfers**." The 2-Yr Transfers and the 4-Yr Transfers are, collectively, the "**Avoidable Transfers**."

24. The money comprising each Avoidable Transfer was property of the Debtor because (a) the money came from a bank account owned by the Debtor and into which only money owned by the Debtor was deposited; (b) the money came from a bank account (i) held in the name of the Debtor's alter ego, (ii) over which the Debtor exercised control and dominion, or (iii) operated for the benefit of the Debtor; or (c) the money deposited into the bank account owned by the Debtor was commingled with other funds owned by the Debtor.

25. Each Avoidable Transfer was made to or for the benefit of the Defendants.

26. Each Avoidable Transfer was made to hinder, delay, or defraud existing or future creditors or for less than reasonably equivalent value in exchange for that Avoidable Transfer.

27. Each Avoidable Transfer (a) was made when the Debtor was insolvent because (i) the Debtor's liabilities exceeded its assets or (ii) the Debtor was generally unable to pay its debts as they became due or (b) resulted in the Debtor becoming insolvent.

28. Each Avoidable Transfer was made when the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital.

29. Each Avoidable Transfer was made when the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

## V.
## COUNT ONE
### (Avoidance, Preservation, and Return of Actual Fraudulent Transfers Under 11 U.S.C. §§ 548(a)(1)(A), 550, and 551)

30. Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

31. The 2-Yr Transfers were made from the Debtor's property.

32. The 2-Yr Transfers were made with the Debtor's actual intent to hinder, delay, or defraud creditors of the Debtor because the 2-Yr Transfers were made in connection with and in furtherance of the Debtor's ongoing fraudulent scheme.

33. The Debtor knew of its dependence on new investor money to provide cash for operations and to fund payments to prior investors.

34. The 2-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. § 548(a)(1)(A).

35. Defendants are either the initial transferee of a 2-Yr Transfer or the immediate or mediate transferee of such initial transferee or is a person for whose benefit the 2-Yr Transfer was made.

36. As of the date hereof, Defendants have not returned any 2-Yr Transfer to the Estate.

37. As a result of the foregoing, pursuant to 11 U.S.C. §§548(a)(1)(A), 550, and 551, Plaintiff is entitled to a judgment (a) avoiding and preserving the 2-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 2-Yr Transfers be set aside; and (c) recovering the 2-Yr Transfers, or the value thereof, from the Defendants for the benefit of the Estate and the Liquidating Trust.

# VI.
# COUNT TWO

### (Avoidance, Preservation, and Return of Constructive Fraudulent Transfers Under 11 U.S.C. §§ 548(a)(1)(B), 550, and 551)

38. Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

39. The 2-Yr Transfers were made from the Debtor's property.

40. The Debtor was (a) insolvent when the 2-Yr Transfers were made or, in the alternative, became insolvent as a result of the 2-Yr Transfers; (b) engaged in a business or a transaction, or were about to engage in business or transaction, for which the property remaining with the Debtor was unreasonably small capital when the 2-Yr Transfers were made; or, alternatively, (c) at the time the 2-Yr Transfers were made, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as they matured.

41. The Debtor received less than reasonably equivalent value in exchange for the 2-Yr Transfers.

42. The 2-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. § 548(a)(1)(B).

43. Defendants are either the initial transferee of a 2-Yr Transfer or the immediate or mediate transferee of such initial transferee or is a person for whose benefit the 2-Yr Transfer was made.

44. As of the date hereof, Defendants have not returned any 2-Yr Transfer to the Estate.

45.    As a result of the foregoing, pursuant to 11 U.S.C. §§548(a)(1)(B), 550, and 551, Plaintiff is entitled to a judgment (a) avoiding and preserving the 2-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 2-Yr Transfers be set aside; and (c) recovering the 2-Yr Transfers, or the value thereof, from the Defendants for the benefit of the Estate and the Liquidating Trust.

## VII.
## COUNT THREE
### (Avoidance, Preservation, and Return of Actual Fraudulent Transfers Under 11 U.S.C. §§ 544, 550, 551, and §§ 24.001 – 24.013 of the Texas Fraudulent Transfer Act)

46.    Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

47.    The 4-Yr Transfers were made from the Debtor's property.

48.    The 4-Yr Transfers were made with the Debtor's actual intent to hinder, delay, or defraud creditors of the Debtor because the 4-Yr Transfers were made in connection with and in furtherance of the Debtor's ongoing fraudulent scheme.

