

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 2, 2014**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|                                   |   |                            |
|-----------------------------------|---|----------------------------|
| IN RE:                            | § |                            |
|                                   | § |                            |
|                                   | § |                            |
| AMERICAN HOUSING FOUNDATION,      | § |   CASE NO. 09-20232-RLJ-11 |
|                                   | § |                            |
| DEBTOR.                           | § |                            |

### MEMORANDUM OPINION

Samuel L. Boyd d/b/a Boyd & Associates ("Boyd") seeks allowance and payment from this bankruptcy estate of $521,526.00, consisting of $496,855.50 in attorney's fees and $24,670.50 in expenses.  *See* Docket No. 3570 ("Boyd's Final Motion for Compensation"). Walter O'Cheskey ("Trustee"), in his capacity as liquidating trustee of the liquidating trust for the bankruptcy estate of American Housing Foundation ("AHF"), objects to the vast majority of such fees and expenses.  *See* Docket No. 3600 ("Trustee's Objection").

Hearing was held on January 13, 2014 on Boyd's Final Motion for Compensation, after which the parties submitted briefs in support of their respective positions [Docket Nos. 3661, 3663, and 3664].

I.

The AHF bankruptcy case was initiated by an involuntary petition [Case No. 09-20232] filed by certain investors of AHF shortly after the death (reportedly by suicide) of Steve Sterquell, the principal of AHF. A few weeks later, on June 11, 2009, AHF filed its voluntary petition [Case No. 09-20373] under chapter 11; the two cases—the involuntary case and the voluntary case—were then consolidated by the Court's order of July 17, 2009 [Docket No. 88, Case No. 09-20232]. The case then proceeded with AHF as the debtor-in-possession.

After a contested trial on the motion of Texas Capital Bank, a major secured creditor of AHF, seeking appointment of a chapter 11 trustee, the Court granted such motion by its order of April 28, 2010 [Docket No. 1096], and O'Cheskey was appointed the chapter 11 trustee by the Office of the United States Trustee. On December 8, 2010, the Court approved confirmation of the chapter 11 plan of AHF that resulted from a negotiated settlement between the Trustee and the Official Committee of Unsecured Creditors. *See* Docket No. 1918. O'Cheskey was named the trustee of the AHF liquidating trust that was established under the confirmed plan.

Boyd's Final Motion for Compensation concerns legal services for the period of July 9, 2009 to October 5, 2013 in connection with a lawsuit prosecuted on behalf of AHF as a party plaintiff in the District Court of Dallas County, Texas. The Court has previously, by its Memorandum Opinion and Order issued on March 27, 2013 [Docket No. 3496] ("March 2013 Memorandum Opinion and Order"), set forth a chronology of events regarding Boyd's employment that bears repeating.

II.

In July 2009, Boyd began work ostensibly for AHF regarding causes of action against Bank of America Securities, *et al*. Such work was performed upon the authority of asserted creditors of AHF in the AHF bankruptcy case.

On October 22, 2009, Boyd filed a lawsuit in the District Court of Dallas County, on behalf of AHF and six wholly owned subsidiaries—AHF Arizona, LLC, AHF Florida, LLC, AHF Tulsa, LLC, DHEOP, LLC, THEOP, LLC, and WHEOP, LLC (the "LLCs") (this action will be referred to as "the State Court Action").

On November 6, 2009, the Unsecured Creditors Committee in the AHF bankruptcy case filed its application to employ Boyd [Docket No. 416]; this application was withdrawn on November 17, 2009.

On March 20, 2010, AHF, as debtor-in-possession, filed its application to employ Boyd as special counsel for AHF ("Motion to Employ") [Docket No. 916].

On March 24, 2010, AHF filed an application for compensation and reimbursement of expenses of Boyd for services provided during the period of July 19, 2009 through March 12, 2010 ("First Application for Compensation") [Docket No. 928].

On April 19, 2010, the Court held a hearing at which time, on the record, it approved the Motion to Employ, with such employment effective as of the date of the filing of the application (March 20, 2010), but denied approval of any fees under the First Application for Compensation as premature.

On February 23, 2011, Boyd filed his application for allowance of fees and expenses [Docket No. 2093]; this application was withdrawn by Boyd on July 6, 2011.

