

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 2, 2015**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| American Housing Foundation, | § | Case No.: 09-20232-RLJ |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION

The dictates of Bankruptcy Rule 3001(e)(2) are simple: if a creditor files a proof of claim in a bankruptcy case and such claim is later transferred to another person, then such person—the "transferee"—shall file evidence of the transfer with the court. Then, if the creditor—the presumed or "alleged" transferor—does not object to the transfer, the transferee is substituted for the transferor. As a result, all parties that need to know will know who is holding the claim. This is as basic as it gets. The parties to the dispute here, however, have managed to muddle this simple procedure.

1

**Background**

On July 7, 2015, the Unified AHF Unsecured Creditors' Liquidating Trust (the Trust) filed its *Notice of Transfer of Claims* (the Notice) [Doc. No. 3744]. The Notice was filed under Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure, which requires a transferee of a claim transferred after a proof of claim has been filed to file evidence of the transfer. The Notice identifies twenty-nine claims from twenty-nine claimants that were transferred to the Trust on March 31, 2011, shortly after the liquidating plan of American Housing Foundation (AHF) was confirmed by the Court. The Notice requests that the Court enter an order substituting the Trust for the original claimants.

Four of the twenty-nine claimants whose claims were assigned—Robert L. Templeton, Heron Land Company, Paul King, and the Estate of Frances Maddox (collectively referred to as the Four Claimants)—filed their "limited objection" to the Notice, on July 30, 2015. They submit that the Trust "is *in the process* of negotiating a reassignment of the claims to the Four Claimants" and that the "reassignments *will render* the Notice moot as to these claims, as the Unified Trust *is* not the holder of the claims." *Limited Objection to Transfer of Claims* [Doc. No. 3755] (emphasis added). They each therefore "*maintain* their status as creditor, and the Court no longer needs or should recognize the transfer." *Id*. (emphasis added). So, they are basically advising the Court that it need not be bothered. To underscore this point, the Trust, on September 8, 2015, filed its *Confirmation of Limited Objection and Withdrawal of Notice of Transfer* (the Trust's Confirmation) [Doc. No. 3763], by which it acknowledges that since the Four Claimants had been "in the process of negotiating a reassignment of their claims" and that the Trust and the Four Claimants have "finalized and executed the reassignments," the matter is now "moot." *Id*. They ask that the Court "*not recognize* the transfer of claims originally

2

requested in the Notice of Transfer with respect to the Four Claimants." *Id*. (emphasis added).

Then, in response to the Trust's Confirmation, Walter O'Cheskey, Liquidating Trustee of the AHF Liquidating Trust (O'Cheskey), on September 9, 2015, filed his objection [Doc. No. 3765], noting that C.C. Burgess, the trustee of the Trust at the time of the filing of the July 7, 2015 Notice, had resigned and that Robert Templeton is now the trustee of the Trust, which has likewise hired new counsel, Reuben Hancock. O'Cheskey opposes the Trust's attempt to effectively undue the March 2011 transfers by the Four Claimants, and requests that the Court confirm the transfers to the Trust and require notice anew, in accordance with Rule 3001(e)(2), of any transfer of claims back to the Four Claimants.

The Court conducted a hearing on September 15, 2015, on the issues raised by the Notice, the Four Claimants' limited objection, the Trust's Confirmation, and O'Cheskey's objection. At the hearing, the Court learned that the reassignments to the Four Claimants were signed by Templeton for the Trust on September 8, 2015, but are stated to be effective as of March 31, 2011, the same effective date of the assignments *to the Trust*. Neither the Four Claimants by their limited objection nor the Trust by its Confirmation disclosed this attempt to make the reassignments retroactive. If valid, this would, presumably, make the original assignments void *ab initio*.