49.    The Debtor knew of its dependence on new investor money to provide cash for operations and to fund payments to prior investors.

50.    The Debtor had at least one creditor when the 4-Yr Transfers were made.

51.    The 4-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. § 544 and § 24.005(a)(1) of the Texas Uniform Fraudulent Transfer Act.

52.    Defendants are either the initial transferee of a 4-Yr Transfer or the immediate or mediate transferee of such initial transferee or is a person for whose benefit the 4-Yr Transfer was made.

53. As of the date hereof, Defendants have not returned any 4-Yr Transfer to the Estate.

54. As a result of the foregoing, pursuant to 11 U.S.C. § 544 and § 24.005(a)(1) of the Texas Uniform Fraudulent Transfer Act, Plaintiff is entitled to a judgment (a) avoiding and preserving the 4-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 4-Yr Transfers be set aside; and (c) recovering the 4-Yr Transfers, or the value thereof, from the Defendants for the benefit of the Estate and the Liquidating Trust.

## VIII.
## COUNT FOUR
### (Avoidance, Preservation, and Return of Constructive Fraudulent Transfers Under 11 U.S.C. §§ 544, 550, and 551 and §§ 24.001 – 24.013 of the Texas Fraudulent Transfer Act)

55. Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

56. The 4-Yr Transfers were made from the Debtor's property.

57. The Debtor received less than reasonably equivalent value for the 4-Yr Transfers.

58. The Debtor was (a) insolvent when the 4-Yr Transfers were made or, in the alternative, became insolvent as a result of the 4-Yr Transfers; (b) engaged in a business or a transaction, or were about to engage in business or transaction, for which the property remaining with the Debtor was unreasonably small capital when the 4-Yr Transfers were made; or, alternatively, (c) when the time the 4-Yr Transfers were made, the Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as they matured.

59. The Debtor had at least one creditor when the 4-Yr Transfers were made.

60. Debtor had unsecured creditors at the time of each Fraudulent Transfer who under non-bankruptcy law could have avoided the Fraudulent Transfers.

61. The 4-Yr Transfers are fraudulent transfers in violation of 11 U.S.C. § 544 and §§ 24.005(a)(2) and 24.006 of the Texas Uniform Fraudulent Transfer Act.

62. Defendants are either the initial transferee of a 4-Yr Transfer or the immediate or mediate transferee of such initial transferee or is a person for whose benefit the 4-Yr Transfer was made.

63. As of the date hereof, Defendants have not returned any 4-Yr Transfer to the Estate.

64. As a result of the foregoing, pursuant to 11 U.S.C. §§ 544, 550, and 551 and §§ 24.005(a)(2) and 24.006 of the Texas Uniform Fraudulent Transfer Act, Plaintiff is entitled to a judgment (a) avoiding and preserving the 4-Yr Transfers for the Estate and the Liquidating Trust; (b) directing that the 4-Yr Transfers be set aside; and (c) recovering the 4-Yr Transfers, or the value thereof, from the Defendants for the benefit of the Estate and the Liquidating Trust.

## IX.
## COUNT FIVE
### (Preservation, Recovery, and Return of Fraudulent Transfers Under 11 U.S.C. §§ 550, 551)

65. Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

66. The Avoidable Transfers are avoidable fraudulent transfers in violation of 11 U.S.C. §§ 544 and 548 and §§ 24.005 and 24.006 of the Texas Uniform Fraudulent Transfer Act.

67. The Doe/ABC Defendants are either initial transferees of the Avoidable Transfers or immediate or mediate transferees of such initial transferees or persons for whose benefit the Avoidable Transfers were made.

68. The Doe/ABC Defendants did not receive the Avoidable Transfers in good faith and without knowledge of the voidability of the Avoidable Transfers.

69. As of the date hereof, no Doe/ABC Defendants have returned an Avoidable Transfer to the Estate.

70. As a result of the foregoing, pursuant to 11 U.S.C. §§ 550 and 551, Plaintiff is entitled to a judgment (a) preserving the Avoidable Transfers for the Estate and the Liquidating Trust; and (b) recovering the Avoidable Transfers, or the value thereof, from Doe/ABC Defendants for the benefit of the Estate and the Liquidating Trust.