On March 31, 2011, the Court entered its order granting employment of Boyd effective March 20, 2010 [Docket No. 2279]. The Court notes this order was entered just less than one year after the hearing was held (the April 19, 2010 hearing) at which the Court had instructed counsel for AHF to submit the order approving Boyd's employment. (On April 27, 2010, shortly after the hearing on the Motion to Employ, the Court appointed the Trustee, and AHF's counsel moved to withdraw and never submitted an order.) Boyd ultimately submitted the order.

On August 9, 2011, Boyd filed his Petition in Intervention in the State Court Action requesting payment for work related to the lawsuit.

On September 6, 2011, the Trustee filed his motion seeking the Court's order compelling Boyd to show cause why he should not be held in contempt for failure to comply with § 330 of the Bankruptcy Code [Docket No. 3185] ("Trustee's Motion").

On October 13, 2011, Boyd filed his response to the Trustee's Motion [Docket No. 3230], indicating he was simply seeking payment from the non-debtor LLCs and not the debtor, AHF.

On October 20, 2011, the Court entered its order staying Boyd from proceeding with the Petition in Intervention before the state court, pending the Court's determination on the merits of the Trustee's Motion. *See* Court's order [Docket No. 3243].

On December 30, 2011, Boyd filed his motion seeking an order vacating the Court's prior order staying Boyd's Petition in Intervention [Docket No. 3309] ("Motion to Vacate").

On February 13, 2012, the Trustee filed his objection to the Motion to Vacate [Docket No. 3346].

On August 13, 2012, hearing was held on the Trustee's Motion and Boyd's Motion to Vacate.

By its Memorandum Opinion and Order on the Trustee's Motion and Boyd's Motion to Vacate, the Court stayed Boyd from proceeding with his petition in intervention before the 95th Judicial District Court of Dallas County, Texas. *See* March 2013 Memorandum Opinion and Order. The Court noted the various problems concerning Boyd's requests, both for approval of his employment and for payment of his fees and expenses for work in the State Court Action. These problems are pertinent here, as well. Boyd agreed to the representation of AHF upon the purported authority of a group of claimed creditors who, at the time, did not have authority to employ Boyd on behalf of AHF. As the Court stated, Boyd continued the representation after an application for his employment was filed [Docket No. 416], only to be withdrawn [Docket No. 458]. The First Application for Compensation [Docket No. 928] was then filed at essentially the same time (four days later) as the filing of the Motion to Employ [Docket No. 916]. In effect, Boyd sought approval of fees and expenses for several months when he was not properly employed.

The Court stated as follows:

> By the Motion to Employ, upon which the Court approved Boyd's employment, Sam Boyd, a principal of Boyd, represented to the Court that:

> > Boyd & Associates will only be compensated following the filing of a Motion for Compensation and Reimbursement of Expenses filed in accordance with the regulations established by the Bankruptcy Court and the Office of the United States Trustee for the U.S. Bankruptcy Courts for the Northern District of Texas, and after notice and opportunity for hearing to all creditors and parties in interest in the AHF bankruptcy case.

> Motion to Employ ¶ 14. Sam Boyd's Affidavit of Disinterestedness stated that his firm was "disinterested" and "aware of no conflict or potential conflict of interest affecting the proposed representation." Motion to Employ, Exhibit A. The [First] Application for Compensation sought approval of payment of fees by this Court, stating that "[d]uring the period of representation covered by this Motion, Counsel has expended a total of 537.10 hours for professional services on behalf of AHF" and "[a]ll professional services for which allowance and payment of compensation is requested were performed by Counsel for the benefit [of] AHF and not on behalf of any creditor or any other committee or person." [First] Application for Compensation ¶¶ 6 and 9.

March 2013 Memorandum Opinion and Order, 4–5.

### III.

### A.

The Trustee, through his counsel, the Gardere firm, settled the State Court Action in August 2011. The settlement generally provided that the so-named "Bank Defendants" pay to AHF and to the LLCs $2,250,000 to resolve the claims made against the defendants. The settlement agreement was signed by O'Cheskey as Trustee of the AHF Liquidating Trust and by Alan Weiner as president of AHF on behalf of all other plaintiffs, i.e., the LLCs.

Upon appointment as trustee in the AHF case, O'Cheskey was responsible for the handling of the State Court Action as an estate asset. The confirmed plan then provided that the State Court Action passed to the Liquidating Trust and that O'Cheskey as the Liquidating Trustee had authority to prosecute the action, including authority to compromise the action if appropriate. O'Cheskey authorized the Gardere firm, specifically Steve McCartin as lead counsel, to handle the suit. He also obviously authorized its settlement and, in doing so, deemed the settlement as best serving the estate's interests. Apart from the complaints by Boyd, there is no evidence that the settlement was bad or unreasonable.