There is a backdrop to this posturing on the claims transfers. Just prior to the July 7, 2015 Notice, a post-judgment settlement was entered into between O'Cheskey, as Liquidating Trustee, and Herring Bank. The terms of the settlement are mostly consistent with the judgment the Court had entered against Herring Bank; it included allowance of one of Herring Bank's claims and subordination of another claim. The Lovell, Lovell, Newsom & Isern, L.L.P. firm, attorneys, objected to the settlement to the extent it contemplated payment on Herring Bank's

allowed claim directly to Herring Bank and not the Trust. Herring Bank is one of the twenty-nine assignors under the March 2011 assignments to the Trust; it had filed a proof of claim for $5,814,542.16. The Lovell firm objected (and even filed an adversary proceeding against Herring Bank [Adv. No. 15-02003]) because, as the Lovell firm asserted, its fees and expenses for representing various claimants whose claims were assigned to the Trust were to be paid from the Trust before the Trust beneficiaries, the claimant-creditors of AHF, were paid. This brought to light the Trust's failure to file the required notice of the March 2011 assignments, which in turn raised O'Cheskey's ire as he had settled not only the Herring Bank suit but other actions directly with other claimants whose claims had been assigned in March 2011. This mess was ostensibly resolved by the July 7, 2015 Notice that confirmed the March 2011 assignments to the Trust and by a ratification agreement, *Ratification, Consent and Agreement to Be Bound by Settlement Agreements and Releases* [Doc. No. 3754, Ex. 1], in which the Trust ratified and agreed to be bound by the settlements. In the few weeks between this resolution and the filing of the Trust's Confirmation, Templeton was apparently named as replacement trustee of the Trust. Templeton is also the executor of the Frances Maddox Estate, the person in control of Heron Land Company, and brother-in-law to and attorney for King. So, he controls both the Trust and the Four Claimants; and he has decided that the original assignments by the Four Claimants to the Trust should effectively be declared a nullity.

There is yet another circumstance that, according to O'Cheskey, lies behind the reassignments: the lawsuit recently filed by the Four Claimants against O'Cheskey in which they seek over $1 million against O'Cheskey, as Liquidating Trustee for the AHF Liquidating Trust, for his alleged misdeeds in administering the AHF bankruptcy case and its liquidating trust. They seek recovery as trust beneficiaries of the AHF Liquidating Trust. O'Cheskey plausibly

4

argues that the present efforts of the Four Claimants, and the Trust, are an attempt to preserve the Four Claimants' standing in their suit against O'Cheskey: to the extent they are allowed claimants against AHF, they are beneficiaries of the AHF Liquidating Trust; if on the other hand, the Trust has since March 2011 been the owner of the claims, the Four Claimants' status as claimants and thus trust beneficiaries is called into question.

## Discussion

Rule 3001(e) is the mechanism through which the purchaser of a claim (the transferee) steps into the shoes of the seller (transferor). The rule requires that the transferee file notice of the transfer with the court; the *transferor* receives notice of the transfer and is thus provided with an opportunity to dispute the legitimacy of the transfer, if necessary. This process accomplishes three things: (1) it provides the transferor due process rights of notice and an opportunity to object before its property is transferred to another party;[1] (2) it ensures the claim against the estate is held by its true owner;[2] and (3) it puts the debtor or trustee on notice of the identity of the current true owner.[3] The court's role is to resolve disputes of claim ownership raised by alleged transferors. *Viking Assocs., L.L.C. v. Drewes (In re Olson)*, 120 F.3d 98, 102 (8th Cir. 1997) ("The text of the rule makes clear that the existence of a 'dispute' depends upon an objection by the transferor. Where there is no dispute, there is no longer any role for the court.").

Rule 3001(e) was amended in 1991 "to limit the court's role to the adjudication of

---

[1] *In re Crosscreek Apartments, Ltd.*, 211 B.R. 641, 646 n.7 (Bankr. E.D. Tenn. 1997) ("Compliance with Rule 3001(e) appears designed primarily to meet the due process requirement that a creditor be given notice and an opportunity to object to any purported transfer of its claims against the estate.").