## X.
## COUNT SIX
### (Attorneys' Fees and Costs)

71. Plaintiff restates and realleges the above facts, allegations, and averments as if fully set forth herein.

72. As a result, and pursuant to Federal Rule of Bankruptcy Procedure 7008(b), Plaintiff is entitled to recover his reasonable costs and legal fees incurred in connection with this proceeding.

## XI.
## RESERVATION OF RIGHTS

73. During this Adversary Proceeding, Plaintiff may learn through discovery or otherwise of additional transfers by the Transferor to, or for the benefit of, the Defendants that were unknown to the Plaintiff as of the date of this Complaint (the "**Additional Transfers**").

74.  Plaintiff intends to avoid and recover all transfers of the Debtor's interest in property and to or for the benefit of the Defendants or any other transferee. Plaintiff reserve its right to supplement and amend this Complaint, including, without limitation, the right to (a) further state/allege/aver information regarding the Transfers; (b) seek to recover Additional Transfers; (c) modify or revise the Defendants; (d) allege additional defendants; (e) allege additional causes of action arising under chapter 5 of the Bankruptcy Code that may become known to Plaintiff at any time during this Adversary Proceeding through discovery or otherwise, and for the all such amendments to this Complaint to relate back to the original Complaint.

75.  If Defendants have filed a proof of claim or have a claim listed on the Debtor's schedules as undisputed, liquidated, and not contingent, or have requested or may otherwise request payment from the Estate, this Complaint is not intended to be, nor should it be construed as, a waiver of the Plaintiff's right to object to such Claims for any reason, including, without limitation, 11 U.S.C. § 502, and all such rights are expressly reserved.

## XII.
## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests entry of a judgment in his favor:

(a)  declaring that the 2-Yr and 4-Yr Transfers are avoided and set aside as fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548 and the Texas Uniform Fraudulent Transfer Act;

(b)  directing and ordering that any Transfer avoided pursuant to 11 U.S.C. §§ 544, and 548 be preserved for the benefit of the Estate pursuant to 11 U.S.C. § 551;

(c)  directing and ordering Defendants and the DOE/ABC Defendants, or any immediate or mediate transferee thereof, turnover to Plaintiff the full amount or value of

the Transfers received by such defendants, or any immediate or mediate transferee of such defendants, pursuant to 11 U.S.C. § 550;

(d) awarding judgment against Defendant and the DOE/ABC Defendants in Plaintiff's favor in amount equal to:

(i) the full amount of the Transfers (and any other avoided transfers discovered after the date of this Complaint) made to each such defendant;

(ii) pre-judgment interest at the maximum legal rate running from the time of the Transfers until the date of judgment herein;

(iii) post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full; and

(iv) attorney's fees and costs incurred by Plaintiff in this suit;

(e) awarding the Plaintiff such other and further relief that this Court deems just and proper.

| | |
|---|---|
| Dated: June 10, 2011 | Respectfully Submitted by: |
| | Max R. Tarbox (TX 19639950)<br>TARBOX LAW, P.C.<br>2301 Broadway<br>Lubbock, Texas 79401<br>Phone: (806) 686-4448<br>Fax:    (806) 368-9785<br>max@tarboxlaw.com |
| | and |
| | */s/ Stephen A. McCartin*<br>Stephen A. McCartin (TX 13374700)<br>Marcus A. Helt (TX 24052187)<br>GARDERE WYNNE SEWELL LLP<br>1601 Elm Street, Suite 3000<br>Dallas, Texas  75201-4761<br>Telephone:  214.999.3000<br>Facsimile:  214.999.4667<br>smccartin@gardere.com<br>mhelt@gardere.com |
| | **COUNSEL FOR WALTER FOR WALTER O'CHESKEY, TRUSTEE OF THE AHF LIQUIDATING TRUST** |

# Exhibit A

Transferee: Houston Woodedge, LTD

| Date | Date Range | Detail # | Total | Transferor |
|---|---|---|---|---|
| 06/18/07 | Between 1-2 Yrs | Online Transfer-IBEQFJQ3Pd, IBEJMFQ42D | 1,013,000.00 | AHF Development LTD |
| 10/30/07 | Between 1-2 Yrs | Online Transfer-IBEBTNX46S | 500,000.00 | AHF Development LTD |
| 11/26/07 | Between 1-2 Yrs | Online Transfer-IBE25Lkzqq | 250,000.00 | AHF Development LTD |
| | | Total | 1,763,000.00 | |
| | | Grand Total | $ 1,763,000.00 | |