B.

At the hearing on this matter, Boyd testified and was asked to explain the nature of the lawsuit.  His explanation was uninformative.  He resorted to jargon and conclusory statements. He emphasized that the action was novel and complex and its handling required a high level of skill and experience; he said that the defendants were represented by skillful, experienced lawyers from prominent firms.  When asked to explain the subject matter of the lawsuit, Boyd resorted to stock phrases: he said it concerned the main defendants' inability to maintain "ad hoc liquidity"; that the "bondholders" were unhappy as a result; that AHF was "fibbed to"; and that the defendant was "hustling business" that concerned a program with a "quite involved protocol."

Boyd never entered into a written employment or engagement letter with either AHF or the LLCs.  Boyd testified that his first arrangement for employment was with Bob Templeton, an asserted creditor of AHF.  Boyd said that Templeton agreed to "finance" his employment on a "non-recourse" basis.  He said that there was no understanding of a fee arrangement at the time he first began work on the lawsuit.  The December 2009 application made reference to a contingent fee arrangement which, according to Boyd, made any allocation as among AHF and the LLCs unnecessary.

The vast majority of the funds from the settlement passed through the LLCs to AHF.

Trustee's counsel, Steve McCartin, also testified concerning the nature of the suit at the hearing.  He testified that the LLCs owned real properties, presumably housing complexes or apartments, that were lender-financed.  The financing was secured by mortgages on the properties.  The loans accrued interest at a floating rate that, according to McCartin, was tied to a

specific "auction" rate.  As part of the deal, the LLCs had purchased an insurance product as a "hedge" against a sudden increase in the interest rate.  The insurance product, however, was tied to yet a different, posted rate, specifically the posted LIBOR rate.  A problem arose when the auction rate suddenly increased, thereby triggering an increase in the floating rate under the loan, but such increase was not properly hedged because the LIBOR rate did not likewise increase. The LLCs were unable to pay the increased rate and thus defaulted on the credit, which apparently caused AHF to cover the defaults.  McCartin's testimony did not explain in detail how the parties were aligned and their specific involvement, but it did provide a basic explanation of the suit's subject matter.

A review of the complaint for the State Court Action reveals that AHF and the LLCs sought damages from Bank of America ("BOA") and certain of its affiliates upon causes for fraud and fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, promissory estoppel and unjust enrichment, and civil conspiracy.  *See* Debtor's Exh. 1 admitted at the April 19, 2010 hearing.  The alleged underlying facts concerned AHF's financing of its low-income housing enterprise and, in particular, the asserted deceptive and actionable promises and representations by the BOA affiliates to AHF.  The complaint alleged that the defendants knew of but failed to advise AHF of the risks associated with the auction-rate based interest rates.  It also asserted that the defendants structured the financing to include the wholly-owned and to-be-formed LLCs.  At bottom, the suit was based on a series of misrepresentations *by BOA affiliates to AHF*.

IV.

A.

As a result of the March 2013 Memorandum Opinion and Order, Boyd here requests that all his fees and expenses be approved and paid on the basis of his representation of both AHF and the LLCs. He asserts state law theories of *quantum meruit*, sworn account, promissory estoppel, and unjust enrichment as bases for approval of his fees and expenses from, principally, the LLCs. *See* Boyd's Final Motion for Compensation. Boyd also contends that the settlement proceeds were fraudulently conveyed by the LLCs to AHF, causing Boyd, as a creditor of the LLCs, to have been defrauded. *Id.* By this theory, Boyd seeks recovery *from AHF* for the debt he contends is owed him *by the LLCs*. Finally, at the hearing on this matter, Boyd raised the "common fund" doctrine as yet another ground for recovery of the fees and expenses from AHF.