[2] *See In re Ellington,* 151 B.R. 90, 99 (Bankr. W.D. Tex. 1993); *see also* 2 Bankruptcy Litigation § 10:18 ("Bankruptcy Rule 3001(e) establishes special procedures relating to the transfer of claims, designed to minimize the risk of duplicative allowance of a single claim and to resolve competing demands for distributions on the claim.").

[3] *In re Celotex Corp.*, 224 B.R. 853, 856 (Bankr. M.D. Fla. 1998) ("While it is clear the Rule is directed towards protecting the claim transferor, its ultimate effect is to insure the Debtor has notice of the proper claimant to pay.").

disputes regarding transfers of claims." Fed. R. Bankr. P. 3001(e) advisory committee's note to 1991 amendment. Courts step-in if there is a "timely objection by the alleged transferor." *Id*. With no objection, "the clerk should note the transfer without the need for court approval." *Id*. If there is an objection, "the court's role is to determine whether a transfer has been made that is enforceable under nonbankruptcy law." *Id*. The price and terms of the transfer are not relevant and not considered by the court. Fed. R. Bankr. P. 3001(e)(2) (requiring only "evidence of the transfer [to] be filed by the transferee"); *see also Burnett v. Burnett (In re Burnett)*, 306 B.R. 313, 318–19 (B.A.P. 9th Cir. 2004) ("It is apparent from the history of Rule 3001(e) that the consideration supporting a transfer of a claim is not, in the absence of special fiduciary obligations to the debtor or the circumvention of statutory disabilities, pertinent to the validity and allowance of the claim."), *aff'd*, 435 F.3d 971 (9th Cir. 2006). With an objection, and after notice and hearing, if the court finds "that the claim has been transferred other than for security, it *shall* enter an order substituting the transferee for the transferor." Fed. R. Bankr. P. 3001(e)(2) (emphasis added). Courts interpret the language of 3001(e)(2) as removing judicial discretion and mandating entry by the clerk of the transferee for the transferor. *Viking Assocs*, 120 F.3d at 102; *In re Nw. Airlines Corp.*, No. 05-17930 (ALG), 2007 WL 498285, at *2 (Bankr. S.D.N.Y. Feb. 9, 2007).

Courts disagree on whether anyone other than the transferor has standing to object under Rule 3001(e)(2). The rule infers that the transferor alone may object. Fed. R. Bankr. P. 3001(e)(2) ("If a timely objection is *not filed by the alleged transferor*, the transferee shall be substituted for the transferor." (emphasis added)). Some courts have questioned whether any other interested party has standing. *S. Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.*, 229 B.R. 119, 121 (E.D. Tex. 1999) (surmising but not resolving whether a creditor's committee has

standing because, "regrettably, the court finds little guidance in the applicable case law"); *see also In re Crosscreek Apartments, Ltd.*, 211 B.R. 641, 646 n.7 (Bankr. E.D. Tenn. 1997) ("It is not clear whether the [p]artners even have standing to challenge any alleged noncompliance."). At least two cases have held that the *debtor* does not have standing. *In re Palmer-Dawkins*, No. 11-63059-JRS, 2013 WL 937603, at *1 (Bankr. N.D. Ga. Feb. 12, 2013) ("Under Rule 3001(e) as amended, 'third parties, including the [d]ebtor, do not have standing to object to a claim assignment itself.'") (quoting *In re Lynn*, 285 B.R. 858, 862 (Bankr. S.D.N.Y. 2002)). One case determined that parties in interest have standing to object to procedural violations of Rule 3001(e), but not to substantive issues with the transfer. *Troy Sav. Bank v. Travelers Motor Inn, Inc.*, 215 B.R. 485, 491 (N.D.N.Y. 1997) ("Of course, the [a]ppellant, as a party in interest, has standing to object to a procedural violation of Rule 3001, but disallowal of the transfer may only be permitted where the party in interest is prejudiced."). Finally, in *In re Kreisler*, the court found that a *chapter 7 trustee* has standing under § 502(a) when acting on behalf of the estate. 331 B.R. 364, 374–75 (Bankr. N.D. Ill. 2005), *aff'd*, 352 B.R. 671 (N.D. Ill. 2006), *rev'd on other grounds and remanded to* 546 F.3d 863 (7th Cir. 2008).[4]