The Trustee places the requested fees and expenses into three categories: the "Pre-Employment Fees," which cover the fees and expenses for services provided prior to March 12, 2010, i.e., prior to the Court's approval of Boyd's employment; the "BofA Lawsuit Fees," which cover the fees and expenses for services provided from the period of March 12, 2010 through January 31, 2011, and thus, for the most part, for services provided after Boyd's employment was approved by the Court[1]; and the "Fee Application Fees," which are the fees sought in connection with Boyd's efforts to recover the fees and expenses. *See* Trustee's Objection. The Pre-Employment Fees (and expenses) are $170,248.56; the BofA Lawsuit Fees (and expenses) are $79,523.46; and the Fee Application Fees (and expenses) are $271,753.98. The Trustee

---

[1]The First Application for Compensation (of AHF) sought approval for compensation and reimbursement of expenses of Boyd for his services from July 19, 2009 through March 12, 2010. The Trustee submits that fees incurred between March 12, 2010 and March 20, 2010 are not recoverable as Boyd's employment was not approved until March 20, 2010.

submits that the Pre-Employment Fees are improper because, quite simply, they were incurred *prior to* Boyd's approved employment. Similarly, the Trustee submits that the Fee Application Fees (and expenses) are improper because they arose *after* Boyd's substantive work on the suit was completed. The only fees and expenses properly allowable, according to the Trustee, are those under the BofA Lawsuit Fees category that concern services that provided an identifiable, tangible benefit to the AHF estate.

## B.

The Court has jurisdiction and authority on this matter under 28 U.S.C. §§ 1334(b) and (e) and 151, and by the standing order of reference in this district. This is a core proceeding. *See* 28 U.S.C. § 157(a), (b)(1), (2)(A) and (B).

## C.

Boyd's problems are manifold. First, he agreed to represent AHF, a chapter 11 debtor, upon the request of a group of asserted creditors (or investors) of AHF who had no authority to employ him as attorney for AHF. He and the asserted creditors then failed to take any immediate action to rectify this basic authority problem. Despite this, he continued on with his purported representation of AHF and the LLCs. In November 2009, a few weeks after Boyd filed the State Court Action, the Unsecured Creditors Committee in the AHF bankruptcy case filed its application to employ Boyd, only to be withdrawn eleven days later. Such application could have partly mitigated the authority problem. Boyd was certainly aware of the issue.

It was not until March of 2010, five months after the suit was filed and eight months after Boyd began work on the action, that AHF, as debtor in possession, filed its application to employ Boyd. Ignoring the employment problem, AHF, at essentially the same time (four days

later), filed its application *to approve payment* to Boyd for his work for the period from July 2009 to March 12, 2010. The Court approved the employment application with such approval effective as of its filing date of March 20, 2010.[2] The Court denied the fee application as "premature." The simultaneous requests for employment and for payment make the latter premature. The Bankruptcy Code does not authorize the payment of a professional whose employment has not been properly authorized. *See* 11 U.S.C. §§ 327, 328; *see also In re Monument Auto Detail, Inc.*, 226 B.R. 219, 224–25 (B.A.P. 9th Cir. 1998) ("Court approval of the employment of *counsel for a debtor in possession* is the sine qua non to counsel getting paid. Failure to obtain court approval of a professional in accordance with § 327 and Rule 2014 precludes the payment of fees. . . . The BAP has also clearly held that the Code and Rules preclude fee awards for services performed on behalf of a bankruptcy estate based on state law theories not provided for by the Code, such as *quantum meruit*.") (emphasis in original).

Boyd tried to circumvent his employment and payment issues by going back to state court and couching his request as one against the LLCs. The filings in the bankruptcy court, however, recognized that Boyd's employment and payment were governed by the Court, the bankruptcy court, in the AHF bankruptcy case. The first application seeking approval of Boyd's employment, the November 6, 2009 application of the Unsecured Creditors Committee, requested that the Court approve Boyd's employment—under a contingent fee arrangement—to represent *the Committee* to whom was delegated authority to prosecute the State Court Action *on AHF's behalf. See* Docket No. 416. The LLCs, according to this application, were created as part of the "financial transaction" that was subject of the State Court Action; they were also each

---

[2]In ruling on the matter on April 19, 2010, the Court specifically denied *nunc pro tunc* approval to a date before March 20, 2010, finding that no showing had been made to justify *nunc pro tunc* relief.

100% owned by AHF. This application represented that Boyd "will only be compensated following the filing of a Motion for Compensation and Reimbursement of Expenses filed in accordance with the regulations established by the Bankruptcy Court and the Office of the United States Trustee for the U.S. Bankruptcy Courts for the Northern District of Texas, and after notice and opportunity for hearing to all creditors and parties in interest in the AHF bankruptcy case." *Id.* at 8. Sam Boyd's affidavit, included with and in support of the application, affirms that the six LLCs would "likely be co-plaintiffs with AHF," and that "any fees and expenses due Boyd . . . [would] be paid only upon the filing and approval of a Motion for Compensation and Reimbursement of Expenses with [the] Bankruptcy Court." *Id.* at Exhibit A.