In a claims transfer dispute, the court determines "*whether a transfer has been made that is enforceable under nonbankruptcy law*." Fed. R. Bankr. P. 3001(e) advisory committee's note to 1991 amendment (emphasis added). If "the court finds . . . that the claim has been transferred . . . , it shall enter an order substituting the transferee for the transferor." Fed. R. Bankr. P. 3001(e)(2).

---

[4] *See also, e.g.*, Ronald S. Barliant, et. al, *Claims Trading: Profits, Pitfalls and Strategies in Chapter 11—Do I Hear a Higher Bid?*, 080612 ABI-CLE 225 (2008) ("Thus, under the 'party in interest' test it would appear that standing is not necessarily limited to the alleged claim transferor."); *Palmer-Dawkins*, 2013 WL 937603, at *1 (ruling only that a chapter 13 debtor has no standing; noting *In re Kreisler*'s finding that a trustee has standing and describing that situation as a "possible exception [that] does not apply to the instant case.").

7

There is no contention that the March 2011 assignments were not made. There is no argument made that such assignments can, under the law, be cast aside or ignored; and there is no explanation how, under the law, the Court's authority can be invoked to declare that an undisputed act of assigning a claim, which has significant legal ramifications, can be declared moot. An action is moot if it has no practical significance. BLACK'S LAW DICTIONARY (10th ed. 2014). If the so-called reassignments are dated effective the same date as the original assignment, how can such act *not* have significance? If allowed, the Four Claimants can then arguably maintain that they were each always an asserted creditor and thus a beneficiary of the AHF Liquidating Trust.

Rule 3001(e)(2) is limited; its purpose is to head off potential problems that can arise with the trading of claims in bankruptcy. The rule adds notice and transparency to the process and thus helps ferret out mischief. But the ferreting is delegated to the parties involved, with the Court's role limited to that of resolving disputes of claim ownership raised by the parties. *Viking Assocs.*, 120 F.3d at 102. Notwithstanding the limited role of the bankruptcy court in this process, the court must always guard the integrity of the manner in which the Bankruptcy Rules are used. *See, e.g., Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (noting the broad inherent power of every federal court and the express authority of bankruptcy judges under § 105 to "take *any* action that is necessary or appropriate 'to prevent an abuse of process'") (emphasis added)).

The Trust contends that O'Cheskey's objection raises substantive issues that are not properly considered in the context of a simple claim transfer under Rule 3001(e)(2). But it is attacking the wrong pleading as the one that is raising issues that go beyond the scope of the rule. The Four Claimants and the Trust, both directed by Templeton, are through their pleadings

asking the Court to ignore the original transfers and, to that extent, declare the Notice as moot. As described, this is all accomplished by labelling a new transaction as a reassignment that is deemed effective as of the date of the original transfer. But there is no contention—and no evidence—that the original transfers were not made in early 2011 (they were each signed on April 5th or 6th, 2011, "effective as of March 31, 2011"). Asking the Court to recognize the reassignments that are deemed effective four and a half years prior and on the date as the original assignments, and, further, to declare that the Notice of the original assignments is rendered moot is asking the Court to weigh-in on issues that go well beyond the question of who owns the claim. If, as O'Cheskey contends, the purpose of the retroactive reassignments is to create or bolster the Four Claimants' standing in their action against him as Liquidating Trustee, then their efforts here display, at best, a remarkable lack of candor and, at worst, a lack of good faith.

### Conclusion

Rule 3001(e)(2) directs the Court to recognize a valid transfer of claim. The purported reassignments do not undo the March 31, 2011 assignments. The Court will issue its order substituting the Trust for the Four Claimants as owner of the claims filed by the Four Claimants.

### End of Memorandum Opinion ###