As noted above, the application of the Unsecured Creditors Committee was withdrawn eleven days later. The next legitimate attempt to employ Boyd was made on March 20, 2010, this time by AHF as the debtor-in-possession. *See* Docket No. 916. This application revealed that Boyd was no longer to be employed on a contingent fee basis but rather on a standard hourly fee arrangement. The basic premise of Boyd's employment by and payment from AHF never changed, however. "Boyd & Associates will only be compensated following the filing of a Motion . . . filed in accordance with the regulations established by the Bankruptcy Court and the Office of the United States Trustee . . . and after notice and opportunity for hearing to all creditors and parties in interest in the AHF bankruptcy case." *Id*. The affidavit of Sam Boyd attached to the application again recognized these basic requirements.

The Unsecured Creditors Committee and its counsel, the creditors of AHF, AHF as debtor-in-possession, and the Court all understood, despite the various missteps in Boyd's

employment, that Boyd was employed to represent AHF—and the LLCs if necessary—and that Boyd's compensation was subject to approval by the Court in accordance with the Bankruptcy Code and the applicable rules and procedures. By necessity, any payment of Boyd's fees were to flow through and come from AHF.

The problems associated with Boyd's employment were indicative of the problems perceived by the Court in its decision to appoint a chapter 11 trustee. AHF was floundering in its role as a debtor-in-possession under the Bankruptcy Code, and the Unsecured Creditors Committee had seized the obvious vacuum of authority that existed. A chapter 11 trustee was needed to ensure the case was properly administered.

As previously pointed out, AHF was the 100% member of each of the LLCs and thus controlled the LLCs and had "ultimate authority to employ counsel and file the [S]tate [C]ourt [A]ction, not only for AHF but also for the LLCs." Bankruptcy Court's Order entered October 20, 2011 [Docket No. 3243]. There is no evidence that the LLCs ever had any assets. Boyd invokes the LLCs as a means to raise several causes of action—within the context of his fee application—that, in turn, create a potential claim to the settlement funds that passed to the AHF Liquidating Trust. Boyd's employment and compensation were, however, at all times subject to the requirements and regulations of the Bankruptcy Code.

Boyd's services, as the Trustee contends, fall within three categories or time frames: (1) services performed before his retention was approved; (2) services performed after approval and in prosecution of the State Court Action; and (3) services performed in his efforts to collect his fees and expenses. In assessing the propriety of Boyd's request, a lengthy discussion of the

law on the subject is unnecessary.  The first and third categories are not compensable; the second category is not opposed and is compensable.

A professional employed in a bankruptcy case may be compensated from the estate for only those services that were provided upon approved employment, *see* 11 U.S.C. § 330(a)(1); services are not compensable that are *provided for the attorney* and *not for the estate*.  *See In re ASARCO, L.L.C.*, No. 12-40997, 2014 WL 1698072 (5th Cir. April 30, 2014) (citing *In re Teraforce Tech. Corp.*, 347 B.R. 838 (Bankr. N.D. Tex. 2006); *In re Frazin*, 413 B.R. 378 (Bankr. N.D. Tex. 2009); and *In re JNS Aviation, LLC*, No. 04–21055–RLJ–7, 2009 WL 80202 (Bankr. N.D. Tex. 2009)).  Boyd's services in defending his fees were not "necessary to the administration of, or beneficial . . . toward the completion of [this] case."  11 U.S.C. § 330(a)(3). Under any construction of the so-called material benefits test—whether work performed provided an "identifiable, tangible, and material benefit to the estate," *In re Pro Snax Distribs., Inc.*, 157 F.3d 414, 426 (5th Cir. 1998)—Boyd's services in the third category fail the standard.[3]

Turning then to Boyd's services rendered in connection with the State Court Action, the Trustee, as the Court previously noted, has no objection.  The Court, in reviewing such services and fees, finds both the time expended and the rates charged as fair and reasonable.  This work benefitted AHF and the bankruptcy estate and was instrumental in the administration of a significant estate asset.  Boyd's fees and expenses in this category will be approved; the fees are compensable and the expenses are reimbursable.

The Court has reviewed the invoices submitted by Boyd that contain the time entries and narratives of the services provided by Boyd.  The first invoice covers the period of July 19, 2009

---

[3]*See also In re Am. Hous. Found.*, 498 B.R. 713 (Bankr. N.D. Tex. 2013).

- 14 -

through March 19, 2010; it reflects 568.60 hours of services, resulting in fees of $177,840 and expenses of $9,609.46. The expenses include the payment for a "consulting counsel" of $5,818.75. The second invoice covers the period of March 23, 2010 through August 9, 2011; it reflects 393.80 hours of services, resulting in $118,135 in fees and expenses of $10,661.73. The third invoice covers the time frame of August 10, 2011 through October 5, 2013; it reveals 569.87 hours of services, resulting in fees of $168,820.50 and expenses of $4,260.16.

The first invoice reflects fees and expenses that arose before Boyd's employment was authorized and thus, as a general rule, are not compensable from the estate (or, here, from the AHF Liquidating Trust). As stated by this Court in other decisions, the Court does not employ a hard and fast, atomistic review of fees. It is difficult to draw a clear line of demarcation for services that are compensable and those that are not. Counsel in most cases does some work before the fee application is filed. The mere fact that bankruptcy practice requires the preparation and filing of a fee application oftentimes creates a lag between the time work begins and the time employment is sought and approved. This was addressed here for the most part by the Court providing that its approval of the application was effective as of the March 20, 2010 filing date. The Court will allow some minimal fees and some expenses that actually pre-date the filing date. In particular, the Court will allow $10,000 in fees and $4,000 in expenses that are identified under the first invoice.

The second invoice covers the time for which certain of Boyd's services are compensable. Boyd was prosecuting the State Court Action which, at some point, had been removed to federal court in California. His representation during the early part of this time frame addressed a pending fee application with this Court, the various procedural issues

- 15 -

associated with the removal and ultimate remand of the State Court Action (back to Texas state court), various discovery items, and scheduling matters. By late December 2010 and into early January 2011, however, much of Boyd's services dealt with the brewing issues and disputes regarding his fees (and payment of his fees). Boyd, not being a regular bankruptcy practitioner, was obviously unfamiliar with the procedures for employment and payment of counsel in a bankruptcy case. Much work was being done as a means to attempt to recover fees for services he had already provided. The time entries further reflect that, by late February 2011, a dispute was developing between Boyd and the Trustee and Trustee's counsel, McCartin, regarding the direction of the State Court Action and Boyd's involvement as counsel for the Trustee. By March of 2011, Boyd's services centered around his desire to get paid and his disagreement with McCartin (and thus the Trustee) concerning his involvement in and direction of the State Court Action. He (or his associate) did continue to monitor both the State Court Action and the bankruptcy case, however. By late June of 2011, Boyd and McCartin had had a complete falling out; in late July 2011, Boyd was seeking to withdraw. As stated above, the State Court Action settled in August 2011. On August 9, 2011, Boyd expended 9.2 hours that culminated in his filing of the Petition in Intervention with the state court. This was done to bypass the bankruptcy court in his efforts to collect his fees.

In assessing Boyd's services for March 23, 2010 through August 9, 2011 time frame, the Court concludes that 75% of such fees ($118,135) are compensable, or $88,600. The Court will approve Boyd's expenses of $10,661.73.

The fees under the third invoice for the period of August 10, 2011 through October 5, 2013 relate exclusively to Boyd's efforts to collect on (or defend) his services. As stated, these

are not compensable from the bankruptcy estate and thus from the AHF Liquidating Trust. The law provides no leeway for allowance of such fees and expenses. Such work was not done for the estate, and the estate received no benefit from such services.[4]

Boyd's state law theories are foreclosed by the Court's conclusion that his employment and payment are explicitly subject to the applicable provisions of the Bankruptcy Code and thus this Court's approval. *See Monument Auto Detail*, 226 B.R. at 224–25. His claim that the LLCs fraudulently transferred the settlement proceeds to AHF is likewise cut off.

### End of Memorandum Opinion ###

---

[4]On April 25, 2014, Boyd filed a "supplement" to his fee request [Docket No. 3668] in which he seeks an additional $8,291.67 for services by counsel Don C. Dennis of Boerner, Dennis & Franklin, PLLC. Such services were also provided in defending Boyd's request and are similarly not recoverable from the estate.